COOLEY LLP
JOHN C. DWYER (136533)
(dwyerjc@cooley.com)
JESSICA VALENZUELA SANTAMARIA (220934)
(jvs@cooley.com)
ALEXANDER J. KASNER (310637)
(akasner@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

Attorneys for Defendants
BioMarin Pharmaceutical Inc., Jean-Jacques Bienaimé,
and Henry J. Fuchs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re BioMarin Pharmaceutical Inc. Securities Litigation* | Case No. 3:20-cv-06719-WHO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>**DATE:** **SEPTEMBER 8, 2021**<br>**TIME:** **2:00 P.M.**<br>**COURTROOM:** **2, 17TH FLOOR**<br>**JUDGE:** **WILLIAM H. ORRICK** |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

    A.   Plaintiff Legally Concedes Four Challenged Statements Were Not Misleading.  (Nos. 1, 2, 11, and 12.) ................................................................ 2

    B.   Plaintiff Fails to Plead an Actionable False or Misleading Statement. ................... 2

        1.   All But Two of the Challenged Statements Are Protected by the PSLRA Safe Harbor.  (Nos. 1, 3-12.) .............................................. 2

        2.   Plaintiff's Entire Theory Is Based on the False Premise That the Alleged Omissions Rendered the Statements Misleading.  (All Statements.) ............................................................................... 5

        3.   Plaintiff Has Failed to Adequately Plead That Any of the Challenged Statements Were False or Misleading When Made. (All Statements.) ............................................................................ 6

            a.   The PDUFA Date Statements (Nos. 5, 7-9, 10, 12) ...................... 6

            b.   The Inspection Statements (Nos. 4, 6, 7) ....................................... 7

            c.   The Approval and Launch Statements (Nos. 1, 3, 10, 12) .............. 9

            d.   The FDA Relationship Statements (Nos. 2-5, 7, 8) ...................... 10

    C.   Plaintiff Fails to Plead a Strong Inference of Scienter. ........................................ 11

        1.   Plaintiff's Allegations Do Not Adequately Plead Scienter. ...................... 11

        2.   The Far More Compelling Inference Is No Scienter. ............................... 14

III.  CONCLUSION .................................................................................................. 15

**REPLY ISO DEFENDANTS' MTD PLAINTIFF'S AMENDED COMPLAINT 3:20-CV-06719-WHO**

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................... 10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................... 13, 14

*Colyer v. Acelrx Pharms., Inc.*,
2015 WL 7566809 (N.D. Cal. Nov. 25, 2015) ....................................................... 7

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ................................................................................ 4

*In re Dynavax Sec. Litig.*,
2018 WL 2554472 (N.D. Cal. June 4, 2018) ...................................................... 6, 11

*Freedman v. St. Jude Med., Inc.*,
4 F. Supp. 3d 1101 (D. Minn. 2014) ...................................................................... 6

*Hatamian v. Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) .................................................................. 11

*Jasin v. Vivus, Inc.*,
2015 WL 3809357 (N.D. Cal. June 18, 2015) ...................................................... 13

*Kovtun v. Vivus, Inc.*,
2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) ....................................................... 5

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) .................................................................. 11

*Markette v. XOMA Corp.*,
2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ..................................................... 10

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ................................................................................................. 5

*In re Metricom Sec. Litig.*,
2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ........................................................ 14

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ................................................................................ 15

*In re Nuvelo, Inc., Sec. Litig.*,
2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) .......................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
   780 F. App'x 480 (9th Cir. 2019) ................................................................................ 7, 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ........................................................................................................ 10

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .......................................................................................... 13

*Rihn v. Acadia Pharms. Inc.*,
   2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) ............................................................... 11

*Rodriguez v. Gigamon*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) ..................................................................... 2, 14

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .......................................................................................... 14

*Roy v. Contra Costa Cnty.*,
   2015 WL 5698743 (N.D. Cal. Sept. 29, 2015) ........................................................ 2, 4, 10

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015) ............................................................................ 4, 15

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016) ............................................................................................ 6

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
   485 F. Supp. 3d 1113 (N.D. Cal. 2020) ........................................................................... 9

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................................ 13

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ............................................................................................. 6

*In re TUT Sys., Inc. Sec. Litig.*,
   2002 WL 35462358 (N.D. Cal. Aug. 15, 2002) ............................................................... 4

*In re Twitter, Inc. Sec. Litig.*,
   506 F. Supp. 3d 867 (N.D. Cal. 2020) ..................................................................... 10, 11

*Vitalone v. Logitech Int'l SA*,
   2012 WL 13041992 (N.D. Cal. July 13, 2012) ................................................................. 8

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) .................................................................................. passim

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

**REPLY ISO DEFENDANTS' MTD**
**PLAINTIFF'S AMENDED COMPLAINT**
**3:20-CV-06719-WHO**

## TABLE OF AUTHORITIES
(continued)

**Page**

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)...................................................................................................... 7, 11

**Statutes**

15 U.S.C. § 78u-5(c)(1)....................................................................................................... 2

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv

**REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO**

## I.    INTRODUCTION

The Opposition confirms the failure of the Amended Complaint ("AC") to adequately allege a claim for securities fraud under the PSLRA.

