COOLEY LLP
JOHN C. DWYER (136533)
(dwyerjc@cooley.com)
JESSICA VALENZUELA SANTAMARIA (220934)
(jvs@cooley.com)
AMANDA A. MAIN (260814)
(amain@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

Attorneys for Defendants
BioMarin Pharmaceutical Inc., Jean-Jacques Bienaimé
and Henry J. Fuchs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re BioMarin Pharmaceutical Inc. Securities Litigation* | Case No. 3:20-cv-06719-WHO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE TO SEEK RECONSIDERATION OF MOTION TO DISMISS ORDER, OR IN THE ALTERNATIVE TO CERTIFY QUESTION FOR INTERLOCUTORY APPEAL**<br><br>JUDGE: HON. WILLIAM H. ORRICK |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................II

NOTICE OF MOTION AND MOTION ........................................................................... V

STATEMENT ISSUES TO BE DECIDED ........................................................................ V

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.      INTRODUCTION ................................................................................. 1

II.     ARGUMENT ......................................................................................... 2

        A.      Leave for Reconsideration of the Order Is Proper. ...................................... 3

                1.      The Court Committed Manifest Error in Applying the Wrong Law in Deciding Whether Defendants' Forward-Looking Statements Were Accompanied by "Meaningful Cautionary Statements." .................. 4

                        a.      The Bespeaks Caution Doctrine Preceded the PSLRA Safe Harbor and Addressed the Court's Materiality Inquiry. ................. 4

                        b.      Congress Enacted the PSLRA Safe Harbor to Affirmatively Encourage Corporations to Publicly Announce Projections. ........... 5

                        c.      The Court Departed from Controlling Law in Evaluating Defendants' Cautionary Language. ................................................... 8

                2.      Defendants Exercised Reasonable Diligence in Moving for Leave to Seek Reconsideration. ................................................................. 9

        B.      Certification to the Ninth Circuit of the Legal Question of the Proper Standard to Apply in Assessing "Meaningful Cautionary Language" Is Proper. ...................................................................................................... 9

                1.      The Appeal Concerns a "Controlling Question of Law." ......................... 10

                2.      There Is "Substantial Ground for Difference of Opinion" as to Defendants' Legal Question. ................................................................. 11

                3.      Interlocutory Appeal "May Materially Advance the Ultimate Termination of This Litigation." ............................................................. 12

III.    CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. ConAgra Foods, Inc.*,
2019 WL 1466889 (N.D. Cal. Feb. 6, 2019)........................................................................... 13

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996)............................................................................................... 3

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. Jan. 19, 2011) ..................................................................... 11

*In re Cement Antitrust Litig. (MDL No. 296)*,
673 F.2d 1020 (9th Cir. 1981)............................................................................................... 10

*Connex R.R. LLC v. AXA Corp. Solutions Assurance*,
2017 WL 3446633 (C.D. Cal. Jan. 13, 2017) ........................................................................ 9

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ............................................................................. 7, 11

*Cortez v. Chipotle Mexican Grill, Inc.*,
2019 WL 8105335 (C.D. Cal. Sept. 20, 2019), *rev'd in part on other grounds*,
2021 WL 3214765 (9th Cir. July 29, 2021) .......................................................................... 10

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)............................................................................................ 9, 11

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)........................................................................................... 7, 8

*In re Donald J. Trump Casino Sec. Litig.—Taj Mahal Litig.*,
7 F.3d 357 (3d Cir. 1993).................................................................................................. 6, 8

*In re Egalet Corp. Sec. Litig.*,
340 F. Supp. 3d 479 (E.D. Penn. 2018) ...................................................................... 3, 6, 9, 11

*Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*,
353 F.3d 1125 (9th Cir. 2004)............................................................................................... 6

*Finder v. Leprino Foods Co.*,
2016 WL 4095833 (E.D. Cal. Aug. 1, 2016) .................................................................. 10, 11

*F.T.C. v. Swish Mktg.*,
2010 WL 1526483 (N.D. Cal. Apr. 14, 2010) ..................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................................................................. 11

*United States ex rel. Integra Med Analytics LLC v. Providence Health and Servs.*,
2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) .................................................................. 12, 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .............................................................................................. 4

*Melot v. JAKKS Pacific, Inc.*,
2014 12589334 (C.D. Cal. June 6, 2014) ............................................................................. 8

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
2010 WL 11523599 (C.D. Cal. May 17, 2010) ................................................................... 13

*Miller v. Peter Thomas Roth, LLC*,
2020 WL 1433184 (N.D. Cal. Mar. 24, 2020) ................................................................. 4, 9

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
2015 WL 1548833 (N.D. Cal. Apr. 7, 2015) ....................................................................... 9

