UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BIOMARIN PHARMACEUTICAL INC. SECURITIES LITIGATION | Case No. 3:20-cv-06719-WHO<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE A MOTION TO RECONSIDER OR CERTIFY ISSUE FOR INTERLOCUTORY APPEAL**<br><br>Re: Dkt. No. 85 |

I previously denied a motion to dismiss this putative securities class action. I found, among other things, that the statements at issue were not protected by the safe harbor of the Private Securities Litigation Reform Act ("PSLRA"). The defendants (collectively, "BioMarin") move for leave to file a motion to reconsider one aspect of that decision, or to certify the issue for interlocutory appeal in the alternative. BioMarin argues that I employed an overly demanding standard for whether "meaningful cautionary language" was adequate to relieve them of liability under the safe harbor. It contends that the standard relied on legal principles that predated the PSLRA and were overturned by it. The motion is denied. As I explain, the standard I employed faithfully applies Ninth Circuit and Supreme Court precedent.

**BACKGROUND**

The allegations in and history of this case are surveyed in detail in the order for which BioMarin seeks reconsideration. *See* Order on Motion to Dismiss ("Prior Order") [Dkt. No. 77]. In brief, the plaintiffs alleged that BioMarin and several of its executives "misled investors about the progress of a new hemophilia therapy it was developing. According to them, the defendants intentionally misrepresented their interactions with the Food and Drug Administration [] about the drug's approval process." *Id.* 1; *see also id.* 2–7 (factual background). I denied BioMarin's

motion to dismiss. One of BioMarin's arguments was that the 13 statements at issue (the "Challenged Statements") were shielded by the PSLRA's safe harbor. *See id.* 9. I disagreed, explaining that the statements were neither accompanied by "meaningful cautionary language" nor shown to be made without actual knowledge of their falsity. *See id.* 9–12.

## LEGAL STANDARD

### I. MOTION FOR LEAVE TO FILE A MOTION TO RECONSIDER

Civil Local Rule 7-9 governs motions for reconsideration of interlocutory orders prior to "the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case." CIV. L. R. 7-9(a). Under that rule, "any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L.R. 7-9(b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." *Id.* Under Rule 7-9(b),

> The moving party must specifically show reasonable diligence in bringing the motion and one of the following: (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) The emergence of new material facts or a change of law occurring after the time of such order; or (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

*Id.* 7-9(b).

Even if a motion does not satisfy Rule 7-9, district courts have the inherent authority to modify interlocutory orders prior to entry of final judgment. *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996), *as amended* (Jan. 15, 1997). But generally, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law" and any other circumstances warranting reconsideration would be "highly unusual." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### II. MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

Under 28 U.S.C. § 1292(b), "[w]hen a district judge, in making in a civil action an order

2

1   not otherwise appealable under this section, shall be of the opinion that such order involves a
2   controlling question of law as to which there is substantial ground for difference of opinion and
3   that an immediate appeal from the order may materially advance the ultimate termination of the
4   litigation, he shall so state in writing in such order." Then, the court of appeals may either permit
5   the appeal or not. *See* 28 U.S.C. § 1292(b). Each of these requirements—(1) a controlling
6   question of law, (2) substantial grounds for difference of opinion, and (3) materially advancing the
7   termination of the litigation—must be met to certify a question for interlocutory appeal. *See*
8   *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

**DISCUSSION**

**I.     MOTION FOR LEAVE TO FILE A MOTION TO RECONSIDER**

BioMarin argues that the Prior Order employed an incorrect standard for assessing the "cautionary language" prong of the PSLRA's safe-harbor. *See* Motion for Leave to Seek Reconsideration or to Certify Question for Interlocutory Appeal ("Mot.") [Dkt. No. 85]. According to it, the Prior Order utilized legal principles from before the enactment of the PSLRA that the PSLRA has since displaced. *See id.* 4–9. Under that new standard, BioMarin contends, five of the 13 statements would have been shielded by the safe harbor. *Id.* 10 n.3 (listing statements). For the reasons that follow, I disagree.

