COOLEY LLP
JOHN C. DWYER (136533)
(dwyerjc@cooley.com)
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
AMANDA A. MAIN (260814)
(amain@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:      +1 650 843 5000
Facsimile:      +1 650 849 7400

Attorneys for Defendants
BioMarin Pharmaceutical Inc., Jean-Jacques Bienaimé
and Henry J. Fuchs

[Counsel for Lead Plaintiff listed in signature block]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re BioMarin Pharmaceutical Inc. Securities Litigation* | Case No. 3:20-cv-06719-WHO<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**<br><br>Judge: Hon. William H. Orrick |

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE FILED UNDER SEAL**

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

JT. STATEMENT RE DISCOVERY DISPUTE;
3:20-CV-06719-WHO

Pursuant to Judge Orrick's Standing Order for Civil Cases, the Parties submit this Joint Statement Regarding a Discovery Dispute and confirm they have met and conferred.

## I.   DEFENDANTS' POSITION

Despite asking to be appointed Lead Plaintiff in this securities class action, Plaintiff has resisted discovery at every juncture.  Since March 3, 2022, Defendants have asked Plaintiff to identify the information it relied on, and factors contributing to, its trades in BioMarin's stock— which is directly relevant to the reliance element of Plaintiff's Section 10b-5 claim.  Plaintiff disclosed that its trades were conducted pursuant to an algorithmic trading model, but otherwise refused to respond to interrogatories on the ground they were vague and ambiguous in the context of its trading model.  To moot Plaintiff's objection, on May 27, 2022, Defendants propounded discovery relating specifically to Plaintiff's trading model and the information and factors that led to the BioMarin trades at issue.  (Exs. A, B.)  After many rounds of lengthy negotiations, and months of Plaintiff dragging its feet (on one occasion failing to provide its position for more than a month), Plaintiff has provided an incomplete interrogatory response, a presentation from 2019, and 32 pages of computer code that purportedly represents the algorithm itself and would require an expert to decipher, if decipherable at all.  Plaintiff refuses to provide anything more, including information about the specific inputs that triggered each BioMarin trade.  The Court should order Plaintiff to provide full and complete responses to Interrogatory Nos. 11 and 12, and Requests for Production ("RFP") Nos. 49–55 (and also order Plaintiff to search for the Danish-equivalent of its search terms, which it has refused to do despite producing some documents in Danish, being located in Denmark, and acknowledging relevant individuals communicate in Danish).

Plaintiff has argued that information relating to the reasons for its trades in BioMarin's stock is irrelevant, because the algorithm was purportedly "driven by" the stock price and thus it may rely on the fraud on the market presumption to prove reliance—an essential element of its Rule 10b-5 claim.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2401 (2014).  Importantly, that presumption is **rebuttable**.  *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 103 (S.D.N.Y. 2013) (holding that defendants rebutted presumption where plaintiffs used proprietary measure of value and market price was not the "motivating driving force" behind the

investment decision), *aff'd sub nom.,* 838 F.3d 214 (2d Cir. 2016).  "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988).  Defendants are entitled to discovery relevant to rebut the presumption of reliance and test Plaintiff's unsupported claim that the algorithm was "driven by" the stock price.  Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").  The threshold for relevance is low: information is relevant if "it has ***any tendency to make a fact more or less probable*** than it would be without the evidence" and "the fact is of consequence to determining the action."  Fed. R. Evid. 401 (emphasis added).  The information triggering Plaintiff's investment decisions tend to make it more or less probable that Plaintiff relied on purportedly inflated market prices.  Defendants are entitled to know the specific information and inputs that caused the algorithm to trade BioMarin's stock in 2020, including the extent to which BioMarin's purportedly inflated stock prices impacted those trades, if at all—even if stock price was *a* factor.  *See GAMCO Invs.*, 927 F. Supp. 2d at 104 (rejecting argument that rebutting presumption required showing the stock price played no part in decision-making process).  Plaintiff's relevance objection thus fails.

