# EXHIBIT D

**Simmons, Amie**

| | |
|---|---|
| **From:** | Main, Amanda |
| **Sent:** | Monday, August 29, 2022 11:15 AM |
| **To:** | Abe Alexander; Thomas Sperber; De Jarnette, Brett; Gibbs, Patrick; Simmons, Amie; Walden, Josh |
| **Cc:** | Salvatore Graziano; Katie M. Sinderson; Billy Freeland |
| **Subject:** | RE: BMRN - 8.19 M&C |

Abe,

We were beyond clear on our last call that we needed to know what Plaintiff intended to produce on this important issue and when.  The fact that you continue to hide the ball and refuse to answer basic questions only highlights Plaintiff's evasive discovery behavior.

How can you expect us to agree on a briefing schedule for class certification while continuing to withhold information about what exactly Plaintiff intends to produce and when, given that that information is relevant to class certification?  Without that information, we have no idea whether we will have the discovery before Plaintiff files its motion.

Further, Plaintiff's algorithm is only one piece of information that Defendants requested and we never suggested the production of the algorithm alone would be sufficient.  How can you expect us to agree on a briefing schedule before we have had an opportunity to view the information that Plaintiff has agreed to produce so we can determine what requests need to be raised with the Court?  At this point, we do not know whether this seemingly inevitable discovery dispute would be resolved before Plaintiff files its motion or before we depose your client, much less before our opposition would be due, let alone whether Plaintiff will produce the information we are entitled to once the court compels it to finally do so.

Amanda A. Main
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Abe Alexander <Abe.Alexander@blbglaw.com>
**Sent:** Monday, August 29, 2022 10:45 AM
**To:** Main, Amanda <amain@cooley.com>; Thomas Sperber <Thomas.Sperber@blbglaw.com>; De Jarnette, Brett <bdejarnette@cooley.com>; Gibbs, Patrick <pgibbs@cooley.com>; Simmons, Amie <asimmons@cooley.com>; Walden, Josh <jwalden@cooley.com>
**Cc:** Salvatore Graziano <Salvatore@blbglaw.com>; Katie M. Sinderson <KatieM@blbglaw.com>; Billy Freeland <Billy.Freeland@blbglaw.com>
**Subject:** RE: BMRN - 8.19 M&C

**[External]**

---

Amanda – your July 22 letter asks us to produce "the algorithm itself."  Our letter makes clear that we will honor that request.  Outside of responding to properly propounded discovery, including deposition questions, we are under no obligation to walk you through the documents you have asked us to produce.  We are surprised that you would now ask us to explain how to use and interpret the documents you've demanded from ATP when you have repeatedly refused to confirm basic facts about the scope of your own production.  You told us you would discuss the class certification schedule when we responded to your letter.  We have done so.

1

We take your response as confirmation that you will continue to hold class certification hostage and keep moving the target on us.  Accordingly, we intend to move the Court for entry of a schedule.

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Monday, August 29, 2022 1:07 PM
**To:** Abe Alexander <Abe.Alexander@blbglaw.com>; Thomas Sperber <Thomas.Sperber@blbglaw.com>; De Jarnette, Brett <bdejarnette@cooley.com>; Gibbs, Patrick <pgibbs@cooley.com>; Simmons, Amie <asimmons@cooley.com>; Walden, Josh <jwalden@cooley.com>
**Cc:** Salvatore Graziano <Salvatore@blbglaw.com>; Katie M. Sinderson <KatieM@blbglaw.com>; Billy Freeland <Billy.Freeland@blbglaw.com>
**Subject:** RE: BMRN - 8.19 M&C

[External]

---

Abe,

We said we would be in a position to discuss the class certification briefing schedule once you told us what you were producing and when.  You have not done that.  I specifically asked in my email below and will ask again – when will Plaintiff produce the trading algorithm?

It's also unclear what Plaintiff actually intends to produce – will it include the actual inputs into the algorithm and will we be able to see why each trade was triggered or will it just be a bunch of computer code?  And in what form will the algorithm be produced and will we need any special software to view it?

Please provide this information by COB today.

