# EXHIBIT E

**Simmons, Amie**

| | |
|---|---|
| **From:** | Main, Amanda |
| **Sent:** | Monday, September 12, 2022 5:15 PM |
| **To:** | Thomas Sperber; De Jarnette, Brett |
| **Cc:** | Walden, Josh; Simmons, Amie; Katie M. Sinderson; Abe Alexander; Billy Freeland; Gibbs, Patrick |
| **Subject:** | RE: BMRN - September 7 M&C |
| **Attachments:** | BMRN - ESI Protocol (9-12).docx |

Counsel:

We do not believe it is productive for you to draft a self-serving email filled with accusations and misstatements. It is in fact counter-productive.

**First**, you did **not** confirm that Plaintiff has produced all responsive documents and information requested by Defendants. In fact, you reiterated Plaintiff's position that it would **not produce** documents or provide any other information relating to its algorithm. We explained that the Court should resolve the parties' dispute as to the scope of discovery on this issue before the parties brief class certification, as such information is relevant to class certification. As you know, we have repeatedly asked for this information for many months. While Plaintiff dragged its feet, and only just recently made its position clear, you now aggressively push for an immediate briefing schedule that would prejudice Defendants. Even setting this aside, we made clear that the proposed schedule would not work for us, yet you said Plaintiff would only compromise "a few days" despite that the schedule was first proposed barely a week before you propose to file the opening brief.

We intend to provide you with our portion of a joint statement by the end of this week. Let us know how much time you will need to provide your portion so we can file as soon as possible in an effort to move forward towards setting a class certification briefing schedule.

**Second**, as to Defendants' forthcoming document productions, you again misstate the facts. As we have stated numerous times, we intend to substantially complete our document production by September 29, even though there is no court deadline. As we explained, that substantial production would not include recently added email custodians and likely not the new search terms agreed to at the end of July. I do not recall speculating as to the potential size of our entire document production, particularly with custodians whose emails we just agreed to collect and search as of last week. With respect to the list of search terms you asked us to confirm – despite an extensive record of communications on this topic – we will get back to you soon.

**Third**, with respect to your request for the personal and work phone numbers and carriers for more than 70 people, we explained that this request was a harassing attempt to obtain phone records that will not be probative of any disputed issue, much less one of importance. As explained, and as the log of correspondence from the FDA and emails produced show, BioMarin was in regular contact with the FDA and there is no dispute about that. Whether someone spoke with the FDA five times versus four times is of no consequence. And phone records would reveal nothing about the substance of the communications. There simply is no benefit to such invasive discovery, nor is there a reason to burden third parties. If Plaintiff's end goal is to obtain phone records (which Plaintiff admitted), that dispute should be between the parties.

You now ask that we provide such information for 24 employees, including email custodians (whether or not they have purportedly communicated with the FDA, much less by phone) and individuals you claim we identified as having communicated with the FDA (even if not by phone). Putting aside our other objections, what is the basis to ask for phone records for individuals who did not communicate with the FDA by phone? Your demand that we respond by Monday (i.e., today) is unreasonable.

1

**Fourth**, with respect to text messages, your position is ever-changing.  To begin, our understanding was that the parties would defer any discussion about searching and producing text messages until after Defendants completed their document production.  In the email below, you purport to want to know whether we will search text messages of <u>all</u> email custodians, providing no justification for such a broad request.  Previously you demanded that we search text messages of Baffi, Balakrishnan, Bienaimé, Fuchs, Glasscock, Rose, Swann, Waterhouse, and Gu, citing two documents as the basis for your request.

BMRN-ATP_0065989 is an email from Wing Yen Wong to Geoffrey Nichol, copying Hank Fuchs, stating "John and Glenn already texted me."  This does not establish that any email custodians had substantive communications via text.

BMRN-ATP_0044007 is an email from Hank Fuchs to Brad Glasscock that refers to a text message and then discloses the substance of that message that Brad had sent his email update before he received the FDA's reply for a meeting.  While this establishes that Brad Glasscock sent a text message to Hank Fuchs, the substance of that message is already made known by Hank Fuchs' email response.  Are there any other documents justifying your demand as to Hank and Brad?

What is the basis for demanding that we search the text messages of the others?  Please let us know so that we may discuss this with our client.

**Fifth**, attached is a copy of the ESI protocol with a few additional edits in track changes.

**Sixth**, I believe we clawed back 72 documents (not 75).  You demanded that we provide a privilege log as soon as possible, and at the same time refused to state when Plaintiff would provide its privilege log.  Further, it appears that several of the clawed back documents post-date the filing of the complaint and thus Defendants would not be required to log those under the ESI protocol.  What's your position as to those documents?

Amanda A. Main
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
+1 650 843 5914 office
+1 650 849 7400 fax
amain@cooley.com

**From:** Thomas Sperber <Thomas.Sperber@blbglaw.com>
**Sent:** Thursday, September 8, 2022 4:43 PM
**To:** Main, Amanda <amain@cooley.com>; De Jarnette, Brett <bdejarnette@cooley.com>
**Cc:** Walden, Josh <jwalden@cooley.com>; Simmons, Amie <asimmons@cooley.com>; Katie M. Sinderson <KatieM@blbglaw.com>; Abe Alexander <Abe.Alexander@blbglaw.com>; Billy Freeland <Billy.Freeland@blbglaw.com>; Gibbs, Patrick <pgibbs@cooley.com>
**Subject:** BMRN - September 7 M&C

**[External]**

Counsel,

We write to memorialize yesterday's meet and confer and to propose a productive path forward with respect to Lead Plaintiff's Interrogatory No. 5.

