BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Counsel for Lead Plaintiff Arbejdsmarkedets
Tillægspension and Lead Counsel for the Class
(additional counsel on signature page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re BioMarin Pharmaceutical Inc. Securities Litigation* | Case No. 3:20-cv-06719-WHO<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SCHEDULING ORDER REGARDING LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

Since Lead Plaintiff filed its Motion, the parties have reached an agreement in principle on proposed dates for class certification briefing: Lead Plaintiff will file its opening brief on October 17, 2022 and Defendants will file their opposition brief on December 16, 2022—75 days from now. ECF No. 100. Critically, however, Defendants still insist that all class certification briefing should be frozen until the Court rules on their discovery motion. Defendants' position is puzzling, because even assuming that such discovery is relevant—which it is not[1]—Plaintiff <u>has already produced</u> almost every piece of information Defendants contend should delay the briefing process.

While Defendants claim to have been denied copious discovery, in both their Discovery Statement and Opposition to the Motion, they identify just four pieces of information they claim they need. <u>First</u>, Defendants seek "the specific inputs and information that triggered each trade in BioMarin stock." Opp. at 5; Discovery Statement at 1. As Lead Plaintiff has repeatedly explained—and Defendants have known for <u>months</u>—the inputs into the algorithm were publicly available historical data concerning BioMarin's common stock prices and performance, all provided to Lead Plaintiff through a live feed from a third party. Lead Plaintiff has also repeatedly explained that Lead Plaintiff <u>did not store this data</u> (even assuming it is appropriate for BioMarin to demand publicly available information concerning its own stock price and performance). Defendants could have issued a subpoena to the third party that provided the inputs (a course Lead Plaintiff suggested weeks ago). Their failure to do so indicates that delay, not information, is Defendants' true goal.

<u>Second</u>, Defendants ask "whether [the algorithm] could stop trades." Joint Statement at 3. ATP has already addressed this in a verified interrogatory on June 27, 2022 (ECF No. 97-1),

---

[1] *See* Discovery Statement (ECF No. 97, "Discovery Statement") at 5 n.3. Defendants continue to rely exclusively on the Southern District of New York's post-trial decision in *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88 (S.D.N.Y. 2013). But even the Court in *Vivendi* recognized that it should be "sharply limited to its unusual facts." *Id.* at 102. Any further discovery on this topic would be disproportionate to the needs of this case.

answering that question in the affirmative and confirming that the automated process by which the algorithm could stop trades did not stop trades in BioMarin stock during the Class Period.

Third, Defendants seek facts about "how the model determines how much stock to trade." Joint Statement at 3. Once again, Defendants seek information that is not relevant, and they have never made any attempt to explain its relevance. Nevertheless, this information was made available to Defendants through ATP's production of the algorithm nearly one month ago.

Fourth, Defendants seek the identity of the person who "developed" ATP's model. *Id*. Again, Defendants have never made any attempt to explain the relevance of this information. The answer to this vague question would be sprawling and unhelpful, even if it were ascertainable, given the iterative, multi-year existence of the algorithm.

While Defendants took a second bite at the apple to argue their discovery motion in their Opposition, they do not try to rebut these basic facts. Instead, despite the fact that every piece of information they identify has been produced (or is not relevant), they continue to ask this Court to order vague relief of further "complete" answers to their interrogatories before class certification briefing can even begin. Particularly since Defendants will have sixty days with which to depose Lead Plaintiff's representative about the algorithm before their opposition is due—should they choose to notice such a deposition—Defendants' unusual demand of this Court should be rejected.

Finally, Defendants drastically misstate the discovery record. Defendants' claim that Lead Plaintiff drove the delay in briefing class certification is simply untrue. Defendants waited nearly two months to even serve any discovery requests, and—notwithstanding Lead Counsel's offer to meet and confer—waited an additional six weeks to meet and confer concerning Lead Plaintiff's objections to those requests and the implementation of appropriate search terms. Once the parties conferred in late May, Lead Plaintiff moved quickly to complete its email production, which it substantially did in early July 2022. Due to this delay—and Defendants' new demand for additional documents before briefing could even begin—Lead Plaintiff informally proposed minor delays to the class certification schedule, to which Defendants agreed. Further, while Defendants complain that it took Lead Plaintiff six weeks to produce ATP's algorithm (Opp. at 1), Plaintiff

was transparent about the reasons for potential delay: producing ATP's most sensitive data—in hopes that voluntary production of the algorithm would obviate a dispute before this Court—was an extraordinary ask requiring navigating internal administrative permissions.[2] In other words, the delay was intended to accommodate Defendants' discovery needs—precisely the opposite of delaying and "resist[ing] important discovery."[3]

Lead Plaintiff's swift attention to its discovery obligations stands in stark contrast to BioMarin's document production. Defendants represented to the Court on February 23, 2022 that they would "make a good faith effort to complete rolling production from the Individual Defendants and [3 other] employees" by June 3, 2022 and to make rolling productions thereafter of all custodians. ECF No. 87 at 16. However, in the six months that followed, Defendants produced documents almost exclusively from the two Individual Defendants and failed to produce documents from the vast majority of agreed-upon custodians until a "document dump" on the last day for Defendants' purported substantial completion of document production—September 29.

Even if Defendants' counter-factual narrative was accurate (which it is not), that would have no bearing on the need to have a reliable schedule for class certification. The generous allotment of time proposed for Defendants to oppose class certification—60 days, on top of the months of discovery to date—should be more than sufficient for briefing to begin on October 17.

---

[2] As Defendants also knew at the time, ATP's Danish in-house counsel was out of the office and thus could not obtain those permissions until he returned. *See* Decl. of A. Main (ECF No. 99-1 at ¶16).

[3] The Declaration of Amanda A. Main (ECF No. 99-1) is riddled with further mischaracterizations of the record, including references to Lead Plaintiff's purported "position that it would not search the Danish version of any search terms." But Lead Plaintiff asked Defendants to propose Danish-term equivalents weeks ago and Defendants never proposed any. Decl. of A. Main Ex. A, at 7-10. Lead Plaintiff also explained that the only search terms that returned hits were broad case-specific proper nouns (like "BioMarin," "Fuchs," "Bienaime," and "valrox") and thus do not have Danish equivalents. *Id.* at 7. Notably, the terms that Defendants want translated had a 0% responsiveness rate in the substantial English-language population of Lead Plaintiff's documents. ECF No. 94-3.

Dated: October 3, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

By:    _/s/ Katherine M. Sinderson_
         Katherine M. Sinderson

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (*pro hac vice*)
billy.freeland@blbglaw.com
THOMAS Z. SPERBER *(pro hac vice)*
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Attorney for Lead Plaintiff Arbejdsmarkedets Tillægspension and Lead Counsel for the Class*