1   **BERNSTEIN LITOWITZ BERGER**
      **& GROSSMANN LLP**
2   JONATHAN D. USLANER (Bar No. 256898)
    (jonathanu@blbglaw.com)
3   2121 Avenue of the Stars, Suite 2575
    Los Angeles, CA 90067
4   Telephone: (310) 819-3472

5   SALVATORE GRAZIANO (*pro hac vice*)
    salvatore@blbglaw.com
6   JEROEN VAN KWAWEGEN (*pro hac vice*)
    jeroen@blbglaw.com
7   KATHERINE M. SINDERSON (*pro hac vice*)
    katiem@blbglaw.com
8   ABE ALEXANDER (*pro hac vice*)
    abe.alexander@blbglaw.com
9   WILLIAM E. FREELAND (*pro hac vice*)
    Billy.freeland@blbglaw.com
10  THOMAS Z. SPERBER (*pro hac vice*)
    thomas.sperber@blbglaw.com
11  1251 Avenue of the Americas
    New York, NY 10020
12  Telephone: (212) 554-1400

13  *Counsel for Lead Plaintiff and the Class*

14  [Counsel for Defendants listed in signature block]

15              **UNITED STATES DISTRICT COURT**

16           **NORTHERN DISTRICT OF CALIFORNIA**

17               **SAN FRANCISCO DIVISION**

18  IN RE BIOMARIN PHARMACEUTICAL        Case No. 3:20-cv-06719-WHO
    INC. SECURITIES LITIGATION
19                                       **JOINT STATEMENT REGARDING**
                                         **DISCOVERY DISPUTE**
20
21                                       Judge:    Hon. William H. Orrick

22

23

24

25

26

27

28

Pursuant to the Court's Standing Order for Civil Cases, the Parties submit this Joint Statement Regarding Discovery Dispute and confirm they have met and conferred.

## I. Plaintiff's Position

For more than five months, Defendants stonewalled Plaintiff's request for text messages from key custodians in this action. And for more than three months, Defendants resisted a straightforward interrogatory ("Interrogatory No. 5") requesting cell phone and office phone numbers and carriers for key BioMarin employees whom Defendants themselves identified as being involved in the issues central to this case. This is rudimentary discovery. Yet despite repeated meet and confers and substantial compromise proposals by Plaintiff, Defendants made only trivial concessions on text messages and flatly refused to compromise in any way on Interrogatory No. 5. As set forth below, the Court should order Defendants to comply with this discovery.

**Text Messages.** Plaintiff has been clear throughout discovery that text messages are a responsive form of communication to Plaintiff's document requests. *See* Plaintiff's First Request for the Production of Documents (Exhibit A at 2). Such discovery is commonplace—particularly given the recent acceleration of text messages as a form of informal communication. *See Alejandro v. ST Micro Elecs., Inc.*, 2016 WL 2939939, at *2 (N.D. Cal. Mar. 28, 2016) (requiring production of responsive text messages over defendants' objections); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) ("It is well established that text messages 'fit comfortably within the scope of materials that a party may request under Rule 34.'"). The Class Period here covers the height of the pandemic, when BioMarin employees were working from home.[1] And while there is no reason that employees would reference text messages in emails, Plaintiff has been able to provide such an example, including the Head of Global Regulatory Affairs Bradley Glasscock texting with Defendant Henry Fuchs about issues directly related to this case.

For months, Defendants delayed discussion of text messages until they completed their

---

[1] The COVID-19 pandemic accelerated the use of text messaging for work, prompting regulators to increase their focus on how companies manage and preserve this data. See U.S. Regulators Increase Enforcement Relating to Chat and Text Communications, Including on Personal Devices, available at https://www.paulweiss.com/media/3981626/us_regulators_increase_enforcement_relating_to_chat_and_text_communications_including_on_personal_devices.pdf

email production, declining to even confirm whether they have imaged the phones for the twenty agreed-upon ESI custodians.[2] Defendants also refused to provide any data demonstrating disproportionality or any caselaw supporting the notion that text messages should not be produced. Following weeks of discussions during which Plaintiff sought to avoid Court intervention by offering a series of compromises[3] (including, for the purposes of compromise only, limiting the request to nine key custodians[4]), Defendants "final compromise" was to "search the text messages of the Individual Defendants only" because supposedly only the Individual Defendants' texts are relevant to scienter. This is wrong. Communications in the files of non-defendant executives certainly bear on the information available to and known to the Individual Defendants. Moreover, there is simply "no requirement 'that the same individual who made an alleged misstatement on behalf of a corporation personally possessed the required scienter.'" *In re Marsh & McClennan Cos, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006); *accord SEC v. City of Victorville*, 2018 WL 3201676, at *3 (C.D. Cal. Jan. 24, 2018).

