# Exhibit A

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (*pro hac vice*)
william.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Counsel for Lead Plaintiff Arbejdsmarkedets*
*Tillægspension and Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

IN RE BIOMARIN PHARMACEUTICAL
INC. SECURITIES LITIGATION

Case No. 3:20-CV-06719-WHO

The Honorable William H. Orrick

**PLAINTIFFS' FIRST REQUEST FOR THE**
**PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS**
**BIOMARIN PHARMACEUTICAL, INC.,**
**JEAN-JACQUES BIENAIMÉ, AND HENRY J. FUCHS**

Lead Plaintiff Arbejdsmarkedets Tillægspension ("ATP" or "Lead Plaintiff"), by and through their undersigned counsel, hereby propound Plaintiffs' First Request for the Production of Documents Directed to Defendants BioMarin Pharmaceutical Inc. ("BioMarin" or the "Company"), Jean-Jacques Bienaimé ("Bienaimé"), and Henry J. Fuchs ("Fuchs") (together with BioMarin, "Defendants") in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court. Plaintiffs request that Defendants produce the documents described below for inspection and copying at the offices of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, New York 10020 within the time period mandated by the Rules, or at such other time and place as the parties mutually agree.

## DEFINITIONS

The following definitions apply to each request for Documents (defined below) set forth herein and are deemed to be incorporated in each Request.

1.    "BLA" means an FDA biologics license application.

2.    "Class Period" refers to the period March 3, 2020 to August 18, 2020, inclusive.

3.    "Control Period" refers to the period September 2, 2019 to March 2, 2020, inclusive.

4.    "Communications" means the transmission, sending, or receipt of information in any form, oral or written, including voicemails, electronic mail, text messages, instant messages, any contemporaneous or non-contemporaneous exchange of information on any social media or technology platform including but not limited to Facebook, Google, Google Chat, LinkedIn, Twitter, or Instagram, sound, radio or video signals, telecommunication, telephone (including text messages), facsimile, mail, film, photographic film of all types, or Documents (defined below).

5.    The "Company" or "BioMarin" means BioMarin Pharmaceutical, Inc. and all of its present and former divisions, subsidiaries, affiliates, predecessors, successors, present and former officers, directors, and employees.

6.    "Valrox CRL" refers to the Complete Response Letter BioMarin received from the FDA in connection with the Valrox BLA.

7.     "Concerning" or "relating to" means consisting of, referring to, reflecting, describing, evidencing, constituting, or being in any way legally, logically, or factually connected with the matter discussed.

8.     The "Complaint" means the Amended Class Action Complaint for Violations of the Federal Securities Laws, filed in the above-captioned action on February 22, 2021 (ECF No. 54).

9.     "Defendants" means BioMarin and the Individual Defendants (defined below).

10.     "Document" or "Documents" shall have the same meaning and be equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). For the avoidance of any doubt, Documents includes Communications. A draft or non-identical copy is a separate Document within the meaning of this term.

11.     "Electronically stored information" or "ESI" has the same meaning and is equal in scope to the usage of the term in the Sedona Conference Definitions (defined below), and includes, without limitation, the following:

(a)     All items covered by Federal Rule of Civil Procedure 34(a)(1)(A);

(b)     Information or data that is generated, received, processed, and recorded by computers or other electronic devices, including Metadata;

(c)     Internal or external websites;

(d)     Output resulting from the use of any software program, including but not limited to, any word-processing Documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, AOL or Bloomberg Instant Messenger (or similar program), bulletin-boards programs, operating systems, source codes, PDF files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, deleted file, or file fragment; and

(e)     All items stored on Electronic Media (defined below).

12. "Electronic Media" means any magnetic or other storage media device used to record ESI.

13. "FDA" means the United States Food & Drug Administration.

14. "Government" or "Governmental" refers to any local, state, or federal governmental or administrative entity, whether domestic or foreign, including the Department of Justice, FDA and SEC (as defined herein).

15. "Including" means including, but not limited to.

16. "Individual Defendants" means Jean-Jacques Bienaimé and Henry J. Fuchs.

