# Exhibit 3

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (*pro hac vice*)
Billy.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Counsel for Lead Plaintiff Arbejdsmarkedets
Tillægspension and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE BIOMARIN PHARMACEUTICAL INC. SECURITIES LITIGATION | Case No. 3:20-cv-06719-WHO<br><br>**DECLARATION OF KATHERINE M. SINDERSON IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge: Hon. William H. Orrick<br>Date: June 7, 2023<br>Time: 2:00 p.m. |

DECLARATION OF KATHERINE M.
SINDERSON IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF
SETTLEMENT

CASE NO. 3:20-CV-6719-WHO

I, KATHERINE M. SINDERSON, declare as follows:

1.    I am partner in the law firm Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), counsel for Lead Plaintiff Arbejdsmarkedets Tillægspension ("Lead Plaintiff" or "ATP") and Lead Counsel for the proposed Settlement Class in the above-captioned action. I submit this declaration in support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (the "Motion") and to provide the information required by the United States District Court for the Northern District of California's Procedural Guidance for Class Action Settlements. The following statements are based on my personal knowledge and information provided by other BLB&G attorneys working under my supervision, and if called on to do so, I could and would testify competently thereto.

**Retention of A.B. Data, Ltd.**

2.    In connection with the Motion, Lead Counsel requests that the Court approve the retention of A.B. Data, Ltd. ("A.B. Data"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions, to provide notice and claims administration services in the Action under the supervision of Lead Counsel. These services will include disseminating notice of the Settlement to potential Settlement Class Members, receiving requests for exclusion from the Settlement Class, receiving and processing of Claim Forms, calculating payment amounts for eligible Claimants under the Court-approved plan of allocation, distributing payments to eligible Claimants, and responding to Settlement Class Member inquiries.

3.    Lead Counsel selected A.B. Data after a "request for proposal" process in during which Lead Counsel solicited proposals for notice and administration services from four experienced settlement administration firms: A.B. Data, Epiq Systems, JND Legal Administration, and Kroll Settlement Administration. Lead Counsel requested each of these firms to describe their qualifications and describe their proposed fees and costs for the engagement.

4.    All four administrators who were sent a request for proposal submitted a response. All four potential settlement administrators proposed notifying the Settlement Class by sending notice by first-class mail to all potential Settlement Class Members who could be identified and all

| DECLARATION OF KATHERINE M. SINDERSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT | 1 | CASE NO. 3:20-CV-6719-WHO |
| --- | --- | --- |

proposed similar methods of processing claims received and mailing payment to eligible Claimants. Lead Counsel then compared the submitted proposals, taking into consideration each administrator's estimated cost to disseminate notice and to administer any settlement obtained. Three of the four firms, including A.B. Data, proposed fees and costs structures that resulted in comparable total estimated costs (although the exact costs would be dependent on factors such as the number of notices mailed and number of claims received, as well as other contingencies). Lead Counsel believes, based on its substantial prior experience with A.B. Data, that A.B. Data represented the best option for this case based on its proposal, its substantial experience, and its track record of providing reliable claims-administration services in comparable cases. Accordingly, Lead Counsel has selected A.B. Data to serve as Claims Administrator for this engagement, subject to the Court's approval.

5.    In the past two years, BLB&G has engaged A.B. Data to serve as the notice administrator or claim administrator in 20 actions (including *BioMarin*) in which BLB&G acted as class counsel or co-class counsel. By way of comparison, BLB&G selected a notice or claims administrator in a total of 40 new engagements (including *BioMarin*) during this same two-year period, so A.B. Data was selected as the administrator in one half of the new engagements during that period. A.B. Data also continued to perform ongoing work during this period on certain settlements and other engagements with Lead Counsel which began more than two years ago.

6.    Based on BLB&G's extensive experience and oversight of A.B. Data in providing notice and settlement administrative services in previous securities class actions, BLB&G has found A.B. Data to be highly competent and reliable notice and claims administrator, with competitive pricing compared to similar firms.

7.    The Northern District of California's Procedural Guidance for Class Action Settlements requests information regarding a previous distribution for at least one of Lead Counsel's past comparable class action settlements. The chart attached hereto as Exhibit A provides the requested information for three recent securities class action settlements in which BLB&G served as Lead Counsel or co-Lead Counsel and A.B. Data served as the Claims Administrator.

DECLARATION OF KATHERINE M. SINDERSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                    2                    CASE NO. 3:20-CV-6719-WHO

**BLB&G's Standing and Experience**

8.    Attached as Exhibit B is a true and correct copy of the firm resume of BLB&G.

9.    As reflected in the Firm Resume, BLB&G is among the most experienced securities class action law firms in the country. BLB&G served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements were obtained for the class totaling in excess of $6 billion. BLB&G also secured a resolution of $2.43 billion for the class in *In re Bank of America Corp. Securities, Derivative & "ERISA" Litigation*, No. 09-md-2058 (S.D.N.Y.); a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.); and a $730 million settlement on behalf of the class in *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522 (S.D.N.Y.).

10.    Courts in this District and Circuit have recognized BLB&G as qualified class counsel in securities class actions. Such examples include *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.), in which BLB&G recovered $1.05 billion for investors, the largest recovery in a securities class action in the Ninth Circuit; *Hefler v. Wells Fargo & Company*, No. 16-cv-5479 (N.D. Cal.), in which BLB&G recovered $480 million for investors; *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-2004 (C.D. Cal.), in which BLB&G recovered $250 million for investors; and *In re New Century Securities Litigation*, No. 07-cv-931 (C.D. Cal.), in which BLB&G secured an approximately $125 million recovery for investors.

