# Exhibit 4

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (*pro hac vice*)
Billy.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Counsel for Lead Plaintiff Arbejdsmarkedets
Tillægspension and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE BIOMARIN PHARMACEUTICAL INC. SECURITIES LITIGATION | Case No. 3:20-cv-06719-WHO<br><br>**DECLARATION OF ADAM D. WALTER IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge:  Hon. William H. Orrick<br>Date:   June 7, 2023<br>Time:   2:00 p.m. |

DECLARATION OF ADAM D. WALTER
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT

CASE NO. 3:20-CV-6719-WHO

I, ADAM D. WALTER, declare as follows:

1.    I am a Senior Project Manager at A.B. Data, Ltd. ("A.B. Data"), a nationally recognized class action administration firm. At the request of Lead Counsel, I am submitting this declaration to provide the Court and the Parties to the above-captioned action ("Action") with information about the procedures and methods to be used to provide notice of the proposed Settlement to Settlement Class Members, and the administration of the claims process. The following statements are based on my personal knowledge and information provided by other A.B. Data employees working under my supervision, and if called on to do so, I could and would testify competently thereto.[1]

2.    A.B. Data has successfully implemented notification and claims administration programs in hundreds of class actions. Members of our team have administered many of the most noteworthy securities class action settlements in recent years, including *In re AIG Securities Litigation*, No. 04 Civ. 8141 (S.D.N.Y.); *In re Countrywide Financial Corp. Securities Litigation*, No. 07 Civ. 05295 (C.D. Cal.); *In re Fannie Mae 2008 Securities Litigation*, No. 08 Civ. 7831 (S.D.N.Y.); *In re General Electric Co. Securities Litigation*, No. 09 Civ. 1951 (S.D.N.Y.); and *In re Facebook, Inc., IPO Securities & Derivative Litigation*, MDL No. 12-2389 (S.D.N.Y.). More information on A.B. Data's qualifications and experience can be found on our website at www.abdataclassaction.com. A detailed description of A.B. Data's background and capabilities, and lists of representative cases and clients, is set forth in A.B. Data's firm resume, attached as Exhibit A.

3.    A.B. Data has numerous control systems and procedures in place to assume the secure handling of class members' data that we believe meet or exceed relevant industry standards. A summary of those procedures, addressing the issues highlighted in the updated Northern District of

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated April 24, 2023 (the "Stipulation").

DECLARATION OF ADAM D. WALTER
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT
1
CASE NO. 3:20-CV-6719-WHO

California Procedural Guidance for Class Action Settlements (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.) is attached as Exhibit B.

4.    A.B. Data accepts responsibility for security of class member information and claimant data; accurate calculation of claims pursuant to a Court-approved plan of allocation, subject to guidance of Lead Counsel; and accurate distribution of funds pursuant to a Class Distribution Order to be entered by the Court. A.B. Data maintains adequate insurance in the case of errors, which includes (a) professional liability errors and omissions insurance coverage; (b) a fidelity bond for employee dishonesty losses (plus additional computer fraud and wire transfer communication fraud coverages); and (c) network and information security liability coverage.

5.    A.B. Data affirms that data provided to it by BioMarin, brokers, and nominees, and claimants for the purposes of providing notice and administering the Settlement will be used solely for those purposes.

6.    A.B. Data was selected by Lead Counsel to serve as Claims Administrator for this Action, subject to the approval of the Court, after submitting a detailed proposal in response to a request for proposals received from Lead Counsel. A.B. Data's proposal included information on its proposed pricing for the engagement including its per-claim fees for claims processing and per-unit fees for others costs such as printing notices, mailing, telephone, and website services.

**Proposed Plan for Disseminating Notice of the Settlement to the Settlement Class**

7.    The proposed notice plan for the Settlement in this matter uses customary procedures that have been widely adopted in securities class actions and which have been designed to provide direct mail notification to all investors who are members of the Settlement Class and who can be identified with reasonable effort, as well as additional notice through publication in relevant publications and over the Internet.

8.    As set forth in the proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice (the "Order"), within ten (10) business days of the date of entry of the Order, BioMarin shall provide or cause to be provided to A.B. Data in electronic format (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) a list, consisting of

DECLARATION OF ADAM D. WALTER
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT

2                          CASE NO. 3:20-CV-6719-WHO

names, mailing addresses, and email addresses (if available) of the record purchasers of BioMarin common stock during the Class Period. As noted above, this information will be kept confidential and not used for any purpose other than to provide the notice.

9.     Thereafter, within twenty (20) business days after entry of the Order (which date shall be the "Notice Date"), A.B. Data will mail the Notice and Claim Form (together, the "Notice Packet") to (a) all record holders or purchasers identified by BioMarin and (b) a list of the largest and most common banks, brokers, and nominees ("Nominees") who may have purchased BioMarin common stock for the beneficial ownership of other persons and entities.[2]  The envelope in which the Notice Packet is mailed will state: "**Important Legal Notice: If you bought BioMarin Pharmaceutical Inc. common stock from March 3, 2020 through August 18, 2020, inclusive, you could get a payment from a class action settlement.**"

10.     The Notice Packets that A.B. Data mails to Nominees will include an instruction letter informing the Nominees that if they purchased or otherwise acquired BioMarin common stock during the Class Period for the benefit of another person or entity they must: (a) within seven (7) calendar days of receipt of the Notice, request from A.B. Data sufficient copies of the Notice Packet to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Notice, send a list of the names, mailing addresses, and, if available, email addresses, of all such beneficial owners to the A.B. Data, in which event A.B. Data shall promptly mail or email the Notice Packet to such beneficial owners. Nominees may seek reimbursement of their reasonable expenses actually incurred by providing A.B. Data with proper documentation supporting the expenses for which reimbursement is sought. Reasonable expenses shall not exceed $0.10 per mailing record provided to the A.B. Data; $0.10 per unit for each Notice Packet actually mailed plus postage at the rate used by the Claims Administrator; and $0.10 per Notice Packet sent via email.

