**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (*pro hac vice*)
billy.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Counsel for Lead Plaintiff Arbejdsmarkedets
Tillægspension and Lead Counsel for the
Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE BIOMARIN PHARMACEUTICAL INC. SECURITIES LITIGATION | Case No. 3:20-cv-06719-WHO <br><br> **LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION** <br><br> Dept: Courtroom 2, 17th Floor <br> Judge: Hon. William H. Orrick <br> Date: November 8, 2023 <br> Time: 2:00 p.m. |

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION

CASE NO. 3:20-CV-6719-WHO

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................ii

NOTICE OF MOTION........................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

PRELIMINARY STATEMENT ................................................................................. 2

ARGUMENT..................................................................................................................7

I.    The Proposed Settlement Warrants Final Approval ...................................... 7

    A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class.................................................................................... 8

    B.    The Settlement Was Reached After Substantial Discovery and Arm's-Length Negotiations Between Experienced Counsel, and with the Assistance of an Experienced Mediator............................. 10

    C.    The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors........................................ 12

        1.    The Amount of the Proposed Settlement.............................. 12

        2.    The Strengths and Weaknesses of the Case and the Significant Risks of Continued Litigation ............................ 14

        3.    The Duration and Costs of Continued Litigation.................. 17

        4.    All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement.................................................... 18

    D.    The Settlement Treats Class Members Equitably............................. 20

    E.    Additional Factors Considered by the Ninth Circuit Support Approval ...................................................................................... 20

II.    The Plan of Allocation Is Fair and Reasonable ........................................... 21

III.    Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process......................................................................................... 24

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
    i    
CASE NO. 3:20-CV-6719-WHO

CONCLUSION .............................................................................................................................25

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                          **PAGE(S)**

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................................................10, 11

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................................15, 16, 17, 21

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ......................................................................................10

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......................................................................17

*In re Aqua Metals, Inc. Sec. Litig.*,
    2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ......................................................................13

*Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*,
    2023 WL 5112157 (2d Cir. Aug. 10, 2023) .....................................................................16

*Azar v. Blount Int'l, Inc.*,
    2019 WL 7372658 (D. Or. Dec. 31, 2019) ......................................................................13

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 4260712 (S.D. Cal. July 24, 2020) ...................................................................16

*In re Biolase, Inc. Sec. Litig.*,
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .................................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .....................................................................................10, 11

*In re Celera Corp. Sec. Litig.*,
    2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .................................................................16

*Churchill Village L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................8, 20, 25

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .......................................................................................8, 21

*Nat'l Rural Telcommunications Coop. v. DIRECTV*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................20

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...........................................................12, 17, 25

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...........................................................................................9

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................8, 10, 12

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ....................................................................................18

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ................................................................25

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4. 2018) .................................................................20

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................23

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................................................17, 22

*IBEW Loc. 697 v. Int'l Game Tech.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...................................................................13

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........................................................................15

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .................................................................................20

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................................14

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...........................................................................................8

*Lembeck v. Arvest Cent. Mortg. Co.*,
   2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ................................................................10

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ...........................................................................................9

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)....................................................................................17

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION

iv

CASE NO. 3:20-CV-6719-WHO

*Luna v. Marvell Tech. Grp.*,
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ...........................................................................25

*McPhail v. First Command Fin. Planning, Inc.*,
  2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...........................................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..............................................................................................8, 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................................7, 21

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. June 18, 1994) ...........................................................................22

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................................9

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................................12

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................................................................7

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................................................................14, 17

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
  2018 WL 828199 (S.D. Cal. Feb. 9, 2018) .............................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ........................................................................23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ...........................................................................8

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ....................................................................................................................25

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................................24, 25

Fed. R. Civ. P. 23(e) ..........................................................................................................................7

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION

v

CASE NO. 3:20-CV-6719-WHO

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................................24

Fed. R. Civ. P. 23(e)(2)....................................................................................................... *passim*

## NOTICE OF MOTION FOR FINAL APPROVAL
## OF SETTLEMENT AND PLAN OF ALLOCATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval (ECF No. 146) ("Preliminary Approval Order"), Lead Plaintiff Arbejdsmarkedets Tillægspension ("Lead Plaintiff" or "ATP") will and hereby does move the Court, before the Honorable William H. Orrick, on November 8, 2023, at 2:00 p.m. in Courtroom 2, 17th Floor of the United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or at such other location and time as set by the Court, for (1) entry of a judgment granting final approval of the proposed settlement of this Action (the "Settlement") and (2) entry of an order granting approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Katherine M. Sinderson in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Sinderson Declaration" or "Sinderson Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and any additional information or argument that may be required by the Court. The proposed Judgment and a proposed Order approving the Plan of Allocation will be submitted with Lead Plaintiff's reply submission, after the deadline for submission of any objections and requests for exclusion has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should approve the proposed Settlement of this securities class action as fair, reasonable, and adequate under Rule 23(e)(2); and

