**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

SALVATORE GRAZIANO (*pro hac vice*)
salvatore@blbglaw.com
JEROEN VAN KWAWEGEN (*pro hac vice*)
jeroen@blbglaw.com
KATHERINE M. SINDERSON (*pro hac vice*)
katiem@blbglaw.com
ABE ALEXANDER (*pro hac vice*)
abe.alexander@blbglaw.com
WILLIAM E. FREELAND (*pro hac vice*)
billy.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Counsel for Lead Plaintiff Arbejdsmarkedets Tillægspension and Lead Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE BIOMARIN PHARMACEUTICAL INC. SECURITIES LITIGATION | Case No. 3:20-cv-06719-WHO<br><br>**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**<br><br>Dept:  Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick<br>Date:   November 8, 2023<br>Time:   2:00 p.m. |

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

CASE NO. 3:20-CV-6719-WHO

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES TO BE DECIDED ..............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

PRELIMINARY STATEMENT ...................................................................................................2

ARGUMENT .................................................................................................................................5

I.    Lead Counsel's Request for Attorneys' Fees of 19% of the Settlement Fund Is Less Than the 25% "Benchmark Percentage" In this Circuit .......................................................5

II.   Additional Factors Considered by Courts Support Approval of the Requested Fee ...........7

    A.    The Quality of the Result Achieved Supports the Fee Request...............................7

    B.    The Substantial Risks of the Litigation Support the Fee Request ...........................8

    C.    The Skill Required and the Quality of the Work Performed Support the Fee Request...................................................................................................................11

    D.    The Contingent Nature of the Fee Supports the Fee Request.................................12

    E.    The Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request ....................................................................14

    F.    Lodestar Cross-Check Supports the Fee Request ..................................................15

III.  Lead Counsel's Expenses Are Reasonable and Should Be Approved .............................18

IV.   Lead Plaintiff Should Be Awarded Its Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4) ...................................................................................................20

CONCLUSION..........................................................................................................................21

**TABLE OF AUTHORITIES**

CASES                                                                                                    PAGE(S)

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
  2018 WL 4959014 (C.D. Cal. Aug. 13, 2018).................................................................5, 6

*In re Allergan, Inc. Proxy Violation Sec. Litig.*,
  No. 8:14-cv-02004-DOC-KES (C.D. Cal. Aug. 14, 2018), ECF No. 637............................6, 7

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014)......................................................................15

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).................................................................7, 15

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ..................................................................5, 6

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014).................................................................................................21

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................................13

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)..........................................................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..................................................................................................5

*Booth v. Strategic Realty Trust, Inc.*,
  2015 WL 6002919 (N.D. Cal. Oct. 15, 2015).........................................................................5

*In re Broadcom Corp. Sec. Litig.*,
  2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) ........................................................................7

*In re Brocade Sec. Litig.*,
  No. 3:05-CV-02042-CRB (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 .....................................7

*Buccellato v. AT&T Operations, Inc.*,
  2011 WL 3348055 (N.D. Cal. June 30, 2011) .......................................................................16

*In re Capacitors Antitrust Litig.*,
  2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ......................................................................16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..................................................................................................15

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...............................................................6, 11, 19

*In re Equifax Inc. Sec. Litig.*,
No. 1:17-cv-03463-TWT (N.D. Ga. June 26, 2020), ECF No. 179 .......................................21

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) .....................................................................................11

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ..................................................................................................5

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022)..........................................................................6

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ..........................................................................................16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................................5

*Hatamian v. Advanced Micro Devices, Inc.*,
2018 WL 8950656 (N.D. Cal. Mar. 2, 2018).............................................................................6

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ........................................................................15

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*,
802 Fed. App'x 285 (9th Cir. 2020) .......................................................................................17

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ..........................................................................8

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................................11, 14

*Hopkins v. Stryker Sales Corp.*,
2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................................................16

*In re HP Sec. Litig.*,
No. 3:12-cv-05980-CRB (N.D. Cal. Nov. 16, 2015), ECF No. 279.......................................21

*In re Intuitive Surgical Sec. Litig.*,
No. 5:13-cv-01920-EJ (N.D. Cal. Dec. 20, 2018), ECF No. 317 .............................................6

*Johnson v. US Auto Parts Network, Inc.*,
2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)...........................................................................8

*In re Kraft Heinz Sec. Litig.*,
No. 1:19-cv-01339 (N.D. Ill. Sept. 19, 2023), ECF No. 493.....................................................21

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) .........................................................................................14

*In re Mallinckrodt PLC*,
No. 20-125222 (JTD) (Bankr. D. Decl. May 17, 2022), ECF No. 7392 ...............................18

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................................................21

*Missouri v. Jenkins*,
491 U.S. 274 (1989)..................................................................................................................17

*Murphy v. Precision Castparts Corp.*,
2021 WL 2080016 (D. Or. May 24, 2021) ..............................................................................13

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)..............................................................................7

*Newton v. Equilon Enterprises, LLC*,
411 F. Supp. 3d 856 (N.D. Cal. 2019) .....................................................................................17