As an initial matter, Plaintiff ignores Defendants' efforts to organize the thirteen challenged statements in a coherent way, rejecting the chronological numbering of the statements in Appendix A and the categories set forth in the Motion to Dismiss.  As a result, it is nearly impossible to determine which statements Plaintiff refers to at any point in the Opposition.  However, when this confusion is lifted, the AC's fundamental flaws become even more obvious.

First, all but two of the challenged statements are forward-looking and immunized from liability by the PSLRA's safe harbor.  That result is clear under the Ninth Circuit's recent decision in *Wochos v. Tesla*.  Many of the challenged statements are also inactionable statements of opinion or corporate optimism (the latter of which Plaintiff does not even address).

Second, the Opposition's entire legal theory rests on cases in which the FDA took adverse actions after previously raising issues that were *never disclosed to investors* or were *affirmatively misrepresented to the public*.  By contrast, BioMarin made investors aware before the Class Period began, and reminded them repeatedly during the Biologics License Application ("BLA") review, of the discrepancy in efficacy data that ultimately led to the FDA's decision to issue the Complete Response Letter ("CRL").  Thus, investors *knew* of the very risk Plaintiff contends was concealed.

Third, Plaintiff fails to adequately allege that any of the statements were false or misleading *when made*.  Plaintiff muddies the timeline to argue that alleged developments late in the BLA review rendered misleading statements made weeks and months earlier.  The issue is not whether optimism about the timing and approvability of Roctavian proved wrong in hindsight, but whether Plaintiff has adequately pled that any statement was false or misleading when made.  The AC does not come close to meeting this burden with regard to any of the thirteen challenged statements.

Finally, Plaintiff fails to adequately plead facts supporting a strong inference of scienter with regard to any Defendant.

For these and the other reasons set forth below and in Defendants' moving papers, the AC should be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

## II.   ARGUMENT

### A.   Plaintiff Legally Concedes Four Challenged Statements Were Not Misleading. (Nos. 1, 2, 11, and 12.)

Plaintiff ignores Defendants' arguments as to four statements: Bienaimé's statement that "we anticipate launching in the second half of this year" (No. 1; Mot. at 10, 14)[1]; his opinion that "we believe we have a very good relationship with" the FDA (No. 2; Mot. at 19); Fuchs' opinion about Roctavian's clinical benefit (No. 11; Mot. at 19); and Bienaimé's statement that "[w]ith the outcome of the Priority Review of our BLA anticipated August 21, 2020, our commercial team is preparing to launch" Roctavian (No. 12; Mot. at 10, 12, 14).  When an "opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail."  *Roy v. Contra Costa Cnty.*, 2015 WL 5698743, at *3 (N.D. Cal. Sept. 29, 2015).  Accordingly, any claims based on these statements should be dismissed. *Rodriguez v. Gigamon*, 325 F. Supp. 3d 1041, 1057 n.6 (N.D. Cal. 2018).

### B.   Plaintiff Fails to Plead an Actionable False or Misleading Statement.

#### 1.   All But Two of the Challenged Statements Are Protected by the PSLRA Safe Harbor.  (Nos. 1, 3-12.)

The PSLRA safe harbor immunizes any forward-looking statement that is *either* (1) "accompanied by meaningful cautionary statements" *or* (2) "made without actual knowledge . . . that [it] is false or misleading."  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189-90 (9th Cir. 2021) (citing 15 U.S.C. § 78u-5(c)(1)).  In an effort to avoid the first prong, Plaintiff argues that the statements are all "misstatements of historical fact."  (Opp. at 18.)  Plaintiff is wrong.  The Ninth Circuit's decision in *Tesla* makes clear that forward-looking statements do not fall outside the safe harbor simply because they detail present or historical information.  985 F.3d at 1192.

In *Tesla*, the plaintiffs alleged, among other things, that Tesla and its CEO Elon Musk made misleading statements about Tesla's ability to produce 5,000 cars weekly by a certain date, despite allegations that production levels were behind schedule and multiple employees told Musk the goal

---

[1] "No." refers to the number of each challenged statement as ordered in Appendix A.  (Dkt. 59-2.) "Ex." refers to exhibits to the Litton Decl.  (Dkt. 59-1.)  "¶" refers to the AC.  (Dkt. 54.)  Unless noted, all emphasis is added and internal quotation marks, ellipses, brackets, and cites are omitted.

Cooley LLP
Attorneys at Law
Palo Alto

2

**Reply ISO Defendants' MTD
Plaintiff's Amended Complaint
3:20-cv-06719-WHO**

could not be achieved. *Id.* at 1185-86. The Ninth Circuit held the statements were protected by the PSLRA's safe harbor for forward-looking statements "[b]ecause any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances," and the safe harbor would be meaningless "if it could be defeated simply by showing that a statement has the sort of features that are inherent in *any* forward-looking statement." *Id.* at 1192. Accordingly, "an unadorned statement that a company is 'on track' to achieve an announced objective" is no different than "declaring or reaffirming the objective itself." *Id.* To avoid the safe harbor, a plaintiff must plead that statements "went beyond the mere declaration of the . . . goal" by articulating not just "predicate assumptions" but "specific, concrete circumstances *that have already occurred.*" *Id.* As a result, the Court held that relatively generic statements describing Tesla's progress against its stated goals are immunized by the safe harbor. Such immunized statements included the assertions that Tesla was "*on track* to support the ramp . . . to 5,000 vehicles per week"; that it was "making great progress" and knew of "no issues" that "would prevent" it from achieving this goal; and that "it's coming in *as expected*, as the design continuation has *predicted*." *Id.* at 1190, 1194-95.