*National Junior Baseball League v. Pharmanet Development Group Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................... 8, 9, 11

*In re Nuvelo, Inc., Sec. Litig.*,
2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) ................................................................. 7, 11

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ............................................................................................. 9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ............................................................................................. 7

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ............................................................................... 1, 3, 4, 8

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ......................................................................................... 2, 7

*In re QuantumScape Sec. Class Action Litig.*,
2022 WL 137729 (N.D. Cal. Jan. 14, 2022) ..................................................................... 11

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ...................................................................................... 12, 13

*Romani v. Shearson Lehman Hutton*,
929 F.3d 875 (1st Cir. 1991) ............................................................................................... 5

*Rubinstein v. Collins*,
20 F.3d 160 (5th Cir. 1994) ................................................................................................ 5

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-iii-

*Silbersher v. Allergan Inc.*,
2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ............................................................................. 11

*Smith v. Nerium Int'l, LLC*,
2019 WL 7205889 (C.D. Cal. Dec. 9, 2019) ........................................................................... 10

*Va. Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) ........................................................................................................ *passim*

*Woods v. August*,
2018 WL 5841311 (N.D. Cal. Nov. 8, 2018)............................................................................. 9

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994).............................................................................................. 4, 5

*Zwick Partners, LP v. Quorum Health Corp.*,
2019 WL 1450546 (M.D. Tenn. Mar. 29, 2019)..................................................................... 11

**Statutes**

28 U.S.C. § 1292 .................................................................................................................. *passim*

15 U.S.C. § 78u-5 ................................................................................................................. *passim*

Securities Act of 1933 .................................................................................................................. 5

Securities Exchange Act of 1934 ....................................................................................... 1, 2, 5

**Other Authorities**

141 Cong. Rec. H15215 (1995) ................................................................................................... 7

H.R. Rep. No. 104-369 (1995) (Conf. Rep.)................................................................. 1, 5, 6, 7

S. Rep. No. 104-98 (1995) ........................................................................................................... 6

**Court Rules**

Federal Rule of Appellate Procedure 5(a)...................................................................... v, 9

Federal Rule of Civil Procedure 54(b) ........................................................................... v, 3

Civil Local Rule 7-9.............................................................................................. v, 2, 3, 4, 9

Cooley LLP
Attorneys at Law
Palo Alto

-iv-

Mot. for Leave to Seek Reconsideration or to
Certify Question for Interlocutory Appeal
3:20-cv-06719-WHO

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, on a date to be determined by this Court, Defendants BioMarin Pharmaceutical Inc. ("BioMarin"), Jean-Jacques Bienaimé, and Henry J. Fuchs (collectively, "Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9, for leave to file a motion for partial reconsideration of this Court's Order denying Defendants' Motion to Dismiss (the "Order") (ECF No. 77).  In the alternative, Defendants will and hereby do move this Court, pursuant to Federal Rule of Appellate Procedure 5(a) and 28 U.S.C. § 1292 and this Court's inherent authority, for leave to move the Ninth Circuit Court of Appeals to certify a question of law for interlocutory appeal of the Order.  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing or otherwise.

## STATEMENT OF ISSUES TO BE DECIDED

A.     Whether, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9(b), Defendants should be given leave to file a motion for reconsideration of this Court's Order because the Court "manifest[ly] fail[ed] . . . to consider . . . dispositive legal arguments," Civ. L.R. 7-9, in its analysis of whether Defendants' forward-looking statements were immunized by the safe harbor established under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5.[1]

B.     Whether, in the alternative, pursuant to Federal Rule of Appellate Procedure 5(a) and 28 U.S.C. § 1292(b), the Court should amend its Order to grant Defendants leave to file an interlocutory appeal in the Ninth Circuit to answer the following controlling question of law:

> Whether the Court applied the incorrect standard under the Private Securities Litigation Reform Act's safe harbor immunizing forward-looking statements accompanied by "meaningful cautionary statements," 15 U.S.C. § 78u-5, by requiring that the cautionary statements "discredit the [allegedly misleading statement] so obviously that the risk of real deception drops to nil."