The PSLRA creates a "safe harbor" for certain forward-looking statements:

a person . . . shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that—

    (A) the forward-looking statement is—

        (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or

        (ii) immaterial; or

    (B) the plaintiff fails to prove that the forward-looking statement—

        (i) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or

        (ii) if made by a business entity;[,] was—

3

> (I) made by or with the approval of an executive officer of that entity; and
>
> (II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

15 U.S.C. § 78u-5(c)(1).

This motion concerns the "meaningful cautionary language" prong. In the Prior Order, I described the legal test for that prong this way:

> To determine whether "cautionary language" is adequate, courts ask whether the cautionary statements "precise[ly]" and "directly address" the alleged misrepresentations. *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (internal quotation marks and citation omitted). "Blanket warnings that securities involve a high degree of risk [are] insufficient to ward against a federal securities fraud claim." *Id.* (internal quotation marks and citation omitted). In other words, courts must examine the "mixture" of allegedly misleading and allegedly cautionary statements and determine whether the cautionary language "discredit[s] the [allegedly misleading statement] so obviously that the risk of real deception drops to nil." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991). Cautionary language is only adequate when it "identif[ies] important factors that could cause actual results to differ materially from those in the forward-looking statement." [*In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017)] (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)).

Prior Order 10–11 (footnote omitted).

According to BioMarin, this test required too much of its proposed cautionary language. *See* Mot. 2–8. It argues that *Provenz* and *Virginia Bankshares* predated the PSLRA and that the PSLRA ratcheted up the standard. *See id.* Rather than requiring that the proposed cautionary language "precisely" and "directly" address the alleged misrepresentation, or that it do so to reduce the risk of deception to "nil," BioMarin reads the PSLRA to "require[] only that [defendants] 'identify important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *Id.* 2 (quoting *Quality Sys.*, 856 F.3d at 1148) (some internal quotation marks omitted).

As I explain, BioMarin is incorrect that the principles and cases I cited in the Prior Order no longer apply. It is also incorrect that the PSLRA imposed a meaningfully higher standard. And it is incorrect that there is a difference between the purported different standards it identifies.

The PSLRA's safe harbor was not written on a blank slate; it was meant to codify the common-law "bespeaks caution" doctrine. As the Ninth Circuit has held, "[t]he PSLRA created a

4

statutory version of [the bespeaks caution] doctrine by providing a safe harbor for forward-looking statements identified as such, which are accompanied by meaningful cautionary statements." *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004) (citations omitted). The bespeaks caution doctrine, the Ninth Circuit explained, "provides a mechanism by which a court can rule as a matter of law . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *Id*. That standard is the language used in the PSLRA's cautionary-language section. *Provenz*, which I cited in the Prior Order and which BioMarin challenges here, is one of the Ninth Circuit's leading bespeaks-caution cases. The principles I derived from *Provenz* in the Prior Order come directly from established bespeaks-caution law: "The cautionary statements must be 'precise' and 'directly address'" the defendants' alleged misrepresentations. *Provenz*, 102 F.3d at 1493 (internal quotation marks and citation omitted). Far from being displaced by the PSLRA, this law is what it intended to codify.

*Virginia Banksharers*, too, enunciated principles that not only survived enactment of the PSLRA but are incorporated into it. The portion I cited dealt with what constituted a material misrepresentation under the (pre-PSLRA) securities laws. The Supreme Court explained that "[w]hile a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil." *Virginia Bankshares*, 501 U.S. at 1097. It explained that "not every mixture with the true will neutralize the deceptive" and "[o]nly when the inconsistency would exhaust the misleading conclusion's capacity to influence the reasonable shareholder would a [the] action fail on the element of materiality." *Id.* at 1097–98.

As the Ninth Circuit later explained in *Provenz*, "the 'bespeaks caution' doctrine is not new but a reformulation of two fundamental concepts in securities fraud law: reliance and materiality." *Provenz*, 102 F.3d at 1493 (internal quotation marks and citation omitted). It "reflects the unremarkable proposition that statements must be analyzed in context." *Id*. That is the point *Virginia Bankshares* makes as well: certain mixes of cautionary true statements with the allegedly false statements can result in statements that are not materially misleading. And, in its

5

1    foundational bespeaks caution case, the Ninth Circuit made that clear, citing the same parts of

2    *Virginia Bankshares* that I do to formulate the bespeaks caution doctrine. *See In re Worlds of*

3    *Wonder Sec. Litig.*, 35 F.3d 1407, 1415 (9th Cir. 1994).