Plaintiff's responses to the particular requests are deficient for the reasons below. Interrogatory No. 11 asks Plaintiff to state all facts concerning the algorithmic trading model it used to decide whether to buy or sell BioMarin stock, and Interrogatory No. 12 asks Plaintiff to state all facts concerning each purchase or sale of BioMarin stock from March through November 2020, including the identity of each person aware of each transaction at or around the time it took place, how each decision was made pursuant to the model, the factors that contributed to each decision and their relative weights, the specific information considered in making each decision, whether any person had the ability to override each decision, etc.  (Ex. A.)

As an initial matter, Plaintiff responded to Interrogatory No. 12 by improperly incorporating by reference its response to No. 11.  *See* Fed. R. Civ. Proc. 33(b)(3) (each interrogatory "must be answered separately and fully in writing under oath").  Further, Plaintiff's response to Interrogatory No. 11 is problematic because, although Plaintiff provided a high-level overview of the model, its

response is filled with vague, abstract terms that do not provide the concrete details Defendants need to test Plaintiff's assertion that the stock price drove its trades, particularly since Plaintiff acknowledges many factors were relevant (e.g., "process that *includes* the stock price," "*high risk* premiums," "*attractive* valuation," "*good recent* returns," "tailwind of the *price development*," "*low* volatility/beta," "*driven* by," etc.). Plaintiff also failed to identify who developed the model, state whether it could stop trades, and explain how the model determines how much stock to trade. Moreover, the information provided in response to No. 11 does not answer No. 12, which asks for facts specifically relating to each BioMarin trade.

RFP Nos. 49-54 seek documents concerning the trading model as of March to August 2020, including its methodology, variables, policies and guidelines, goals, targets, and calculations, and No. 55 seeks documents concerning Plaintiff's decision to trade in BioMarin stock pursuant to the model. (Ex. B.)  After many months, Plaintiff recently produced a single presentation from 2019 and 32 pages of computer code. Plaintiff refuses to produce anything more, including documents showing the specific information that triggered each BioMarin trade, thus depriving Defendants of information to test Plaintiff's claim that the algorithm was "driven by" the stock price.

## II.    PLAINTIFF'S RESPONSE

Defendants misstate the history of discovery here. By no later than April 4, Lead Plaintiff told Defendants that ATP transacted in BioMarin common stock pursuant to a computer algorithm, which relied on the changes in BioMarin's publicly available stock price to drive ATP's Class-Period purchases and sales. Such a trading strategy is "representative of methods used by many other investors," and courts throughout the country routinely appoint such investors as class representatives. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003). Notwithstanding the quantitative nature of ATP's trading strategy, which indisputably relied on public stock prices, Defendants adopted a scorched-earth approach to discovery. Defendants served interrogatories that were admittedly worded "as broad[ly] as possible"; attempted to use those amorphous requests as a basis to depose ATP by email with arcane questions concerning ATP's trading; and served ***sixty*** document requests seeking, *inter alia*, "all documents" concerning virtually every aspect of ATP's trading model. Ex. __.

As discussed in its August 26 letter, ATP sought to accommodate Defendants' requests at every turn.  On May 6, Plaintiff identified each of the inputs into ATP's algorithm (even those that did not apply here) and, again, made clear that BioMarin's publicly available stock price was the sole input driving its BioMarin transactions. And even though it was under no obligation to do so, Plaintiff produced ATP-authored documents further describing the inputs to its model.

On May 27, Defendants served another set of interrogatories, seeking, among other things, "*all facts* concerning the algorithmic trading model" and ATP's transactions in any BioMarin securities, whether or not they occurred during the Class Period. This interrogatory is manifestly overbroad and disproportionate to the needs of this case.  *See Cambria Co. LLC v. Prental Granite & Marble, Inc.*, 2013 WL 12147608, at *2 (D. Minn. Oct. 17, 2013) (denying motion to compel further response to an interrogatory calling for "all facts" relating to plaintiff's internal processes,). Nevertheless, Plaintiff provided *two* further rounds of responses to Defendants' interrogatories and Defendants' informal follow-on questions, including a comprehensive multi-page explanation of ATP's algorithmic trading process that drew on interviews with multiple ATP employees. By letter, Defendants subsequently demanded even more information, including, most significantly, "the algorithm itself." On September 6, to resolve the dispute without Court intervention, ATP took the extraordinary step of producing its algorithm, as Defendants requested. With the algorithm in hand, Defendants are privy to "all facts" about how it operated at the time of the relevant trades. To the extent Defendants have further questions after this extensive discovery, they can ask those questions during a deposition.