Amanda A. Main
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Abe Alexander <Abe.Alexander@blbglaw.com>
**Sent:** Monday, August 29, 2022 7:08 AM
**To:** Main, Amanda <amain@cooley.com>; Thomas Sperber <Thomas.Sperber@blbglaw.com>; De Jarnette, Brett <bdejarnette@cooley.com>; Gibbs, Patrick <pgibbs@cooley.com>; Simmons, Amie <asimmons@cooley.com>; Walden, Josh <jwalden@cooley.com>
**Cc:** Salvatore Graziano <Salvatore@blbglaw.com>; Katie M. Sinderson <KatieM@blbglaw.com>; Billy Freeland <Billy.Freeland@blbglaw.com>
**Subject:** RE: BMRN - 8.19 M&C

[External]

---

Amanda, you told us that you would discuss the class certification schedule when we replied to your letter.  Please provide your response by COB today. If we do not hear you from, we will assume that you are withdrawing your commitment to negotiate and that we must seek relief from the Court.  Thank you

---

**From:** Main, Amanda <amain@cooley.com>
**Sent:** Friday, August 26, 2022 6:09 PM
**To:** Thomas Sperber <Thomas.Sperber@blbglaw.com>; De Jarnette, Brett <bdejarnette@cooley.com>; Gibbs, Patrick <pgibbs@cooley.com>; Simmons, Amie <asimmons@cooley.com>; Walden, Josh <jwalden@cooley.com>

**Cc:** Salvatore Graziano <Salvatore@blbglaw.com>; Katie M. Sinderson <KatieM@blbglaw.com>; Abe Alexander <Abe.Alexander@blbglaw.com>; Billy Freeland <Billy.Freeland@blbglaw.com>
**Subject:** RE: BMRN - 8.19 M&C

[External]

---

Counsel:

We write to correct the mischaracterizations and misstatements in your email below.

First, we said we could not commit to a briefing schedule for class certification until Plaintiff responded to a letter we served more than a month ago regarding discovery that has been outstanding for several months— discovery which is relevant to class certification.  In fact, nearly six months ago, we first propounded discovery seeking information regarding the factors that contributed to Plaintiff's decision to trade in BioMarin stock and the information considered in making those decisions.  In response Plaintiff's evasive efforts to avoid that discovery, we served a second set of discovery specifically seeking information about Plaintiff's trading model, yet Plaintiff still refused to provide the information requested.  As of the time of our meet and confer, Plaintiff still had not stated what information, if anything, it intended to produce or by when.  Just today, Plaintiff states that it will produce its trading algorithm—but still fails to say when—and confirms that it will refuse to respond to the discovery served.  When will we receive the algorithm?

Second, we have not ignored our "representations to the Court."  We have instead bent over backwards to accommodate Plaintiff's overbroad discovery requests and search terms in an effort to avoid the waste of judicial resources.  We did not commit to making rolling productions every two weeks until September 29.  We stated that we would make an effort to substantially complete our document production by September 29 and make rolling productions.  We will produce the documents as they are ready, whether that is several days apart or weeks apart, whatever the case may be.  Further, the only thing we assured you of is that we are not intentionally holding documents back in an effort to produce the bulk of documents at the end of September.  It's clear that the majority of our documents *will* be produced in September.  You state that we declined to provide details as to what could cause us not to substantially complete our production by September 29, but there is no reason why we need to forecast hypotheticals at this point.

Third, if Plaintiff wanted Defendants to identify the members of the task force, it could have served an interrogatory specifically asking for that information, but did not.  We have no obligation to track down that information for Plaintiff, much less cross-reference names across Defendants' extensive discovery responses.  You only recently asked that we add the members of the task force as custodians and only today identified the individuals you believe we should add.  We will consider your request and let you know.

Fourth, we explained in detail why it would be disproportionate to the needs of discovery to add Marty Richard and Shannon Utter as custodians.  Of course we did not review their files for responsiveness – that is exactly what we are unwilling to do because it is disproportionate to the needs of discovery.

Fifth, your request that we add all attendees of the late-cycle meeting as custodians came out of nowhere.  Months ago, on June 10, you asked *why* certain individuals were not identified as custodians, including individuals who attended the late-cycle meeting, among others.  We responded within days, explaining why those individuals were not included as custodians.  You never raised it again until our call on August 19.  Our understanding from the call was that Plaintiff would identify certain individuals present at the late-cycle meeting rather than continue with its request that we nearly double the number of custodians in this matter so that everyone who attended a single meeting is an email custodian.

Sixth, my August 19 email does not misstate our discussion about the Refinitiv data that Defendants requested.  You did not simply state that Plaintiff does not have "electronic copies."  You said the data was not stored and there is no way to capture and produce it.  You refer to us having access to BioMarin's stock price but this isn't just about the stock price.  In Plaintiff's interrogatory response, it stated that the algorithm considered historical earnings data and analyst earnings consensus estimates available through Refinitiv.  We

do not know the specific information considered and apparently neither do you.  If Plaintiff cannot provide the historical earnings data and analyst earnings consensus estimates that the algorithm considered in trading in BioMarin's stock, then it is clear that you meant what you said – Plaintiff has no way to capture (and produce) the specific Refinitiv data that was considered.