*First*, we confirmed that we produced all responsive documents, and provided all responsive information, from ATP that Defendants asked for. We also explained that the computer code that we produced reflected the structure of the algorithm as it existed when ATP was transacting in BioMarin common stock. Accordingly, we asked you to stipulate to a class certification briefing schedule starting with an opening brief deadline of September 16. You stated that September 16 was "not workable" because of "conflicts," and instead asked that we file sometime in late-September or October.

We explained that while we were amenable to pushing the date a few days to accommodate your schedule, we were not willing to delay this process for an additional two weeks *at minimum*.

Please let us know whether this schedule is workable:

- September 16, 2022 – Opening Brief Deadline
- November 15, 2022 – Opposition Brief Deadline
- January 16, 2023 – Reply Brief Deadline

We asked you to give us your position on <u>Monday, September 12</u> so that we can submit a schedule to the Court.

*Second*, we discussed the volume and content of Defendants' upcoming document productions and your ability to meet the September 29 substantial completion date. Initially, you reiterated that you expect to substantially complete production by September 29. You stated that you were working on a production that you expected to make by the end of this week, but that it will consist almost exclusively of documents from just two custodians (Bradley Glasscock and Sabrina Gu). We pointed out that, to date, we have virtually no documents from the majority of custodians. You explained that we would receive at least two more productions in the weeks leading up to September 29 that would not include "new" search terms agreed upon prior to July 27, but would comprise the productions from the remaining 9 custodians (from whom we have received zero documents to date), not counting the additional 4 custodians you proposed in your September 7 email. Documents hitting on "new" terms from July 27 would be produced in following productions that you expect to be insubstantial in volume.  You confirmed that Defendants had been collecting and reviewing documents that hit on all search terms Defendants agreed to on an iterative basis throughout the parties' negotiations leading up to July 27.  You estimated that the total production, after running the last set of search terms that Defendants agreed to in July, and applying those to the custodians that you stated you were willing to add in your September 7 email, would be around 20-25k documents.

Please confirm the number of documents that you've collected that hit on the entire universe of search terms and custodians, including the "new" search terms that you agreed to run in July, and the custodians you stated that you would add in yesterday's email.

Relatedly, you stated on August 23 that you would review the comprehensive list of agreed-upon search terms that we sent you to "confirm that the terms listed were applied." We have not heard back. Please confirm that our understanding of the agreed-upon search terms is accurate, and that all of them will be applied.

*Third*, we asked you to explain your outright refusal to respond to our Interrogatory No. 5, considering that it was a straightforward request for specific information that was clearly relevant to Lead Plaintiff's claims. You argued that asking for cell phone numbers of BioMarin employees was "harassment," and that we'd already received "plenty" of email communications between BioMarin and the FDA. We explained that in a case about *communication* with the FDA, and senior executives' knowledge about said communication (or lack thereof), phone records would be indispensable— *e.g.*, for confirmation purposes if someone were to testify during a deposition that they "talked to someone at the FDA once per week." To the extent you thought that producing cell phone numbers in particular was burdensome, we suggested that if you could confirm that most employees still worked from the office during the Class Period (and thus primarily used office phones for work calls), that we would be amenable to receiving just office phone numbers for the majority of the employees (not including individual defendants and senior executives). You said you would consider that, but characterized it as "busy work." It was clear that you had no intention of agreeing to this reasonable compromise.

We strenuously disagree that a complete response to this interrogatory would be remotely burdensome or irrelevant. Your flat refusal to provide *any* response is inconsistent with your discovery obligations. However, in the spirit of cooperation and moving forward, we propose that you provide the office and cell phone numbers (and respective carriers) of just the following (substantially narrower) list of individuals, which is comprised of the agreed-upon custodians as well as individuals that Defendants have designated as carrying on communications with the FDA:

- Traci McCarty
- Jean-Jacques Bienaime
- Henry Fuchs
- Bradley Glasscock
- Sabrina Gu
- Robert Baffi
- Tammy Rose
- Jennifer Mercer
- Sianna Castillo
- Jessica Swan
- Elizabeth Moyle
- Amy Waterhouse
- Brinda Balakrishnan
- Greg Guyer
- Geoffrey Nichol
- Jeff Ajer
- Jessica Nora
- Kala Jayaram
- Ben Kim
- Keith Life
- Jim Nickas
- Chuck O'Neill
- Harmit Vora
- Stephen Zoog

Please let us know by <u>Monday</u> whether you will provide this information.

*Fourth*, we discussed whether Defendants were refusing to search the text messages of the agreed-upon custodians for responsive documents. You stated that we shouldn't "prioritize texts at this point" because we have not yet reviewed the remainder of your production. However, we explained that considering the fast-approaching substantial completion date, we were in no position to defer discussion of whether you would search for and produce responsive text messages. You stated that you would get back to us on your position. Please confirm whether you will search for and produce text messages of custodians by <u>Monday, September 12</u>.

*Fifth*, we asked that you send a counter-signed copy of the ESI Protocol as soon as possible. You said that you would revert shortly.

*Sixth*, we discussed whether and when you would provide a privilege log for the 75 documents that you have clawed back for privilege. You argued that we would receive a comprehensive privilege log including entries for these documents in the normal course of discovery. We explained that under both the Protective Order and Rule 26(b)(5)(B) we have a right to challenge your privilege designations over these documents pursuant to a separate, more expedient process, and we therefore need your privilege log as soon as possible. You stated that to provide a 75-entry privilege log by next week would potentially result in a brief delay of subsequent document productions. To be clear, we do not see the creation of such a small privilege log to be time-consuming—especially considering your representation that most of these documents stem from the same email chain. Accordingly, we expect that you will promptly produce such a privilege log next week and that your document productions not be materially delayed.

We are reviewing the custodian proposal you sent in your September 7 email and will revert as soon as possible.

Best,
Tom

4

Tom Sperber
**BLB&G**
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 554-1939