The Court should compel Defendants to preserve, search, and produce text messages from each of the BioMarin custodians from which Defendants have agreed to produce ESI.[5]

**Phone numbers and carriers.**  Interrogatory No. 5 requests the office and cell phone numbers of key BioMarin employees (to the extent cell phones were used to conduct business), and the carriers for those phone numbers. This information will allow Plaintiff to seek basic third-party discovery evidencing key individuals' call and text history. Among other things, BioMarin's communications (or lack thereof) with the FDA are material to the alleged fraud. *See, e.g.*, ECF No. 77 at 17, 21. Further, communications among key employees (including the records

---

[2] To be clear, Defendants have still not finalized their email production.

[3] Defendants claim Plaintiff refused to agree to search terms. But Plaintiff made the following offer: "Our concern about text messages is that the search terms we agreed to for email searches are not workable for text messages—people text with a different syntax [when] they write emails. However, we are willing to discuss other ways to cull the messages for review if Defendants would provide us with a sense of volume of text messages to be searched." Defendants declined.

[4] Jean-Jacques Bienaimé, Henry Fuchs, Robert Baffi, Brinda Balakrishnan, Bradley Glasscock, Tammy Rose, Jessica Swann, Amy Waterhouse, and Sabrina Gu.

[5] Text messages include, *inter alia*, messages via SMS, WhatsApp, and Signal, or any other messaging platform.

demonstrating the existence of messages) could provide probative information for which there is zero burden on Defendants to produce. Courts in this Circuit and elsewhere have routinely ordered such discovery. *See*, *e.g.*, *Herbalife Int'l of Am., Inc. v. Ford*, 2009 WL 10715605 (C.D. Cal. Mar. 6, 2009) (ordering defendants to respond to interrogatories seeking phone numbers and carriers). Particularly given that in-person communications were largely impossible during this time, such records are even more relevant.

Defendants objected in full to these Interrogatories. *See* Defendants' Responses and Objections to Plaintiff's First Set and Second Set of Interrogatories (Exhibits B and C, respectively). Plaintiff, again seeking to avoid Court intervention, reduced the number of requested phone numbers by 65%. Defendants continued to refuse to produce the information requested. Instead, Defendants claimed (without elaboration) that this request is "harassing." There is simply no basis for this assertion, and Defendants have not attempted to provide any such basis.

The Court should compel Defendants to provide work and cell phone numbers and carriers for the employees referenced in Exhibits B and C.

## II.   Defendants' Position

In an effort to avoid Court intervention, Defendants have undertaken an enormous burden in acceding to Plaintiff's endless discovery demands, including applying hundreds of search terms, adding email custodians, and investing more than 4,000 hours reviewing documents. Plaintiff demands that Defendants review text messages for 20 email custodians, including those who do not discuss business via text, without regard to proportionality. Defendants offered to review the text messages of the individual Defendants—i.e., the individuals who made all but one allegedly misleading statement and the only individuals whose state of mind is relevant.[6] Plaintiff refused.

Plaintiff also demands that Defendants provide cell phone and office phone numbers, with carrier information, for over 70 current and former BioMarin employees so Plaintiff can subpoena the carriers for records of each person's call and text message history (including personal calls and

---

[6] The only other challenged statement is a May 2020 press release and is indisputably accurate, as documents produced to Plaintiff have established.

messages).  Plaintiff argues this information is relevant to its allegation that BioMarin had "no dialogue whatsoever" with the FDA in the summer of 2020, yet only a handful of these individuals spoke with FDA by phone and Plaintiff has already received abundant discovery relating to FDA communications from Defendants (including summaries of phone calls) and from the FDA (including a log of communications with BioMarin).  To the extent phone records have some marginal relevance, any dispute over those records should be between Plaintiff and Defendants.

**Text Messages.**  Plaintiff makes unreasonable, sweeping demands that Defendants review (without applying search terms) text messages from 20 custodians over an 18-month period.[7]  This is not proportional to the needs of this case.  To compromise, Defendants offered to review text messages for the individual Defendants—the two individuals who made the statements at issue and the only individuals whose state of mind is relevant to scienter.  In the Ninth Circuit, "[a] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter."  *In re Apple Comput., Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002); *see also In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1032 (S.D. Cal. 2014) (scienter not alleged based on non-speaker employee's knowledge of misconduct).  The cases Plaintiff cites support Defendants' position and do not impute scienter from other employees for statements made by certain individuals.  *See In re Marsh & McClennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 483-87 (S.D.N.Y. 2006) (focusing solely on individual defendants' scienter for statements made by them); *SEC v. City of Victorville*, 2018 WL 3201676, at *3 (C.D. Cal. Jan. 24, 2018) (imputing scienter of employee with central role in preparing statements made by the entity and not any individual).