17. "Metadata" has the same meaning and is equal in scope to the usage of the term in the Sedona Conference Definitions and means data that describes the characteristics, history, tracking, or management of ESI, including but not limited to all information concerning the dates and times the Documents were created, modified, or distributed, the format of the Documents, the owner or custodian of the Documents, the authors and recipients (including "bcc" recipients of the Documents), and the substance of changes to the Documents.

18. "Paragraph" or "¶" corresponds to paragraphs in the Complaint.

19. "PDUFA Date" means the FDA's August 21, 2020 deadline to complete its review of the Valrox (defined below) BLA.

20. "Phase I/II Trial" means BioMarin's clinical of Valrox, titled "A Phase 1/2, Dose-Escalation, Safety, Tolerability and Efficacy Study of Valoctocogene Roxaparvovec, an Adenovirus-Associated Virus Vector-Mediated Gene Transfer of Human Factor VIII in Patients With Severe Haemophilia A," initiated in 2015, BMN 270-201, NCT02576795.

21. "Phase III Trial" refers to BioMarin's clinical trial of Valrox, titled "A Phase 3 Open-Label, Single-Arm Study To Evaluate The Efficacy and Safety of BMN 270, an Adeno-Associated Virus Vector-Mediated Gene Transfer of Human Factor VIII in Hemophilia A Patients With Residual FVIII Levels $\leq$ 1 IU/dL Receiving Prophylactic FVIII Infusions," initiated in 2017, BMN 270-301, NCT03370913.

22.     "May 2020 Offering" means the private placement of $550 million aggregate principal amount ($600 million with initial purchasers exercise of their option) of 1.25% senior subordinated convertible notes due 2027, announced on May 11, 2020, described at paragraphs 95-96 of the Complaint.

23.     "SEC" means the United States Securities and Exchange Commission.

24.     "Sedona Conference Definitions" means The Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition – July 2014 Version).

25.     "Valrox" means valoctocogene roxaparvovec.

26.     "Valrox BLA" means the biologics license application ("BLA") BioMarin submitted in December 2019 seeking FDA (defined below) approval to market Valrox (defined below).

27.     "Valrox Late-cycle Meeting" refers to the June 2020 meeting between BioMarin and the FDA, referred to in paragraphs 98-99 of the Complaint.

28.     "Valrox Mid-cycle Meeting" refers to the April 2020 meeting between BioMarin and the FDA, referred to in paragraph 82 of the Complaint.

29.     "Valrox PAI" refers to any planned or proposed preapproval inspection of any BioMarin facility by the FDA in connection with the agency's review of the Valrox BLA.

30.     "You" and "Your" means Defendants.

**INSTRUCTIONS**

1.     All discovery requests shall be construed pursuant to the applicable Federal Rules of Civil Procedure and Local Rules of this Court.

2.     In producing Documents and other materials, You are requested to furnish all Documents (including ESI) or things (including Electronic Media) in Your possession, custody or control, regardless of whether the Documents or materials are possessed directly by You or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by Your attorneys or their agents, employees, representatives, or investigators.

This includes all responsive Documents and materials stored in any hard copy library maintained by BioMarin.

3.     Pursuant to Federal Rule of Civil Procedure 34(b), Documents shall be produced as they are kept in the usual course of business so that Plaintiff can ascertain the files in which they were located, their relative order in the files, and how the files were maintained. Documents stored in electronic form or format of any kind are to be produced in their standard black-and-white, single-page Group 4 TIFF image format with Opticon image and Concordance data load files containing their corresponding extracted text and related Metadata fields. Dynamic files (e.g., databases, spreadsheets, project files, and slide presentations) and Documents prepared, organized, or managed using any proprietary software system shall be produced in original native format with all accompanying Metadata, and any software necessary to utilize those Documents as they are used in the ordinary course of business shall also be made available if that software is not readily commercially available. For comparison purposes and to ensure authenticity, where Documents are produced in native format, such Documents shall also be produced in TIFF format. Plaintiff reserves the right to request that additional Documents be produced in native format. Documents attached to each other should not be separated.