11.    Attached hereto as Exhibit C is a true and correct copy of an order issued in April 2021 in an unrelated action in this District where BLB&G served as lead counsel for a different lead plaintiff, SEB Investment Management AB, and as class counsel for a certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021). As reflected in the order, counsel for an unsuccessful lead plaintiff movant raised questions about BLB&G's hiring of a former employee of the lead plaintiff in that case. Following discovery and extensive briefing, the court found that the evidence did not establish a *quid pro quo*, and allowed BLB&G to continue as class counsel. *See id.* at *1-2. The court nevertheless ordered BLB&G to bring the order to the attention of any court in which BLB&G seeks appointment as class counsel, and also to the decisionmaker

DECLARATION OF KATHERINE M. SINDERSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                3                CASE NO. 3:20-CV-6719-WHO

for the proposed lead plaintiff who is selecting class counsel. *See id.* at *2. Since that order, Judge Alsup granted final approval of the $70 million settlement in that action, commenting on the record that BLB&G "did a good job, so thank you for that." *SEB Inv. Mgmt. AB v. Symantec Corp.*, No. 3:18-cv-2902-WHA, slip op. at 18 (N.D. Cal. Feb. 10, 2022), EFC No. 425. Additionally, courts have repeatedly approved BLB&G as lead counsel and class counsel in securities class actions after being apprised of the *Symantec* order, including *In re Oracle Corp. Securities Litigation*, 2022 WL 1459567, at *5 (N.D. Cal. May 9, 2022), *In re Mattel, Inc. Securities Litigation*, 2021 WL 4704578, at *7 (C.D. Cal. Oct. 6, 2021); *Allegheny County Employees' Retirement System. v. Energy Transfer LP,* 2022 WL 3597200, at *24 (E.D. Pa. Aug. 23, 2022); *In re EQT Corp. Securities Litigation*, 2022 WL 3293518, at *24 (W.D. Pa. Aug. 11, 2022)*; and In re Myriad Genetics, Inc. Securities Litigation*, 2021 WL 5882259, at *13 (D. Utah Dec. 13, 2021). *See also, e.g.*, Order Granting Motion to Consolidate, Appointing Lead Plaintiff, and Approving Selection of Counsel, *Homyk v. ChemoCentryx, Inc.*, No. 4:21-cv-03343-JST, slip op. at 6 (N.D. Cal. Jan. 28, 2022), ECF No. 32; Stipulation and Order Appointing IBEW Local 353 Pension Plan and Xiaobin Cai as Lead Plaintiff, Approving Their Selection of Lead Counsel, and Consolidating Actions, *Chung v. Eargo, Inc.*, No. 3:21-cv-08597-CRB, slip op. (N.D. Cal. Jan. 5, 2022), ECF No. 36. Because BLB&G now seeks appointment as class counsel for the Settlement Class, BLB&G is submitting the *Symantec* Order to the Court's attention. BLB&G previously submitted the *Symantec* Order to the Court at the time Lead Plaintiff filed its motion for class certification. *See* ECF No. 110-5. In addition, BLB&G has provided the order to Lead Plaintiff ATP.

12.    Since the inception of this litigation, BLB&G has vigorously prosecuted this action for the benefit of Lead Plaintiff and the Settlement Class. BLB&G's efforts have included, among other things, (i) conducting a thorough pre-suit investigation; (ii) drafting a detailed amended complaint; (iii) overcoming Defendants' hard-fought motion to dismiss; (iv) conducting extensive document discovery, including obtaining over 675,000 pages of documents from Defendants and non-parties; (v) responding to document requests from Defendants and producing documents in response; (vi) retaining and consulting with an expert in market efficiency and damages;

DECLARATION OF KATHERINE M. SINDERSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
4
CASE NO. 3:20-CV-6719-WHO

(vii) assembling dedicated teams of experienced attorneys and staff to prosecute the claims on behalf of Lead Plaintiff and the Settlement Class; (viii) drafting and filing the motion for class certification; and (ix) engaging in arm's-length settlement negotiations, including two full-day mediation sessions. Lead Counsel has been and is committed to the Action and will continue to work diligently on the Action through the conclusion of the settlement process.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of April, 2023.

*/s/ Katherine M. Sinderson*
KATHERINE M. SINDERSON

DECLARATION OF KATHERINE M. SINDERSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

5

CASE NO. 3:20-CV-6719-WHO

# Exhibit A

**Exhibit A**

**Data from Previous Comparable Securities Class Action Settlements
in which BLB&G Served as Lead Counsel and A.B. Data Served as Claims Administrator**

| | *In re Impinj, Inc. Sec. Litig.*, No. 3:18-cv-05704-RSL (W.D. Wash. 2020) | *Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, Case No. 4:17-CV-0449-ALM (E.D. Tex. 2020) | *In re Quality Sys., Inc. Sec. Litig.*, No. 8:13-cv-01818-CJC-JPR (C.D. Cal. 2018) |
|---|---|---|---|
| Lead Plaintiff(s) | Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge | Alameda County Employees' Ret. Ass'n; Arkansas Teacher Ret. Sys. | City of Miami Fire Fighters' and Police Officers' Retirement Trust; Arkansas Teacher Ret. Sys. |
| Claims Asserted and Released | Violations of Sections 10(b) and 20(a) of the Exchange Act | Violations of Sections 10(b) and 20(a) of the Exchange Act and Sections 11, 12, and 15 of the Securities Act | Violations of Sections 10(b) and 20(a) of the Exchange Act |
| Total Settlement Fund | $20 million | $44 million | $19 million |
| Total Number of Class Members[1] | 88,708 | 62,672 | 64,179 |
| Total Number of Class Members to whom Notice was Sent[1] | 88,708 | 62,672 | 64,179 |
| Method of Notice | First Class Mail & Publication Notice | First Class Mail & Publication Notice | First Class Mail & Publication Notice |
| Number and Percentage of Claims Submitted (compared to Notices mailed) | 13,223 Claims 15% | 13,974 Claims 22% | 14,813 23% |
| Claims Submitted as Percentage of Estimated Damages[2] | 86% | 98% | 67% |
| Eligible Claimants | 7,939 | 8,138 | 4,349 |
| Average Recovery Per Claimant[3] | $1,100 | $2,259 | $954 |
| Average Recovery Per Eligible Claimant[3] | $2,086 | $5,062 | $3,250 |
| Median Payment Per Eligible Claimant[3] | $175 | $131 | $147 |
| Amounts Distributed to *Cy Pres* Recipients[4] | $0 | $0 | $462 (0.002%) |
| Notice and Administration Costs | $265,206 (1.3%) | $199,115 (0.5%) | $230,378 (1.2%) |
| Attorneys' Fees | $5,000,000 (25%) | $11,000,000 (25%) | $4,750,000 (25%) |
| Attorneys' Expenses | $176,771 (0.9%) | $1,382,702 (3.1%) | $159,715 (0.9%) |