---

[2] Currently, A.B. Data's list of Nominees contains approximately 4,200 Nominees. This list is continually monitored and updated as Nominees change addresses, merge, go out of business, and/or come into existence.

DECLARATION OF ADAM D. WALTER            3            CASE NO. 3:20-CV-6719-WHO
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT

11.     A.B. Data will also submit the Notice to the Depository Trust Company ("DTC") to post on the DTC Legal Notice System ("LENS"). LENS enables DTC member banks and brokers to review the Notice and contact A.B. Data directly to obtain copies of the Notice Packet for their clients who may be potential Settlement Class Members.

12.     On a rolling basis as requests for notice are received, A.B. Data will mail Notice Packets (in bulk) to Nominees, or directly mail the Notice Packet to potential Settlement Class Members identified by Nominees. A.B. Data will also disseminate the Notice Packet to any other persons or entities requesting them. Any Notice Packets that are returned as undeliverable will be reviewed to determine if an alternative or updated address is available from the U.S. Postal Service or through a third-party vendor to which A.B. Data subscribes and will be re-mailed to the updated or alternative address, if available.

13.     To supplement direct mailed notice to potential Settlement Class Members, A.B. Data will cause the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. As set forth in the Order, the foregoing publication/transmission will occur within ten (10) business days after the Notice Date.

14.     Simultaneously with the initial mailing of the Notice Packet, A.B. Data will establish a settlement website, www.BioMarinSecuritiesLitigation.com, where Settlement Class Members can obtain information about the Action and the Settlement as well as access and download copies of the Notice, the Claim Form, the Stipulation, and other Settlement-related documents. The Settlement Website will also contain a claims-filing portal for those Settlement Class Members who wish to submit their Claim online, as well as provide detailed instructions for Nominees and third-party filers submitting Claims electronically on behalf of their clients.

15.     A toll-free telephone number, 1-877-390-3369, and dedicated e-mail address, info@BioMarinSecuritiesLitigation.com, will also be established and staffed with customer service representatives trained to answer questions about the Settlement. Both the toll-free telephone number and dedicated e-mail address with be displayed, in multiple places, in the Notice and Claim Form and on the Settlement Website.

DECLARATION OF ADAM D. WALTER
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT
4
CASE NO. 3:20-CV-6719-WHO

**Information on Settlement Administration, Estimated Settlement Class Size,
and Number of Potential Claims**

16.    In developing the proposed notice plan for the Settlement, A.B. Data was asked to provide a rough estimate of the number of potential Settlement Class Members and, relatedly, the number of Notice Packets to be mailed. The majority of potential class members for any securities class action are beneficial purchasers who hold their securities in "street name." Because of this street name system, even corporate entities often do not know the identity of the vast majority of their shareholders. Thus, in estimating class size for any securities case, A.B. Data utilizes historical settlement data from other securities class action settlements that A.B. Data has administered, particularly those settlements of similar size and/or involving companies with similar market capitalization and numbers of shareholders. Based on this information and the publicly available trading volume of BioMarin common stock during the Class Period, A.B. Data estimates that it will mail a total of approximately 50,000 copies of the Notice Packet to potential Settlement Class Members and nominees.

17.    Based on A.B. Data's experience, we expect approximately 20,000 claims to be submitted (which equates to 40% of the 50,000 expected mailings). *See, e.g.*, *In re Merit Medical Systems, Inc. Securities Litigation*, Master File No. 8:19-cv-02326-DOC-ADS (C.D. Cal. 2022) (claims received represented 46% of notices mailed); *SEB Investment Management AB v. Symantec Corp., et al.,* Case No. C 18-02902-WHA (N.D. Cal. 2022) (48%); *In re Evoqua Water Technologies Corp. Securities Litigation,* Master File No. 1:18-cv-10320-JPC (S.D.N.Y. 2021) (37%); *In re Qudian Inc. Sec. Litig.*, Case No. 1:17-cv-09741-JMF (S.D.N.Y. 2021) (30%). We believe these cases are good examples for estimation of the claims rate, because they are recent securities class action settlements with class sizes (based on notices mailed) that are comparable to that expected in the current case.

18.    Settlement Class Members who wish to be potentially eligible to receive a distribution from the Settlement will be required to complete and submit to A.B. Data a properly executed Claim either by mail or online through the Settlement Website such that it is postmarked (if mailed) or received no later than the claims-submission deadline established by the Court,

DECLARATION OF ADAM D. WALTER
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT

5

CASE NO. 3:20-CV-6719-WHO

together with adequate supporting documentation for the transactions and holdings in BioMarin common stock reported therein.