2.     Whether the Court should approve the Plan of Allocation as fair and reasonable.

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION                    1                    CASE NO. 3:20-CV-6719-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of itself and the Settlement Class, respectfully submits this memorandum in support of its motion for final approval of the proposed Settlement and the plan of allocation of the settlement proceeds.[1]

## PRELIMINARY STATEMENT

Lead Plaintiff is pleased to present for the Court's approval its agreement to settle this securities class action in exchange for a cash payment of $39,000,000 for the benefit of the Settlement Class. Lead Plaintiff respectfully submits that the proposed Settlement is a very favorable result for the Settlement Class in light of the serious risks that it faced in proving the securities fraud claims at issue, including the substantial risks to proving falsity, materiality, scienter, loss causation, and damages at summary judgment and trial, as well as the delays attendant to continued litigation. The proposed Settlement was achieved after several years of vigorous litigation, which included substantial fact discovery. The Settlement is also the product of extended arm's-length negotiations between experienced and well-informed counsel, which required two formal mediation sessions before an experienced mediator, Michelle Yoshida of Phillips ADR Enterprises, to achieve. The Settlement was based on a final mediator's recommendation by Ms. Yoshida. As detailed in the accompanying Sinderson Declaration and summarized herein, the proposed Settlement provides a substantial, certain, and prompt recovery for the Settlement Class while avoiding the significant risks of continued litigation, including the risk that the Settlement Class could recover less than the Settlement amount—or nothing at all—after years of additional litigation, appeals, and delay.

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated April 24, 2023 (ECF No. 139-1) (the "Stipulation") or in the Sinderson Declaration. Unless otherwise noted, citations to "¶ __" herein refer to paragraphs in the Sinderson Declaration, which is an integral part of this motion, and citations to "Ex. __" refer to exhibits to the Sinderson Declaration. Unless otherwise noted, all internal citations are omitted.

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

2

CASE NO. 3:20-CV-6719-WHO

The proposed Settlement is the result of Lead Plaintiff's and Lead Counsel's substantial litigation efforts. Those efforts began in 2020 when Lead Counsel began a detailed investigation of the claims at issue, which included an extensive review of public SEC filings, conference calls, analyst reports, and news articles; interviews with over 100 former BioMarin employees; and consultation with experts in damages, loss causation, and FDA regulation. ¶¶ 13-14. Based on this extensive investigation, Lead Plaintiff prepared a detailed consolidated Complaint. ¶¶ 15-16. Lead Plaintiff opposed Defendants' comprehensive motion to dismiss, through extensive briefing and oral argument and prevailed in defeating Defendants' motion to dismiss as well as Defendants' subsequent motion for reconsideration. ¶¶ 17-24.

Lead Plaintiff filed for and briefed class certification, which involved the submission of an expert report from Lead Plaintiff's expert on market efficiency and class-wide damages, and deposition of that expert and two representatives of Lead Plaintiff. ¶¶ 40-43. Lead Plaintiff also conducted substantial fact discovery, which included the exchange of initial disclosures, document requests, and interrogatories, and resulted in Lead Counsel obtaining and analyzing approximately 250,000 pages of documents produced by Defendants and third parties, and the production of more than 5,000 pages of documents to Defendants by Lead Plaintiff. ¶¶ 25-35. Discovery was hotly contested and involved numerous significant discovery disputes, only some of which were brought to the Court's attention. ¶¶ 36-39. As a result of these efforts, Lead Plaintiff and Lead Counsel possessed a very well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached.

The proposed Settlement also resulted from extensive arm's-length negotiations, including a full-day mediation session before Phillips ADR Enterprises mediator Michelle Yoshida on December 5, 2022, at the conclusion of which the parties were unable to reach agreement. ¶ 46. Then, after several months of further vigorous litigation, Ms. Yoshida conducted a second full-day mediation on March 8, 2023. ¶ 47. Prior to the first mediation session, the Parties exchanged detailed mediation statements addressing both liability and damages issues accompanied by numerous exhibits. ¶ 46. At both mediation sessions, the Parties engaged in vigorous settlement

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION

3

CASE NO. 3:20-CV-6719-WHO

negotiations with the assistance of Ms. Yoshida.  At the conclusion of the March 8, 2023 mediation session, Ms. Yoshida issued a final mediator's recommendation to the Parties that the Action be resolved in exchange for payment of $39,000,000 in cash, which the Parties accepted.  ¶ 47.

Lead Plaintiff and Lead Counsel believe the proposed Settlement is a very favorable result for the Settlement Class given the significant risks that Lead Plaintiff faced in proving its securities fraud claims, as well as the costs and delays that would accompany continued litigation.  As discussed below and in the Sinderson Declaration, Lead Plaintiff faced meaningful risks in establishing each element of its claims.  Lead Plaintiff and Lead Counsel recognized that, while they prevailed at the motion to dismiss stage, they may have been unable to maintain their claims at summary judgment or convince a jury of Defendants' liability.