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008).....................................................................................................15

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010).....................................................................................................13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................................... *passim*

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .....................................................................................................5

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir.
2010) .........................................................................................................................................13

*Petersen v. CJ Am., Inc.*,
2016 WL 11783674 (S.D. Cal. Oct. 18, 2016) ........................................................................16

*Rihn v. Acadia Pharm. Inc.*,
2018 WL 513448 (S.D. Cal. Jan. 22, 2018)..............................................................................16

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...............................................................................................13

*Rojas v. Bosch Solar Energy Corp.*,
    2023 WL 3473515 (N.D. Cal. Apr. 6, 2023) ...............................................................19

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    2008 WL 9447623 (D.N.J. Dec. 9, 2008) ...............................................................21

*In re Sandisk LLC Sec. Litig.*,
    No. 3:15-cv-01455-VC (N.D. Cal. Oct. 23, 2019), ECF No. 284 .............................................6

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2022 WL 409702 (N.D. Cal. Feb. 10, 2022) .............................................................6

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)..............................................................6

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..............................................................5

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-cv-03679-SVW-AGR (C.D. Cal. Mar. 9, 2021), ECF No. 400 ..............................6

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................13

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ...........................................................6

*In re Tyco Int'l, Ltd. Multi-Dist. Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)..............................................................15

*Vega v. Weatherford U.S., Ltd. P'ship*,
    2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ............................................................19

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ......................................................16

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .........................................................18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................7, 11, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) .......................................................19

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES
        v        CASE NO. 3:20-CV-6719-WHO

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) ................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ......................................................17, 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .....................................................................8, 12, 17

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ...........................................................................13

**STATUTES**

15 U.S.C. § 78u-4(a)(4) .............................................................................1, 20

**RULES**

Fed. R. Civ. P. 23(h) ..........................................................................................1

**OTHER AUTHORITIES**

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:
2022 Full-Year Review* (2023) ........................................................................7

**NOTICE OF MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval (ECF No. 146) (the "Preliminary Approval Order"), Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "BLB&G") will and hereby does move the Court, before the Honorable William H. Orrick, on November 8, 2023, at 2:00 p.m. in Courtroom 2, 17th Floor of the United States District Court, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or at such other location and time as set by the Court, for an Order awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action").

This motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Katherine M. Sinderson in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Sinderson Declaration" or "Sinderson Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court.  A proposed Order will be submitted with Lead Counsel's reply submission, after time for any objections has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve Lead Counsel's application for an award of attorneys' fees.

2.      Whether the Court should approve Lead Counsel's application for payment of Litigation Expenses.

3.      Whether the Court should approve Lead Plaintiff's application for an award reimbursing its costs incurred in representing the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4).

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel for the Settlement Class and counsel for Lead Plaintiff Arbejdsmarkedets Tillægspension ("ATP" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its application for (a) an award of attorneys' fees in the amount of 19% of the Settlement Fund (plus interest); and (b) payment of Lead Counsel's litigation expenses and a PSLRA award to Lead Plaintiff in the total amount of $524,452.78.[1]

## PRELIMINARY STATEMENT

Lead Counsel has vigorously litigated this securities class action on a fully contingent basis for approximately three years, without receiving any compensation at all. The litigation was hard-fought and faced material risks. Lead Counsel had to—and did—dedicate very substantial efforts to the Action from its outset. Lead Counsel conducted an extensive investigation, including interviews with over 100 former BioMarin employees, prepared a detailed consolidated Complaint, successfully opposed Defendants' motion to dismiss, worked extensively with experts, conducted substantial fact discovery, briefed Lead Plaintiff's motion for class certification and participated in two mediation sessions.

It was due to Lead Counsel's sustained litigation efforts that the proposed $39 million Settlement was achieved for the benefit of Lead Plaintiff and the Settlement Class. The $39 million recovery represents a very favorable result for the Settlement Class and provides meaningful and prompt compensation to Settlement Class members while avoiding the significant risks and delay of continued litigation, including the risk that there may be no recovery at all. Having achieved a significant monetary recovery after litigating this case without any payment at all for several years, Lead Counsel now seeks attorneys' fees in the amount of 19% of the Settlement Fund (plus interest

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated April 24, 2023 (ECF No. 139-1) (the "Stipulation"), or the Sinderson Declaration. Citations to "¶ ___" in this memorandum refer to paragraphs in the Sinderson Declaration and citations to "Ex. ___" refer to exhibits to the Sinderson Declaration. Unless otherwise indicated, all internal citations and internal quotations are omitted.

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES | 2 | CASE NO. 3:20-CV-6719-WHO

at the same rate as the Settlement Fund), as well as payment for the litigation expenses that it incurred in prosecuting the Action on behalf of Lead Plaintiff and the Settlement Class.