Most of the challenged statements here are legally indistinguishable from those the Ninth Circuit found inactionable in *Tesla*. Defendants' statements that BioMarin was "tracking to our milestones" (No. 3), was "on track" with respect to the PDUFA date (Nos. 4, 9), and was "working . . . to keep things on track" (No. 8), are equally entitled to the protections of the safe harbor as Tesla's statement that it was "on track" to meet its production goals. Defendants' statements that "all signs are pointing favorably" (No. 3), "we're going to be in a good position with the FDA inspection" (No. 4), "everything is going quite well" (No. 5), "[t]he inspection . . . is expected to be completed during the second quarter" (No. 6), "expectations for a clinical benefit really can be fairly large," (No. 11), "[the] agency has signaled strongly that they intend to maintain their PDUFA action date" (No. 7), and "we continue to anticipate approval" by the PDUFA date (No. 10; *see also* Nos. 1, 12) are likewise indistinguishable legally from the immunized statements in *Tesla*.

Plaintiff further argues the forward-looking statements were accompanied by "boilerplate" warnings, not "meaningful cautionary language." (Opp. at 18-19.) Again, it is wrong. Courts

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

routinely find language like that in BioMarin's 10-K sufficient.   (*Id.* at 18; Ex. G at 24); *see, e.g.*, *In re Nuvelo, Inc., Sec. Litig.*, 2008 WL 5114325, at *16 (N.D. Cal. Dec. 4, 2008) (despite failure to warn of "precise problem that went wrong," holding cautionary language meaningful that warned that "[c]linical trials are lengthy . . . processes with uncertain results," and "[r]esults attained in pre-clinical testing and early clinical studies, or trials, may not be predictive of results that are obtained in later studies").   Indeed, "the law does not require specification of the particular factor that ultimately renders the forward-looking statement incorrect." *Id.*

Further, Plaintiff simply ignores BioMarin's myriad other warnings.   For example, it warned:

- "agencies may not agree that we have demonstrated the requisite level of . . . efficacy to grant approval and may require additional data" (Ex. G at 24; Ex. J at 40);

- gene therapies, like Roctavian, face challenges that may "cause significant delays or unanticipated costs, or that cannot be solved," and "it is difficult to determine how long it will take . . . to obtain regulatory approvals" (Ex. G at 25; Ex. J at 40); and

- "[r]egulatory requirements governing gene [therapies] are still evolving and may continue to change," and new requirements "may lengthen the regulatory review process, require us to perform additional or larger studies, . . . [or] delay or prevent approval and commercialization" (Ex. G at 25; Ex. J at 40).

These warnings were "meaningful" because they "explicitly identify the salient risk[s]" facing the BLA. *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 536 (S.D.N.Y. 2015) ("*Sanofi I*"); *Tesla*, 985 F.3d at 1185, 1193.

The challenged statements are also protected under the safe harbor's second prong.  Plaintiff must plead particularized facts creating "a strong inference" that Defendants had "actual knowledge that the statement[s] were false or misleading" to avoid that prong.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).   This is a higher standard than the standard required to plead scienter under the PSLRA.  *In re TUT Sys., Inc. Sec. Litig.*, 2002 WL 35462358, at *13 n.11 (N.D. Cal. Aug. 15, 2002).   Plaintiff's single conclusory sentence alleging actual knowledge does not meet this standard.  (Opp. at 19-20); *Roy*, 2015 WL 5698743, at *3.

As a result, eleven of the thirteen statements are protected by the safe harbor and should be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

**2.      Plaintiff's Entire Theory Is Based on the False Premise That the Alleged Omissions Rendered the Statements Misleading.  (All Statements.)**

The entire premise underlying Plaintiff's argument as to why the challenged statements are misleading is flawed.  Plaintiff contends that the FDA's alleged concerns during the BLA review "made approval materially less likely and, therefore, Defendants' failure to disclose them misled investors 'about the risk of non-approval or delayed approval.'"  (Opp. at 2-3.)  Yet, as Plaintiff concedes, an omission is only actionable if it "would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists."  (Opp. at 8; Mot. at 12); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  Plaintiff argues that because Defendants "tout[ed] the positive progress" of the BLA review, they had a duty to disclose "material adverse developments in the review process."  (Opp. at 13.)  But the AC fails to allege any material risk to the BLA that was not already disclosed.  *See Kovtun v. Vivus, Inc.*, 2012 WL 4477647, at *8-9 (N.D. Cal. Sept. 27, 2012) (statements about drug's approval prospects not misleading where allegedly omitted facts were known to the market).