---

[1] Should the Court grant Defendants leave to move for reconsideration of the Order, Defendants respectfully request permission to file a short brief of no more than ten pages that would aid the Court by clearly identifying each forward-looking statement at issue and its accompanying relevant cautionary language.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-v-

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

While Defendants do not seek leave to file a motion for reconsideration lightly, they respectfully believe such relief is appropriate here, as the Court applied the incorrect legal standard in determining whether certain statements alleged to be false and misleading are protected by the statutory safe harbor under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Statement of Managers accompanying the congressional conference report on the PSLRA bill explained that Congress's broad intent was to "encourage issuers to disseminate relevant information to the market without fear of open-ended liability." H.R. Rep. 104-369, at 32 (1995) (Conf. Rep.). Congress was particularly animated by concern that the legal framework for evaluating the materiality of allegedly misleading statements under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") was insufficient to provide needed protection against frivolous lawsuits that were "muzzling" corporate managers from making projections, thereby damaging shareholders. *Id.* at 42-43. To remedy this growing problem, Congress jettisoned the existing legal standards, replacing them with a new framework that included a safe harbor creating an absolute immunity for forward-looking statements that are accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). With this safe harbor, Congress sought to affirmatively encourage corporate management to share their views of the corporation's future prospects – including its anticipated financial and business performance, its goals and objectives, and its expectations about future developments. To promote such transparency, Congress provided that such statements could not be the basis for securities fraud claims, as long as investors were also informed about risks that could cause a company's future projections to turn out differently.

This Court's Order held that none of Defendants' forward-looking statements were shielded by the safe harbor because their accompanying cautionary language did not so "'precisely' and 'directly address'" the statements as to "discredit [them] so obviously that the risk of real deception drops to nil." (Order at 12 (quoting *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) and *Va.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

*Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991)).)  In reaching this conclusion, however, the Court applied the wrong legal standard.  Rather than requiring meaningful cautionary statements to reduce "the risk of real deception . . . to nil," the Ninth Circuit requires only that they "identify 'important factors that could cause actual results to differ materially from those in the forward-looking statement.'"  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017).  Had the Court applied the correct legal standard, Defendants submit that five of the thirteen challenged statements fall under the safe harbor's protection and should have been dismissed.

The correct application of the PSLRA's safe harbor can only be effectively resolved at the pleading stage.  Where the Court has settled on an inaccurate legal standard in its Order, it is unlikely to apply the correct standard at summary judgment.  Should the matter proceed to trial and the jury receive incorrect instructions on the safe harbor, any verdict in Plaintiffs' favor will inevitably be appealed, leading to further delay of a final resolution.  Failing to address this important issue now would waste years of the Court's and parties' resources spent litigating the matter.  To avoid this outcome, Defendants respectfully request leave to move the Court to partially reconsider its Order on the ground that the Court committed "manifest failure . . . to consider . . . dispositive legal arguments." Civ. L.R. 7-9.  In the alternative, Defendants ask that the Court grant leave to certify to the Ninth Circuit the question of the proper standard to apply in determining whether a forward-looking statement is accompanied by "meaningful cautionary statements" under the PSLRA's safe harbor.  This is a "controlling question of law" about which district courts in multiple circuits are split, and the resolution of this question has the potential to materially advance the parties and the Court towards the termination of this litigation.  28 U.S.C. § 1292(b).

## II.   ARGUMENT

As the Court acknowledges in its Order, Plaintiff brings its claims in the Amended Complaint (the "AC") under Sections 10(b) and 20(a) of the 1934 Act, which are governed by the PSLRA.  (Order at 7-8.)  The PSLRA established a "safe harbor" that exempts forward-looking statements from liability where they are either (1) "identified as forward-looking statement[s]" and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," or (2) made without

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-2-

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

"actual knowledge . . . that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1); (*see* Order at 10). In analyzing whether Defendants' forward-looking statements are protected by the PSLRA safe harbor, however, the Court applies law articulated in two cases decided *before the PSLRA became effective* and, thus, before the applicable statutory standard even existed. (Order at 10-12 & n.3.) The first, *Provenz*, 102 F.3d at 1493, held that forward-looking statements in securities fraud cases are inactionable under the common-law "bespeaks caution" doctrine if they were accompanied by cautionary statements that "precise[ly] and directly address the defendants' future projections." In the second, *Virginia Bankshares*, 501 U.S. at 1415, the Supreme Court, reversing a trial judgment in favor of the plaintiff in a case brought under Section 14(a) of the 1934 Act, held that an allegedly false statement is immaterial (and thus not actionable) if the statement was made alongside "true statements" that "discredit [it] so obviously that the risk of real deception drops to nil." In relying on these cases, Defendants respectfully submit that this Court failed to apply the correct legal standard under the PSLRA. (Mot. at 9-11; Reply at 3-4.) The PSLRA's safe harbor standard is materially less stringent than that applied under the common-law bespeaks caution doctrine. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 504 n.15 (E.D. Penn. 2018) ("Noticeably absent from the Safe Harbor Provision is the stricter language of the bespeaks caution doctrine, which requires that cautionary language render the alleged omissions or misrepresentations immaterial as a matter of law."). The Court's reliance on an incorrect legal standard constitutes a "manifest failure . . . to consider . . . dispositive legal arguments" that renders leave to move for reconsideration appropriate. Civ. L.R. 7-9(b)(3). It also raises a "controlling question of law" about which there is "substantial ground for difference of opinion," making an interlocutory appeal proper at this stage. 28 U.S.C. § 1292(b).