4        Putting the pieces above together, materiality (including especially the principles of

5    *Virgnia Bankshares*) is a fundamental building block of the bespeaks caution doctrine and the

6    bespeaks caution doctrine was codified into statute as the PSLRA's safe harbor. None of this

7    should come as a surprise to BioMarin; I explained this point more succinctly in a footnote to my

8    discussion of the safe harbor. *See* Prior Order 11 n.3.

9        This is not an outside-the-box application of these principles. Other district courts in this

10   circuit have applied them in post-PSLRA cases. *See, e.g.*, *In re Nuvelo, Inc., Sec. Litig.*, No. C 07-

11   4056 VRW, 2008 WL 5114325, at *16 (N.D. Cal. Dec. 4, 2008) (holding that cautionary language

12   must "precise[ly]" and "directly" address the statements and citing *Employers Teamsters*); *In re*

13   *Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1033 (S.D. Cal. 2005) (employing the

14   standards from *Provenz* and *Virginia Bankshares*); *In re Copper Mountain Sec. Litig.*, 311 F.

15   Supp. 2d 857, 882 (N.D. Cal. 2004) (equating the bespeaks caution doctrine and PSLRA safe

16   harbor and citing *Provenz*'s standard). Several district courts outside of this circuit have too. *See,*

17   *e.g.*, *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423,

18   495 (S.D.N.Y. 2011) ("To be 'meaningful,' a cautionary statement must discredit the alleged

19   misrepresentations to such an extent that the 'risk of real deception drops to nil." (internal

20   quotation marks and citations omitted)).

21       In response, BioMarin first argues that more recent Ninth Circuit decisions have rejected

22   this approach. I note that none of its cases actually held or discussed these issues; BioMarin's

23   argument comes largely from implication. Its leading case is one that I quoted in formulating the

24   standard I gave, *Quality Systems. See* Prior Order 11. According to BioMarin, "[r]ather than

25   requiring meaningful cautionary statements to reduce 'the risk of real deception . . . to nil,' the

26   Ninth Circuit requires only that they "identify important factors that could cause actual results to

27   differ materially from those in the forward-looking statement.'" [] *Quality Sys.*[], 865 F.3d [at]

28   1148 []." Mot. 2 (some internal quotation marks omitted).

6

       Though it may not be immediately clear from BioMarin's framing, *Quality Systems* does not reference *Virginia Bankshares* or the "reduce-to-nil" standard—let alone hold them to be overruled. More importantly, the cited portion of *Quality Systems* just parrots the PSLRA's language, which provides that the meaningful cautionary statements must "identify[] important factors that could cause actual results to differ materially from those in the forward-looking statement." *See* 15 U.S.C. § 78u-5(c)(1). As explained above, that standard was intended to *codify* the bespeaks caution doctrine. As a result, the substance of this standard is part and parcel of the principles articulated in *Provenz* and *Virginia Banksharers*. Those cases just teach that to have the "meaningful cautionary language" that "identifies important factors that could cause actual results to differ materially" contemplated by the PSLRA, the cautionary language must render the misrepresentations non-material by being sufficiently targeted.[1]

       BioMarin next argues that the PSLRA's use of the phrase "meaningful cautionary statements" was adopted from the Third Circuit's bespeaks caution doctrine in one case that imposed a higher standard, *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357 (3d Cir. 1993). Mot. 6–7 (citing S. Rep. No. 104-98, at 17 (1995)). But *Trump Casino* undermines BioMarin's interpretation. It stressed that the bespeaks caution doctrine applied when the cautionary statements "*negated* the materiality of an alleged misrepresentation or omission" and that they must be "*tailored* to the specific future projections." 7 F.3d at 371 (emphasis added). *Trump Casino*, in fact, relied on *Virginia Banksharers*, holding that the principles of that case "support[ed]" its understanding of the bespeaks caution doctrine and citing the "drops-to-nil"