Yet Defendants complain that Plaintiff has failed to meet its discovery obligations. But Defendants identify only three pieces of information they claim they have not been provided: (1) the identity of the person(s) who "developed" the model (the relevance of which they have refused to articulate and the answer to which would be sprawling given the iterative multi-year existence of the algorithm); (2) the algorithm's ability to stop trades (which ATP already addressed in a verified interrogatory); and (3) "how the model determines how much stock to trade" (information that is not relevant, but was nonetheless already made available to Defendants through ATP's

production of the algorithm).[1]

These items, as well as the indeterminate discovery Defendants demand ("all facts"), are all disproportionate to the needs of the case: ATP's trading algorithm is simply not relevant here.[2] ECF No. 94-3. Defendants assert that this discovery is required to test whether ATP satisfies Section 10(b)'s element of reliance. Specifically, Defendants wish to test whether ATP would have purchased BioMarin stock *at all* (i.e., at *any* price), absent the alleged artificial price inflation. But Defendants misstate the reliance inquiry, which is whether an investor would have *paid the price it in fact paid* for the subject security, absent the alleged fraud. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 432 (7th Cir. 2015) ("*Basic* was very clear that the way to rebut the presumption is to show that the investor would have paid the *same* price."). To demonstrate reliance, a plaintiff demonstrates that, absent the fraud, it would not "have paid the *same* price" for the security by demonstrating that price was artificially inflated by the defendant's misstatements; this, in turn, is demonstrated by showing that the market for the security is efficient and, therefore, impounded those misstatements into the market price. *Basic*, 485 U.S. at 246-47.[3]

With respect to Defendants' requests for translated search terms, they conveniently fail to mention that (1) ATP applied a set of extremely broad terms such as "BioMarin," "BMRN," "Fuchs," and "Bienaime," that have no Danish equivalent; (2) the remaining terms (all proposed by Defendants) had a *zero percent responsiveness rate* when run against ATP's sizeable set of English language documents and Plaintiff has no reason to believe Danish equivalents would yield a different result; and (3) Plaintiff stated that it would consider testing Danish terms proposed by Defendants, but Defendants have to date not proposed any.

---

[1] Defendants have also asked the Court to order ATP to produce the "specific information triggering" ATP's trades. ████████████████████████████████

[2] Defendants' liberal approach to "relevance" stands in stark contrast to their approach to discovery of BioMarin. In that context, Defendants have refused to add as document custodians members of a task force specifically charged with addressing the FDA's silence on the BLA, produce text message from named Defendants, or even provide phone numbers for key personnel.

[3] Defendants' sole citation, *GAMCO Invs., Inc. v. Vivendi, S.A.*, is entirely distinguishable. In *Vivendi*, defendants rebutted the presumption of reliance by showing that the plaintiff's trading model relied on an idiosyncratic measure of inherent value that was entirely untethered to the stock price. *See* 927 F. Supp. 2d 88, 94-96, 102 (S.D.N.Y. 2013). Here, the movement of BioMarin's market price—which was driven by Defendants' misstatements—drove ATP's trading model.

Dated: September 23, 2022                          COOLEY LLP


                                                  */s/ Patrick E. Gibbs*
                                                  Patrick E. Gibbs

                                                  Attorneys for Defendants
                                                  BioMarin Pharmaceutical Inc., Jean-Jacques
                                                  Bienaimé and Henry J. Fuchs


                                                  BERNSTEIN LITOWITZ BERGER
                                                  & GROSSMANN LLP


                                                  */s/ Salvatore J. Graziano*
                                                  Salvatore J. Graziano (pro hac vice)

                                                  Attorneys for Lead Plaintiff Arbejdsmarkedets
                                                  Tillægspension and Lead Counsel for the Class

## ATTESTATION PURSUANT TO CIV. L.R. 5-1(h)(3)

Pursuant to Civ. L.R. 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated:  September 23, 2022

*/s/ Patrick E. Gibbs*
Patrick E. Gibbs

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

**JT. STATEMENT RE DISCOVERY DISPUTE;**
**3:20-CV-06719-WHO**