Finally, with respect to RFP 57 and other requests, we still do not have any documentation from ATP's files reflecting its account's transactions in BioMarin stock and the associated account number, and you still have not confirmed this information will be provided.  When will we receive the basic information from ATP's files?

Amanda A. Main
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

---

**From:** Thomas Sperber <Thomas.Sperber@blbglaw.com>
**Sent:** Friday, August 26, 2022 1:00 PM
**To:** Main, Amanda <amain@cooley.com>; De Jarnette, Brett <bdejarnette@cooley.com>; Gibbs, Patrick <pgibbs@cooley.com>; Simmons, Amie <asimmons@cooley.com>; Walden, Josh <jwalden@cooley.com>
**Cc:** Salvatore Graziano <Salvatore@blbglaw.com>; Katie M. Sinderson <KatieM@blbglaw.com>; Abe Alexander <Abe.Alexander@blbglaw.com>; Billy Freeland <Billy.Freeland@blbglaw.com>
**Subject:** BMRN - 8.19 M&C

**[External]**

---

Counsel,

We write to memorialize the parties' August 19, 2022 meet and confer.

**First**, you confirmed that Defendants refuse to discuss a briefing schedule for class certification until Plaintiff details the scope of *additional* discovery into ATP's trading algorithm it will provide, as well as the timing of any anticipated additional discovery.  We pointed out that it appears Defendants have yet again reversed a position on scheduling previously presented to the Court – specifically, as in virtually every securities litigation, the parties here agreed to a class certification schedule prior to either party propounding discovery.  You claimed that your about-face is justified because Plaintiff has given you the "run-around" on class certification discovery.  As we discussed, nothing could be further from the truth.  By letter today, we responded conclusively to your *fourth round* of informal discovery requests concerning ATP's trading by offering to produce "the algorithm itself," just as you requested, and consider our responses to your written discovery *beyond* complete.  We propose the following dates for class certification briefing:

- ATP to file motion for class certification on August 31, 2022;
- Defendants to oppose by October 31, 2022;
- ATP to reply by December 21, 2022

Please let us know whether Defendants will persist in holding the pretrial schedule hostage to their discovery demands.  If you decline to discuss a schedule with us, we will seek Court intervention.

**Second**, we discussed the completion of Defendants' production of documents.  As discussed in our prior correspondence, Defendants have ignored their representations to the Court about the pace and timing of their discovery.  Defendants confirmed that they will make rolling production approximately every two weeks until September 29, at which they anticipate substantial completing their document production.  Moreover, Defendants assured us that they would not back-load their production by producing the bulk of their documents at the end of September.  We asked you whether there were any issues that could cause the September 29th date to slip; you

responded, "lots of things," but declined to provide details. You committed to promptly informing us if Defendants would no longer be in a position to substantially complete discovery by September 29.

**Third**, we discussed our modest request that you tell us whether you have identified all members of the FDA Escalation Task Force in your previous discovery responses. You refused to provide even a "yes" or "no" response to this question, let alone identify the members of the Task Force. Instead, you told us "go look at some of the [task force] emails." You confirmed that you have produced emails to us reflecting the Task Force's complete membership, though you refused to identify any by bates number. We also reiterated our request that you add all members of the Task Force as custodians. You declined on the grounds that minutes, presentations, and other meeting materials would have been provided to all Task Members; as some Task Members are already custodians, your position is that adding additional Members would be duplicative. We explained that given the Task Force's remit – which was to press the FDA for engagement on the BLA in light of the agency's silence – the individuals comprising it were obviously intimately involved in aspects of the BLA review most relevant to our case and were presumably selecting for membership on the Task Force for that very reason. Their documents and communications prior to the formation of the Task Force in July would, therefore, be both relevant and responsive to our requests. As far documents concerning the Task Force itself, the production of meeting materials alone would be insufficient – communications between members about the Task Force's work should also be produced. You responded only that we had not provided adequate detail supporting our request for specific members. We view the rationale expressed on our call as more than sufficient to support inclusion of these individuals as custodians, but we provide further detail below:

- Adora Ndu – VP, Regulatory Affairs
  - o Disclosed in interrogatory responses.
  - o Heavily involved in internal discussions with executives (including Robert Baffi, Hank Fuchs etc…) concerning the FDA's site inspection. *See* BMRN-ATP_0043629.
  - o Liaison between BMRN executives and Greenleaf Health. *See* GLBM_0000274.
- Matthew Wall – Senior Project Manager, Regulatory Project Management
  - o Disclosed in interrogatory responses.
  - o Appears to have acted as liaison between the FDA Escalation Task Force and the Steering Committee. *See* BMRN-ATP_0019698.
- Greg Guyer – EVP, Chief Technical Officer
  - o Disclosed in interrogatory responses.
  - o Heavily involved in internal discussions with executives (including Robert Baffi, Hank Fuchs etc…) concerning the FDA's site inspection. *See* BMRN-ATP_0045547.
- Geoffrey Nichol – SVP, CMO, Head of Global Clinical Development
  - o Disclosed in interrogatory responses.
  - o Attended Late-Cycle Meeting.
  - o Heavily involved in crafting the Task Force's messaging to the Steering Committee. *See* BMRN-ATP_0041102; *see also* BMRN-ATP_0041925 (email to Glasscock and Baffi recommending "Rooseveltian and Churchillian resolve" in the face of the CRL).
- Jessica Nora – Executive Director, Core Team Lead
  - o Disclosed in interrogatory responses.
  - o Heavily involved in preparing Hank Fuchs, Robert Baffi and other executives for meetings with FDA (*see* BMRN-ATP_0040671) and drafting FDA communications (*see* BMRN-ATP_0043999).
- Lon Cardon – Sr. VP, Chief Scientific Officer
  - o Heavily involved in crafting "lab policy" for BioMarin. *See* BMRN-ATP_0010005.
- Wing Yen Wong – VP, Clinical Science
  - o Worked with company executives to interpret FDA requests concerning the clinical trial data. *See* BMRN-ATP_0046944.
  - o Drafted and delivered public comment on behalf of BioMarin concerning regulatory processes. *See* BMRN-ATP_0055793.

Let us know promptly if you continue to refuse to add the Task Force Members as custodians so that we can raise this issue with the Court.

***Fourth***, you confirmed that you will not add Marty Richard and Shannon Utter as custodians. We explained that these individuals were primary contact points with BioMarin's BLA consultant and are included on highly relevant emails. Moreover, as lead compliance executives, they would have been privy to much of the discussion concerning planning for FDA inspections and the agency's questions about manufacturing. You made no representation that you had actually reviewed their custodial files and evaluated responsiveness. You simply claimed you had already produced some emails on which they were included. We understand that the parties are at an impasse and will raise this issue with the Court.

***Fifth***, we discussed whether you would add as custodians the 11 employees present at the late-cycle meeting with the FDA. Despite our having raised this issue several times, you stated that you were "blindsided" by our raising it during the meeting. You agreed to consider our request to add them as custodians promptly, as we intend to submit all custodian disputes to the Court in the same submission. Please let us know by August 31 whether you will add these custodians.

Finally, you raised items concerning Lead Plaintiff's document production, including the timing of our supplemental interrogatory responses, identifying the account belonging to ATP trading in BioMarin securities, our response to your RFP 59, and search terms for Lead Plaintiff's production. Concerning these issues, we confirm the following:

- We are working on having our client verify the supplemental interrogatory responses, which we expect to be able to serve next week.

- There is no name or other identifier for the ATP fund that traded in BioMarin securities besides the account number we provided.

- As we have stated multiple times, will not propose and run our own Danish search-term equivalents. If you propose Danish translations, we will consider testing their responsiveness.

- Your August 19 email misstates our discussion during the meet and confer. We told you that Plaintiff does not have electronic copies of the Refinitiv data you requested because that data is streamed. We did not make – and, indeed, specifically disclaimed – the other assertions you attributed to us, including that "that Plaintiff has no way to capture the data that was considered in connection with its BioMarin trades." For instance, as we have stated and restated in response to your discovery requests, ATP's trading algorithm's transactions in BioMarin stock were driven by the publicly available stock price, which – as it is publicly available – you have ready access to.

- We will not search for documents reflecting or embodying the snippets of ATP's interrogatory responses you excerpted in your email. The first snippet refers to BioMarin's stock price, which is publicly available and, which BioMarin, as the stock's issuer, certainly has access to. The remainder do not concern ATP's transactions in the BioMarin common stock at issue in this case. Specifically, ATP's equities portfolio, trade order uploads, and insider and stop lists contain no additional information about ATP's trades in BioMarin common stock beyond what we've already provided. As we have repeatedly explained, you are not entitled to discovery on ATP's other investments.

Best,
Tom

Tom Sperber
**BLB&G**
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas

New York, NY 10020
(212) 554-1939

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.