To the extent the individual Defendants have relevant text messages with others (including other custodians), those would be produced.  There is no justification for requiring the review of all text messages on the phones of 18 other individuals, including individuals who did not have

---

[7] Plaintiff claims Defendants "stonewalled" its request for more than 5 months, but that's not true. At the outset and consistent with the ESI Guidelines, Defendants made it clear they would prioritize discovery from sources most likely to contain relevant information (e.g., the regulatory file, emails) and postpone or avoid discovery from sources less likely to have discoverable information (e.g., text messages).  Plaintiff did not raise the issue again until August 30.

substantive business discussions via text.  When asked to justify its request, Plaintiff pointed to a single email referring to a text that was sent to an individual Defendant (whose messages Defendants had offered to review even though the email disclosed the substance of the text).

Defendants have largely accommodated Plaintiff's stream of demands to apply hundreds of search terms, add custodians, etc., and have expended significant resources reviewing documents, including more than 4,000 hours of time by contract attorneys and hundreds of hours of Cooley attorney time.  To the extent the Court requires Defendants to review any texts, it should be limited to texts on the phones of the individual Defendants, exchanged with BioMarin employees, and sent during the Class Period (March 3, 2020 through August 18, 2020).  *See, e.g.*, *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 8895081, at *4 (C.D. Cal. Dec. 15, 2021) (limiting production of text messages by defendants to key time period).[8]

**Phone Records.**  Plaintiff's Interrogatory No. 5 seeks cell phone and office phone numbers and carrier information for 70+ current or former employees so Plaintiff can subpoena records of call and text history.  Plaintiff argues these records are relevant to the frequency of BioMarin's communications with the FDA.  However, most of these individuals did not communicate with FDA, let alone by phone.  Further, the exact number of times an individual spoke with the FDA is of no consequence to Plaintiff's allegation that Defendants failed to disclose they had "***no dialogue whatsoever***" with FDA from April to August 2020.  (ECF 54 at ¶ 2.)  Defendants have already produced documents demonstrating that BioMarin regularly communicated with the FDA and showing the substance of those communications, including summaries of phone calls.  The FDA also produced a log of its communications with BioMarin.  Unlike the case cited by Plaintiff, which was limited to phone numbers used by individual defendants, the 70+ individuals whose information is at issue (including personal information) are not parties to this lawsuit.  Defendants' objections to this request should be sustained as there is nothing to be gained from this discovery.

---

[8] The cases cited by Plaintiff do not support its broad demand.  *See Alejandro v. ST Micro Elecs., Inc.*, 2016 WL 2939939, at *2 (N.D. Cal. Mar. 28, 2016) (requiring texts between two people where testimony indicated texts existed that were extremely probative of key issues); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) (referencing prior order that *defendants* produce texts and resolving motion for sanctions for failure to preserve text messages).

1   Dated: November 9, 2022                     Respectfully submitted,

2                                               **BERNSTEIN LITOWITZ BERGER &**
                                                **    GROSSMANN LLP**
3
                                                */s/ Katherine M. Sinderson*
4                                               SALVATORE GRAZIANO (*pro hac vice*)
                                                (salvatore@blbglaw.com)
5                                               JEROEN VAN KWAWEGEN (*pro hac vice*)
                                                (jeroen@blbglaw.com)
6                                               KATHERINE M. SINDERSON (*pro hac vice*)
                                                (katiem@blbglaw.com)
7                                               ABE ALEXANDER (*pro hac vice*)
                                                (abe.alexander@blbglaw.com)
8                                               WILLIAM E. FREELAND (*pro hac vice*)
                                                billy.freeland@blbglaw.com
9                                               THOMAS Z. SPERBER (*pro hac vice*)
                                                thomas.sperber@blbglaw.com
10                                              1251 Avenue of the Americas
                                                New York, NY 10020
11                                              Telephone: (212) 554-1400

12                                              JONATHAN D. USLANER (Bar No. 256898)
                                                (jonathanu@blbglaw.com)
13                                              2121 Avenue of the Stars, Suite 2575
                                                Los Angeles, CA 90067
14                                              Telephone: (310) 819-3472

15                                              *Lead Counsel for Lead Plaintiff*
                                                *and the Class*
16

17                                              COOLEY LLP

18                                              */s/ Patrick E. Gibbs*
                                                JOHN C. DWYER (Bar No. 136533)
19                                              dwyerjc@cooley.com
                                                PATRICK E. GIBBS (Bar No. 183174)
20                                              pgibbs@cooley.com
                                                Amanda A. Main (Bar No. 260814)
21                                              amain@cooley.com
                                                3175 Hanover Street
22                                              Palo Alto, CA 94304-1130

23                                              *Counsel for Defendants BioMarin*
                                                *Pharmaceutical Inc., Jean-Jacques*
24                                              *Bienaimé and Henry J. Fuchs*

25

26

27

28

---

## ATTESTATION PURSUANT TO CIV. L.R. 5-1(h)(3)

Pursuant to Civ. L.R. 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.


Dated: November 9, 2022                    */s/ Katherine M. Sinderson*
                                           Katherine M. Sinderson