4.     Documents shall be produced in such a fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each Document's custodian(s). ESI shall be preserved in such a fashion as to identify the file path, the source or custodian, and all relevant Metadata. Electronic Media such as backup tapes shall be preserved to the extent that such media is the only source of ESI that is responsive to these requests.

5.     A copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document – whether by reason of Metadata that differs in any respect, or by reason of any handwritten or other notation or any omission – constitutes a separate Document and must be produced, whether or not the original of the Document is within Your possession, custody,

or control. Accordingly, all prior versions and all drafts of all Documents and emails must be produced.

6.      If any otherwise responsive Document was, but is no longer in existence or in Your possession, custody, or control, state, in writing, whether the Document: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred or delivered, voluntarily or involuntarily, to another person or entity, the name and address of that person or entity, and at whose request the transfer or delivery was made; or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding, and the date or approximate date of, the disposition.

7.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

8.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document requests all responses that might otherwise be construed to be outside their scope.

9.      The use of the singular form of any word includes the plural and vice versa.

10.     If no Documents or materials exist that are responsive to a particular request, state so in writing.

11.     If You redact information or otherwise withhold information or Documents (including attachments to Documents) responsive to these Document requests based upon any claim of privilege (including work product), or for any other reason, provide a log that includes all necessary information to evaluate a claim of privilege (if the privilege is governed by state law, indicate the jurisdiction whose privilege rule is being invoked), including: (i) the specific privilege asserted or other particular reason relied upon for not producing the Document or information; (ii) the date of the Document and any different date when it was prepared; (iii) the author, addressee(s) and copyee(s) of each Document; (iv) the subject matter of the Document or information withheld; (v) the medium (e.g., paper or electronic); (vi) the type (e.g., letter, memorandum, presentation); any other information as is sufficient to identify the Document for a subpoena duces tecum, including the author of the Document, the addressees of the Document, any other recipients shown

in the Document, and the relationship of the author, addressees, and recipient to each other; and every fact or basis upon which You claim any privilege.

12.    Notwithstanding the assertion of any objection to production, any Document as to which an objection is raised containing non-objectionable matter that is responsive to these requests must be produced, but that portion of the Document for which the objection is asserted may be withheld or redacted provided that the Document is marked with the legend "Redacted" so as to reflect all portions that have been redacted, and provided that the requested information in Instruction No. 13 above is furnished.

13.    These requests are continuing so as to require supplemental responses as specified in Federal Rule of Civil Procedure 26(e). Each supplemental response shall be served on Plaintiff within five (5) business days of the discovery or creation of such additional Documents.

## RELEVANT TIME PERIOD

Unless otherwise stated in a Document request, all Documents and Communications requested are for the period from June 1, 2018 through December 31, 2020 (the "Relevant Time Period"), and shall include all Documents and Communications that relate, in whole or in part, to such period even though dated, prepared or received before or after that period. If a Document or Communication is not dated and the date of its preparation cannot be determined, it shall be produced if otherwise responsive to these requests.

## REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 1**

All Documents concerning the Valrox BLA, including all Documents concerning:

    (a) the timeline, schedule, or calendar of the review cycle for the Valrox BLA, including the scheduling of any milestones, meetings, inspections, submissions, or discussions and any changes thereto;

    (b)    FDA regulations, guidance, policy, or practice concerning the timing and/or conduct of any milestones, meetings, inspections, submissions, or discussions in connection with the agency's review of a BLA;

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NO. 3:20-CV-06719-WHO                                                                                    8

(c)    all Communications with the FDA in connection with the Valrox BLA, including all Documents concerning the Valrox Mid-cycle Meeting and Late Cycle Meeting and any pre- or post-meeting memoranda or packages;

(d)    any labeling review and/or the Valrox label;

(e)    post-marketing commitments, surveillance, or requirements;

(f)    the PAI;

(g)    BioMarin's understanding and expectations concerning the BLA approval process and cycle, including the timing, substance, requirements, and processes relating to approval milestones and meetings, including the Valrox Mid-cycle Meeting and Late Cycle Meeting; and

(h)    the likelihood, outlook, prospect, or probability that Valrox would be approved by the PDUFA Date.