| | *In re Impinj, Inc. Sec. Litig.*, No. 3:18-cv-05704-RSL (W.D. Wash. 2020) | *Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, Case No. 4:17-CV-0449-ALM (E.D. Tex. 2020) | *In re Quality Sys., Inc. Sec. Litig.*, No. 8:13-cv-01818-CJC-JPR (C.D. Cal. 2018) |
|---|---|---|---|
| **Total Exposure if Plaintiffs Had Prevailed on Every Claim** (in parenthesis: the Settlement Amount as a percentage of exposure) | $59 to $365 million (5.5% to 34%) | $480 to $850 million (5.2% to 9.2%) | $271 to $146 million (7% to 13%) |
| **Non-monetary Relief** | N/A | N/A | N/A |

## Notes

**1.** "Total Number of Class Members" and "Total Number of Class Members to Whom Notice Was Sent" are the same because in each case because A.B. Data mailed notice to all investors found on the shareholder lists that the defendant corporations provided to plaintiffs' counsel or that brokers and nominees provided. No other, more definitive list of class members is available for these types of cases.

**2.** "Claims Submitted as Percentage of Estimated Damages" compares the total value of claims submitted by claimants in each case, as compared to the total class damages as estimated by plaintiffs' damages expert. This provides a more accurate view of the level of class participation in the settlements than the comparison of the number of Claim Forms received as compared to number of notices mailed.

**3.** The average recovery per claimant, average recovery per eligible claimant, and median payment per eligible claimant are based on the distributions to date in the respective cases, which was through two distributions in each of the cases listed. The average recovery per eligible claimant and median payment per eligible claimant were calculated by excluding claims that were not eligible for a payment because they fell below the $10 minimum payment provision.

**4.** As in the present Action, residual funds will be distributed to a *cy pres* recipient in each case only after all cost-effective rounds of distributions to Authorized Claimants have been completed. Those subsequent rounds are still in process in the listed case, other than *In re Quality Sys., Inc. Sec. Litig.*, where $462.41 was distributed to the Los Angeles County Bar Association's Counsel for Justice.

# Exhibit B



*Bernstein Litowitz Berger & Grossmann LLP*
*Attorneys at Law*

# Firm Resume

# Table of Contents

Firm Overview ................................................................................................................................. 3

    More Top Securities Recoveries ................................................................................................. 3

    Giving Shareholders a Voice and Changing Business Practices for the Better .......................... 4

Practice Areas................................................................................................................................. 5

    Securities Fraud Litigation ......................................................................................................... 5

    Corporate Governance and Shareholder Rights ....................................................................... 5

    Distressed Debt and Bankruptcy .............................................................................................. 6

    Commercial Litigation ............................................................................................................... 6

    Alternative Dispute Resolution ................................................................................................. 6

Feedback from The Courts .............................................................................................................. 7

Significant Recoveries .................................................................................................................... 8

    Securities Class Actions ............................................................................................................. 8

    Corporate Governance and Shareholders' Rights ................................................................... 16

Clients and Fees ........................................................................................................................... 20

In The Public Interest ................................................................................................................... 21

    Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows ................................... 21

    Firm Sponsorship of Her Justice............................................................................................. 21

    Firm Sponsorship of City Year New York ................................................................................ 21

    Max W. Berger Pre-Law Program ........................................................................................... 21

Our Attorneys............................................................................................................................... 22

*Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained many of the largest monetary recoveries in history—over $37 billion on behalf of investors. Unique among our peers, the firm has obtained the largest settlements ever agreed to by public companies related to securities fraud, including four of the ten largest in history. Working with our clients, we have also used the litigation process to achieve precedent-setting reforms which have increased market transparency, held wrongdoers accountable and improved corporate business practices in groundbreaking ways.*

# Firm Overview

Bernstein Litowitz Berger & Grossmann LLP (BLB&G), a national law firm with offices located in New York, California, Delaware, Louisiana, and Illinois, prosecutes class and private actions on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; and distressed debt and bankruptcy. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes U.S. public pension funds the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the  Los Angeles County Employees Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities. Our European client base includes APG; Aegon AM; ATP; Blue Sky Group; Hermes IM; Robeco; SEB; Handelsbanken; Nykredit; PGB; and PGGM, among others.

## More Top Securities Recoveries

Since its founding in 1983, BLB&G has prosecuted some of the most complex cases in history and has obtained over $37 billion on behalf of investors. Unique among its peers, the firm has negotiated and obtained many of the largest securities class action recoveries in history, including:

- *In re WorldCom, Inc. Securities Litigation – $6.19 billion recovery*

- *In re Cendant Corporation Securities Litigation – $3.3 billion recovery*

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation – $2.43 billion recovery*

- *In re Nortel Networks Corporation Securities Litigation (Nortel II) – $1.07 billion recovery*

- *In re Merck & Co., Inc. Securities Litigation – $1.06 billion recovery*

- *In re McKesson HBOC, Inc. Securities Litigation – $1.05 billion recovery*

Based on our record of success, BLB&G has been at the top of the rankings by ISS Securities Class Action Services (ISS-SCAS), a leading industry research publication that provides independent and objective third-party analysis and statistics on securities-litigation law firms, since its inception. In its most recent report, *Top 100 U.S. Class Action Settlements of All-Time*, ISS-SCAS once again ranked BLB&G as the top firm in the field for the thirteenth year in a row. BLB&G has served as lead or co-lead counsel in 36 of the ISS-SCAS's top 100 U.S. securities-fraud settlements—significantly more than any other firm—and recovered over $26 billion for investors in those cases, nearly $8 billion more than any other plaintiffs' securities firm.