19.    Each Claim received by A.B. Data will be reviewed upon receipt to verify that all required information has been provided. The documentation provided with each Claim will be reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition, sale, and holding information. A.B. Data will process each Claim in accordance with the Court-approved plan of allocation using the loss calculation module developed for the Settlement.

20.    If a Claim is determined to be defective, a deficiency notification will be sent to the Claimant, via letter or email, describing the deficiency in the Claim including, where applicable, what is necessary to cure the deficiency. The deficiency notification will also advise Claimants how much time they have to submit the appropriate information and/or documentary evidence to complete/cure their Claim. If the deficiency in the Claim is not cured, the Claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise Claimants of their right to contest A.B. Data's administrative determination with respect to their Claim and to request Court review of their Claim.

21.    After the Claims (and responses to deficiency notifications) have been fully processed, quality assurance reviews performed, and final administrative determinations have been made as to which Claims are valid, A.B. Data will present its administrative report on the Claims received for the Settlement to the Court, along with a proposed plan for distribution. Thereafter, upon Court approval, A.B. Data will distribute the net Settlement proceeds to eligible Settlement Class Members *pro rata* based upon each Claim's recognized loss amount as calculated pursuant to the Court-approved plan of allocation, the total recognized losses of all eligible Claims, and the amount available for distribution.

22.    Distributions from the net Settlement proceeds will be sent to eligible Settlement Class Members via check or wire with, in the case of check payments, a specified period for each Claimant to cash their payment (typically 90 or 120 days). For any checks that are not cashed, A.B.

DECLARATION OF ADAM D. WALTER
IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT

6                    CASE NO. 3:20-CV-6719-WHO

Data will conduct an outreach campaign to encourage cashing and to provide Claimants with reissued checks where applicable.

23.     The procedure described above is the standard claims administration process for all securities class action settlements handled by A.B. Data.

### Estimated Administration Costs

24.     Based on its experience administering securities class action settlements with similar numbers of shareholders, A.B. Data estimates that providing notice to the Settlement Class, Claims processing, and distribution of the net Settlement proceeds to eligible Settlement Class Members will generate professional services fees and expenses of approximately $220,000 as well as approximately $30,000 in expected fees charged by brokers and nominees for providing names and addresses of potential Settlement Class Members or for forwarding the Notice Packet to their clients. Accordingly, A.B. Data estimates that the total Notice and Administration Costs will be approximately $250,000, which is approximately 0.6% of the proposed Settlement Amount. In A.B. Data's experience, the notice process, claims process, and estimated fees and expenses outlined above are reasonable in relation to the value of the settlement, and consistent with those incurred in other securities settlements of similar size and complexity.

25.     The foregoing amounts are estimates and the ultimate cost of this administration could change if the number of Notice Packets mailed is substantially greater (or smaller) than A.B. Data's estimate or if the number of Claims received is substantially greater (or smaller) than the estimate. In addition, the costs of this administration could also be impacted by any out of scope work encountered during the course of the administration. A.B. Data will always strive to keep costs down whenever possible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of April, 2023.

_____
ADAM D. WALTER

#3276449

| DECLARATION OF ADAM D. WALTER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT | 7 | CASE NO. 3:20-CV-6719-WHO |

# EXHIBIT A



Class
Action
Administration

DATA

**Headquarters**
600 A.B. Data Drive
Milwaukee, WI 53217
P:  866-217-4470
F:  414-961-3099

**New York**
One Battery Park Plaza
32nd Floor
New York, NY 10004
P:  646-290-9137

**Washington DC**
915 15th St., NW, Ste. 300
Washington, DC 20005
P:  202-618-2900
F:  202-462-2085

**Florida**
5080 PGA Boulevard, Ste. 209
Palm Beach Gardens, FL 33418
P:  561-336-1801
F:  561-252-7720

**Israel**
19 Weissburg Street
Tel Aviv 69358
Israel
P:  +972 (3) 720-8782



# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned**, more than 40-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward**. A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."

New York | Washington, DC | West Palm Beach | Milwaukee | Tel Aviv | **abdataclassaction.com**



# Services

## All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

## Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

## Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

## Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.



## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds**, check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to

instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.

## A.B. Data's Leadership

 **A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also  Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Eric Schachter, Senior Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. He has over 15 years of experience in the legal settlement administration services industry. Mr. Schachter's responsibilities include ensuring successful implementation of claims administration services for A.B. Data's clients in accordance with settlement agreements, court orders, and service agreements. He also works closely with Project Managers to develop plans of administration to provide the highest level of effective and efficient delivery of work product. A frequent speaker on claims administration innovation and best practices at industry events nationwide, Mr. Schachter has a bachelor's degree in sociology from Syracuse University, earned his law degree at Hofstra University School of Law, and was previously an associate at Labaton Sucharow LLP in New York City.