Among other things, Lead Plaintiff recognized the challenges in proving that Defendants' statements were materially false and misleading when made.  Lead Plaintiff alleged in this securities class action that Defendants misled investors regarding the progress and likely success of BioMarin's application for the approval of its drug, valrox, because the FDA had, unknown to investors, delayed the necessary pre-approval facilities inspection and then had ceased communications altogether.  Defendants would contend that certain alleged false statements were made either prior to the FDA's delay of the pre-approval inspection or at a time when FDA had indicated that the inspection could still be rescheduled in time to meet the required deadlines.

As evidenced from discovery, these risks were especially acute with respect to statements Defendants made before June 8, 2020, for which Defendants would have particularly strong arguments that they expected the inspection to occur consistent with the projected timetable. ¶¶ 61-64.  If they were successful in this argument, the Class Period would be cut in half, with an enormous impact on class-wide damages.  Regarding the subsequent Class Period statements, Defendants would argue that the discovery record evidences that there were at least some communications between BioMarin and the FDA throughout a large portion of the Class Period— thus disproving the allegations that there was "no dialogue whatsoever" between BioMarin and the FDA.  ¶ 65.  Further, Defendants would argue that their statements at the end of the Class

Period were not false and that Defendants did not have a duty to disclose additional information, given their belief that they could address issues raised by the FDA and still obtain approval. ¶ 68. Valrox was ultimately approved by the FDA in June 2023. ¶ 72.

Defendants would have further argued that, even if any of their omissions rendered their statements false or misleading, they did not have any intent to mislead investors and Lead Plaintiff would not be able to prove their scienter. ¶¶ 69-72. They would argue that Defendants lacked a motive to commit fraud, and that stock sales by Defendants Bienaimé and Fuchs during the Class Period were non-discretionary and pre-planned, and that in any event, the sales had no bearing on decision-making or knowledge within BioMarin. ¶ 70. Defendants would have further argued that, given the chaos and uncertainty injected by the COVID-19 pandemic that was raging during the Class Period, they understandably expected communications with the FDA to be somewhat disrupted. ¶ 71. Finally, while not directly relevant to the alleged misstatements in the case, BioMarin's eventual success in obtaining approval of valrox would likely reinforce the Defendants' arguments that the FDA's delay in approving valrox in 2020 was unforeseen and that the Company's statements about the progress of FDA approval during the Class Period reflected standard corporate optimism rather than any intentional fraud. ¶ 72.

In addition, Defendants vigorously disputed loss causation and damages. Defendants would argue that Lead Plaintiff could not establish loss causation because the declines in the price of BioMarin common stock were not caused entirely—or at all—by the alleged correction of the fraud. Rather, Defendants were expected to argue that investors' losses were caused by other factors, such as the FDA's extended two-year delay to valrox's approval, which Defendants would have also argued was not foreseeable. ¶¶ 74-75. Defendants would have argued that even with full disclosure of what they knew at the time, no market participant would have anticipated that the FDA would require two years of additional data. ¶ 74. Accordingly, Defendants would argue that most, if not all, of the stock price decline at issue in the Complaint could not be causally connected to the alleged misrepresentations. ¶ 75. These arguments concerning the "mismatch" between the alleged Class Period misstatements concerning the status of the FDA's approval

process and the actual corrective disclosure on August 19, 2020 (that the BLA had been denied), would also have implicated the newly developing "price impact" defense concerning reliance for purposes of class certification. ¶ 80.

Damages would also be hotly disputed, including based on Defendants' attempts to exclude a significant portion of the putative Class Period from the case, on the grounds that discovery allegedly demonstrated that statements made before June 8, 2020 were not false. Had Defendants succeeded in shortening the Class Period, damages could have been reduced to no greater than $395 million. ¶ 83. Moreover, Defendants would argue that, assuming the initial period could be included in the Class at all, the level of "artificial inflation" (and thus damages) in the stock during that period would be substantially less than during the second half of the Class Period (as the FDA had, at most, delayed its inspection). ¶ 75. Moreover, Defendants would argue that Lead Plaintiff lacked a defensible methodology of calculating the artificial inflation during that earlier period based on the full stock price reaction at the end of the Class Period. *Id.* In light of these various significant arguments, risks and the costs and delays of further litigation, Lead Plaintiff and Lead Counsel believe the $39 million Settlement represents a very favorable resolution of the Action for the Settlement Class.

Further, the Settlement has the full support of Lead Plaintiff, a sophisticated institutional investor which took an active role in supervising the litigation. *See* Christensen Decl. (Ex. 2) ¶¶ 2-7. In addition, although the deadline to object to the Settlement has not yet passed, to date, after mailing of more than 103,000 Notices to potential Settlement Class Members, no Settlement Class Members have objected to the Settlement.[2]

In light of these considerations and the other factors discussed below, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate and warrants final approval by the Court. Additionally, Lead Plaintiff requests that the Court approve the Plan of

---

[2] The Court-ordered deadline for submission of objections is October 18, 2023. Should any objections be received, Lead Plaintiff will address them in its reply papers, to be filed on November 1, 2023.