Lead Counsel respectfully submits that its hard work, skill, and persistence fully merit the requested 19% fee award here. As set forth herein, the requested 19% fee is significantly lower than the 25% "benchmark" percentage fee accepted by the Ninth Circuit and represents a very modest multiplier of 1.1 on Lead Counsel's total lodestar devoted to this Action.

First, the Ninth Circuit has long recognized that, in class actions resulting in a common fund like this one, a percentage award is appropriate and an award of 25% of the settlement amount is the "benchmark" or reasonable starting point in considering an award. Here, Lead Counsel's considerable litigation efforts, its success in securing a meaningful recovery for the Settlement Class, and the substantial risks in the Action are factors that could potentially support an *increase* from the benchmark. But, notwithstanding that reality, Lead Counsel requests a fee percentage of 19% of the Settlement Fund, which is substantially *less* than the benchmark amount, which strongly supports approval. The fee percentage requested is based on the *ex ante* retainer agreement that was entered into between Lead Plaintiff, a sophisticated institutional investor, and Lead Counsel at the outset of the Action, which further supports the reasonableness of the request.

The requested fee percentage is also fully supported by the other factors considered by courts in determining the reasonableness of the fee, including the quality of the result achieved, the significant risks presented by this contingent fee litigation, the extent and quality of Lead Counsel's efforts, and the lodestar cross-check. Lead Counsel prosecuted the Action on a contingency-fee basis, facing numerous challenges to proving liability and damages that posed serious risks that counsel would receive no compensation for its efforts.

As discussed in the Sinderson Declaration, there were multiple significant risks inherent in the Action from the outset, which were enhanced by the elevated pleading standard required under the PSLRA. The riskiness of the Action is highlighted by the fact that the Company never restated its financials or admitted any wrongdoing whatsoever, and there was no parallel SEC or DOJ enforcement action brought related to the alleged fraud.

As discussed below and in the Sinderson Declaration, even after Lead Plaintiff prevailed on the motion to dismiss, there remained meaningful risks that Defendants might prevail at summary judgment or trial if Lead Plaintiff and Lead Counsel were unable to prove all of the elements of the claims, including falsity, scienter, loss causation, and damages. Indeed, discovery demonstrated that those risks were even more substantial than was apparent from the previously publicly-known record. Through their diligence and efforts, Lead Counsel and Lead Plaintiff were able to overcome these hurdles and secure a meaningful recovery for the Settlement Class.

Second, as detailed in the accompanying Sinderson Declaration, Lead Counsel dedicated a total of over 12,500 hours of attorney and other professional staff time over the course of litigation to bring the Action to this resolution. ¶ 109. In class actions like this one, which are prosecuted on a contingent-fee basis, courts often award fees representing a positive "multiplier" of counsel's lodestar (often from two to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors. Here, Lead Counsel's requested fee represents only a very modest multiplier of 1.1 of Lead Counsel's lodestar. *Id*.

In addition to the attorneys' fees sought, Lead Counsel also seeks to recover the litigation expenses incurred in prosecuting and resolving this litigation. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation. Finally, Lead Plaintiff seeks an award, as permitted under the PSLRA in reimbursement for the value of the time dedicated to the Action by its employees.

For the reasons set forth herein, Lead Counsel respectfully requests that the Court award it attorneys' fees in the amount of 19% of the Settlement Fund (plus interest) plus payment of Litigation Expenses (including Lead Counsel's litigation costs and an award to Lead Plaintiff) in the amount of $524,452.78.

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

4

CASE NO. 3:20-CV-6719-WHO

## **ARGUMENT**

**I.     Lead Counsel's Request for Attorneys' Fees of 19% of the Settlement Fund Is Less Than the 25% "Benchmark Percentage" In this Circuit**

The Ninth Circuit has established that, in common-fund cases such as this one, the "benchmark" percentage attorney fee award is 25% of the settlement fund.  *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("in this circuit, the benchmark percentage is 25%"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases[.]"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("we established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases").

Courts in this District have found fee awards in the amount of the 25% benchmark to be "presumptively reasonable."  *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees"); *Booth v. Strategic Realty Trust, Inc.*, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("[T]he 25% award requested by Class Counsel is equal to the 'benchmark' percentage for a reasonable fee award in the Ninth Circuit.  Such a fee award is 'presumptively reasonable.'").  Indeed, courts have found that, "in most common fund cases, the award *exceeds* that benchmark [of 25%]."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("The Ninth Circuit uses a 25% benchmark in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a

30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'").

Accordingly, the fact that the 19% fee request—which was established pursuant to an *ex ante* fee retainer agreement that Lead Counsel entered into with a sophisticated institutional investor at the outset of the litigation—is substantially below the 25% benchmark strongly supports the reasonableness of the fee.