Plaintiff agrees that the FDA cited the discrepancies between the Phase 1/2 and Phase 3 studies as the reason it issued the CRL.  (Opp. at 7.)  And Plaintiff concedes that Defendants *disclosed* the Phase 3 results and the discrepancies with the Phase 1/2 trial data.  (Opp. at 4.)  Specifically, in May 2019, ten months before the start of the Class Period, BioMarin disclosed that, in the Phase 3 study, expression of Factor VIII – the protein Roctavian is designed to help restore – was "a little bit lower than what we observed in the Phase I/II study."  (Ex. B at 8; *see also* Ex. D at 1.)  In November 2019, still well before the start of the Class Period, the Company emphasized that "the correlation of Factor VIII levels and the prevention of bleeding" was "important" to the FDA.  (Ex. E at 36.)  Analysts immediately understood that these results "add[] risk" and that "uncertainty remains" as to Roctavian's durability.  (Ex. A at 1, 3; *see also* Ex. C at 1; ¶¶53-54.)  Further, after BioMarin disclosed the data discrepancies and before it submitted the BLA, the FDA informed Defendants that the data satisfied "all the criteria" required to move forward.  (Ex. W at 7; Ex. Y at 6.)  During the mid-cycle meeting, the FDA reiterated that there were "no problems in

Cooley LLP
Attorneys at Law
Palo Alto

5

Reply ISO Defendants' MTD
Plaintiff's Amended Complaint
3:20-cv-06719-WHO

the application, [and] no clinical issues." (Ex. X at 9.)  The AC simply does not plead any risk to the BLA greater than what investors already understood.

Plaintiff fails to meaningfully address the decisions in *In re Dynavax Securities Litigation*, 2018 WL 2554472 (N.D. Cal. June 4, 2018) and *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016), that demonstrate the absence of a material omission here. (Opp. at 10 n.4.)  Instead, Plaintiff relies on authority all of which involved risks to the potential approval of various drugs by the FDA that, unlike here, *were completely unknown to the market*.  (Opp. at 9-10, 13-14.)  For example, in *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698 (9th Cir. 2016), the Ninth Circuit found that the plaintiff adequately pled fraud where the company said it was "confident" it would receive FDA approval because *all* animal studies and human trials had "favorable results."  But the defendants knew that rat studies showed the drug to be carcinogenic and that the FDA had expressed serious concerns about the rat study and the safety profile of the drug, and the company never disclosed either fact.  *Id.* at 702, 708.  While the company "was free to express confidence in FDA approval," it could not "claim[] that all of the data was running in [its] favor" when it knew this not to be true.  *Id.* at 708.  Similarly, in *Freedman v. St. Jude Medical, Inc.*, 4 F. Supp. 3d 1101, 1111 (D. Minn. 2014), the company concealed that it received multiple Form 483s from the FDA identifying issues with its manufacturing processes, *while representing* that it was in compliance with regulations and touting the quality and reliability of its products.

### 3. Plaintiff Has Failed to Adequately Plead That Any of the Challenged Statements Were False or Misleading When Made.  (All Statements.)

#### a. The PDUFA Date Statements (Nos. 5, 7-9, 10, 12)

Plaintiff does not dispute that Defendants' statements that the PDUFA date was "on track" were *true*.  BioMarin announced a PDUFA date of August 21, 2020, and the AC concedes that the FDA made a decision on the BLA by that deadline.  (¶¶61, 113.)  Plaintiff claims that Defendants actually "meant, and investors understood, that BioMarin was on track to *achieve approval* by the PDUFA date."  (Opp. at 12 n.8.)  But the challenged statements say no such thing.  (*E.g.*, Nos. 5 ("Our PDUFA action date of August 21 is holding firm."); 7 ("[The] agency has signaled strongly that they intend to maintain their PDUFA action date."); 9 ("[W]e're on track for our PDUFA [date

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

of] 8/21/20.").)  In *Tesla*, the plaintiffs similarly attempted to read words into the statements they challenged to try and manufacture a falsehood after the fact.  They claimed that the company's statement that it had "started the installation of . . . manufacturing equipment" meant that the company had "begun installation of *automated* equipment."  985 F.3d at 1193.  The Ninth Circuit held that this claim failed because, where a plaintiff alleges words "have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support" that interpretation, and the plaintiffs did not.  *Id.*  Plaintiff here fails to carry this same burden.  The AC lacks any allegation that "investors understood" statements about being "on track" for the PDUFA date to mean that Roctavian would be approved by that date.  (Opp. at 12 n.8.)

### b.  The Inspection Statements (Nos. 4, 6, 7)

Plaintiff argues that Defendants' statements that the facility inspection was expected to take place in the second quarter of 2020 were misleading because the FDA purportedly warned BioMarin the inspection would be delayed, "had no dialogue whatsoever" with BioMarin after the mid-cycle meeting, and "raised concerns" about efficacy and canceled the facility inspection during the late-cycle meeting.  (Opp. at 12.)  These omitted facts, Plaintiff claims, "seriously jeopardized" Roctavian's approval by the PDUFA date.  (*Id.*)  But the Inspection Statements said nothing about the BLA's prospects.  Rather, they addressed only BioMarin's belief as to *timing*.  *Colyer v. Acelrx Pharms., Inc.*, 2015 WL 7566809, at *5-6 (N.D. Cal. Nov. 25, 2015) (descriptions of anticipated FDA review timeline do not "suggest or imply" likelihood of approval).