## A.   Leave for Reconsideration of the Order Is Proper.

The Court possesses inherent authority to reconsider its interlocutory orders at any point before it enters a final judgment. Fed. R. Civ. P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996). In the Northern District of California, leave to seek reconsideration of an interlocutory order is appropriate where there has been a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-3-

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

interlocutory order." Civ. L.R. 7-9(b)(3). The movant may petition the court for leave to file a motion for reconsideration anytime "before the entry of judgment," so long as the movant "show[s] reasonable diligence in bringing the motion." *Id.* 7-9(a), (b). Defendants satisfy these factors here.

### 1. The Court Committed Manifest Error in Applying the Wrong Law in Deciding Whether Defendants' Forward-Looking Statements Were Accompanied by "Meaningful Cautionary Statements."

The Court should grant Defendants leave to move for reconsideration of the Order's analysis of whether Defendants' forward-looking statements are immunized from liability by the PSLRA safe harbor, on the ground that the Court's application of the incorrect standard constituted "manifest failure . . . to consider . . . dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L-R 7-9(b)(3); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (reconsideration should be granted where the court has "committed clear error"). In their briefs in support of their Motion to Dismiss, Defendants argued that certain allegedly false statements were protected by the safe harbor based on the statutory standard set forth in the PSLRA and Ninth Circuit case law. (Mot. at 9-11; Reply at 3-4.) The Court did not apply this controlling law, instead citing the holdings in *Provenz* and *Virginia Bankshares* that pre-dated the PSLRA and applied a different common-law doctrine. This is precisely the type of clear error for which a reconsideration motion is proper under Civil Local Rule 7-9. *See Miller v. Peter Thomas Roth, LLC*, 2020 WL 1433184, at *1 (N.D. Cal. Mar. 24, 2020) ("Our local rules explain that a clear error involves 'a manifest failure by the Court to consider material facts or dispositive legal arguments.'").

### a. The Bespeaks Caution Doctrine Preceded the PSLRA Safe Harbor and Addressed the Court's Materiality Inquiry.

Before Congress passed the PSLRA, the Ninth Circuit adopted the common law bespeaks caution doctrine to guide it in the analysis of securities fraud claims by "provid[ing] a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994). The Ninth Circuit explained that courts developed the doctrine to counterbalance the increasing

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-4-

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

frequency of fraud actions involving defendants' predictive statements, by "address[ing] situations in which optimistic projections are coupled with cautionary language . . . affecting the reasonableness of reliance on and the materiality of those projections." *Id.* at 1414 (quoting *Rubinstein v. Collins*, 20 F.3d 160, 167 (5th Cir. 1994)) ("[T]he 'bespeaks caution' doctrine reflects the unremarkable proposition that statements must be analyzed in context."). The doctrine, which applies to fraud claims brought under the Securities Act of 1933 and the 1934 Act, was intended to "to minimize the chance that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement." *Id.* at 1415 (quoting *Romani v. Shearson Lehman Hutton*, 929 F.3d 875, 878 (1st Cir. 1991)).

The Ninth Circuit cautioned that an "overbroad application" of the bespeaks caution doctrine might encourage corporate management "to conceal deliberate misrepresentations beneath the mantle of broad cautionary language." *Id.* With this in mind, it affirmed a district court's application of the doctrine that comported with the Supreme Court's holding in *Virginia Bankshares*, 501 U.S. at 1097, that certain misleading statements may be "too unimportant to ground liability" if they are accompanied by "true statements [that] discredit [them] so obviously that the risk of real deception drops to nil." *Worlds of Wonder*, 35 F.3d at 1415.

|  | **b.** | **Congress Enacted the PSLRA Safe Harbor to Affirmatively Encourage Corporations to Publicly Announce Projections.** |

Where courts developed the bespeaks caution doctrine in response to perceived abuses of the judicial process by securities plaintiffs, Congress drafted the PSLRA safe harbor to address legislatively the same problem – a flood of frivolous securities claims – as well as to affirmatively "encourage issuers to disseminate relevant information to the market without fear of open-ended liability." H.R. Rep. 104-369, at 32. Accordingly, the "safe harbor" immunizes from liability certain types of forward-looking projections subject to claims brought in private actions under the 1934 Act. 15 U.S.C. § 78u-5(c)(1); H.R. Rep. 104-369, at 45 ("The Conference Committee intends the statutory safe harbor protection to make more information about a company's future plans available to investors and the public.").