---

[1] BioMarin also cites two other cases but neither discussed the standard for claims like these or adopted BioMarin's position. BioMarin relies on them to argue, essentially, that the "cautionary language" they approved was so general the Ninth Circuit must have been applying a relaxed standard. *See* Mot. 7–8. But I read them as fact-based applications of the doctrine that are consonant with the principles I lay out here. One was about an alleged failure to disclose problems with sales staff and program; the Ninth Circuit held that several statements "spoke directly to the [] misstatements" because the company warned that its performance would depend on "the ability of its sales force to sell." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1107, 1112 (9th Cir. 2010). The other concerned only general optimistic statements about future growth, so the court found that disclaimers about the certainty of such growth sufficient. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1056–57, 1059 (9th Cir. 2014).

7

standard. *Id.* at 372.

BioMarin next turns to two out-of-circuit district court cases that, it argues, support its position.[2] Its first stated that the bespeaks caution doctrine was "stricter" than the PSLRA. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 534 (D.N.J. 2010). Its reasoning depended on its conclusion that "[w]hile the Third Circuit has incorporated much of the 'bespeaks caution' doctrine into its analysis of the PSLRA, the stricter language of the 'bespeaks caution' doctrine is noticeably absent, and the Third Circuit has repeatedly distinguished the two concepts." *Id.* (citations omitted). But the only real difference identified was that under the PSLRA, the cautionary statements need not literally accompany the misleading statements. That difference does not imply a difference in the materiality standards. And the Third Circuit itself, as explained above, applies *Virginia Banksharers* to the safe harbor. BioMarin's other case relied primarily on the first one and had the same reading of Third Circuit law. *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 504 n.15 (E.D. Pa. 2018), aff'd sub nom. on other grounds *Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020).

In sum, I conclude that the standard discussed in the Prior Order correctly reflects the law as the PSLRA, Supreme Court, and Ninth Circuit have established it. The motion for leave to file a motion to reconsider is denied.

## II. MOTION TO CERTIFY ISSUE FOR INTERLOCUTORY APPEAL

I will also not certify this issue for appeal. First, BioMarin's argument is largely based on a misreading of Ninth Circuit law. To the extent there is any disagreement among courts, it seems to be confined to the two district courts in the Third Circuit that, as I have explained, appear to overread Third Circuit precedent and do not, in any case, address this circuit's precedent. BioMarin has not shown that there are substantial grounds for disagreement within this circuit.

Even assuming, however, that BioMarin had shown substantial grounds for disagreement

---

[2] BioMarin also cites *Melot v. JAKKS Pac., Inc.*, No. LACV1305388JAKSSX, 2014 WL 12589334 (C.D. Cal. June 6, 2014), the only case within this circuit that it suggests supports it. But the relevant part of that case just noted that *Provenz* was a "pre-PSLRA case" and "assum[ed]" that it applied post-PSLRA without deciding if that was so. *Id.*, at *8.

8

*and* that it was correct that I employed a heightened standard *and* that the heightened standard would require dismissal of *every* statement it argues for, this issue still would not be certified for appeal because it would only remove five of the 13 Challenged Statements. The other Challenged Statements would be litigated no matter what. BioMarin counters that it would certify appeal on four of the five statements made by one individual defendant; even that would still leave him in the case. And while BioMarin is correct that it would shorten the class period by several months, that will only be an important issue when it comes to the precise makeup of the class and the amount of damages. It seems likely that discovery would not be impacted because what happened during those few months of lead-up would still be potentially relevant to the case. As a result, certification of appeal would not materially advance the termination of the litigation, *see ICTSI Oregon*, 22 F.4th at 1130, and it would unnecessarily expend resources.

## CONCLUSION

The motion for leave to file a motion for reconsideration or certify the issue for interlocutory appeal is DENIED.

**IT IS SO ORDERED.**

Dated: February 28, 2022

William H. Orrick
United States District Judge