**DOCUMENT REQUEST NO. 2**

All Documents concerning the substance or frequency or BioMarin's Communications with the FDA in connection with the Valrox BLA, including all Documents concerning:

(a)    BioMarin's understanding and expectations concerning the frequency, substance, or character of communications with FDA concerning a BLA that had received a Breakthrough Therapy designation;

(b)    BioMarin's understanding and expectations concerning the frequency, substance, or character of communications with FDA concerning the Valrox BLA;

(c)    BioMarin's inability, difficulty, or challenges in Communicating, or securing meetings, with the FDA regarding the Valrox BLA;

(d)    the infrequency, sparseness, insubstantial character of BioMarin's Communications with the FDA in connection with the Valrox BLA;

(e)    the seniority of FDA personnel participating in Communications with BioMarin in connection with the Valrox BLA;

(f) any unusual or unexpected feature, character, or component of BioMarin's communications with the FDA in connection with the Valrox BLA; and

(g) any changes in the character of communications with FDA about the Valrox BLA (whether before or after submission), including changes in frequency, substance, detail, or personnel involved in the Communications.

**DOCUMENT REQUEST NO. 3**

All Documents concerning the FDA's January 2020 guidance titled, "Human Gene Therapy for Hemophilia," including all Documents concerning the relevance of that guidance to the Valrox BLA.

**DOCUMENT REQUEST NO. 4**

All Documents concerning the Valrox PAI, including all Documents concerning:

(a)     all Communications with the FDA concerning the PAI;

(b)     the PAI's role, significance, or import in the FDA's review of the Valrox BLA, including the weight the FDA would or did assign to the PAI in determining whether to approve the Valrox BLA;

(c)     the scheduling of the PAI;

(d)     any delay, postponement, or cancellation of the PAI, including the reasons for such delay, postponement, or cancellation;

(e)     BioMarin's response or reaction to any delay, postponement, or cancellation of the PAI;

(f)     BioMarin's understanding of the PAI process, including when and how PAIs are conducted; and

(g)     FDA guidance, policy, or practice concerning PAIs.

**DOCUMENT REQUEST NO. 5**

All Documents and Communications concerning the Valrox Mid-cycle Meeting, including all Documents concerning:

(a)    any Documents, including minutes, memoranda, questions, or data packages, the FDA provided to BioMarin in connection with the Mid-cycle Meeting;

(b)    any Communications in connection with the Mid-cycle Meeting concerning Valrox's efficacy, safety, or durability, including "the trajectory of the future of Factor VIII expression" of Valrox and the relationship between Factor VIII activity and clinical efficacy of Valrox;

(c)    any Communications in connection with the Mid-cycle Meeting concerning any clinical trial(s) of Valrox, including the Phase I/II and Phase III trials;

(d)    any Communications in connection with the Mid-cycle Meeting concerning Valrox's manufacturing;

(e)    any Communications in connection with the Mid-cycle Meeting concerning FDA regulations or guidance, including the FDA's January 2020 guidance titled, "Human Gene Therapy for Hemophilia"; and

(f)    BioMarin's Communications or attempted Communications with the FDA on any issue, subject, or matter discussed at the Mid-cycle Meeting.

**DOCUMENT REQUEST NO. 6**

All Documents concerning the Valrox Late-cycle Meeting, including all Documents concerning:

(a)    any Documents, including minutes, memoranda (including the pre-meeting memorandum), questions, or data packages, the FDA provided to BioMarin in connection with the Late-cycle Meeting;

(b)    any Communications in connection with the Late-cycle Meeting concerning Valrox's efficacy, safety, or durability, including "the trajectory of the future of Factor VIII expression" of Valrox and the relationship between Factor VIII activity and clinical efficacy of Valrox;

(c)    any Communications in connection with the Late-cycle Meeting concerning any clinical trial(s) of Valrox, including the Phase I/II and Phase III trials;

(d)    any Communications in connection with the Late-cycle Meeting concerning Valrox's manufacturing;

(e)    any Communications in connection with the Late-cycle Meeting concerning FDA regulations or guidance, including the FDA's January 2020 guidance titled, "Human Gene Therapy for Hemophilia"; and

(f)    BioMarin's Communications or attempted Communications with the FDA on any issue, subject, or matter discussed at the Late-cycle Meeting.