# Giving Shareholders a Voice and Changing Business Practices for the Better

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, or M&A transactions, seek to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedent which has increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways.

From setting new standards of director independence, to restructuring board practices in the wake of persistent illegal conduct; from challenging the improper use of defensive measures and deal protections for management's benefit, to confronting stock options backdating abuses and other self-dealing by executives; we have confronted a variety of questionable, unethical and proliferating corporate practices. Seeking to reform faulty management structures and address breaches of fiduciary duty by corporate officers and directors, we have obtained unprecedented victories on behalf of shareholders seeking to improve governance and protect the shareholder franchise.

# Practice Areas

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class litigation.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

Our attorneys have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities. Biographies for our attorneys can be accessed on the firm's website by clicking here.

## Corporate Governance and Shareholder Rights

Our Corporate Governance and Shareholder Rights attorneys prosecute derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. We have prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process, fair price, and the applicability of the business judgment rule, and have also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation.

Our attorneys have prosecuted numerous cases regarding the improper "backdating" of executive stock options which resulted in windfall undisclosed compensation to executives at the direct expense of shareholders—and returned hundreds of millions of dollars to company coffers. We also represent institutional clients in lawsuits seeking to enforce fiduciary obligations in connection with Mergers & Acquisitions and "Going Private" transactions that deprive shareholders of fair value when participants buy companies from their public shareholders "on the cheap." Although enough shareholders accept the consideration offered for the transaction to close, many sophisticated investors correctly recognize and ultimately enjoy the increased returns to be obtained by pursuing appraisal rights and demanding that courts assign a "true value" to the shares taken private in these transactions.

Our attorneys are well versed in changing SEC rules and regulations on corporate governance issues and have a comprehensive understanding of a wide variety of corporate law transactions and both substantive and courtroom expertise in the specific legal areas involved. As a result of the firm's high-profile and widely recognized capabilities, our attorneys are increasingly in demand with institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the boards' accountability to shareholders.

# Distressed Debt and Bankruptcy

BLB&G has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to successful settlements.

# Commercial Litigation

BLB&G provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees, and other business entities. We have faced down the most powerful and well-funded law firms and defendants in the country—and consistently prevailed. For example, on behalf of the bankruptcy trustee, the firm prosecuted *BFA Liquidation Trust v. Arthur Andersen*, arising from the largest nonprofit bankruptcy in U.S. history. After two years of litigation and a week-long trial, the firm obtained a $217 million recovery from Andersen for the Trust. Combined with other recoveries, the total amounted to more than 70 percent of the Trust's losses.

Having obtained huge recoveries with nominal out-of-pocket expenses and fees of less than 20 percent, we have repeatedly demonstrated that valuable claims are best prosecuted by a first-rate litigation firm on a contingent basis at negotiated percentages. Legal representation need not compound the risk and high cost inherent in today's complex and competitive business environment. We are paid only if we (and our clients) win. The result: the highest quality legal representation at a fair price.

# Alternative Dispute Resolution

BLB&G offers clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. We have experience in U.S. and international disputes and our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association, FINRA, JAMS, International Chamber of Commerce, and the London Court of International Arbitration.

Our lawyers have successfully arbitrated cases that range from complex business-to-business disputes to individuals' grievances with employers. It is our experience that in some cases, a well-executed arbitration process can resolve disputes faster, with limited appeals and with a higher level of confidentiality than public litigation.

In the wake of the credit crisis, for example, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. We have also assisted clients with disputes involving failure to honor compensation commitments, disputes over the purchase of securities, businesses seeking compensation for uncompleted contracts, and unfulfilled financing commitments.

# Feedback from The Courts

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members. A few examples are set forth below.

### In re WorldCom, Inc. Securities Litigation

- The Honorable Denise Cote of the United States District Court for the Southern District of New York

"I have the utmost confidence in plaintiffs' counsel…they have been doing a superb job…The Class is extraordinarily well represented in this litigation."

"The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy…The quality of the representation given by Lead Counsel…has been superb…and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."

"Lead Counsel has been energetic and creative…Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

\*      \*      \*

### In re Clarent Corporation Securities Litigation

- The Honorable Charles R. Breyer of the United States District Court for the Northern District of California

"It was the best tried case I've witnessed in my years on the bench…."

"[A]n extraordinarily civilized way of presenting the issues to you [the jury]…We've all been treated to great civility and the highest professional ethics in the presentation of the case…"

"These trial lawyers are some of the best I've ever seen."

\*      \*      \*

### Landry's Restaurants, Inc. Shareholder Litigation

- Vice Chancellor J. Travis Laster of the Delaware Court of Chancery

"I do want to make a comment again about the excellent efforts…put into this case…This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system…you hold up this case as an example of what to do."

\*      \*      \*

### McCall V. Scott (Columbia/HCA Derivative Litigation)

- The Honorable Thomas A. Higgins of the United States District Court for the Middle District of Tennessee

"Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

# Significant Recoveries

BLB&G is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. The firm has successfully identified, investigated, and prosecuted many of the most significant securities and shareholder actions in history, recovering billions of dollars on behalf of defrauded investors and obtaining groundbreaking corporate-governance reforms. These resolutions include six recoveries of over $1 billion, more than any other firm in our field. Examples of cases with our most significant recoveries include:

## Securities Class Actions

**Case:**        *In re WorldCom, Inc. Securities Litigation*

**Court:**       United States District Court for the Southern District of New York

**Highlights:**  $6.19 billion securities fraud class action recovery—the second largest in history; unprecedented recoveries from Director Defendants.