**Elaine Pang, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Pang brings more than 15 years of experience in developing and implementing multifaceted digital and traditional media for high profile complex legal notice programs. She uses her experience in class actions and advertising to provide the best practicable notice plans for large scale campaigns across domestic and international regions, and she leverages her expertise to better understand the evolving media landscape and utilize cutting-edge technology and measurement tools. Prior to entering the class action industry, Ms. Pang worked with many leading reputable brands, including General Mills, Air Wick, Jet-Dry, Comedy Central, Madison Square Garden, Radio City Music Hall, and Geox. She earned her MBA from Strayer University and holds a BS in Marketing from Pennsylvania State University.  Ms. Pang's credentials include Hootsuite Social Marketing Certification, Google Adwords and Analytics Certification, and IAB Digital Media Buying and Planning Certification.

**Paul Sauberer, Vice President of Quality**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Justin Parks, Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. Mr. Parks brings extensive experience in client relations to A.B. Data's business development team. Mr. Parks has over 15 years of experience in the legal settlement administration services industry and has successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), including some of the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Steve Straub, Senior Director of Operations**, started with A.B. Data in 2012 as a Claims Administrator. He moved through the ranks within the company where he spent the past five years as Senior Project Manager managing many of the complex commodities cases such as *In re LIBOR-Based Financial Instruments Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, and *Laydon v. Mizuho Bank, Ltd., et al.* Mr. Straub's performance in these roles over the past ten years, along with his comprehensive knowledge of company and industry practices and first-person experience leading the project management team, has proven him an invaluable member of the A.B. Data team.

In his role as Claimant Operations Director, his responsibilities include developing efficiencies within the operations center, which includes mailroom, call center, and claims processing areas. His areas of expertise include business process development, strategic/tactical operations planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. Mr. Straub is well-versed in the administration of securities, consumer, and antitrust class action settlements. He earned his Juris Doctor degree from Seton Hall University School of Law in Newark, New Jersey.

**Jack Ewashko, Director of Client Services**, brings twenty years of industry and brokerage experience to his role with A.B. Data. He is an accomplished client manager adept at facilitating proactive communications between internal and outside parties to ensure accurate and timely deliverables. Mr. Ewashko previously held positions at two claim administration firms where he oversaw the securities administration teams and actively managed numerous high-profile matters, including the $2.3 billion foreign exchange litigation. He notably served as Vice President, FX and Futures Operations at Millennium Management, a prominent global alternative investment management firm. As he progressed through trading, analytic, management, and consultancy roles at major banks and brokerage firms, Mr. Ewashko gained hands-on experience with vanilla and exotic securities products, including FX, commodities, mutual funds, derivatives, OTC, futures, options, credit, debt, and equities products. In the financial sector, he also worked closely with compliance and legal teams to ensure accuracy and conformity with all relevant rules and regulations regarding the marketing and sale of products, as well as the execution and processing of trades. He has held Series 4, Series 6, Series 7, and Series 63 licenses, and has been a member of the Futures Industry Association (FIA) and Financial Industry Regulatory Authority (FINRA). Mr. Ewashko earned his Bachelor of Business Administration from Long Island University, Brooklyn, New York.

**Brian Devery, Director of Client Services**, brings more than a decade of experience in class action administration and project management, as well as over two decades of experience as an attorney (ret.). Mr. Devery currently focuses on consumer, antitrust, employment, and other non-securities based administrations. In addition to driving project administration, he is focused on the implementation of process improvement, streamlining, and automation. Mr. Devery is admitted to practice law in State and Federal Courts of New York with his Juris Doctorate earned from the Maurice A. Deane School of Law at Hofstra University, Hempstead, New York.

**Adam Walter, PMP, Senior Project Manager**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Eric Nordskog, Senior Project Manager**, started with A.B. Data in 2012 on the operations team, managing dozens of team leads and claims administrators in the administration of legal cases and actions. In 2017, Mr. Nordskog was promoted to Project Manager, due in part to his proven ability to add consistency and efficiency to the e-claim filing process with new streamlined processes and audit practices. Today, as Senior Project Manager, he directs many of A.B. Data's securities, insurance, and

consumer cases. He regularly oversees the administration of large insurance cases, such as two recent Cigna Insurance matters that involved complex calculations and over one million class members each. He is also the primary hiring and training manager for new project managers and coordinators. Mr. Nordskog earned his Juris Doctor degree from Marquette University Law School, Milwaukee, in 2001.

**Bruce Holman, Senior Project Manager**, began working with A.B. Data in 2020, bringing his many years of claims administration management experience to the team. Mr. Holman oversees many of A.B. Data's labor and employment cases, acting as a consultant to A.B. Data's clients and offering strategy approaches to his fellow project managers and the class action administration team. His industry knowledge and expertise have made him an invaluable member of the A.B. Data team.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.