Allocation, which was set forth in the Notice mailed to potential Settlement Class Members. The Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides a reasonable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims based on damages they suffered on purchases of BioMarin common stock that were attributable to the alleged fraud. Claims are treated the same as if they would have been for all Class Members if Lead Plaintiff were successful at trial.

## ARGUMENT

### I.    The Proposed Settlement Warrants Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims. *See* Fed. R. Civ. P. 23(e). A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *see also In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Ninth Circuit[] policy favor[s] settlement, particularly in class action law suits"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases also promotes efficient utilization of scarce judicial resources and the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co*., 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] . . . litigation" and "produce[s] a prompt, certain, and substantial recovery for the . . . class.").

In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court should consider whether:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal […]; and

    (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit has held that district courts should consider the following factors in evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors . . . and the factors identified in" Ninth Circuit case law).

The Ninth Circuit has explained that courts' review of class-action settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

At the settlement approval stage, the first Rule 23 consideration is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, courts consider two questions: (1) do the named plaintiffs

and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Here, Lead Plaintiff's claims are typical of and coextensive with those of the Settlement Class, and it does not have any interests that are antagonistic to the interest of other members of the Settlement Class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Lead Plaintiff purchased BioMarin common stock during the Class Period and was allegedly injured by the same alleged course of conduct by Defendants (their public statements and omissions) as all other class members. Lead Plaintiff—like all other Settlement Class Members—has an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the proposed Settlement. Lead Plaintiff is a sophisticated institutional investor who played an active role in supervising and participating in the litigation (Ex. 2, ¶¶ 2, 5-6), and retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. See Ex. 8 (Lead Counsel's firm resume). Lead Plaintiff and Lead Counsel vigorously prosecuted the Settlement Class's claims, which included (by way of brief summary) (i) conducting an extensive investigation into the alleged fraud; (ii) drafting a detailed complaint based on the investigation; (iii) successfully opposing Defendants' motion to dismiss and motion for reconsideration through briefing and argument; (iv) conducting substantial fact discovery; and (v) participating in extended arm's length settlement negotiations, including two full-day mediation sessions with a professional mediator. ¶¶ 10-51.

Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they have adequately—indeed, zealously—represented the Settlement Class.

**B.      The Settlement Was Reached After Substantial Discovery and Arm's-Length Negotiations Between Experienced Counsel, and with the Assistance of an Experienced Mediator**

The next Rule 23 consideration is whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator.

Here, the proposed Settlement was reached only after several months of arm's-length negotiations between the Parties, including two full-day mediation sessions with Michelle Yoshida, an experienced mediator of class actions and other complex litigation.  ¶¶ 46-49.  The Parties carefully reviewed discovery and prepared and exchanged detailed mediation statements before participating in the December 2022 mediation and exchanged their views on the merits and risks of the case.  ¶ 46.  The Parties negotiated without collusion and were unable to reach an agreement to settle at the initial December 2022 mediation and continued with vigorous litigation. *Id.*  However, the Parties continued settlement negotiations with the assistance of Ms. Yoshida and a second full-day session was scheduled on March 8, 2023.  At the conclusion of the March 8, 2023 session, Ms. Yoshida issued a final mediator's recommendation to the Parties that the Action be resolved in exchange for payment of $39,000,000 in cash, which the Parties accepted.  ¶ 47.

The involvement of an experienced mediator in the settlement process, like Ms. Yoshida, further "confirms that the settlement is non-collusive."  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); *see also Lembeck v. Arvest Cent. Mortg. Co.*, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021) (finding that a settlement "was negotiated at arms' length and under circumstances evidencing a lack of collusion" where it was reached following a mediation with an experienced mediator); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (finding that settlement was "reached in good faith after

a well-informed, arms-length negotiation" where the parties had "reached an agreement in principle with the assistance of an experienced mediator following an in-person mediation at which the parties were initially unable to come to agreement").

In addition, as noted above, Lead Plaintiff and Lead Counsel possessed a thorough understanding of the strengths and weaknesses of the case before reaching the proposed Settlement.  As detailed in the Sinderson Declaration and summarized in the preceding section, Lead Counsel conducted a thorough, substantive investigation, drafted a detailed complaint and briefed both the motion to dismiss and subsequent motion for reconsideration, and conducted substantial fact discovery before reaching the Settlement.  Lastly, the Parties had engaged in extensive settlement negotiations assisted by an experienced mediator, which further informed the Parties of the strength of each side's arguments.  ¶¶ 46-49.

Furthermore, the proposed Settlement has none of the indicia of possible collusion identified by the Ninth Circuit (*see Bluetooth*, 654 F.3d at 947), such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants.  *See* Stipulation ¶ 15 ("Lead Counsel's application for attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation."); Stipulation ¶ 13 ("The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity (including Defendants' insurance carriers) who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . . .").

In short, the Settlement was reached after extensive arm's-length negotiations supervised by an experienced mediator and conducted by well-informed counsel after several years of vigorous litigation, including extensive investigation and substantial discovery, and was not a product of fraud, overreaching, or collusion among the Parties.