The 19% fee requested here is also well within the range of percentage fees typically awarded in securities class actions and other complex class actions in the Ninth Circuit with recoveries comparable to the $39 million achieved here. *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at \*9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at \*9 (N.D. Cal. Feb. 10, 2022) (awarding 19% of $70 million settlement); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at \*1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at \*4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Sandisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019), ECF No. 284 (Ex. 10A) (awarding 25% of $50 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*, 2019 WL 2077847, at \*4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, slip op. at 2 (N.D. Cal. Dec. 20, 2018), ECF No. 317 (Ex. 10B) (awarding 19% of $42.5 million settlement); *Allergan Proxy Derivatives Litig.*, 2018 WL 4959014, at \*1 (awarding 20% of $40 million settlement); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at \*1-2 (N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at \*22 (N.D. Cal. Feb. 11, 2016) (awarding 25% of $23 million settlement).[2]

_____

[2] Indeed, awards of 19% and more are frequently awarded in substantially larger settlements as well. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, slip op. at 1-3 (C.D. Cal. Mar. 9, 2021), ECF No. 400 (awarding 25% of $154.7 million settlement) (Ex. 10C); *Anthem*, 2018 WL 3960068, at \*16 (awarding 27% of $115 million settlement); *In re Allergan, Inc. Proxy*

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

6

CASE NO. 3:20-CV-6719-WHO

In addition, a statistical review of all PSLRA settlements from 2013 to 2022 reveals that the median fee award in settlements ranging from $25 million to $100 million was 25%, and, even in the higher range of settlements from $100 million to $500 million, the median fee award was 24.5%. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 21 (2023) (Ex. 10F). Thus, the 19% fee requested here is unquestionably on the lower end of the range of percentage fees awarded in comparable cases. As discussed below, the reasonableness of the fee sought is further confirmed by the fact that is roughly equal to Lead Counsel's total lodestar devoted to the Action, representing only a modest multiplier of 1.1.

## II. Additional Factors Considered by Courts Support Approval of the Requested Fee

The reasonableness of Lead Counsel's 19% fee request is further confirmed by additional factors considered by courts in this Circuit, including (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction, and (7) a lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Omnivision*, 559 F. Supp. 2d at 1046-48.

### A. The Quality of the Result Achieved Supports the Fee Request

Courts consider the results achieved in assessing a fee award request. *See Vizcaino*, 290 F.3d at 1048 ("results are a relevant" factor in awarding attorneys' fees). Lead Counsel respectfully submits that the $39 million cash settlement is a very favorable result for the Settlement Class, especially when considering the risk of a significantly lower recovery—or no recovery at all—if the case proceeded through summary judgment, trial, and the inevitable appeals.

---

*Violation Sec. Litig.*, No. 8:14-cv-02004-DOC-KES, slip op. at 2 (C.D. Cal. Aug. 14, 2018), ECF No. 637 (awarding 21% of $250 million settlement) (Ex. 10D); *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *3-7 (N.D. Cal. Dec. 6, 2017) (awarding 20% of $208.7 million settlement); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Brocade Sec. Litig.*, No. 3:05-CV-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 (awarding 25% of $160 million settlement) (Ex. 10E); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *4-5 (C.D. Cal. Sept. 12, 2005) (awarding 25% of $150 million settlement).

| LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES | 7 | CASE NO. 3:20-CV-6719-WHO |

As set forth in the accompanying Sinderson Declaration, the $39 million Settlement represents a recovery of approximately 6% to 10% of the Settlement Class's maximum potential damages (before considering Defendants' "mismatch" arguments).  ¶¶ 81-84.  These estimates of maximum damages assume that Lead Plaintiff would have complete success on *all* issues of falsity, materiality, scienter, loss causation and damages at summary judgment and trial, which was far from certain.  Indeed, Defendants advanced serious arguments regarding all elements of liability, loss causation, and damages that, if accepted, would have substantially lowered damages or ***eliminated them entirely***.  Given the significant risks of establishing liability here, Lead Counsel believes this level of recovery represents a very favorable result for the Settlement Class.  Accordingly, Lead Counsel believes that the quality of the result achieved supports the fee requested.

**B.    The Substantial Risks of the Litigation Support the Fee Request**

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."  *In re Heritage Bond Litig.*, 2005 WL 1594389, at \*14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *Omnivision*, 559 F. Supp. 2d at 1047.

Lead Counsel faced significant risks in bringing this Action from the outset.  As an initial matter, the application of the PSLRA to this litigation presented significant risks.  Since Congress passed the PSLRA in 1995, courts in this Circuit and across the country have increasingly dismissed cases at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's heightened pleading standards.  *See Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at \*3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

As discussed in greater detail in the Sinderson Declaration and the Settlement Memorandum, there were many substantial challenges to succeeding in this litigation from the outset.  Indeed, throughout the litigation, Defendants vigorously asserted that their public

statements were accurate and that the price declines in BioMarin stock could not be attributed to the correction of the alleged misstatements or omissions.  ¶¶ 17, 60-76.

In order to succeed, Lead Plaintiff would have been required to prove that Defendants' statements were materially false or misleading, that Defendants knew that their statements were false when made or were deliberately reckless in making the statements, and that the disclosures concerning Defendants' false and misleading statements caused declines in the price of BioMarin's stock.  In addition, Lead Plaintiff would have had to establish the amount of per-share damages.