Further, the AC fails to adequately plead the alleged adverse developments in the first place.  First, Plaintiff's claim that the FDA informed BioMarin in February or March of 2020 "that the inspection would likely be delayed beyond the second quarter of 2020" (Opp. at 17) relies entirely on triple hearsay from Former Employee 1 ("FE1").  (¶¶80-81; Mot. at 13-14.)  The Ninth Circuit has made clear that statements based on such attenuated connections are not entitled to the presumption of truth in the context of a motion to dismiss.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995, 997 (9th Cir. 2009).  Arguing otherwise, Plaintiff cites *Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*, 780 F. App'x 480 (9th Cir. 2019).  (Opp. at 17.)  That case, however, simply held that the plaintiff had adequately alleged that the confidential witness

Cooley LLP
Attorneys at Law
Palo Alto

7

**Reply ISO Defendants' MTD
Plaintiff's Amended Complaint
3:20-cv-06719-WHO**

was "in a position to be personally knowledgeable" about one defendant's discussions of relevant reports. 780 F. App'x at 484 n.5. That decision fails to move the needle for Plaintiff here in light of the AC's lack of allegations regarding FE1's position and responsibilities or his involvement with the FDA regulatory process.

Second, Plaintiff does not plead with particularity that between the mid-cycle meeting in "mid-April" and the end of the Class Period there was "no dialogue whatsoever" other than at the late-cycle meeting. (Opp. at 8-12.) This allegation rests on an implausible interpretation of Fuchs' statement about a decrease in communication *about clinical efficacy data*. (Mot. at 18.) Moreover, nowhere does Plaintiff allege how Defendants could have recognized *at the time they made these statements* that the lull in communication would continue until the end of the BLA review.

Third, the Inspection Statements *were made before the inspection was purportedly canceled*. They could not be rendered misleading by a development that had not yet happened. *Vitalone v. Logitech Int'l SA*, 2012 WL 13041992, at *5 (N.D. Cal. July 13, 2012) ("[T]he [complaint] must present facts showing statements were false *when made*, not that defendants learned of the falsity *months later*.")

Fourth, Plaintiff's argument assumes that a physical inspection was required for BLA approval. (Opp. at 15-17.) But Plaintiff cites no statute, rule, or regulation, relying only on a statement by Fuchs in June 2019, before BioMarin even submitted the BLA, that the FDA "want[s] to see . . . that you are ready for them to come to an inspection." (*Id.* at 15.) Fuchs' comment says nothing about what the FDA *required* at the time, much less a year later in the middle of a global pandemic. Plaintiff does not dispute that (1) the FDA changed its procedures due to COVID-19 safety concerns, (2) the new procedures allowed it to approve facilities based on information shared by "trusted foreign regulatory partners" and company "records" (Ex. U at 5), (3) the European Medicines Agency ("EMA") had approved the Company's facility (Ex. I at 5), and (4) BioMarin shared documents related to the facility with the FDA consistent with this guidance (Ex. N at 5).

Plaintiff largely ignores these facts and instead argues that Defendants knew the canceled inspection was material because they "admitted that they were 'going crazy' and 'scrambling'" as a result. (Opp. at 14.) Plaintiff relies on a contorted reading of Fuchs' words on September 16,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

2020 to reach this conclusion.  Fuchs actually said:

> And at the same time, it's probably worth appreciating that [the FDA] had communicated that they were going to inspect us, and then they changed their plans sensibly related to COVID.  And so we then went into a big scramble where our focus was during this time – because we've been told there are no clinical issues, our focus in this time was, well, they must have problems with inspection.
>
> So we created – we were going crazy.  And we – this whole Opus Magnus about how they could virtually inspect us or use different inspectors, bunch of stuff, by the way, that's in their current guidance documents about inspections during the time of COVID.  And we could never get any traction on that discussion.  So we really thought it was all COVID-related delay of inspection.

(Ex. Y at 8).  Instead of supporting that Defendants believed the canceled inspection signaled doom for the BLA, Fuchs' statement demonstrates that the Company believed it was related to COVID. The Company was "scrambling" to pivot from planning for an in-person inspection to figuring out how to accomplish the inspection "virtually."

### c.        The Approval and Launch Statements (Nos. 1, 3, 10, 12)

Plaintiff fails to plead with the requisite particularity that statements anticipating approval and launch of Roctavian in the second half of 2020 were misleading.  (Opp. at 12.)  Plaintiff relies in part on FE1's unreliable allegations.  *See supra*, at 7-8.  Plaintiff also cites BioMarin's purported lack of dialogue with the FDA after the mid-cycle meeting.  (Opp. at 12.)  But Plaintiff does not adequately allege how omitting this fact (even if adequately pled, which it is not) would mislead investors, given that the disclosed Phase 3 data, not a lack of dialogue, gave rise to the CRL.  *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) (complaint failed to plead "why Plaintiff's implausible interpretation of the statement would be false or misleading").