Although this safe harbor is often described as "a statutory version of [the bespeaks caution] doctrine," *see, e.g.*, *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004), it constitutes a more liberal standard that "reaches further than the bespeaks caution doctrine" in protecting forward-looking statements by corporate defendants, *Egalet*, 340 F. Supp. at 504 n.15. The greater scope of this protection accords with Congress's intent to "enhance market efficiency by encouraging companies to disclose forward-looking information" and counteract the trend that "[f]ear that inaccurate projections will trigger the filing of securities class action lawsuit[s] has muzzled corporate management." H.R. Rep. 104-369, at 43.

To this end, Congress drafted the safe harbor to protect forward-looking statements that are identified as such and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1). The Statement of Managers on the bill explained that the words "'meaningful' and 'important factors' [in the safe harbor provision] are intended to provide a standard for the types of cautionary statements upon which a court may, where appropriate, decide a motion to dismiss, without examining the state of mind of the defendant." H.R. Rep. 104-369, at 44. Congress borrowed the phrase "meaningful cautionary statements" from the Third Circuit's articulation of the bespeaks caution doctrine in *In re Donald J. Trump Casino Securities Litigation—Taj Mahal Litigation*, 7 F.3d 357, 371 (3d Cir. 1993). *See* S. Rep. No. 104-98, at 17 (1995). But, as Congress made clear, the cautionary language requirement under the new law was *less restrictive* than the corresponding requirement under the bespeaks caution doctrine. *See* H.R. Rep. No. 104-369, at 43-45. To be "meaningful" under the PSLRA, cautionary statements need only identify risk factors that are "*relevant* to the projection and . . . of a nature that the factor or factors could actually affect whether the forward-looking statement is realized." *Id.* at 43-44. Moreover, "[f]ailure to include the *particular factor* that ultimately causes the forward-looking statement not to come true *will not mean that the statement is not protected* by the safe harbor."[2]

---

[2] Recognizing that the Statement of Managers clearly indicated that the PSLRA's "meaningful cautionary statements" requirement sets a less restrictive standard than the bespeaks caution doctrine, President Clinton warned upon vetoing the PSLRA—a veto Congress subsequently

Cooley LLP
Attorneys at Law
Palo Alto

-6-

Mot. for Leave to Seek Reconsideration or to
Certify Question for Interlocutory Appeal
3:20-cv-06719-WHO

*Id.* at 43. That is a very different, and substantially more relaxed, standard than the materiality standard under the bespeaks caution standard that the risk of deception "drops to nil."

Consistent with the differing goals of the bespeaks caution doctrine and the PSLRA safe harbor, Ninth Circuit courts have adopted a more liberal approach to the safe harbor's application. Most important here, courts in the Ninth Circuit examine "meaningful cautionary statements" under the PSLRA according to a more lenient standard, defining them as warning statements that "identify 'important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *Quality Sys.*, 865 F.3d at 1148 (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)). While some district courts within the Ninth Circuit have held that cautionary language is "meaningful" where it is "precise and relate[d] directly to the forward-looking statements at issue," "the law does not require specification of the particular factor that ultimately renders the forward-looking statement incorrect." *In re Nuvelo, Inc., Sec. Litig.*, 2008 WL 5114325, at *16 (N.D. Cal. Dec. 4, 2008). In other words, "the PSLRA does not require a listing of all factors that might make the results different from those forecasted. Instead, the warnings must only mention *important factors of similar significance to those actually realized*." *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 882 (N.D. Cal. 2004).

Accordingly, the Ninth Circuit repeatedly holds that cautionary statements warning of generalized risks are sufficiently "meaningful" to confer immunity. *See, e.g.*, *Quality Sys.*, 865 F.3d at 1148-49 (warnings of risks associated with "volume and timing of systems sales and installations" and "length of sales cycles and the installation process" were sufficiently meaningful to immunize earnings projections); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1056, 1058-60 (9th Cir. 2014) (warning that economic downturn "may have significant impact on the ability of our customers to secure funding to buy our products . . . which may result in decreased revenues" was sufficiently meaningful to immunize earnings projections and statements anticipating purchases of medical systems). For example, in *In re Cutera Securities Litigation*, 610 F.3d 1103, 1111-12, the plaintiffs alleged that the defendants' earnings projections

overrode—that this guidance "waters down the nature of the cautionary language that must be included to make the safe harbor safe." 141 Cong. Rec. H15215 (1995).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

were false or misleading. The defendants had accompanied these projections with general warnings including that the company's "'ability to continue increasing sales performance worldwide' could cause variance in the results" and that its "ability to compete and perform in the industry depended on the ability of its sales force to sell products to new customers and upgraded products to current customers." *Id.* at 1112. The court held that, while the earnings projections were not immaterial, these cautionary statements were sufficiently meaningful to immunize them against liability. *Id.* at 1111-12. Given the generalized nature of the cautionary statements at issue in *Cutera*, it is clear that, while they were adequately "meaningful" for safe harbor protection, the Ninth Circuit would almost assuredly have reached a different conclusion had it applied "the risk of real deception drops to nil" standard of the bespeaks caution doctrine.