**DOCUMENT REQUEST NO. 7**

All Documents concerning BioMarin's August 17, 2020 meeting with the FDA.

**DOCUMENT REQUEST NO. 8**

All Documents concerning the CRL, including all Documents concerning BioMarin's August 19, 2020 press release announcing receipt of the CRL.

**DOCUMENT REQUEST NO. 9**

All Documents concerning Defendants' statements following the conclusion of the Class Period about Valrox, the Valrox BLA, and BioMarin's Communications with the FDA concerning the same, including Defendants' statements that:

(a)    BioMarin "had no dialogue whatsoever with the agency [FDA]";

(b)    "So there has been no dialogue [with the FDA] . . . .  And it's often in that dialogue that you can lay issues to rest and -- through [discussions about] labeling or post-approval studies, et cetera. So we're just going to be beginning that process, unfortunately, now after the CRL is received";

(c)    "Well, it's going to sound funny, but the biggest issue that we had was to convince [the FDA] to have a discussion with us of any kind"; and

(d)    "we had so little communication with the agency about the review."

This Request includes a Request for all Documents supporting the truth and accuracy of the foregoing statements.

**DOCUMENT REQUEST NO. 10**

All Documents concerning BioMarin's implementation of "a lockdown on communication of [its] regulatory status," including all Documents concerning the timing of the "lockdown" and the reasons the lockdown was implemented, Defendants' compliance with this "lockdown."

**DOCUMENT REQUEST NO. 11**

All Documents and Communications concerning the actual, possible, suspected or potential inaccuracy or incompleteness of any statements concerning Valrox, Valrox clinical trials, the BLA review process, the Pre-Approval Inspection, or the FDA review of Valrox that You made (or failed to make) to any person, including, any Government agency, investor, and securities analyst.

**DOCUMENT REQUEST NO. 12**

All Documents concerning any actual, suspected, or potential defects, flaws, concerns, problems, or difficulties in BioMarin's manufacturing process for Valrox, including all Documents concerning:

    (a)    the impact of BioMarin's manufacturing processes on Valrox's efficacy or safety, including (i) on Factor VIII activity associated with Valrox manufactured by BioMarin and (ii) on the durability of any clinical or surrogate benefit or endpoint associated with Valrox, including Factor VIII activity;

    (b)    any Communications with the FDA about any actual, suspected, or potential defects, flaws, concerns, problems, or difficulties in the manufacturing process for gene therapy, including Valrox, cited or discussed by the agency (whether or not discussed specifically with respect to Valrox), including whether and how the FDA suggested, recommended, or instructed BioMarin to address any such defects, flaws, concerns, problems, or difficulties in the Valrox NDA;

    (c)    the role, importance, or significance of the Valrox PAI in examining, exploring, or addressing any actual, suspected, or potential defects, flaws, concerns, problems,

or difficulties in the manufacturing process for gene therapy, including Valrox, cited or discussed by the FDA in connection with the Valrox BLA; and

(d)    any FDA regulation, guidance, or commentary concerning the manufacture of gene therapies, including all Documents concerning Dr. Peter Marks' October 2019 statements discussed in paragraphs 57-60 of the Complaint.

**DOCUMENT REQUEST NO. 13**

All Documents concerning any difference between the manufacturing process for Valrox developed by BioMarin and the manufacturing process implemented by BioMarin's contractor(s) in connection with the Phase I/II Trial, including all Documents concerning:

(a)    any potential or suspected impact of any such difference on Valrox's efficacy, safety, durability, or Factor VIII activity; and

(b)    the potential role of those differences in the results observed in any clinical trial or trials of Valrox.