**Case Summary:** Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom, Inc. This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO. As Court-appointed Co-Lead Counsel representing Lead Plaintiff the New York State Common Retirement Fund, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants. On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them. Additionally, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals—20% of their collective net worth. *The Wall Street Journal*, in its coverage, profiled the settlement as having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.



| | |
|---|---|
| *Case:* | *In re Cendant Corporation Securities Litigation* |
| *Court:* | United States District Court for the District of New Jersey |
| *Highlights:* | $3.3 billion securities fraud class action recovery – the third largest in history; significant corporate governance reforms obtained. |
| *Summary:* | The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996, and 1997 fiscal years and all fiscal quarters therein. Cendant agreed to settle the action for $2.8 billion and to adopt some of the most extensive corporate governance changes in history. E&Y settled for $335 million. These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation. BLB&G represented Lead Plaintiffs CalPERS (the California Public Employees' Retirement System), the New York State Common Retirement Fund and the New York City Pension Funds, the three largest public pension funds in America, in this action. |

| | |
|---|---|
| *Case:* | *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation* |
| *Court:* | United States District Court for the Southern District of New York |
| *Highlights:* | $2.425 billion in cash; significant corporate governance reforms to resolve all claims. This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim—the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history. |
| *Summary:* | The firm represented Co-Lead Plaintiffs the State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, and the Teacher Retirement System of Texas in this securities class action filed on behalf of shareholders of Bank of America Corporation (BAC) arising from BAC's 2009 acquisition of Merrill Lynch & Co., Inc. The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition. These violations included the alleged failure to disclose information regarding billions of dollars of losses which Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses. Not privy to these material facts, BAC shareholders voted to approve the acquisition. |



- 10 -

*Case:*       *In re Nortel Networks Corporation Securities Litigation (Nortel II)*

*Court:*       United States District Court for the Southern District of New York

*Highlights:*       Over $1.07 billion in cash and common stock recovered for the class.

*Summary*:       This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period. BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class. In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock to resolve both matters. Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion.

*Case:*       *In re Merck & Co., Inc. Securities Litigation*

*Court:*       United States District Court, District of New Jersey

*Highlights:*       $1.06 billion recovery for the class.

*Summary*:       This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" COX-2 painkiller Vioxx, which Merck withdrew from the market in 2004. In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court. This settlement is the second-largest recovery ever obtained in the Third Circuit, one of the top 11 securities recoveries of all time, and the largest securities recovery ever achieved against a pharmaceutical company. BLB&G represented Lead Plaintiff the Public Employees' Retirement System of Mississippi.

*Case:*       *In re McKesson HBOC, Inc. Securities Litigation*

*Court:*        United States District Court for the Northern District of California

*Highlights:*       $1.05 billion recovery for the class.

*Summary*:       This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson, and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results. On behalf of Lead Plaintiff the New York State Common Retirement Fund, BLB&G obtained a $960 million settlement from the company; $72.5 million in cash from Arthur Andersen; and, on the eve of trial, a $10 million settlement from Bear Stearns & Co. Inc., with total recoveries reaching more than $1 billion.



**Case:**       *HealthSouth Corporation Bondholder Litigation*

**Court:**      United States District Court for the Northern District of Alabama

**Highlights:**  $804.5 million in total recoveries.

**Summary:**    In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the Retirement Systems of Alabama. This action arose from allegations that Birmingham, Alabama based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy. Subsequent revelations disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years. A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants, and $33.5 million in cash from the company's auditor. The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages.

**Case:**       *In re Washington Public Power Supply System Litigation*

**Court:**       United States District Court for the District of Arizona

**Highlights:**  Over $750 million—the largest securities fraud settlement ever achieved at the time.

**Summary:**    BLB&G was appointed Chair of the Executive Committee responsible for litigating on behalf of the class in this action. The case was litigated for over seven years, and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million—then the largest securities fraud settlement ever achieved.

**Case:**       *In re Lehman Brothers Equity/Debt Securities Litigation*

**Court:**      United States District Court for the Southern District of New York

**Highlights:**  $735 million in total recoveries.

**Summary:**    Representing the Government of Guam Retirement Fund, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings Inc.'s issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information.

After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of: a $426 million settlement with underwriters of Lehman securities offerings; a $90 million settlement with former Lehman directors and officers; a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved); and a $120 million settlement that resolves claims against UBS Financial



Services, Inc. This recovery is truly remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and the auditors never disavowed the statements.

| | |
|---|---|
| *Case:* | *In re Citigroup, Inc. Bond Action Litigation* |
| *Court:* | United States District Court for the Southern District of New York |
| *Highlights:* | $730 million cash recovery; second largest recovery in a litigation arising from the financial crisis. |
| *Summary*: | In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery—the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs Minneapolis Firefighters' Relief Association, Louisiana Municipal Police Employees' Retirement System, and Louisiana Sheriffs' Pension and Relief Fund. |

| | |
|---|---|
| *Case:* | *In re Schering-Plough Corporation/Enhance Securities Litigation; In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* |
| *Court:* | United States District Court for the District of New Jersey |
| *Highlights:* | $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough. |
| *Summary*: | After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin. Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness. The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital. When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors. The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25 |



settlements of all time, and among the ten largest recoveries ever in a case where there was no financial restatement. BLB&G represented Lead Plaintiffs Arkansas Teacher Retirement System, the Public Employees' Retirement System of Mississippi, and the Louisiana Municipal Police Employees' Retirement System.