## Secure Environment

 **A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security

**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

## Fraud Prevention and Detection

**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

## Representative Class Action Engagements



**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

<span style="background-color:red">**Consumer & Antitrust Cases**</span>

- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*



- *In re Broiler Chicken Antitrust Litigation - Commercial (Indirect)*
- *In re Broiler Chicken Antitrust Litigation – Indirect*
- *In re Broiler Chicken Antitrust Litigation – Direct*
- *In re Pork Antitrust Litigation – Directs*
- *In re Pork Antitrust Litigation – Indirects*
- *Peter Staley, et al. v. Gilead Sciences, Inc., et al.*
- *In re: Opana ER Antitrust Litigation*
- *In re Ranbaxy Generic Drug Application Antitrust Litigation*
- *In re Valeant Pharmaceuticals Int'l, Inc. Third-Party Payor Litigation*
- *Staley, et al., v. Gilead Sciences*
- *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation – Direct Purchasers*
- *Beef Direct Purchaser Antitrust Litigation*
- *BCBSM, Inc. v. Vyera Pharmaceuticals, et al.* (Daraprim)
- *In re Automobile Antitrust Cases I and II*
- *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.* (Turkey)
- *Integrated Orthopedics, Inc., et al. v. UnitedHealth Group, et al.*
- *In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*
- *Vista Healthplan, Inc., et al. v. Cephalon, Inc., et al.* (Provigil)
- *Jeffrey Koenig, et al. v. Vizio, Inc.*
- *Wit, et al. v. United Behavioral Health*
- *Weiss, et al. v. SunPower Corporation*
- *Smith, et al. v. FirstEnergy Corp., et al.*
- *Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.*
- *Julian, et al. v. TTE Technology, Inc., dba TCL North America*
- *Eugenio and Rosa Contreras v. Nationstar Mortgage LLC*
- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*
- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*



- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*
- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Plymouth County Retirement Association v. Spectrum Brands Holdings, Inc., et al.*
- *Tung, et al. v. Dycom Industries, Inc., et al.*
- *Boutchard., et al. v. Gandhi, et al.* ("Tower/e-Minis")
- *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*
- *SEB Investment Management AB, et al. v. Symantec Corporation, et al.*
- *In re Impinj, Inc. Securities Litigation*
- *In re Netshoes Securities Litigation*
- *Yellowdog Partners, LP, et al. v. Curo Group Holdings Corp., et al.*
- *In re Brightview Holdings, Inc. Securities Litigation*
- *In re Obalon Therapeutics, Inc. Securities Litigation*
- *In re Willis Towers Watson PLC Proxy Litigation*
- *In re Blue Apron Holdings, Inc. Securities Litigation*
- *In re: Qudian Inc. Securities Litigation*



- *Plymouth County Contributory Retirement System v. Adamas Pharmaceuticals, et al.*
- *In re Perrigo Company PLC Securities Litigation*
- *Enriquez, et al. v. Nabriva Therapeutics PLC, et al.*
- *Teamsters Local 456 Pension Fund, et al. v. Universal Health Services, Inc., et al.*
- *Olenik, et al. v. Earthstone Energy, Inc.*
- *Shenk v. Mallinckrodt plc, et al.*
- *In re The Allstate Corp. Securities Litigation*
- *Christopher Vataj v. William D. Johnson, et al.* (PG&E Securities II)
- *Kirkland v. WideOpenWest, Inc.*
- *Oklahoma Police Pension and Retirement System v. Sterling Bancorp, Inc.*
- *In re Uxin Limited Securities Litigation*
- *City of Hallandale Beach Police Officers' & Firefighters' Personnel Retirement Trust v. Ergen, et al.* (Echostar)
- *Lewis v. YRC Worldwide Inc., et al.*
- *Tomaszewski v. Trevena, Inc., et al.*
- *In re Restoration Robotics, Inc. Securities Litigation*
- *Public Employees' Retirement Systems of Mississippi, et al. v. Treehouse Foods, Inc., et al.*
- *Ronald L. Jackson v. Microchip Technology, Inc., et al.*
- *In re Micro Focus International plc Securities Litigation*
- *In re Dynagas LNG Partners LP Securities Litigation*
- *Weiss, et al. v. Burke, et al.* (Nutraceutical)
- *Yaron v. Intersect ENT, Inc., et al.*
- *Utah Retirement Systems v. Healthcare Services Group, Inc., et al.*
- *In re PPDAI Group Inc. Securities Litigation*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *In re Aqua Metals, Inc. Securities Litigation*
- *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Southwestern Energy Company*
- *In re CPI Card Group Inc. Securities Litigation*
- *Arkansas Teacher Retirement System, et al. v. Alon USA Energy, Inc., et al.*
- *In re TAL Education Group Securities Litigation*
- *GCI Liberty Stockholder Litigation*
- *In re SciPlay Corporation Securities Litigation*
- *In re Allergan Generic Drug Pricing Securities Litigation*
- *In re Vivint Solar, Inc. Securities Litigation*
- *In re YayYo Securities Litigation*
- *In re JPMorgan Treasury Futures Spoofing Litigation*
- *Searles, et al. v. Crestview Partners, LP, et al.* (Capital Bank)
- *In re Lyft, Inc. Securities Litigation*
- *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*
- *In re JPMorgan Precious Metals Spoofing Litigation*
- *In re Pivotal Software, Inc. Securities Litigation*
- *Longo, et al. v. OSI Systems, Inc., et al.*
- *In re Homefed Corporation Stockholder Litigation*
- *Pierrelouis v. Gogo Inc., et al.*
- *Pope v. Navient Corporation, et al.*
- *In re Merit Medical Systems, Inc. Securities Litigation*
- *In re Frontier Communications Corporation Stockholder Litigation*
- *Holwill v. AbbVie Inc.*
- *Budicak, Inc., et al. v. Lansing Trade Group, LLC, et al.* (SRW Wheat Futures)
- *Yannes, et al. v. SCWorx Corporation*