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
11
CASE NO. 3:20-CV-6719-WHO

**C.        The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

Next, Rule 23 requires courts to determine whether a class-action settlement is "fair, reasonable, and adequate," including by "taking into account . . . the costs, risks, and delay of trial and appeal[,]" as well as other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  This analysis essentially encompasses four of the seven factors of the traditional *Hanlon* analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement.  *See Hanlon*, 150 F.3d at 1026.  Here, each of these factors supports approval.

**1.        The Amount of the Proposed Settlement**

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class."  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).  However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (holding that a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Here, the proposed Settlement amount—$39 million in cash—represents a favorable recovery for the Settlement Class in light of the risks of ongoing litigation.  Lead Counsel understands, based on expert analysis, that the maximum total damages that Lead Plaintiff could establish at trial would be approximately $395 million to $650 million, depending on the extent to

which the claims could be established for the first half of the Class Period.  ¶¶ 82-83.  The $650 million maximum damages assumes that the entire abnormal price decline in BioMarin stock on August 19, 2020 would be found to be "corrective" of the alleged misstatements and that this same level of artificial inflation would apply to the entire Class Period.  ¶ 82.  Even the $395 million estimate assumes that the entire price decline on August 19 would be recoverable damages for the second half of the Class Period, which would have been highly contested as Defendants argue that the market was reacting to the FDA's two-year delay which they argue was a "mismatch" and not foreseeable even with full disclosure of all allegedly omitted facts.  ¶ 83.  The $39 million Settlement thus represents approximately 6% (for the full Class Period) to 10% (for the second half of the Class Period) of these maximum potential damages (without any further reduction for Defendants' arguments of mismatch) that could potentially be obtained for the Settlement Class if Lead Plaintiff prevailed at trial.  ¶ 84.  Of course, such success was far from certain.  As discussed further below and detailed in the Sinderson Declaration, Defendants advanced substantial arguments regarding all elements of liability that, if accepted, would have substantially lowered the maximum damages or might have eliminated any recovery.

The recovery under the proposed Settlement is reasonable even when considered in light of these potential maximum damages.  Courts have routinely approved settlements with comparable or lower percentage recoveries than obtained here as fair and reasonable.  *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) ("Class Counsel contends that this settlement offer constitutes 7.3% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants . . . . The Court agrees that this recovery is in line with comparable class action settlements."); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Loc. 697 v. Int'l Game Tech.,* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
   13   CASE NO. 3:20-CV-6719-WHO

maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years"); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at \*5 (S.D. Cal. Mar. 30, 2009) (finding that securities-class-action settlement recovery of 7% of estimated damages "weigh[s] in favor of final approval").

### 2. The Strengths and Weaknesses of the Case and the Significant Risks of Continued Litigation

Courts evaluating proposed class action settlements consider the strength of the plaintiff's case and the risks of further litigation. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

In considering whether to agree to the proposed Settlement, Lead Plaintiff, represented by Lead Counsel with considerable experience in securities litigation, weighed the risks inherent in establishing the elements of its claims, including risks at trial of proving to a jury the elements of falsity, scienter, loss causation, and full damages. Each of these elements is addressed below.

*Falsity.* Lead Plaintiff and Lead Counsel recognized that they faced challenges in proving that Defendants' statements were materially false and misleading when made. Defendants would contend that certain statements regarding the FDA's review process were made either before the FDA indicated any delay of the pre-approval inspection or while FDA was indicating that the delayed inspection could still be rescheduled in time to meet the required deadlines. ¶ 61. As to the allegation that there was "no dialogue whatsoever" between BioMarin and the FDA, Defendants would argue that discovery revealed that there were at least some communications between BioMarin and the FDA throughout a large portion of the Class Period, challenging Lead Plaintiff's allegation that there were no communications between BioMarin and the FDA. ¶ 65. Further, Defendants would argue that their statements at the end of the Class Period were not false and that Defendants did not have a duty to disclose additional information, given their belief that

they could address issues raised by the FDA and still obtain approval.  ¶ 68.

*Scienter*.  Assuming Lead Plaintiff were able to prove to a jury that Defendants' statements were materially false or misleading, it would still need to prove that Defendants made the alleged false statements with the intent to mislead investors or with deliberate recklessness.  As courts have recognized, defendants' state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to establish at trial").

Here, Defendants would contend that, even if any of their statements were false or misleading, they believed their statements to be true and did not have an intent to mislead investors. ¶ 69.  Indeed, Lead Counsel anticipates that Defendants would argue, among other things, that the "insider sales" by Defendants Bienaimé and Fuchs were non-discretionary and pre-planned, and that in any event, the allegedly suspicious insider sales had no bearing on decision-making or knowledge within BioMarin.  ¶ 70.   Defendants would have also pointed to the COVID-19 pandemic as an understandable reason for the FDA's lack of communication (rather than any unique risks to the valrox application). ¶ 71.  In light of these circumstances, Lead Plaintiff and the Settlement Class would have faced significant challenges in proving Defendants' scienter— even if they could establish that Defendants had made materially misleading omissions.