Success in these tasks was far from certain.  This was not a case in which BioMarin ever restated its financials or admitted any wrongdoing whatsoever, nor was there ever any parallel SEC or other government action brought against BioMarin or any of the Defendants for the alleged fraud. ¶ 120.  While Lead Plaintiff had prevailed on the motion to dismiss, discovery revealed that it still faced significant additional challenges to certify a class, get past Defendants' expected motion for summary judgment, and succeed at trial.

First, there were real risks in this case with respect to proving the falsity of Defendants' statements.  Defendants contend that the statements at issue regarding the FDA's review process were accurate when made and that many of the statements were made prior to the FDA's delay of the pre-approval inspection or at a time when the FDA had indicated that the inspection could be rescheduled in time to meet the required deadlines—and thus before Defendants had a reasonable basis to believe that approval would be denied or delayed.  ¶ 61.  These risks relating to falsity were particularly acute with respect to statements made by Defendants before June 8, 2020.  Defendants vigorously argued that it was not until that date that the FDA had notified BioMarin that the inspection would be delayed beyond the timeframe set for the BLA process.  ¶¶ 63-64.  Thus, there was a particularly substantial risk that Lead Plaintiff would not be able to establish falsity as to Defendants' alleged misstatements during the initial three months of the Class Period.

Lead Plaintiff also faced substantial challenges in proving the falsity of Defendants' statements that BioMarin was working "closely" and "collaboratively" with the FDA, as Defendants could point to communications they had with the FDA that were evidenced in

discovery. ¶ 65. Defendants would also have argued that they never believed that postponement of the pre-approval inspection signaled a risk that the FDA would deny approval of valrox. ¶ 67.

Second, even if Lead Plaintiff proved that Defendants' statements were false or misleading, Lead Plaintiff would still face challenges in proving that Defendants made the misstatements with scienter. Throughout the Action, Defendants vigorously argued that they believed their statements to be true and that they had no intent to commit fraud. ¶ 69. Lead Counsel anticipates that Defendants would argue, among other things, that the Class Period sales of stock by Defendants Bienaimé and Fuchs were non-discretionary and pre-planned, and thus created no motive for the alleged fraud, and that in any event, the sales had no bearing on decision-making or knowledge within BioMarin. ¶ 70. Defendants would also have argued that the timing of the trades and their amounts, as compared to Bienaimé and Fuchs' previous trading patterns, were not suspicious. *Id*.

Defendants would have also relied on the unprecedented disruption of the COVID-19 pandemic as a reason why Defendants would not have believed that the FDA's unusual silence concerning the pendency of the valrox BLA or the FDA's inability to timely schedule an on-site inspection necessarily meant that the BLA was less likely to be approved. ¶ 71. Indeed, Defendants would have argued that documents uncovered in discovery supported their position that travel complications caused by the pandemic played a substantial role in the FDA's decision to postpone the physical inspection. *Id*.

Finally, Lead Plaintiff also confronted additional significant challenges in establishing loss causation and damages in the Action. Defendants had substantial arguments that the declines in the price of BioMarin common stock were not caused entirely—or at all—by the alleged corrective disclosures. Defendants were expected to argue that investors' losses were attributable to other factors, such as the FDA's unanticipated two-year delay to valrox's approval, which Defendants would have also argued was not reasonably foreseeable when their alleged misstatements were made. ¶ 74. Defendants would have also argued that, even if some portion of the price decline were caused by the revelation of the truth about the alleged misstatements, it was small compared to the decline resulting from other factors, and any damages to Lead Plaintiff and the Settlement

Class were minimal. ¶ 75. Accordingly, Lead Plaintiff would have faced real challenges in proving what portion of the BioMarin's price decline on August 19, 2020 resulted from the revelation of the alleged misstatements, rather than confounding or "mismatching" non-fraud information. *Id*. Had any of these arguments been accepted in whole or in part, they could have eliminated or, at a minimum, drastically limited any potential recovery.

The substantial risks faced in prosecuting the securities fraud claims at issue, which Lead Counsel did on a purely contingency fee basis without any payment for several years, further support the requested fee.

### C. The Skill Required and the Quality of the Work Performed Support the Fee Request

Courts have recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga, Inc.*, 2016 WL 537946, at \*17; *see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Zynga*, 2016 WL 537946, at \*17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). In considering this factor, courts also consider the quality and vigor of opposing counsel. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

Here, Lead Counsel is among the most experienced and skilled practitioners in the securities-litigation field, and the firm has a long and successful track record in securities cases throughout the country. ¶ 116. Lead Counsel is consistently ranked among the top plaintiffs' firms in the country. *Id*. For example, the most recent ISS/Securities Class Action Services report on the "Top 100 U.S. Class Action Settlements of All Time" shows that BLB&G has been lead or co-lead counsel in more top recoveries than any other firm in history. *Id*.