Plaintiff also alleges that the Approval and Launch Statements were misleading because at the late-cycle meeting in "mid-June" (¶15), the FDA allegedly raised questions about the study data and informed Defendants that it was canceling the inspection (Opp. at 16).  Yet, two of these four statements (Nos. 1 and 3) were made *prior to* the late-cycle meeting and, thus, could not be rendered misleading by anything that took place at that meeting.  The other two (Nos. 10 and 12) are forward-looking and protected by the PSLRA safe harbor.  *See supra*, at 2-4.  Further, the AC does not adequately plead that the inspection was canceled at the late-cycle meeting.  (Mot. at 17.)  And the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

FDA's notation of the data discrepancy during the late-cycle meeting did not create a material risk to the BLA of which investors were unaware. Indeed, Defendants had already disclosed the data discrepancy to the public.[2] (*E.g.*, Ex. B at 8; Ex. D at 1.)

### d.    The FDA Relationship Statements (Nos. 2-5, 7, 8)

Plaintiff does not dispute that the FDA Relationship Statements are inactionable corporate optimism, and these statements can be dismissed on that ground alone. (Mot. at 19-20); *Roy*, 2015 WL 5698743, at \*3. Rather, Plaintiff argues that the statements are not protected as opinions because they are not preceded with language such as "I believe" or "I think." (Opp. at 20.) But many *do*, in fact, contain such qualifiers. (*See, e.g.*, Nos. 2, 9, 11, 12, 13.) Further, no such requirement exists, and Plaintiff cites none. There are no magic words that must be uttered in order for a statement to be considered an opinion. Because each of these challenged statements expresses a "belief," "view," or "sentiment" that "does not imply definiteness or certainty," they are opinions.[3] *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015); *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613-14 (9th Cir. 2017) ("statements regarding goodwill valuations" without qualifying language are opinions); *Markette v. XOMA Corp.*, 2017 WL 4310759, at \*2 (N.D. Cal. Sept. 28, 2017) (statement "[o]ur learnings are encouraging" was an opinion). Because Plaintiff fails to allege with any level of particularity that either Fuchs or Bienaimé did not hold honestly these beliefs or the existence of any "facts going to the basis for the . . . opinion[s] whose omission makes [them] misleading," the statements are inactionable. *Align*, 856 F.3d at 616.

Plaintiff also argues that the FDA Relationship Statements were misleading because Fuchs "admitted" that BioMarin "had no dialogue whatsoever" with the FDA after the mid-cycle meeting

---

[2] No. 11 (on Roctavian's clinical efficacy) and No. 13 (on Roctavian's competitors) also cannot be misleading based on purported concerns raised during the late-cycle meeting because they *do not relate to the prospects of approval or Defendants' optimism about the FDA relationship*. See In re Twitter, Inc. Sec. Litig., 506 F. Supp. 3d 867, 885 (N.D. Cal. 2020) (falsity not pled because "plaintiffs fail to link Twitter's announcement about users' privacy setting concerns with the alleged omission regarding potential effect on advertising revenue so as to make the lack of additional disclosure misleading").

[3] Nos. 11 and 13 are similarly opinions. While Plaintiff argues that No. 13 is affirmatively false, the AC does not allege that these competitors were *not* in fact "far behind" or that Fuchs did not honestly hold the belief that the Company was ahead of Spark and Sangamo. (Opp. at 20.) The AC does not even attempt to compare BioMarin's gene therapy efforts to those of its competitors.

Cooley LLP
Attorneys at Law
Palo Alto

10

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

in April.  (Opp. at 8-12.)  But having repeatedly disclosed the discrepancy in durability data that led to the CRL, Defendants had no duty to "loop the public into each detail of every communication with the FDA."  *Dynavax*, 2018 WL 2554472, at \*7.  Moreover, all of the FDA Relationship Statements were made *before* the late-cycle meeting in mid-June at which point the alleged lack of engagement by the FDA became relevant.

Further, Fuchs' "no dialogue" statement could not be an "admission" as nothing he said directly contradicts any challenged statement.  Indeed, BioMarin could still collaborate with the FDA, even while having no dialogue about clinical efficacy in the two-month period between the mid- and late-cycle meetings.  *See Tesla*, 985 F.3d at 1196 (statement that Tesla was making "great progress" not actionable absent allegation that it was in fact "making no progress at all").[4]

### C.     Plaintiff Fails to Plead a Strong Inference of Scienter.

#### 1.     Plaintiff's Allegations Do Not Adequately Plead Scienter.

The AC should be dismissed for a second, independent reason: it fails to adequately allege a strong and compelling inference of scienter.  *Twitter*, 506 F. Supp. 3d at 879 (plaintiffs must plead scienter with particularity "with respect to *each act or omission* alleged to violate [the PSLRA]").  In order to survive, the AC must plead that Defendants made "a highly unreasonable omission" either intentionally or with deliberate recklessness, which constitutes "an *extreme departure from the standards of ordinary care*" that "presents a danger of misleading buyers or sellers that is either *known* to the defendant or is *so obvious that the actor must have been aware of it*."  *Zucco*, 552 F.3d at 991.  The AC simply contains no well-pled allegations, whether considered individually or holistically, that give rise to a strong inference of scienter.