            **c.**       **The Court Departed from Controlling Law in Evaluating Defendants' Cautionary Language.**

By relying on the decisions in *Provenz* and *Virginia Bankshares* that predated and *did not apply* the PSLRA safe harbor, the Court departed from the clear intent of Congress in passing the PSLRA, according to the majority of district courts in the Ninth Circuit applying the statutory safe harbor. As the case law and statutory history outlined above make clear, the Order applies a substantially more rigorous standard: that cautionary language must cause "risk of real deception [to] drop[] to nil." (Order at 12.)

Indeed, several courts have acknowledged that *Provenz* and *Virginia Bankshares* do not provide the standard governing the PSLRA safe harbor. For example, in *Melot v. JAKKS Pacific, Inc.*, 2014 12589334, at *7 (C.D. Cal. June 6, 2014), the court suggested that *Provenz* may not apply to the PSLRA safe harbor, as it is "a pre-PSLRA case in which the Ninth Circuit analyzed the sufficiency of cautionary language under the 'bespeaks caution' doctrine." Similarly, the court in *National Junior Baseball League v. Pharmanet Development Group Inc.*, 720 F. Supp. 2d 517, 533 n.14 (D.N.J. 2010), citing *Trump Casino* and *Virginia Bankshares*, held that whereas the bespeaks caution doctrine required that warning statements "negated the materiality of an alleged misrepresentation" such that "the risk of real deception drops to nil," the PSLRA safe harbor "*did not include [this] requirement*." Rather, the PSLRA "[r]elax[ed] the standard of the bespeaks

caution doctrine" in its conception of meaningful cautionary statements. *Id.* at 533-34; *see also Egalet*, 340 F. Supp. 3d at 504 n.15.

For the foregoing reasons, the Court's application of the incorrect standard constitutes manifest failure warranting leave to move for reconsideration. *See Phelps v. Alameida*, 569 F.3d 1120, 1131 (9th Cir. 2009) (a district court has "necessarily abused its discretion" if it denies reconsideration on the basis of "an erroneous view of the law"); *Miller*, 2020 WL 1433184, at *1.

### 2. Defendants Exercised Reasonable Diligence in Moving for Leave to Seek Reconsideration.

Defendants have acted with the "reasonable diligence" required by Local Rule 7-9(a) by bringing this motion twenty-three days after the Court's Order. *See Woods v. August*, 2018 WL 5841311, at *1 (N.D. Cal. Nov. 8, 2018) (J. Orrick) (granting request for leave to move for reconsideration on the basis of "manifest failure" filed less than four weeks after the court's order); *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 1548833, at *5 n.9 (N.D. Cal. Apr. 7, 2015) (Civ. L.R. 7-9(a) "imposes no time limits on filing").

### B. Certification to the Ninth Circuit of the Legal Question of the Proper Standard to Apply in Assessing "Meaningful Cautionary Language" Is Proper.

In the event the Court does not grant Defendants leave to file a motion for reconsideration, Defendants respectfully request that the Court amend its Order to permit them to seek interlocutory review. The Court possesses inherent authority to amend its Order to grant Defendants leave to petition the Ninth Circuit Court of Appeals for permission to appeal the Order pursuant to 28 U.S.C. § 1292(b). Fed. R. App. P. 5(a)(3). Certification for interlocutory review is warranted where (1) the appeal "involves a controlling question of law," (2) there is "substantial ground for difference of opinion" on that question, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 28 U.S.C. § 1292(b)). The movant may petition the court for leave to appeal "within a reasonable time after the order sought to be appealed." *Connex R.R. LLC v. AXA Corp. Solutions Assurance*, 2017 WL 3446633, at *2 (C.D. Cal. Jan. 13, 2017) (motion filed within 57 days after the order was timely). Defendants meet this standard and interlocutory review is appropriate here.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-9-