**DOCUMENT REQUEST NO. 14**

All Documents concerning Valrox's efficacy, including Valrox's durability, including all Documents concerning:

(a)    Factor VIII activity associated with Valrox therapy, including the durability of any Factor VIII activity associate with Valrox therapy;

(b)    All Documents concerning the importance of durability to Valrox's commercial value, including the importance of durable Factor VIII activity to Valrox's commercial value; and

(c)    All Documents concerning any tests, studies, trials, or analyses concerning Valrox that were proposed or discussed but were not performed.

**DOCUMENT REQUEST NO. 15**

All Documents concerning the Phase I/II Trial, including all Documents concerning:

(a)    Data generated in the Phase I/II Trial, including load files, format files, data dictionaries and keys, and/or such other files as needed to fully organize and utilize the Data;

(b)    all audit files for such Data;

(c)    any analyses performed on or concerning the Phase I/II Trial Data, including analyses of Factor VIII activity;

(d)    any potential reason(s) for any decline in Valrox's Factor VIII activity observed in the Phase I/II Trial;

(e)    any proposed analyses of Phase I/II Trial Data that were not performed, including analyses of Factor VIII activity;

(f)    all Documents concerning the Phase I/II Trial protocol and methodology, including proposed study designs, features, endpoints, data analysis plans, or enrollment/exclusion criteria, whether or not implemented; and

(g)    all Documents concerning reporting, publishing, disseminating, or disclosing Phase I/II Trial data in any forum or medium (including medical or investor conferences, press releases, and SEC filings), including all Documents concerning reporting, publishing, disseminating, or disclosing Factor VIII activity.

**DOCUMENT REQUEST NO. 16**

All Documents concerning the Phase III Trial, including all Documents concerning:

(a)    Data generated in the Phase III Trial, including load files, format files, data dictionaries and keys, and/or such other files as needed to fully organize and utilize the Data;

(b)    all audit files for such Data;

(c)    any analyses performed on or concerning the Phase III Trial Data, including analyses of Factor VIII activity;

(d)    any potential reason(s) for any decline in Valrox's Factor VIII activity observed in the Phase III Trial;

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NO. 3:20-CV-06719-WHO                                                                    15

(e)     any differences between the results observed in the Phase I/II Trial on the one hand and in the Phase III Trial on the other, including differences in Factor VIII activity, and all Documents concerning the potential reasons for such differences;

(f)     any proposed analyses of Phase III Trial Data that were not performed, including analyses of Factor VIII activity;

(g)     all Documents concerning the Phase III Trial protocol and methodology, including proposed study designs, features, endpoints, data analysis plans, or enrollment/exclusion criteria, whether or not implemented; and

(h)     all Documents concerning reporting, publishing, disseminating, or disclosing Phase III Trial data in any forum or medium (including medical or investor conferences, press releases, and SEC filings), including all Documents concerning reporting, publishing, disseminating, or disclosing Factor VIII activity.

**DOCUMENT REQUEST NO. 17**

All Documents and Communications concerning any Individual Defendants' or senior management's purchase, sale, or other acquisition or disposition of BioMarin securities, including, but not limited to:

(a)     All Documents and Communications sufficient to show Bienaimé's and Fuchs' profits from sales of BioMarin stock during the Control Period and the Class Period;

(b)     All Documents and Communications sufficient to show the reasons for all sales of BioMarin stock by Bienaimé and Fuchs during the Control Period and the Class Period; and

(c)     All Documents and Communications relating to options held by Bienaimé or Fuchs, including but not limited to all Documents and Communications relating to the decision to exercise those options.

**DOCUMENT REQUEST NO. 18**

Documents sufficient to show BioMarin's insider trading policies, including any changes to such policies made before, during, or after the Class Period.

**DOCUMENT REQUEST NO. 19**

All Documents and Communications concerning any actual or proposed Rule 10b-5 securities trading plans concerning the sale of BioMarin securities for any of the Individual Defendants or any of BioMarin's officers subject to Section 16 of the Securities Exchange Act of 1934, including but not limited to the amendment of any Rule 10b-5 securities trading plan during the Class Period.