| | |
|---|---|
| **Case:** | *In re Lucent Technologies, Inc. Securities Litigation* |
| **Court:** | United States District Court for the District of New Jersey |
| **Highlights:** | $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues, and possible conflicts between new and old allegations. |
| **Summary:** | BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the Parnassus Fund, Teamsters Locals 175 & 505 D&P Pension Trust, Anchorage Police and Fire Retirement System, and the Louisiana School Employees' Retirement System. The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock, and warrants. |

| | |
|---|---|
| **Case:** | *In re Wachovia Preferred Securities and Bond/Notes Litigation* |
| **Court:** | United States District Court for the Southern District of New York |
| **Highlights:** | $627 million recovery—among the largest securities class action recoveries in history; third-largest recovery obtained in an action arising from the subprime mortgage crisis. |
| **Summary:** | This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG LLP. The case alleged that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multibillion-dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate. According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs Orange County Employees Retirement System and Louisiana Sheriffs' Pension and Relief Fund in this action. |



- 14 -

**Case:**    *Bear Stearns Mortgage Pass-Through Litigation*

**Court:**    United States District Court for the Southern District of New York

**Highlights:**    $500 million recovery—the largest recovery ever on behalf of purchasers of residential mortgage-backed securities.

**Summary:**    BLB&G served as Co-Lead Counsel in this securities action, representing Lead Plaintiffs the Public Employees' Retirement System of Mississippi. The case alleged that Bear Stearns & Company, Inc. sold mortgage pass-through certificates using false and misleading offering documents. The offering documents contained false and misleading statements related to, among other things, (1) the underwriting guidelines used to originate the mortgage loans underlying the certificates; and (2) the accuracy of the appraisals for the properties underlying the certificates. After six years of hard-fought litigation and extensive arm's-length negotiations, the $500 million recovery is the largest settlement in a U.S. class action against a bank that packaged and sold mortgage securities at the center of the 2008 financial crisis.

**Case:**    *Gary Hefler et al. v. Wells Fargo & Company et al.*

**Court:**    United States District Court for the Northern District of California

**Highlights**    $480 million recovery—the fourth largest securities settlement ever achieved in the Ninth Circuit and the 32nd largest securities settlement ever in the United States.

**Summary:**    BLB&G served as Lead Counsel for the Court-appointed Lead Plaintiff Union Asset Management Holding, AG in this action, which alleged that Wells Fargo and certain current and former officers and directors of Wells Fargo made a series of materially false statements and omissions in connection with Wells Fargo's secret creation of fake or unauthorized client accounts in order to hit performance-based compensation goals. After years of presenting a business driven by legitimate growth prospects, U.S. regulators revealed in September 2016 that Wells Fargo employees were secretly opening millions of potentially unauthorized accounts for existing Wells Fargo customers. The Complaint alleged that these accounts were opened in order to hit performance targets and inflate the "cross-sell" metrics that investors used to measure Wells Fargo's financial health and anticipated growth. When the market learned the truth about Wells Fargo's violation of its customers' trust and failure to disclose reliable information to its investors, the price of Wells Fargo's stock dropped, causing substantial investor losses.

**Case:**    *Ohio Public Employees Retirement System v. Freddie Mac*

**Court:**    United States District Court for the Southern District of Ohio

**Highlights:**    $410 million settlement.

**Summary:**    This securities fraud class action was filed on behalf of the Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio alleging that Federal Home Loan Mortgage Corporation (Freddie Mac) and certain of its current and former officers issued false and misleading



statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and to hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete.

| | |
|---|---|
| ***Case:*** | *In re Refco, Inc. Securities Litigation* |
| ***Court:*** | United States District Court for the Southern District of New York |
| ***Highlights:*** | Over $407 million in total recoveries. |
| ***Summary:*** | The lawsuit arises from the revelation that Refco, a once prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff RH Capital Associates LLC. |

| | |
|---|---|
| ***Case:*** | *In re Allergan, Inc. Proxy Violation Securities Litigation* |
| ***Court:*** | United States District Court for the Central District of California |
| ***Highlights:*** | Litigation recovered over $250 million for investors while challenging an unprecedented insider trading scheme by billionaire hedge fund manager Bill Ackman. |
| ***Summary:*** | As alleged in groundbreaking litigation, billionaire hedge fund manager Bill Ackman and his Pershing Square Capital Management fund secretly acquired a near 10% stake in pharmaceutical concern Allergan, Inc. as part of an unprecedented insider trading scheme by Ackman and Valeant Pharmaceuticals International, Inc. What Ackman knew—but investors did not—was that in the ensuing weeks, Valeant would be launching a hostile bid to acquire Allergan shares at a far higher price. Ackman enjoyed a massive instantaneous profit upon public news of the proposed acquisition, and the scheme worked for both parties as he kicked back hundreds of millions of his insider-trading proceeds to Valeant after Allergan agreed to be bought by a rival bidder. After a ferocious three-year legal battle over this attempt to circumvent the spirit of the U.S. securities laws, BLB&G obtained a $250 million settlement for Allergan investors, and created precedent to prevent similar such schemes in the future. The Plaintiffs in this action were the State Teachers Retirement System of Ohio, the Iowa Public Employees Retirement System, and Patrick T. Johnson. |



# Corporate Governance and Shareholders' Rights

**Case:**  *City of Monroe Employees' Retirement System, Derivatively on Behalf of Twenty-First Century Fox, Inc. v. Rupert Murdoch, et al.*

**Court:**  Delaware Court of Chancery

**Highlights:**  Landmark derivative litigation established unprecedented, independent Board-level council to ensure employees are protected from workplace harassment while recouping $90 million for the company's coffers.

**Summary:**  Before the birth of the #metoo movement, BLB&G led the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveil a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC serves as a model for public companies in all industries. The firm represented 21st Century Fox shareholder the City of Monroe (Michigan) Employees' Retirement System.