- *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
- *In re Myriad Genetics, Inc. Securities Litigation*
- *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*
- *The Arbitrage Fund, et al. v. William Petty, et al.* (Exactech)
- *In re Columbia Pipeline Group, Inc. Merger Litigation*
- *Martinek v. AmTrust Financial Services, Inc.*
- *City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Benefitfocus, Inc., et al.*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*
- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*
- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*



- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*
- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*
- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

### Labor & Employment Cases

- *Verizon OFCCP Settlement*
- *Alvarez, et al. v. GEO Secure Services, LLC*
- *Sartena v. Meltwater FLSA*
- *Carmen Alvarez, et al. v. Chipotle Mexican Grill, Inc., et al.*
- *Turner, et al. v. Chipotle Mexican Grill, Inc.*
- *Long, et al. v. Southeastern Pennsylvania Transportation Authority*
- *Matheson, et al. v. TD Bank, N.A.*
- *Ludwig, et al. v. General Dynamics Information Technology, Inc., et al.*
- *Bedel, et al. v. Liberty Mutual Group Inc.*
- *Irene Parry, et al. v. Farmers Insurance Exchange, et al.*
- *Maldonado v. The GEO Group, Inc.*
- *Alderman and Maxey v. ADT, LLC*
- *Albaceet v. Dick's Sporting Goods*
- *Rodriguez v. The Procter & Gamble Company*
- *Adekunle, et al. v. Big Bang Enterprises, Inc. d/b/a The Revenue Optimization Companies*

- *Gorski, et al. v. Wireless Vision, LLC*
- *Lopez, et al. v. New York Community Bank, et al.*
- *Hamilton, et al. v. The Vail Corporation, et al.*
- *Eisenman v. The Ayco Company L.P.*
- *Matheson v. TD Bank, N.A.*
- *Simon v. R.W. Express LLC, d/b/a Go Airlink NYC*
- *Perez v. Mexican Hospitality Operator LLC, d/b/a Cosme*
- *Shanahan v. KeyBank, N.A.*
- *Loftin v. SunTrust Bank*
- *Alvarez v. GEO Secure Services, LLC*
- *Weisgarber v. North American Dental Group, LLC*
- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*
- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al.* ("Dovetail Settlement")
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

## Data Breach/BIPA Cases

- *Hunter v. J.S.T. Corp. BIPA Settlement*
- *Atkinson, et al. v. Minted, Inc.*
- *Rosenbach, et al. v. Six Flags Entertainment Corporation and Great America LLC*
- *Pratz, et al. v. MOD Super Fast Pizza, LLC*

- *The State of Indiana v. Equifax Data Breach Settlement*
- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*
- *In re: Barr, et al. v. Drizly, LLC f/k/a Drizly, Inc., et al.*

### Telephone Consumer Protection Act (TCPA) Cases

- *Perrong, et al. v. Orbit Energy & Power, LLC*
- *Baldwin, et al. v. Miracle-Ear, Inc.*
- *Floyd and Fabricant, et al. v. First Data Merchant Services LLC, et al.*
- *Hoffman, et al. v. Hearing Help Express, Inc., et al.*
- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*
- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America, et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**.

# EXHIBIT B



**Settlement Administration Data Protection Checklist**

| Category | Control / Question | Response |
|---|---|---|
| Limitation on Use of Data | Affirmation that data provided to the administrator for purposes of notice, settlement, or award administration will be used solely for settlement implementation and for no other purpose | All data provided directly to A.B. Data will be used solely for the purpose of effecting the terms of the Settlement. A.B. Data will not use such information or information to be provided by Settlement Class Members for any other purpose than the administration of the Settlement in this Action; specifically the information provided will not be used, disseminated, or disclosed by or to any other person/entity for any other purpose. |
| Technical Controls | Firewalls and intrusion detection/prevention systems | A.B. Data uses modern next generation firewall systems which include intrusion detection, prevention, and alerting functions.  A.B. Data's Information Security Policy requires firewalls be configured for intrusion detection and alerting of incidents to the A.B. Data IT department staff. |
| Technical Controls | Endpoint detection and response (EDR) systems | A.B. Data uses host based endpoint protection systems which are managed by the A.B. Data IT Department.  These protection systems are configured to provide alerting to the IT team for security events who are in turn responsible for responding as required based on incident severity. |
| Technical Controls | Complex password requirements | A.B. Data requires complex passwords as part of its Information Security Policy.  User accounts are required to have a minimum of 12 character passwords with alpha, numeric, and symbols along with upper and lower cases. |
| Technical Controls | Multi-factor authentication for access to systems and data | A.B. Data Class Action Administration Systems require Multi-Factor Authentication for access to all claims systems and data. |
| Technical Controls | Malware protection, anti-virus and vulnerability scanning and penetration tests | A.B. Data uses industry leading endpoint protection systems which include Malware, Anti-Virus and host based intrusion protection technologies.  A.B. Data utilizes regular vulnerability testing scans on a monthly basis to detect vulnerabilities in its systems on both internal and external networks.  These vulnerability scans are performed by a third party and reported back to the A.B. Data IT department for review and remediation as necessary. |
| Technical Controls | Data encryption (including, "encrypted at rest and in transit," "scrambled in storage," and "cell- or column-level encryption for PII" protocols) | A.B. Data's data encryption standards follow its Information Security Policy requirements such that all data is encrypted at rest on all servers, and, while in transit, must meet encryption standards of AES256 bit or greater. |
| Technical Controls | "Key management" for access to encrypted databases (e.g., using a hardware security module (HSM) or a key management service (KMS)) | A.B. Data utilizes a KMS (Key Management System) for encrypted databases. |