*Loss Causation and Damages*.  Defendants would also have vigorously disputed loss causation and damages.  Defendants would argue that Lead Plaintiff could not establish loss causation because the declines in the price of BioMarin common stock were not caused entirely— or at all—by the alleged corrective disclosures.  Rather, Defendants were expected to argue that investors' losses were caused by other factors, such as the FDA's unanticipated two-year delay to valrox's approval, which Defendants would have likely argued was far less foreseeable than, at most, a shorter delay.  Defendants would have argued that no market participant would have anticipated that the FDA would require two years of additional data. ¶ 74.

Seeking to further reduce damages, as discussed above, Defendants would have sought to exclude a significant portion of the putative Class Period from the case, on the basis that discovery demonstrated that statements made before June 8, 2020 were not false. ¶¶ 63-64, 79.  Had Defendants succeeded in shortening the Class Period, damages could have been reduced to no more than $395 million (before considering Defendants' "mismatch" arguments concerning the unanticipated 2-year FDA delay).  ¶ 83.

The resolution of these disputed issues regarding damages and loss causation would have boiled down to a "battle of experts," and Defendants would certainly have been able to present a well-credentialed expert to opine at trial that the class's damages were nonexistent or very limited. As Courts have long recognized, the uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk in securities actions.  *See Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020) (the fact that "Plaintiffs' ability to prove loss causation and damages would 'come down to an unpredictable battle of the experts,'" supported approval of the securities class action settlement); *Amgen*, 2016 WL 10571773, at *3 (finding that risks related to the "battle of experts" weighed in favor of settlement approval); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (same).

***Class Certification Risks.***   Lead Plaintiff and Lead Counsel believe that the Court would have certified the class in this action.  However, at the time that the Parties reached their agreement in principle to settle, Defendants' opposition to Lead Plaintiff's motion for class certification was pending before the Court.  Thus, there was some additional risk that the Court might adopt Defendants' view and decline to certify the class. ¶¶ 77-80.  These risks are highlighted by the recent Second Circuit decision in *Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*, 2023 WL 5112157 (2d Cir. Aug. 10, 2023), where a class was decertified (after more than 12 years of litigation) because the court found that the "mismatch" between news causing the stock price declines at the end of class period and the alleged misstatements that was too great to permit an inference the misstatements had inflated the stock price during the class period.  Defendants had similar arguments available to them here.  ¶ 80.

In sum, the proposed Settlement is fair and reasonable in light of the significant risks of continued litigation.

### 3.      The Duration and Costs of Continued Litigation

Courts consistently recognize that the likely duration and costs of continued litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g.*, *Torrisi*, 8 F.3d at 1376 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Due to the "notorious complexity" of securities class actions in particular, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that securities class actions have well-deserved reputation for complexity).

Here, without the proposed Settlement, continued litigation would have required (i) completion of ongoing fact discovery, including depositions of key BioMarin officers and employees; (ii) an expert discovery process that was expected to include, at a minimum, experts on loss causation and damages and the FDA regulatory process from both Lead Plaintiff and Defendants; (iii) an anticipated motion for summary judgment brought by Defendants; and then—assuming Lead Plaintiff was successful in opposing that motion—(iv) extensive pre-trial motion practice, such as motions *in limine* and *Daubert* motions; (v) a trial requiring a substantial amount of detailed factual and expert testimony; (vi) likely post-verdict challenges to individual class members' damages; and, finally, (vii) an appeal from any verdict in favor of the class. The continued litigation and appeals would have been costly and would have substantially delayed any recovery for Settlement Class Members, possibly for years. *See Zynga*, 2016 WL 537946, at *10; *Amgen*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case . . . [as here] . . . could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

17

CASE NO. 3:20-CV-6719-WHO

have added years to the litigation.").

And, even if a favorable trial verdict was affirmed on appeal, the Settlement Class would have faced a potentially complex, lengthy, and contested claims-administration process. Absent the proposed Settlement, there is no question that the resolution of this case would take considerable time and require additional expenses, with the end result not remotely certain. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement[.]").

Thus, the risk, complexity, and likely duration of further litigation support approval of the proposed Settlement. The present value of a certain and substantial recovery now, as opposed to the mere chance of a possibly greater one years later, supports approval of a settlement that eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive no recovery. *See Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018) (holding that courts "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation").

**4.      All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement**

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the proposed Settlement or is neutral and does not suggest any basis for a finding that the Settlement is inadequate.

First, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation. The proceeds of the Settlement will be

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION

18

CASE NO. 3:20-CV-6719-WHO

distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to the Court-approved Claims Administrator, A.B. Data, Ltd. ("A.B. Data"). A.B. Data, an independent company with extensive experience administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court. This type of claims processing is standard in securities class actions and has long been used and found to be effective. This claim procedure is necessary because neither Lead Plaintiff nor Defendants possess data regarding investors' transactions in BioMarin common stock that would allow the Parties to create a claims-free process to distribute Settlement funds.