Lead Counsel's reputation as experienced counsel in complex securities cases facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $39 million recovery. Lead Counsel achieved this substantial recovery for the benefit of Lead Plaintiff and the Settlement Class, notwithstanding that they were opposed in this Action by highly skilled and experienced lawyers from Cooley LLP, who vigorously advocated for its clients. ¶ 117.

Lead Counsel's efforts included (i) an extensive investigation of the claims at issue, which involved interviews with over 100 former BioMarin employees or other potential witnesses; (ii) research and preparation of a detailed consolidated Complaint; (iii) vigorous opposition to Defendants' motion to dismiss the Complaint through briefing and oral argument; (iv) drafting and filing Lead Plaintiff's motion for class certification, including assisting in the preparation of a related expert report; (v) conducting substantial fact discovery, which included preparing and exchanging initial disclosures, document requests and interrogatories, serving subpoenas on nine third-parties, obtaining and reviewing approximately 250,000 pages of documents from Defendants, producing over 5,000 pages of documents from Lead Plaintiff to Defendants; participating in four depositions; and litigating 11 discovery disputes; (vi) extensive work with experts and consultants in loss causation, damages, and the FDA regulation process throughout the litigation; and (vii) extended settlement negotiations, including preparing a mediation statement and participating in two full-day mediation session with Michelle Yoshida, an experienced mediator. ¶¶ 10-51.

In sum, it was Lead Counsel's extensive effort and skill in prosecuting this litigation that allowed the favorable $39 million proposed Settlement with Defendants to be achieved.

**D.     The Contingent Nature of the Fee Supports the Fee Request**

It is well-recognized that a premium is appropriate where attorney fees are contingent in nature, as there is a risk that counsel will receive no compensation or less compensation for their efforts. *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *see also Bellinghausen v. Tractor Supply Co.*, 306

F.R.D. 245, 261 (N.D. Cal. 2015) ("when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award").  The Supreme Court has emphasized that private securities actions, like this one, "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007).

As courts recognize, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expending thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *1 (D. Or. May 24, 2021) (granting defendants' renewed motion for summary judgment and dismissing case based on the Ninth Circuit's recent decision in *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021)); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010).  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

Here, Lead Counsel committed significant resources, time, and money to prosecute this Action vigorously and successfully for the Settlement Class's benefit—without any payment or any guarantee of a fee.  Lead Counsel's fee award and expense reimbursement in this Action has always been at risk and contingent on the result achieved.  If Lead Counsel had been unsuccessful

at the motion to dismiss stage, had failed at certifying class, or had failed on the expected upcoming motion for summary judgment or at trial, Lead Counsel would have received nothing for its years of diligent prosecution of the claims for the benefit of the Settlement Class.  This significant contingency-fee risk further supports the requested fee.

**E.    The Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request**

The reaction of the Settlement Class to the proposed Settlement and the fee motion also supports approval of the fee request.  *See Heritage Bond*, 2005 WL 1594403, at *21 ("The existence or absence of objectors to the requested attorneys' fee is a factor i[n] determining the appropriate fee award.").  A total of 103,153 copies of the Notice and Claim Form have been sent to potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on July 12, 2023.  *See* Walter Decl. (Ex. 4) at ¶¶ 9, 11.  The Notice informed potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 19% of the Settlement Fund.  *See* Notice (Walter Decl. Ex. A) at ¶¶ 5, 55.  The Notice further informed Settlement Class Members of their right to object to the request for attorneys' fees and expenses.  *See id*. at p. 2 and ¶¶ 64-68.  Although the deadline for filing any objections will not run until October 18, 2023, to date, no Settlement Class Member has filed an objection to the fees and expenses requested.  Sinderson Decl. ¶¶ 122, 133.

In addition, Lead Plaintiff, which took an active role in the litigation and closely supervised the work of Lead Counsel, supports the approval of the requested fee based on the result obtained, the efforts of Lead Counsel and the risks in the Action.  *See* Christensen Decl. (Ex. 2) at ¶¶ 5-6, 8-9.  Lead Plaintiff's endorsement of the fee request further supports its approval.  *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES | 14 | CASE NO. 3:20-CV-6719-WHO

While the decision on the appropriate fee is left to the sound discretion of the Court, the fact that the fee request is based on an *ex ante* fee agreement that Lead Plaintiff and Lead Counsel entered into at the outset of the Action provides support for the reasonableness of the request. Numerous courts have found that, in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class, a fee agreement entered into by a PSLRA lead plaintiff and its counsel at the outset of the litigation weighs in favor of the reasonableness of the fee. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions should be given "a presumption of reasonableness"); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("We expect . . . that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.").

**F.    Lodestar Cross-Check Supports the Fee Request**

"Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *Amgen*, 2016 WL 10571773, at \*9; *see also HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at \*2 (S.D. Cal. Oct. 15, 2010) ("Courts have found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark."). When the lodestar is used as a cross-check, the "focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multi-Dist. Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at \*23 (C.D. Cal. July 28, 2014) ("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009).