Plaintiff offers three theories in its Opposition which it argues support an inference of scienter; all three fail.  **First**, Plaintiff relies on Fuchs' statement on September 16, 2020, four weeks

---

[4] In contrast, Plaintiff cites cases involving later revelations that directly contradicted the earlier challenged disclosures.  *See Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1160-61 (N.D. Cal. 2015) (touted high inventories and "later admitted that the channel customers were not fully supplied" because of inventory constraints); *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at \*3, \*5-6 (S.D. Cal. Sept. 19, 2016) (expressed confidence NDA would be submitted to FDA by certain date, and later admitted deadline missed because "mistakes were made" and manufacturing analyses that were required in the NDA were not started "early enough"); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809-10 (C.D. Cal. 2011) (touted FDA's "agreement" on design of clinical trial, but later characterized FDA input as "advice").

Cooley LLP
Attorneys at Law
Palo Alto

11

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

after the end of the Class Period, that the Company had "no dialogue whatsoever" with the FDA, to argue that "Defendants' own admissions make clear that the FDA's silence was highly unusual." (Opp. at 21.)  But Defendants never said that the level of dialogue with the FDA was "highly unusual."  That language is Plaintiff's. (*See, e.g.*, ¶83.)  Fuchs simply responded in the affirmative to an analyst's question whether one would have assumed there would be more meetings with the FDA before the PDUFA date given Roctavian's designation as a breakthrough therapy. (*Id.*, Ex. W at 7-8.)  And he went on to explain why: "[T]he odd thing about it was that the way it was presented it to us during the whole time.  This was all about inspections and COVID. . . . [I]t wasn't apparent that there was any clinical issue that was going to affect benefit risk." (Ex. W at 8.)  Further, the AC never alleges that Fuchs actually believed the interactions with the FDA signaled trouble with the BLA.

The theory also suffers from a chronological flaw.  Plaintiff does not allege when, during the four-month Class Period, any Defendant became concerned about the level of FDA interactions or precisely when during the Class Period Defendants were reckless to not conclude that approval was unlikely.  This lack of particularized allegations is fatal for Plaintiff in and of itself.  Indeed, because the mid-cycle review meeting allegedly took place in mid-April 2020 (¶148), the first two challenged statements made in March (Nos. 1 and 2) could not be rendered misleading based on this theory.  Statements 3 through 8 were made in the two-month period between the mid-cycle meeting and the late-cycle meeting.  Plaintiff fails to allege any well-pled facts regarding the number of interactions with the FDA during that timeframe or that any Defendant believed the relative lack of regulatory interaction during that time suggested additional risk that the FDA would not approve the BLA.  Statements 9, 10, and 11 were all made on June 24, 2020, within days of the "mid-June" late-cycle meeting.  It is unclear from the AC why any Defendant would be concerned about the level of FDA interactions on June 24 given that BioMarin had just completed that critical milestone.  The final two statements (Nos. 12 and 13) were made in August, but neither addresses interactions with the FDA or the quality of the relationship.  Finally, it is worth noting that the scienter inquiry is not whether Defendants believed that the FDA was less engaged than they otherwise would have anticipated, but rather whether Plaintiff has adequately alleged that

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

Defendants knew or were reckless in not knowing that the failure to disclose that fact would mislead investors. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (it was not enough for plaintiff to allege defendants had access to trial results or knew there was a country effect in those results, plaintiff had to allege defendants believed "they made false or misleading statements relating to a country effect or . . . were misrepresenting the statistical significance of their results"). The AC contains no allegations to that effect.

**Second**, the Opposition tries to impute intent to defraud to Bienaimé and Fuchs because Roctavian was "one of BioMarin's most significant products." (Opp. at 22.) "The core operations theory allows a court, in limited circumstances, to infer scienter of undisclosed information because 'it would be absurd to suggest that top management was unaware of [it].'" *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1068 (N.D. Cal. 2012). Unlike in the cases Plaintiff cites, BioMarin was a decades-old business with multiple products and annual revenue of over $1.7 billion. (Mot. at 22-23.) Further, the core operations doctrine is designed to impute knowledge typically held by more junior employees to senior executives when they involve the very most core operations of the company. It does not establish what Plaintiff must establish here: that the Defendants, aware of such information, knew or were reckless in not knowing that the failure to disclose in greater detail the Company's interactions with the FDA would mislead investors. *Rigel*, 697 F.3d at 883. The AC contains no allegations to that effect.

**Third**, Plaintiff argues that stock sales contribute to an inference of scienter. (Opp. at 23-24.) Not so. Plaintiff agrees that motive to commit fraud is not sufficient to support a strong inference of scienter. *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001). Plaintiff also concedes that the stock sales were "preplanned" pursuant to 10b5-1 trading plans. (Opp. at 24.) Stock sales pursuant to such plans "can rebut" an inference of scienter. *Jasin v. Vivus, Inc.*, 2015 WL 3809357, at *11 (N.D. Cal. June 18, 2015); (Mot. at 23-24). Nevertheless, Plaintiff argues that Defendants "delayed the release of negative news about [Roctavian] in order to circumvent their trading plans and offload their stock at a favorable price." (Opp. at 24). But the AC does not contain a single particularized allegation that any Defendant considered their 10b5-1 trading plans when deciding about company disclosures. "[S]peculative