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

**1.    The Appeal Concerns a "Controlling Question of Law."**

The question Defendants seek to certify for interlocutory appeal to the Ninth Circuit is a "controlling question of law." 28 U.S.C. § 1292(b). First, it is a "question of law" because it is a "pure question of law, not a mixed question of law and fact or an application of law to a particular set of facts." *Smith v. Nerium Int'l, LLC*, 2019 WL 7205889, at *2 (C.D. Cal. Dec. 9, 2019). That is, Defendants do not propose asking the appellate court to review the Court's application of the safe harbor to Plaintiffs' alleged claims. Rather, they seek leave to appeal the Order only as to a legal question "stated at a high enough level of abstraction to lift the question above the details of the evidence or facts of [the] particular case and give it general relevance to other cases in the same area of law." *Cortez v. Chipotle Mexican Grill, Inc.*, 2019 WL 8105335, at *2 (C.D. Cal. Sept. 20, 2019), *rev'd in part on other grounds*, 2021 WL 3214765 (9th Cir. July 29, 2021).

Second, this "question of law" is "controlling" because "resolution of the appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). As is explained in greater detail below with respect to the third prong of 28 U.S.C. § 1292(b), if the Ninth Circuit were to reverse the Order because the Court applied the wrong standard for assessing the "meaningful cautionary statements" requirement, at least five of the thirteen allegedly misleading statements should be immune under the safe harbor.[3] This would significantly streamline this litigation by saving "needless expense and delay" in the discovery process and at trial, which is enough for a finding that the question is controlling. *F.T.C. v. Swish Mktg.*, 2010 WL 1526483, at *1-2 (N.D. Cal. Apr. 14, 2010) (a question may be controlling if it "require[s] that reversal have some immediate effect on the course of litigation and result in some savings of resources"); *Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *3 (E.D. Cal. Aug. 1, 2016) (holding proposed question was controlling because multiple, but not all, claims might be resolved contingent on the Ninth Circuit's determination).

---

[3] Statement Nos. 1-2 (excerpts of the same statement made by Bienaimé at an investor conference), 3, 6, and 12 were identified as forward-looking and accompanied by robust risk factors that warned investors about the inherent uncertainty around the FDA regulatory process, particularly with respect to novel gene therapies that could result in the FDA not approving the BLA. (*See* Appendix A to Defendants' Motion (ECF No. 59-2); Mot. at 10-11; Reply at 3-4; *see also, e.g.,* Ex. G at 24-25, 29; Ex. J at 39-40; Ex. M at 3; Ex. Q at 6; Ex. R at 43-44.) "Ex." refers to exhibits to the Litton Decl. (ECF No. 59-1.) "No." refers to statement numbers in Appendix A.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-10-

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY QUESTION FOR INTERLOCUTORY APPEAL
3:20-CV-06719-WHO

## 2.    There Is "Substantial Ground for Difference of Opinion" as to Defendants' Legal Question.

There is "substantial ground for difference of opinion" as to the legal question at issue.  28 U.S.C. § 1292(b).  This prong is satisfied where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point."  *See Silbersher v. Allergan Inc.*, 2021 WL 292244, at *2 (N.D. Cal. Jan. 28, 2021) (quoting *Telescope*, 611 F.3d at 633).  First, there is substantial dispute among district courts in different circuits about what standard applies in determining whether cautionary language is "meaningful" under the safe harbor.  As outlined above, multiple district courts in the Third and Ninth Circuits similarly hold that cautionary language need not "negate[] the materiality of an alleged misrepresentation," *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 533 n.14, but is instead sufficiently "meaningful" if it mentions "important factors of similar significance to those actually realized," *Copper Mountain*, 311 F. Supp. 2d at 882.  *See also Nuvelo*, 2008 WL 5114325, at *16; *Egalet*, 340 F. Supp. 3d at 504 n.15.  But certain courts in other circuits still apply the higher common-law "bespeaks caution" standard to an analysis under the PSLRA safe harbor.  *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423, 495 (S.D.N.Y. Jan. 19, 2011) (holding that under the safe harbor, cautionary language must reduce "risk of real deception . . . to nil" and "warn investors of exactly the risk that plaintiffs claim was not disclosed"); *Zwick Partners, LP v. Quorum Health Corp.*, 2019 WL 1450546, at *8 (M.D. Tenn. Mar. 29, 2019) (same).

Second, appeal of this question would also resolve dispute among district courts within the Ninth Circuit, where a small number of outlier decisions have based the safe harbor analysis on *Virginia Bankshares*.  *See In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1033 (S.D. Cal. 2005); *In re QuantumScape Sec. Class Action Litig.*, 2022 WL 137729, at *14 (N.D. Cal. Jan. 14, 2022) (J. Orrick).  Absent clear guidance from the Ninth Circuit, there is risk that district courts in the Ninth Circuit will continue to use the wrong standard, negating the impact of the PSLRA safe harbor.  This supports a finding that a "substantial ground for disagreement" exists as to Defendants' question.  *Finder*, 2016 WL 4095833, at *4 (holding that "substantial ground for disagreement" exists where California district courts are split on a legal question).