**DOCUMENT REQUEST NO. 20**

All Documents relating to Individual Defendants' salaries, incentive compensation. and/or bonuses.

**DOCUMENT REQUEST NO. 21**

All Documents and Communications relating to any offering of BioMarin of securities during the Class Period, whether public or private, including the May 2020 Offering, including all Documents concerning:

(a)     any Communications with investors or prospective investors in connection with the May 2002 Offering;

(b)     the purpose, and intended use of the proceeds, of the May 2020 Offering;

(c)     any Communications with any advisors, agents, or consultants, including financial advisors, in connection with the May 2020 Offering; and

(d)     any Communications with the "Initial Purchasers" in the May 2020 Offering, as that term is defined in Your May 11, 2020 Form 8-K, including BofA Securities, Inc., J.P. Morgan Securities LLC, Barclays Capital Inc., Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC.

**DOCUMENT REQUEST NO. 22**

All Documents, including any analyses, projections, or surveys, including surveys of health care professionals and analyses of prescribing patterns, concerning Valrox's projected or potential contribution to BioMarin's financial performance (whether historical or future), including the Company's revenue, earnings, prescription volume, income, growth, market demand, or commercial value and including all Documents concerning:

    (a)    Valrox's projected or potential contribution to BioMarin's financial performance (whether historical or future) relative to the Company's other products, whether marketed or in development.

**DOCUMENT REQUEST NO. 23**

All Documents concerning the projected and/or historical impact of BioMarin's loss of patent exclusivity for Kuvan on the Company's projected and/or historical financial performance, including its revenue and earnings.

**DOCUMENT REQUEST NO. 24**

All Documents concerning the projected and/or historical impact of BioMarin's loss of patent exclusivity for Aldurazyme on the Company's projected and/or historical financial performance, including its revenue and earnings.

**DOCUMENT REQUEST NO. 25**

All Documents concerning Valrox's competing hemophilia A therapies, including SPK-8011 (developed by Spark Therapeutics), SB-525 (developed by Sangamo Therapeutics), Hemlibra, and other alternatives to standard of care therapy in development by competing drug manufacturers, including all Documents concerning BioMarin's analysis of, or comparison of Valrox to, any then-existing or developmental competing Hemophilia A therapies.

**DOCUMENT REQUEST NO. 26**

All Documents concerning Communications with investors or analysts about Valrox, including all Documents concerning:

    (a)    Communications with investors or analysts concerning the Valrox BLA; and

(b)    the drafting, preparation, review, approval, ratification, publication, and dissemination of the alleged false statements described in paragraphs 118-145 of the Complaint.

**DOCUMENT REQUEST NO. 27**

All Documents and Communications concerning any securities analyst report and/or recommendation relating to BioMarin during the Class Period, including any Communications with any securities analyst concerning such reports and any securities analyst coverage of Valrox, including all Documents concerning:

(a)    any securities analyst report or commentary concerning the Valrox BLA;

(b)    any securities analyst report or commentary concerning the CRL; and

(c)    any securities analyst report or commentary concerning Defendants' statements following the conclusion of the Class Period about Valrox, the Valrox BLA, and BioMarin's Communications with the FDA concerning the same, including Defendants' statements referenced in Document Request 26, above.

**DOCUMENT REQUEST NO. 28**

All Documents and Communications concerning any BioMarin press release, public statement, filing with the SEC, website posting and transcript of any speech by You, and any broadcast or other commentary (whether originally disseminated in print, video or electronic format, and including drafts as well as final versions) that quoted any BioMarin representative, concerning Valrox (including any Valrox-related Data, tests, clinical trials, meta-analyses, or other analyses or studies concerning Valrox), or the commercial value and/or market share of Valrox (including but not limited to BioMarin's projected sales, revenue and earnings from Valrox).

**DOCUMENT REQUEST NO. 29**

All Documents and Communications, including all draft or final scripts, Questions & Answers (also known as "Q&A's") or other rehearsal or preparation materials concerning BioMarin's conference calls or Meetings with investors or analysts (including for BioMarin's regular quarterly earnings conference calls and annual shareholder meetings) concerning Valrox

(including Valrox-related Data, tests, clinical trials, meta-analyses, or other studies or analyses concerning Valrox), or the commercial value and/or market share of Valrox (including but not limited to BioMarin's projected sales, revenue, and earnings from Valrox).

**DOCUMENT REQUEST NO. 30**

All Documents and Communications concerning any BioMarin employee's or agent's (including the Individual Defendants') participation in the preparation, review, approval and/or public dissemination of any of the Documents or statements referenced in the preceding two Requests.

**DOCUMENT REQUEST NO. 31**

All Documents and Communications concerning the movement in BioMarin's stock price on August 19, 2020, including analyses relating to the cause or impetus of that movement, and Communications with analysts or investors about that stock price movement.

**DOCUMENT REQUEST NO. 32**

All Documents, organizational charts, or other graphic presentations or representations sufficient to show BioMarin's organizational structure during the Relevant Period, including ownership and leadership structure, reporting lines, officers, directors, senior management, and affiliates, for all personnel involved in:

(a)    Valrox, including developing, marketing, testing, selling, or communicating with regulators concerning Valrox;

(b)    the BLA review process for Valrox, including Mid-cycle Communications with the FDA, Late-cycle Communications with the FDA, Communications concerning new drug labeling, and the Pre-Approval Inspection of manufacturing facilities;

(c)    BioMarin's investor relations, marketing, and regulatory functions;

(d)    trading in BioMarin securities by insider employees, including supervision of insider trading and maintaining insider trading policies; and

(e)     the preparation, review, and approval of the Company's Forms 10-K and 10-Q, investor call and conference scripts and presentations, and other Communications with investors.

**DOCUMENT REQUEST NO. 33**

All Documents You have relied on or intend to rely on in this litigation, including all Documents and Communications You plan to use as deposition and/or trial exhibits. This Request is without limit as to time period.

**DOCUMENT REQUEST NO. 34**

All Documents and Communications relied upon in preparing Your Answer to the Complaint, including any Documents and Communications supporting any defense, including any affirmative defense, asserted in the Answer You intend to file in response to the Complaint. This Request is without limit as to time period.

**DOCUMENT REQUEST NO. 35**

Your Document retention, preservation, or destruction policies. The time period for this Request is March 3, 2020 to the present.

**DOCUMENT REQUEST NO. 36**

All Documents concerning insurance policies under which any insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy any judgment. This Request is without limit as to time period.

**DOCUMENT REQUEST NO. 37**

All Documents and Communications concerning any inspection, investigation, examination, audit, review, whistleblower action, complaint, or inquiry, whether formal or informal, internal or external, concerning Valrox. This Request is without limit as to time period.

**DOCUMENT REQUEST NO. 38**

All Documents you receive in response to subpoenas served by you or your counsel in connection with the present litigation. This Request is without limit as to time period.

Dated: January 25, 2022

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
SALVATORE GRAZIANO (pro hac vice)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (pro hac vice)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (pro hac vice)
katiem@blbglaw.com
ABE ALEXANDER (pro hac vice)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (pro hac vice)
william.freeland@blbglaw.com
THOMAS Z. SPERBER (pro hac vice)
thomas.sperber@blbglaw.com1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Lead Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2022, I caused to be served a copy of **Plaintiffs' First Request for the Production of Documents Directed to Defendants BioMarin Pharmaceutical, Inc., Jean-Jacques Bien Bienaimé, and Henry J. Fuchs** via email to the following counsel of record for Defendants:

John C. Dwyer
Jessica Valenzuela Santamarina
Alex Kasner
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304
Tel: (650) 843-5000
Fax: (650) 849-7400
dwyerjc@cooley.com
jvs@cooley.com
akasner@cooley.com

*Counsel for Defendants BioMarin Pharmaceutical, Inc.,*
*Jean-Jacques Bien Bienaimé, and Henry J. Fuchs*

*/s/ Thomas Z. Sperber*
Thomas Z. Sperber
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
CASE NO. 3:20-CV-06719-WHO