**Case:**  *In re McKesson Corporation Derivative Litigation*

**Court:**  United States District Court, Northern District of California, Oakland Division and Delaware Chancery Court

**Highlights:**  Litigation recovered $175 million and achieved substantial corporate governance reforms.

**Summary:**  BLB&G represented the Police & Fire Retirement System City of Detroit and Amalgamated Bank in this derivative class action arising from the company's role in permitting and exacerbating America's ongoing opioid crisis. The complaint, initially filed in Delaware Chancery Court, alleged that defendants breached their fiduciary duties by failing to adequately oversee McKesson's compliance with provisions of the Controlled Substances Act and a series of settlements with the Drug Enforcement Administration intended to regulate the distribution and misuse of controlled substances such as opioids. Even after paying fines and settlements in the hundreds of millions of dollars, McKesson was sued in the National Opioid Multidistrict Litigation. In May 2018, our clients joined a substantially similar action being litigated in California federal court. Acting as co-lead counsel, BLB&G played a major role in litigating the case, opposing a motion to stay the action by a special litigation committee, and engaging in extensive pretrial discovery. Ultimately, $175 million was recovered for the benefit of McKesson's shareholders in a settlement that also created substantial corporate-governance reforms to prevent a recurrence of McKesson's inadequate legal compliance efforts.



**Case:**   *UnitedHealth Group, Inc. Shareholder Derivative Litigation*

**Court:**   United States District Court for the District of Minnesota

**Highlights:**   Litigation recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses.

**Summary:**   This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group, Inc. alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered over $920 million in ill-gotten compensation directly from the former officer Defendants—the largest derivative recovery in history. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings." The Plaintiffs in this action were the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado.

**Case:**   *Caremark Merger Litigation*

**Court:**    Delaware Court of Chancery – New Castle County

**Highlights:**   Landmark Court ruling ordered Caremark's board to disclose previously withheld information, enjoined a shareholder vote on the CVS merger offer, and granted statutory appraisal rights to Caremark shareholders. The litigation ultimately forced CVS to raise its offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders.

**Summary:**   Commenced on behalf of the Louisiana Municipal Police Employees' Retirement System and other shareholders of Caremark RX, Inc., this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation, all the while refusing to fairly consider an alternative transaction proposed by another bidder. In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total).


**Case:**      *In re Pfizer Inc. Shareholder Derivative Litigation*

**Court:**     United States District Court for the Southern District of New York

**Highlights:** Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board to be supported by a dedicated $75 million fund.

**Summary:**   In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread. The suit was brought by Court-appointed Lead Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company, Ltd. In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug marketing practices and to review the compensation policies for Pfizer's drug sales related employees.

**Case:**      *Miller et al. v. IAC/InterActiveCorp et al.*

**Court:**     Delaware Court of Chancery

**Highlights:** This litigation shut down efforts by controlling shareholders to obtain "dynastic control" of the company through improper stock class issuances, setting valuable precedent and sending a strong message to boards and management in all sectors that such moves will not go unchallenged.

**Summary:**   BLB&G obtained this landmark victory for shareholder rights against IAC/InterActiveCorp and its controlling shareholder and chairman, Barry Diller. For decades, activist corporate founders and controllers sought ways to entrench their position atop the corporate hierarchy by granting themselves and other insiders "supervoting rights." Diller laid out a proposal to introduce a new class of non-voting stock to entrench "dynastic control" of IAC within the Diller family. BLB&G litigation on behalf of IAC shareholders ended in capitulation with the Defendants effectively conceding the case by abandoning the proposal. This became a critical corporate governance precedent, given the trend of public companies to introduce "low" and "no-vote" share classes, which diminish shareholder rights, insulate management from accountability, and can distort managerial incentives by providing controllers voting power out of line with their actual economic interests in public companies.

**Case:**      *In re News Corp. Shareholder Derivative Litigation*

**Court:**      Delaware Court of Chancery – Kent County

**Highlights:** An unprecedented settlement in which News Corp. recouped $139 million and enacted significant corporate governance reforms that combat self-dealing in the boardroom.

- 19 -

**Summary:**    Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, we filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management. We ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers, and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management.

# Clients and Fees

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we encourage retentions in which our fee is contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client. The firm generally negotiates with our clients a contingent fee schedule specific to each litigation, and all fee proposals are approved by the client prior to commencing litigation, and ultimately by the Court.

Our clients include many large and well-known financial and lending institutions and pension funds, as well as privately held companies that are attracted to our firm because of our reputation, expertise, and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors, and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.

# In The Public Interest

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles:  excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and pro bono activities, and regularly participate as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School. Highlights of our community contributions include the following:

## Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows

BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donates funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This fund at Columbia Law School provides Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The BLB&G Fellows are able to begin their careers free of any school debt if they make a long-term commitment to public interest law.

## Firm Sponsorship of Her Justice

BLB&G is a sponsor of Her Justice, a not-for-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally vulnerable women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses, or representation on issues such as child support, custody, and visitation. To read more about Her Justice, visit the organization's website at http://www.herjustice.org/.

## Firm Sponsorship of City Year New York

BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

## Max W. Berger Pre-Law Program

In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

# Our Attorneys

BLB&G employs a dedicated team of attorneys, including partners, counsel, associates, and senior staff attorneys. Biographies for each of our attorneys can be found on our website by clicking here. On a case-by-case basis, we also make use of a pool of staff attorneys to supplement our litigation teams. The BLB&G team also includes investigators, financial analysts, paralegals, electronic-discovery specialists, information-technology professionals, and administrative staff. Biographies for our investigative team are available on our website by clicking here, and biographies for the leaders of our administrative departments are viewable here.

# Exhibit C

2021 WL 1540996
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

SEB INVESTMENT MANAGEMENT AB,
individually and on behalf of all others
similarly situated, Plaintiff,
v.
SYMANTEC CORPORATION and
Gregory S. Clark, Defendants.

No. C 18-02902 WHA
|
Signed 04/20/2021

**ORDER RE CONFLICT DISPUTE**

WILLIAM ALSUP, United States District Judge

**\*1** This order resolves a pending question concerning the conduct of class counsel and lead plaintiff and an allegation that they engaged in play to pay, which means, "you hire me as counsel, and I'll make it up to you down the road." Such arrangements are adverse to the interests of the class because class counsel should be selected as the best lawyer for the class.

In this case, SEB Investment Management AB won the role of lead plaintiff. At the lead plaintiff selection hearing, SEB introduced Mr. Hans Ek as the staff member at SEB who would oversee the case if SEB won the job. SEB showcased his experience and abilities. The order appointing SEB said the following about him: "SEB identified Hans Ek, SEB's Deputy Chief Executive Officer, as being the individual in charge of managing its litigation responsibilities. In addition, SEB's in-house legal counsel will be advising Mr. Ek and assisting with overseeing the litigation" (Dkt. No. 88).

After SEB won the job, an order required Mr. Ek to interview law firms for the job of class counsel. SEB interviewed several firms but ultimately selected Bernstein, Litowitz, Berger & Grossmann, LLP (BLBG),

its existing counsel, even though BLBG asked for a richer fee proposal than others. The Court deferred to lead plaintiff's judgment and appointed BLBG (*ibid.*).

Twenty-five months went by. Litigation churned forward. Then another law firm, Robbins, Geller, Rudman & Dowd, LLP, on behalf of a class member (Norfolk County Council as Administering Authority of the Norfolk Pension Fund) reported to the Court that Mr. Ek had left SEB and was now working for BLBG.

Upon inquiry by the Court, BLBG confirmed this.

Discovery was allowed into the problem and several hearings were held. After careful consideration of all the evidence and argument, the Court remains unable to determine whether the move of Mr. Ek to BLBG was coincidental versus culpable. It's possible that there was a *quid pro quo* of sorts but, if so, it's not clear in the evidence.

What is crystal clear is that BLBG held Mr. Ek out as the professional who would guide the class through the litigation and direct counsel. Also crystal clear is that BLBG and Mr. Ek failed to tell the Court that he had gone over to the counsel side, meaning had left SEB and joined BLBG. On his way out of SEB, he lateraled his case responsibilities to a colleague, another fact not disclosed to the Court.

The PLSRA established the statutory office of lead plaintiff, usually intended to be an institutional investor, for the very specific purpose of converting securities litigation from "lawyer driven" to "investor driven" wherein the lead plaintiff actually manages the case for the class, the lawyer no longer being in charge. When, as here, the very man or woman presented to the Court as the one who will carry out the PSLRA mandate winds up as an employee of the lawyer, one can easily ask whether a fundamental goal of the Act has been compromised.

Separate from this is the pay to play problem. If a law firm winks and nods and says, "Hire me as your class counsel and we'll return the favor down the road," then the class suffers because class counsel should instead be selected on the merits of who will best represent the class. The lead plaintiff owes a fiduciary duty to the class to select the best lawyer for the class, not to treat the selection as a tradeoff of favors.

**\*2** BLBG and SEB surely knew all these ramifications and knew how the undersigned judge felt about these issues. The appearance alone raises eyebrows, arched

eyebrows. BLBG should have avoided this spectacle. So should have SEB and so should have Mr. Ek. This is true even though discovery could not establish a clear-cut *quid pro quo*.

It's worth observing that while no clear-cut evidence of a *quid pro quo* emerged, discovery did show that BLBG's initial explanation to the Court proved misleading. At our hearing on January 21, 2021, Class Counsel Salvatore J. Graziano told the Court,

> [F]irst and foremost, we never thought or raised the possibility of Mr. Ek joining our firm when he was at SEB. That was back in 2018. He had no intention of leaving. We never thought would he leave. He publicly left a year later, December 1 of 2019

(Tr. at 4–5). After that hearing, the Court permitted discovery. Mr. Ek testified at his deposition that he "was employed by SEB until the last day of March" in 2020 (Ek. Dep. at 51). Moreover, BLBG had sent Mr. Ek a recruitment email on December 19, 2019, while SEB still employed him. In it, a BLBG attorney (on this case) said, "I know you said that you wanted to transition your work at SEB towards the end of the year before thinking about next steps. Now that we are almost at the end of the year, please know that I would love to continue to work with you" but "of course, I don't know what your plans are or if you have given your next steps any thought yet" (van Kwawegen Dep. at 55). In his brief summarizing Mr. Ek's testimony (and other discovery), Attorney Graziano walked back his January 21 representation, conceding, "BLB&G raised for the first time the prospect of working with Mr. Ek in late December [2019]," but said it was

"irrelevant" (Dkt. No. 284-3 at 3). Attorney Graziano's brief continued, "[T]he sworn testimony on this issue confirms there was no "active recruitment" prior to February 2020" (*ibid.*). This shifting-sands set of explanations is concerning. But, still, it does not prove any *quid pro quo*.

We are too far into the case to replace SEB or BLBG, at least on this record. Instead, the Court believes these circumstances should be brought to the attention of the class and a new opportunity given to opt out. Counsel shall meet and confer on a form of notice and a timeline for distribution and opt-out. BLBG shall pay for the costs of notice, distribution, and opt-out. Please submit this within seven calendar days.

In addition, in future cases, both SEB in seeking appointment as a lead plaintiff and BLBG in seeking appointment as class counsel shall bring this order to the attention of the assigned judge and the decision-maker for the lead plaintiff who is to select counsel. This disclosure requirement shall last for three years from the date of this order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 1540996

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.