| Category | Control / Question | Response |
|---|---|---|
| Technical Controls | Access only provided on need-to-know basis | A. B. Data Group uses the "Least Privilege" security model, whereby all user accounts are granted no security permissions by default and only given the least level of security permissions necessary to properly complete user assigned work duties as defined by the specific department management. |
| Administrative Policies | Personnel and support staff risk assessment and management, including pre-hire background checks and screening processes | All employees must pass a pre-employment background check, including a lawful ten-year criminal record review, employment verification, education verification (if required by position), and credit history.  In addition, substance testing is a hiring requirement. |
| Administrative Policies | Personnel and support staff required to enter into non-disclosure and confidentiality agreements | All employees must sign a Confidentiality Agreement ensuring they will recognize their responsibilities in upholding confidential information accessed using data and resources through A.B. Data's networks, databases, and all technology systems.  All employees must also sign a Non-Compete, Trade Secret, Proprietary and Confidential Information Non-Disclosure Agreement.  This agreement requires the employee to understand, acknowledge, and agree to all the covenants and conditions not to compete and not to disclose proprietary information without consequences for any violation. |
| Administrative Policies | Access controls to systems and data, including guidance for granting, modifying, and reviewing access rights | A.B. Data access, modifications and removal is authorized by human resources and managed by its IT department.  Access permissions are reviewed and approved by management. |
| Administrative Policies | Information security and privacy policy trainings, including policy review, best practices, and data security | A.B. Data requires annual Security Awareness Trainings of all employees and upon hire.  These trainings cover existing and new security policy changes to the organization.  The Information Security Policy is reviewed annually by A.B. Data's Security and Compliance team ensuring it is meeting industry best practices and procedures for the industry.  Additional security trainings are required for roles that require elevated levels of data access. |
| Administrative Policies | No remote access to systems for employees | A.B. Data allows certain employees remote access privileges to its systems as required for performance of their job duties.  All remote access utilizes two-factor authentication. |
| Administrative Policies | Exit interviews/confirmation that terminated/departed employees are immediately cut off from access | A.B. Data's termination procedures require all user account access be removed immediately upon termination.  A.B. Data's IT Department is required upon receipt of termination notification to disable account and system access (physical and logical) within one (1) hour, 24 hours per day, 7 days per week. |
| Administrative Policies | Robust audits of data privacy policies by third-party vendors | A.B. Data currently holds SOC1 SSAE18 annual audit by third part auditors who review its policies annually.  Additionally, A.B. Data is currently in the process of obtaining a SOC2 audit report in 2023. |
| Administrative Policies | Accreditation in accordance with ISO 27001 and SOC2 (among the industry standards listed below) | A.B. Data currently holds SOC1 SSAE18 annual audit by third part auditors who review its policies annually.  Additionally, A.B. Data is currently in the process of obtaining a SOC2 audit report in 2023. |

| Category | Control / Question | Response |
|---|---|---|
| Administrative Policies | Disclosure of external certifications and any notice of expiration | A.B. Data may only disclose certifications and expirations upon written request. |
| Crisis and Risk Management | Incident response / "disaster plan" for immediate response to security incidents such as data breach | A.B. Data has a formal written Incident Response Policy which addresses immediate security incidents. This plan addresses all levels of response and coordination which include management, security response teams, and law enforcement if required. |
| Crisis and Risk Management | Process and timing for notification to attorneys, claimants, and other stakeholders of a data breach and consideration of resources and/or remedies to provide thereto | A.B. Data has a formal written Incident Response Policy which addresses immediate security incidents. This plan addresses all levels of response and coordination which include management, security response teams, external partners, and law enforcement if required. |
| Crisis and Risk Management | Vendor management program that determines and defines requirements to manage risk associated with outsourcing | A.B. Data has a formal vendor management and risk management policy which defines requirements for vendors of A.B. Data. This policy is available for review upon request. |
| Physical Access Controls | Physical Access Security - Security Guards | A.B. Data contracts physical security monitoring to an accredited alarm monitoring company. As part of this contract, A.B. Data has access to security guards on patrol who will respond to issues at our facilities. |
| Physical Access Controls | Physical Access Security - Access cards to facilities with assignment of identification card subject to approval and review | A.B. Data utilizes access control cards (ACS) and identification cards to control physical access to its facilities. Cards are only issued though a management approval process. |
| Physical Access Controls | Physical Access Security - Logs of access | A.B. Data retains logs of all access to/from our facilities. |
| Physical Access Controls | Alarm Systems | AB Data utilizes multiple alarm systems which offer intrusion, fire, and duress alarms. These systems are monitored by certified third party monitoring companies and respond to alarms on a 24 hour basis, 7 days a week, 365 days per year. |
| Physical Access Controls | CCTV recording systems | AB Data manages CCTV and recording systems in house through its IT department management. Video recordings are maintained for 90 days for review retention. All building external entrances and exits are covered by CCTV recordings. In our datacenter, additional coverage is monitoring all exits and entrances along with coverage views of critical equipment and systems. All systems are maintained under a battery and generator power backup to ensure continuous coverage. |
| Data Collection and Retention | Minimization of collection of personally identifiable information, e.g., social security numbers and banking information | A.B. Data only requests information that is needed for purposes of settlement administration and approved by the Court. Typically complete social security numbers and banking information are not required. |
| Data Collection and Retention | Data collection only required to extent necessary for settlement administration | A.B. Data only requests information that is needed for purposes of settlement administration and approved by the Court. Typically complete social security numbers and banking information are not required. |
| Data Collection and Retention | Various methods for ensuring data protection and security - Data classification (including implementation of appropriate safeguards to protect from theft, loss, and/or unauthorized disclosure, use, access, destruction) | A.B. Data's Information Security Policy addresses all data classification and protection policies and procedures. Additionally A.B. Data's staff sign confidentiality and privacy agreements to ensure data is handled appropriately. These policies are available for review upon request. |

| Category | Control / Question | Response |
|---|---|---|
| Data Collection and Retention | Various methods for ensuring data protection and security - Compliance with applicable laws and regulations (see below) | A.B. Data's Information Security Policy addresses all data compliance and regulatory protections. These policies are available for review upon request. |
| Data Collection and Retention | Various methods for ensuring data protection and security - Secure Data Transfer | A.B. Data requires all data transfers to follow industry standard security requirements.  A.B. Data's Information Security Policy details these requirements, which include use of encryption during data transfers along with additional security measures. |
| Data Destruction | Preservation of data only for so long as required for administration of the settlement and any relevant reporting required following the payments or distributions | A.B. Data retains settlement administration data based on the requirements set forth in relevant Court Order and/or client agreements.  If no guidance is provided, A.B. Data destroys all data when no longer needed for purposes of settlement administration. |
| Data Destruction | Secure data destruction (e.g., 6 months – 1 year or when no longer required) | A.B. Data retains settlement administration data based on the requirements set forth in relevant Court orders and/or client agreements.  If no guidance is provided, A.B. Data destroys all data when no longer needed for purposes of settlement administration. |
| Data Destruction | Physical media (e.g., paper, CDs) shredded or destroyed to point where they cannot be reconstructed | A.B. Data's Information Security Policy details physical media destruction requirements which meet industry standards.  Electronic media that is being retired from service must be erased using the NIST Data Destruction Standard 800-88 Media Sanitation Procedures.  If media is no longer functional, the media must be physically destroyed via shredding, degaussing, hammer, or other physical method to make the media fully unusable and severely difficult for physical reconstruction. |
| Data Destruction | Destruction of all derivative copies and/or back-ups | A.B. Data's Information Security Policy details physical media destruction requirements which meet industry standards.  Electronic media that is being retired from service must be erased using the NIST Data Destruction Standard 800-88 Media Sanitation Procedures.  If media is no longer functional, the media must be physically destroyed via shredding, degaussing, hammer, or other physical method to make the media fully unusable and severely difficult for physical reconstruction. |
| Applicable Laws, Standards, and Other Regulation | Industry standards: National Institute of Standards and Technology (NIST), HIPAA, FISMA, System and Organization Controls (SOC1 and SOC2) or more advanced assessment, ISO 27001 | A.B. Data follows all applicable local, national, and international privacy regulations. A.B. Data's security team facilitates and monitors compliance with privacy policies. |
| Applicable Laws, Standards, and Other Regulation | Local, national, international privacy regulations (including CCPA) | A.B. Data follows all applicable local, national, and international privacy regulations. A.B. Data's security team facilitates and monitors compliance with privacy policies. |
| Ethical Rules | Administrative policies and/or employee handbook incorporating commitment to ethical rules (e.g., company, court ethical rules) setting forth standards of ethical and legal behavior | All employees are subject to the terms of A.B. Data's Employee Handbook which outlines all employee administrative policies, obligations, and requirements. |
| Ethical Rules | Enforcement clauses, violation resulting in disciplinary action including and up to termination of employment | Consequences of employee breaches of administrative policies is subject to management discretion. |
| Customer Service Measures | Description of settlement website and posting thereto of relevant privacy policies or statements (including portal for reporting suspected loss of confidential data submitted with claim) | All settlement websites contain a link to A.B. Data's privacy policy and, for dynamic websites where A.B. Data collects data, A.B. Data utilize an SSL certificate that authenticates a website's identity and enables an encrypted connection. |

| Category | Control / Question | Response |
|---|---|---|
| Customer Service Measures | Explanation of role of claims administrator and how to prevent phishing (e.g., clear indication that administrator will not request confidential information by e-mail and how to identify a valid email sent from the administrator) | Emails sent to class members are written in concise language, contain prominent links to the settlement website, and include an explanation of how the email is related to a court-approved settlement.  A.B. Data never requests that confidential information by sent over email. A.B. Data also implements certain best practices when disseminating email to minimize confusion and maximize deliverability. For example, the subject line, the sender, and the body of the message will be designed to overcome SPAM filters and encourage readership. Emails are sent in an embedded html text format without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by an e-mail service provider or labeled as SPAM. Emails are also transmitted with a digital signature to the header and content, which allows e-mail service providers to programmatically authenticate that the emails are from A.B. Data's authorized mail servers. |