Second, the relief provided for the Settlement Class in the Settlement is also adequate when the terms and timing of the proposed award of attorney's fees are taken into account. As discussed in the Fee Memorandum, the 19% fee requested, to be paid upon the Court's approval, is reasonable in light of Lead Counsel's efforts, the recovery obtained, and the risks in the litigation. The requested fee is below the 25% benchmark for percentage fee awards in the Ninth Circuit and the range of percentage fees that courts within this Circuit award for similarly sized settlements. Moreover, the requested fee represents a modest 1.1 multiplier, which is below the range of multiplier commonly awarded in cases, like this one, with substantial contingency risks. Moreover, neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 16.

Lastly, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation itself was a confidential Supplemental Agreement regarding requests for exclusion. *See* Stipulation ¶ 35. The Supplemental Agreement gives BioMarin the right to terminate the Settlement if the valid requests for exclusion received from persons and entities

entitled to be members of the Settlement Class exceed an amount agreed to by Lead Plaintiff and BioMarin. *Id*. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4. 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### D. The Settlement Treats Class Members Equitably

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court must also consider whether the Settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement does so. As discussed below in Section II (discussing the Plan of Allocation), eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on damages they suffered that were attributable to the alleged fraud. No subset of the Settlement Class is receiving any special treatment and Lead Plaintiff will receive the same level of *pro rata* recovery under the Plan of Allocation (based on its Recognized Claims as calculated under the Plan of Allocation) as all other Settlement Class Members.

### E. Additional Factors Considered by the Ninth Circuit Support Approval

Two additional factors considered by the Ninth Circuit in assessing a proposed settlement are "the experience and views of counsel" and "the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575. Each of these factors also supports the Settlement.

As courts in this Circuit have explained, "[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *see Nat'l Rural Telecommunications Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"). Here, Lead Counsel—based on a thorough understanding of the strengths and

weaknesses of the Action—concluded that the proposed Settlement represents favorable result for Settlement Class Members given the risks and the range and probability of potential outcomes.

The reaction of the Settlement Class to the Settlement is another factor to be considered in connection with approval of the Settlement. *See Amgen*, 2016 WL 10571773, at \*4. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, has mailed a total of 103,153 copies of the Court-approved Notice and Claim Form (collectively, the "Notice Packet") to potential Settlement Class Members and nominees as of October 2, 2023. *See* Walter Decl. (Ex. 4) ¶ 9. In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and over the *PR Newswire* on July 12, 2023. *See id.* ¶ 11. The Notice set out the essential terms of the Settlement and informed potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to any aspect of the proposed Settlement. While the October 18, 2023 deadline for Settlement Class Members to exclude themselves or object has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have been received. *See* Sinderson Decl. ¶ 92. In addition, to date, only one request for exclusion from the Settlement Class has been received. Walter Decl. ¶ 15. Lead Plaintiff will discuss all requests for exclusion and any objections that may be received in its reply papers, to be filed by November 1, 2023.

In sum, all of the factors to be considered under Rule 23(e)(2) support a finding that the proposed Settlement is fair, reasonable, and adequate.

## II. The Plan of Allocation Is Fair and Reasonable

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks approval of the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation is set forth at pages 11 to 14 of the Notice mailed to Settlement Class Members. It is the same Plan of Allocation as that which was contained in the Notice approved by the Court in its Preliminary Approval Order.

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate." *Class Plaintiffs*, 955 F.2d at 1284-85; *see also Omnivision*, 559 F. Supp. 2d at 1045.

An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel, as here. *See Heritage Bond*, 2005 WL 1594403, at \*11. Courts hold that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at \*1 (N.D. Cal. June 18, 1994).

Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's damages expert. ¶ 94. The Plan provides for the distribution of the Net Settlement Fund to Settlement Class Members on a *pro rata* basis based on the extent of their injuries attributable to the alleged fraud in the same manner as would have been done if Lead Plaintiff were successful at trial. ¶¶ 94, 102.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of BioMarin common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Notice ¶ 77. Under the Plan, Claimants who purchased shares during the Class Period but did not hold those shares through the alleged corrective disclosure at the end of the Class Period will have no Recognized Loss Amount as to those transactions, because any loss they suffered would not have been caused by revelation of the alleged fraud. *Id*. ¶¶ 76, 78.A. For shares sold in the 90-day period after the end of the Class Period, the Recognized Loss Amount is the least of: (i) the estimated artificial inflation on the date of purchase; (ii) the purchase price *minus* the sales price; or (iii) the purchase price *minus* the average closing price of the stock from August 19, 2020 through the date of sale, consistent with the PSLRA. *Id*. ¶ 78.B. For shares sold still held as of the close of trading on November 16, 2020 (the end of the 90-day period following the end of the Class Period), the Recognized Loss Amount will be the lesser of (i) the estimated artificial inflation on the date of purchase or (ii) the purchase price *minus* \$76.42, the average closing price for BioMarin common stock during this 90-day period. *See Id*. ¶ 78.C.

The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim." Notice ¶ 79. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their

transactions in BioMarin common stock during the Class Period. *Id*. ¶¶ 86-87. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. ¶¶ 88-89. If an Authorized Claimant's *pro rata* distribution amount calculates to less than ten dollars, no payment will be made to that Authorized Claimant. *Id*. ¶ 90. Those funds will be included in the distribution to the Authorized Claimants whose payments exceed the ten-dollar minimum.

One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. Notice ¶ 91. The Plan of Allocation also identifies the Investor Protection Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to eligible Claimants have been completed. *Id*. The Investor Protection Trust, a 501(c)(3) nonprofit organization devoted to investor education, is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue, and courts in this District have approved it as a *cy pres* recipient in several other similar actions. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018) ("the Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("the Investor Protection Trust is a nonprofit organization focused on investor education. A savvy educated investor is hopefully more likely to identify signs of securities fraud, which furthers the Exchange Act's purpose of maintaining 'fair and honest markets.'"). Neither Lead Plaintiff nor Lead Counsel have a relationship with the Investor Protection Trust. As noted above, payment will only be made to this charity if the residual amount left for re-distribution is so small that a further re-distribution would not be cost effective—for example, in the event the administrative costs of conducting an additional distribution would largely subsume the funds available.

As of October 2, 2023, more than 103,000 copies of the Notice, which contains the Plan of

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION          23          CASE NO. 3:20-CV-6719-WHO

Allocation and advises Settlement Class Members of their right to object, have been mailed to potential Settlement Class Members. *See* Walter Decl. ¶ 9. To date, no objections to the Plan of Allocation have been received. *See* Sinderson Decl. ¶ 102. Lead Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

**III.     Notice to the Settlement Class Satisfied the
             Requirements of Rule 23 and Due Process**

In accordance with the Court's Preliminary Approval Order, A.B. Data, the Court-approved Claims Administrator, began mailing copies of the Notice Packet to potential Settlement Class Members and nominees on June 30, 2023. *See* Walter Decl. ¶¶ 2-5. As of October 2, 2023, A.B. Data had mailed a total of 103,153 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees. *Id*. ¶ 9. In addition, A.B. Data arranged for the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on July 12, 2023. *See id.* ¶ 11. A.B. Data also established a dedicated settlement website, <u>www.BioMarinSecuritiesLitigation.com,</u> to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice, Claim Form, and Stipulation, among other documents. *See id*. ¶ 14. Copies of the Notice and Claim Form were also made available on Lead Counsel's website, <u>www.blbglaw.com</u>. *See* Sinderson Decl. ¶ 91.

The Notice disseminated to the Settlement Class in accordance with the Court's Preliminary Approval Order satisfied all the requirements of due process, Rule 23, and the PSLRA. For a class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given notice of the class action and their right to request exclusion that is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). The notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575; *see also Luna v.*

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION
24
CASE NO. 3:20-CV-6719-WHO

*Marvell Tech. Grp.*, 2018 WL 1900150, at \*2 (N.D. Cal. Apr. 20, 2018) (same).

The notice program's combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in widely circulated publications, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23 and due process. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at \*4 (N.D. Cal. Nov. 21, 2016) (approving similar notice program); *Zynga*, 2016 WL 537946, at \*7 (similar notice program constituted "the best form of notice available under the circumstances").

The contents of the Notice, which was approved by the Court in the Preliminary Approval Order, provided the necessary information for Settlement Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B); the PSLRA, 15 U.S.C. § 78u-4(a)(7); and this District's Procedural Guidance for Class Action Settlements. The Notice informed Settlement Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Settlement Class; (3) the amount of the Settlement; (4) the Plan of Allocation; (5) the reasons why the parties are proposing the Settlement; (6) the estimated average recovery per affected class member; (7) the maximum amount of attorneys' fees and expenses that will be sought; (8) the identity and contact information for the representatives of Lead Counsel; (9) Settlement Class Members' right to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (10) the binding effect of a judgment on Settlement Class Members; and (11) the dates and deadlines for Settlement-related events.

In sum, the Notice fairly apprised Settlement Class Members of their rights with respect to the Settlement and complied with the Court's Preliminary Approval Order, the Federal Rules of Civil Procedure, the PSLRA, and due process.

## CONCLUSION

For these reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION | 25 | CASE NO. 3:20-CV-6719-WHO

Dated:  October 4, 2023

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER &
    GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
SALVATORE GRAZIANO (*pro hac vice)*
(salvatore@blbglaw.com)
JEROEN VAN KWAWEGEN (*pro hac vice)*
(jeroen@blbglaw.com)
KATHERINE M. SINDERSON (*pro hac vice)*
(katiem@blbglaw.com)
ABE ALEXANDER (*pro hac vice)*
(abe.alexander@blbglaw.com)
WILLIAM E. FREELAND (*pro hac vice*)
billy.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars
Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3472

*Lead Counsel for Lead Plaintiff
and the Settlement Class*

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF
SETTLEMENT AND PLAN OF
ALLOCATION

26

CASE NO. 3:20-CV-6719-WHO