Fee awards in class actions with contingency risks, such as this one, routinely represent *positive multipliers* of counsel's lodestar to account for the possibility of non-payment. *See Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have 'routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases'" because, in doing so, it provides a "'financial incentive to accept contingent-fee cases which may produce nothing.'"). Courts award lodestar multipliers up to *four times* the counsel's lodestar, and sometimes even more. *See Vizcaino*, 290 F.3d at 1051-52 & n.6 (affirming 28% fee award representing 3.65 multiplier and finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing examples of higher multipliers); *see also Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee representing 4.3 multiplier); *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Petersen v. CJ Am., Inc.*, 2016 WL 11783674, at *1 (S.D. Cal. Oct. 18, 2016) ("[t]he majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"); *In re VeriFone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (approving fee award 4.3 times lodestar).

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage because, while the substantial risks of the litigation and contingent nature of the fee would support a significant positive multiplier, the fee requested is, in fact, only roughly equivalent to Lead Counsel's total lodestar. As detailed in the Sinderson Declaration, Lead Counsel spent 12,564.75 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through September 15, 2023. ¶ 109. Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her

current hourly rate, is $6,702,525.  *Id*.[3]  The requested fee of 19% of the Settlement Fund, or $7,410,000 (plus interest), is only slightly more than Lead Counsel's lodestar, representing a modest multiplier of 1.1 of the value of the time Lead Counsel dedicated to the Action.  *Id*.

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, the Sinderson Declaration includes a breakdown of the hours that each attorney and other professional devoted to the litigation into 14 distinct projects undertaken over the course of the litigation.  *See* ¶ 115 and Ex. 7.  In addition, for each attorney whose time is included in Lead Counsel's lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided.  *See* Ex. 6.  Moreover, Lead Counsel has not included in its fee application *any* time expended preparing Lead Counsel's motion for fees and expenses.  ¶ 110.  In addition, Lead Counsel also made other reductions to its time in the interest of billing judgment, including, for example, removing timekeepers with fewer than 10 hours dedicated to the Action.  *Id*.

The hourly rates used to calculate Lead Counsel's lodestar are also reasonable.  The hourly rates for Lead Counsel range from $900 to $1,250 for partners, from $475 to $650 for associates, and from $325 to $400 for paralegals and case managers.  *See* Ex. 5.  The rates of BLB&G's staff attorneys, who were integrally involved in the prosecution of this case, ranged from $375 to $425 per hour.  The blended hourly rate for all timekeepers in the application is $533.  Lead Counsel believes these rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*14 (N.D. Cal. Dec. 17, 2018) (approving Lead Counsel's then-applicable 2018 rates, ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals, as reasonable for purposes of lodestar cross-check), *aff'd sub nom. Hefler v. Pekoc*, 802 Fed. App'x 285 (9th Cir. 2020); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) (approving fee award

---

[3] It is well established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *WPPSS*, 19 F.3d at 1305; *Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856, 882 (N.D. Cal. 2019).

following lodestar cross-check where blended average hourly rate was $529 per hour, with hourly rates ranging up to $1,600 for partners and up to $790 for associates).

Lead Counsel's rates are also reasonable in comparison to defense counsel's rates. *See, e.g.,* Sixth Interim Application of Cooley LLP at 4-6, *In re Mallinckrodt PLC*, No. 20-125222 (JTD) (Bankr. D. Decl. May 17, 2022), ECF No. 7392 (Ex. 10G) (a fee application in a bankruptcy matter for the first quarter of 2022 included hourly rates of $1,180 to $1,590 for Cooley's partners; $1,165 to $1,175 for special counsel; $720 to $1,155 for associates; and $300 to $380 for paralegals).

**III.    Lead Counsel's Expenses Are Reasonable and Should Be Approved**

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser,* 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013).   In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The expenses sought by Lead Counsel are of the type that are charged to hourly paying clients and were required to prosecute the litigation.  These expense items were incurred separately by Lead Counsel and are not duplicated in the firm's hourly rates.  From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this Action.  Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶ 124.

As discussed in detail in the Sinderson Declaration, Lead Counsel incurred a total of $397,052.78 in litigation expenses in litigating the Action.  ¶ 125.  The expenses for which

payment is sought were reasonable and necessary for the prosecution and resolution of the litigation and are of the types that are routinely charged to clients in non-contingent litigation.

Of the total expenses, Lead Counsel incurred $284,177.50, or approximately 72% of the total litigation expenses, on experts and consultants in the areas of financial economics (including damages, loss causation, and market efficiency), and FDA regulation.  ¶ 127.  The combined costs for online legal and factual research amounted to $58,054.22, or approximately 14.6% of the total expenses.  ¶ 128.  Lead Plaintiff's share of the mediation fees paid to Phillips ADR Enterprises for the services of Ms. Yoshida amounted to $13,700 or 3.5% of the total expenses.  ¶ 130.  The other expenses are also the types of expenses that are necessarily incurred in litigation and routinely charged to clients.  These expenses included document management costs, court fees, service of process, long-distance telephone calls, copying and printing, postage and express mail, and travel costs.  ¶¶ 129, 131.  A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 9 to the Sinderson Declaration.

Courts routinely approve litigation expenses such as these.  *See, e.g.*, *Rojas v. Bosch Solar Energy Corp.*, 2023 WL 3473515, at *2 (N.D. Cal. Apr. 6, 2023) (approving expense reimbursement in class action which included costs for "experts, performing extensive legal research, electronic discovery, filing fees, and other costs"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,* 2022 WL 17730381, at *12 (N.D. Cal. Nov. 9, 2022) (approving award of expenses including expert fees, travel expenses, e-discovery fees, and legal research costs); *Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *17 (E.D. Cal. Dec. 7, 2016) ("legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, . . . and travel expenses," among others, were all categories of expenses "routinely reimbursed" in class actions); *Zynga*, 2016 WL 537946, at *22 ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation").

| LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES | 19 | CASE NO. 3:20-CV-6719-WHO |
|---|---|---|

The Notice provided to potential Settlement Class Members informed them that Lead Counsel intended to apply for the payment of litigation expenses in an amount not to exceed $650,000.  Notice ¶¶ 5, 55.  The total amount of expenses now sought—$524,452.78 (including $397,052.78 sought by Lead Counsel and $127,400.00 sought by Lead Plaintiff, as discussed below)—is less than the amount stated in the Notice.  The deadline for objecting to the fee and expense application is October 18, 2023.  To date, there have been no objections to the request for attorneys' fees or litigation expenses.

**IV.    Lead Plaintiff Should Be Awarded Its Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)**

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of class-action settlement).  When evaluating the reasonableness of a lead plaintiff reimbursement request, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation," among others.  *Staton*, 327 F.3d at 977.

As detailed in the declaration from ATP's Legal Director, attached as Exhibit 2 to the Sinderson Declaration, Lead Plaintiff is seeking an award of $127,400 in reimbursement for the value of the time ATP's employees dedicated to the Action.  Here, Lead Plaintiff took a very active role in the litigation and has been fully committed to pursuing the class's claims.  *See* Christensen Decl. ¶¶ 5-6.  These efforts included negotiating the initial retainer agreement (on which the 19% fee request is based), numerous communications with Lead Counsel throughout the Action, reviewing pleadings and briefs filed in the Action, assisting in responding to Defendants' discovery requests, sitting for deposition, and consulting with Lead Counsel regarding the settlement negotiations.  *Id*.  These efforts required ATP's employees to dedicate significant time

to this Action that they otherwise would have devoted to their regular duties for ATP, and thus represented a cost to ATP. *See id.* ¶ 14. Lead Plaintiff's time and attention was particularly necessary here because Defendants had pressed a vigorous (though we believe unmeritorious) challenge to class certification based on Lead Plaintiff's trading strategy. The requested amount is based on the number of hours that ATP's employees committed to these activities multiplied by an hourly rate for each employee based on based on comparable rates for professionals of similar experience in Copenhagen, where ATP is based. *See id.* ¶ 15.

The amount requested is reasonable in light of the significant amount of time that ATP's employees dedicated to the representation of the Settlement Class. *See, e.g.*, *In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, slip op. at 2 (N.D. Cal. Nov. 16, 2015), ECF No. 279 (Ex. 10H) (awarding $162,900 to PSLRA lead plaintiff as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class"); *In re Kraft Heinz Sec. Litig.*, Case No. 1:19-cv-01339, slip op. at 3 (N.D. Ill. Sept. 19, 2023), ECF No. 493 (Ex. 10I) (awarding $114,300 to lead plaintiffs in PSLRA action); *In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming PSLRA awards of over $450,000 to representative plaintiffs for time spent by their employees on the action); *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT, slip op. at 4 (N.D. Ga. June 26, 2020), ECF No. 179 (Ex. 10J) (awarding $121,375 to lead plaintiff in PSLRA case); *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding over $214,000 to lead plaintiffs); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class").

## **CONCLUSION**

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 19% of the Settlement Fund; award Litigation Expenses to Lead Counsel in the amount of $397,052.78; and approve a PSLRA award to Lead Plaintiff in the amount of $127,400.

Dated: October 4, 2023

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
SALVATORE GRAZIANO (*pro hac vice)*
(salvatore@blbglaw.com)
JEROEN VAN KWAWEGEN (*pro hac vice)*
(jeroen@blbglaw.com)
KATHERINE M. SINDERSON (*pro hac vice)*
(katiem@blbglaw.com)
ABE ALEXANDER (*pro hac vice)*
(abe.alexander@blbglaw.com)
WILLIAM E. FREELAND (*pro hac vice*)
billy.freeland@blbglaw.com
THOMAS Z. SPERBER (*pro hac vice*)
thomas.sperber@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars
Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3472

*Lead Counsel for Lead Plaintiff and the Settlement Class*

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

22

CASE NO. 3:20-CV-6719-WHO