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

**REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO**

allegations" about defendants' stock sales without support of particularized facts do not give rise to the "strong inference of scienter as required by the PSLRA." *Gigamon*, 325 F. Supp. 3d at 1057. Though it tries to portray Defendants' stock sales as out of line with prior practices, Plaintiff ignores that Fuchs entered into a 10b5-1 trading plan in March 2019, consistent with his timing and practice in prior years. (Litton Decl. ¶44; Exs. Z-BB.) Moreover, "an allegation that only one Defendant displayed unusual stock trades during the Class Period is insufficient to support a strong inference of scienter absent some corroborating evidence." *Juniper*, 880 F. Supp. 2d at 1069.[5]

### 2.    The Far More Compelling Inference Is No Scienter.

The far more compelling inference one can draw from the allegations in the AC and the documents incorporated by reference therein is that Defendants were genuinely optimistic about the likelihood the FDA would approve the BLA and were surprised, like some investors, by the CRL. (Opp. at 24-25); *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) ("Honest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness."). In the years before submitting the BLA, BioMarin built a successful relationship with the FDA, which approved six of its drugs for commercial use. (¶149; Ex. T at 2.) The Company collaborated with the FDA on the design of its manufacturing facility, which the EMA certified "for commercial production and distribution" of Roctavian pending the therapy's approval in Europe. (¶89; Ex. E at 32; Ex. I at 5; Ex. K at 4-5.) And, in May 2019, BioMarin disclosed the interim Phase 3 data and highlighted discrepancies in Factor VIII activity levels from the Phase 1/2 study. (Ex. B at 4-8; Ex. D at 1.) BioMarin then met with the FDA to review the Phase 3 data, and the agency identified "no clinical issues," confirming that the data satisfied "all the end points" agreed on in advance. (Ex. Y at 6; Ex. W at 7.) On this basis, BioMarin submitted its BLA, and shortly later the FDA granted priority review, designating Roctavian as a breakthrough therapy. (¶¶6-7; Ex. F at 1.) And, throughout the review, Defendants alerted investors to risks associated with the BLA. (*E.g.*, Ex. G at 23-24; Ex. J at 39-40.) At the mid-cycle meeting in April 2020, FDA officials "didn't raise any issues" that would impede approval (Ex. W at 7), and at the late-cycle meeting

---

[5] Plaintiff also points to the May 2020 private offering as purported motive (Opp. at 24), but fails to plead how it shows anything other than "desire to raise capital," a "generic motive held by all companies." *In re Metricom Sec. Litig.*, 2004 WL 966291, at *35 (N.D. Cal. Apr. 29, 2004).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

two months later, the FDA noted the data discrepancies but did not further discuss the subject (*id.*; Ex. V at 8). The Company continued throughout this period to prepare for the U.S. launch of Roctavian and began producing it for commercial use. (Ex. K at 4; Ex. I at 5, 7; Ex. S at 8.) Despite this positive momentum, an unexpected complication arose: within two weeks of the FDA granting the Roctavian BLA priority review status, the World Health Organization declared the existence of the COVID-19 pandemic, and the world as we knew it began to look very different. (Mot. at 6.) Neither the FDA nor BioMarin was immune, and they began to work together to meet the new challenges presented by the pandemic. (Ex. N at 5; Ex. U.) While the inability of the FDA to inspect manufacturing facilities was one such challenge, there simply is no indication that either entity believed it was a challenge that could not be addressed within the confines of the schedule required by PDUFA. Ultimately, the FDA issued the CRL citing the Factor VIII discrepancies as its reason for not approving the BLA, taking Defendants completely by surprise. (Ex. T at 1; Ex. Y at 6.) The next month, at four industry conferences, Fuchs spoke transparently and in detail to investors about the BLA process. (Exs. V-Y.)

It is simply not reasonable to conclude from these facts that the Defendants were engaged in some massive fraud to hide anything about either the timing or approvability of Roctavian. Plaintiff's theory "does not resonate in common experience." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). Rather, the far more compelling inference is that Defendants acted honestly and transparently throughout this process, were comfortable with their relationship with the FDA, expected the FDA to adhere to the PDUFA date and make its decision regarding the BLA by that date, and were optimistic (though not certain) of approval. *See Sanofi I*, 87 F. Supp. 3d at 544-45 (finding more plausible that defendants did not act with scienter because FDA feedback "did not contradict Sanofi's public statements" or concern "the FDA's eventual decision); *Nguyen*, 962 F.3d at 415 ("the notion that a company would promise FDA approval that it knew would not materialize does not . . . create a strong inference of intent to deceive or deliberate recklessness").

## III.   CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, the Complaint should be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO

Dated:  July 22, 2021                              COOLEY LLP


By: /s/ Jessica Valenzuela Santamaria
      Jessica Valenzuela Santamaria

Attorneys for Defendants
BioMarin Pharmaceutical Inc., Jean-Jacques
Bienaimé, and Henry J. Fuchs

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16

REPLY ISO DEFENDANTS' MTD
PLAINTIFF'S AMENDED COMPLAINT
3:20-CV-06719-WHO