Cooley LLP
Attorneys at Law
Palo Alto

-11-

Mot. for Leave to Seek Reconsideration or to
Certify Question for Interlocutory Appeal
3:20-cv-06719-WHO

**3.     Interlocutory Appeal "May Materially Advance the Ultimate Termination of This Litigation."**

"An immediate appeal from the order" with respect to Defendants' legal question "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  To satisfy this prong, the movant must show that interlocutory appeal "may avoid protracted and expensive (but ultimately unnecessary) litigation and the burdens on the litigants and court system that would result from denial of § 1292(b) certification."  *United States ex rel. Integra Med Analytics LLC v. Providence Health and Servs.*, 2019 WL 6973547, at *4-5 (C.D. Cal. Oct. 8, 2019); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation.").

The Ninth Circuit's determination of the proper standard to apply under the safe harbor has the potential to substantially reduce the number of false and misleading statements at issue.  Specifically, if the Court were to analyze the cautionary language that accompanied Defendants' forward-looking statements under the standard established by the PSLRA safe harbor, it should dismiss Plaintiff's claims as to at least five of the thirteen alleged misrepresentations made in investor conferences and press releases.  This would reduce the number of disputed statements by 38%.  Moreover, because Plaintiff's claims as to the first three challenged statements occurring at the start of the Class Period should be dismissed, this outcome would shorten the Class Period by over 40%, from approximately five months to three.[4]  It would also significantly reduce the number of claims against Bienaimé, leaving only one allegedly misleading statement made by him.[5]

[4] The alleged Class Period is between March 3, 2020 and August 18, 2020.  AC at 1 (ECF No. 54). The statements identified as forward-looking and accompanied by meaningful cautionary language were made on March 3 (Nos. 1-2), April 29 (No. 3), May 31 (No. 6), and August 4, 2020 (No. 12). If claims regarding these statements are dismissed, the Class Period would begin on May 14, 2020, the date of the first remaining challenged statement (No. 4).

[5] Defendants argued in their briefing that almost all of the challenged statements are forward-looking and protected by the PSLRA safe harbor.  (*See* Mot. at 9; Reply at 2.)  Defendants believe that certain of the forward-looking statements are immunized under the second prong of the safe harbor because they were "made without actual knowledge" of their alleged falsity.  15 U.S.C. § 78u-5(c)(1); (Mot. at 11; Reply at 4.)  However, the Court held that Plaintiff sufficiently alleged facts suggesting that these statements might not qualify for immunity under the second prong, and, while they disagree, Defendants do not ask the Court to reconsider this holding.  (Order at 12.)

Cooley LLP
Attorneys at Law
Palo Alto

-12-

Mot. for Leave to Seek Reconsideration or to
Certify Question for Interlocutory Appeal
3:20-cv-06719-WHO

The potential that the Court would dismiss Plaintiff's claims as to multiple challenged statements should the Ninth Circuit clarify the applicable legal standard is more than enough for the Court to find that the proposed appeal "may materially advance the ultimate termination of the litigation." *See, e.g.*, *Reese*, 643 F.3d at 688 (interlocutory appeal appropriate where reversal had potential to remove certain defendant and claims from the case); *Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11523599, at *2 (C.D. Cal. May 17, 2010) (granting motion where appeal on legal question relating to privilege waiver might avoid the plaintiff's access to certain of the defendant's work product); *Integra Med*, 2019 WL 6973547, at *4-5 (granting motion where the appeal had the potential to reduce the discovery burden on the defendants). This outcome would streamline the case by reducing the scope and cost of discovery, motion practice, and jury trial proceedings regarding statements that are statutorily immunized from the outset, thereby "minimiz[ing] the total burdens of litigation on the parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Allen v. ConAgra Foods, Inc.*, 2019 WL 1466889, at *3 (N.D. Cal. Feb. 6, 2019) (J. Orrick).

## III.   CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion for leave to file a motion for partial reconsideration of its Order with respect to what law applies in determining whether Defendants' forward-looking statements were accompanied by "meaningful cautionary statements." In the alternative, the Court should amend its Order to certify the question above for interlocutory appeal to the Ninth Circuit.

Dated: January 28, 2022

COOLEY LLP

By: */s/ Jessica Valenzuela Santamaria*
Jessica Valenzuela Santamaria

Attorneys for Defendants
BioMarin Pharmaceutical Inc., Jean-Jacques Bienaimé and Henry J. Fuchs

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO