# Exhibit 10

# Exhibit 10A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IN RE: SANDISK LLC SECURITIES LITIGATION

Case No. 3:15-cv-01455-VC
Hon. Vince Chhabria

**REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES**

THIS MATTER having come before the Court for hearing on September 26, 2019 (the "Settlement Hearing") to determine, among other things, whether and in what amount to award (i) Plaintiffs' Counsel in the above-captioned consolidated securities class action (the "Action") attorneys' fees and litigation expenses in connection with their representation of the Class; and (ii) Class Representatives their costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); the Court, having considered all papers filed and proceedings had herein and otherwise being fully informed;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Order operates by reference to the definitions in the Revised Stipulation and Agreement of Settlement filed on May 20, 2019 (ECF No. 274-1) (the "Stipulation"), and all capitalized terms used, but not defined, herein shall have the same meanings as those set forth in the Stipulation.

2. Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to Persons who are Class Members who could be identified with reasonable effort, advising them of Class Counsel's motion for an award of attorneys' fees, payment of litigation expenses and reimbursement of Class Representatives' costs and expenses and their right to object thereto, and

a full and fair opportunity was accorded to Persons who are Class Members to be heard. There were no objections to Class Counsel's motion.

3. Class Counsel are hereby awarded, on behalf of all Plaintiffs' Counsel, attorneys' fees in the amount of 25% of the Settlement Fund, plus accrued interest, and $885,149.36, plus accrued interest, in payment of Plaintiffs' Counsel's litigation expenses, which sums the Court finds to be fair and reasonable. Consistent with this Court's established practice, 10% of the total amount of attorneys' fees awarded is the percentage, proposed by Class Counsel given their demonstrated commitment to the Class and hereby deemed an appropriate amount, that shall be withheld until after a distribution of the Net Settlement Fund to Authorized Claimants has been made. Otherwise, the attorneys' fees and expenses awarded shall be paid from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein by reference.

4. Class Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner in which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)     the Settlement has created a fund of $50,000,000 in cash, and Class Members who submit acceptable Claim Forms will benefit from the Settlement that has been achieved as a result of the efforts of Plaintiffs' Counsel;

(b)     the attorneys' fees sought by Class Counsel have been reviewed and approved as reasonable by Class Representatives, who are institutional investors that oversaw the prosecution and resolution of the Action;

(c)     copies of the revised Settlement Notice (ECF No. 274-3) were mailed to over 203,000 potential Class Members and nominees, stating that Class Counsel would apply for attorneys' fees in an amount not to exceed 28% of the Settlement Fund and litigation expenses in an amount not to exceed $1,000,000, and there were no objections

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

2

to the requested attorneys' fees and expenses, which are less than the amounts stated in the revised Settlement Notice;

   (d) the Action raised a number of complex issues;

   (e) had Plaintiffs' Counsel not achieved the Settlement, there was a significant risk that Class Representatives and the other members of the Class may have recovered less or nothing at all from Defendants;

   (f) Plaintiffs' Counsel have devoted nearly 30,000 hours with a lodestar value of $15,950,994.50 to this Action and have advanced $885,149.36 in litigation expenses to achieve the Settlement; and

   (g) the amount of attorneys' fees and litigation expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. In accordance with the PSLRA, Class Representative City of Bristol Pension Fund is hereby awarded $7,300 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

7. In accordance with the PSLRA, Class Representative Pavers and Road Builders Pension, Annuity and Welfare Funds is hereby awarded $7,717.50 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

8. In accordance with the PSLRA, Class Representative the City of Newport News Employees' Retirement Fund is hereby awarded $7,474.44 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

9. In accordance with the PSLRA, Class Representative Massachusetts Laborers' Pension Fund is hereby awarded $8,557.50 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

10. Any appeal of or challenge to this Court's award of attorneys' fees, payment of litigation expenses, and reimbursement of Class Representatives' costs and expenses in

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

3

connection with their representation of the Class shall in no way disturb or affect the finality of the Judgment.

11. Exclusive jurisdiction is hereby retained over the Parties and Class Members for all matters relating to this Action, including administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

12. In the event that the Settlement is terminated or the Effective Date of the Settlement fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

Dated: October 23, 2019

HONORABLE VINCE CHHABRIA
UNITED STATES DISTRICT JUDGE

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

4

# Exhibit 10B

**KERR & WAGSTAFFE LLP**
JAMES M. WAGSTAFFE (#95535)
IVO LABAR (#203492)
101 Mission Street, 18th Floor
San Francisco, CA  94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
wagstaffe@kerrwagstaffe.com
labar@kerrwagstaffe.com

*Local Counsel for Plaintiffs and the Class*

**LABATON SUCHAROW LLP**
JONATHAN GARDNER (*pro hac vice*)
SERENA P. HALLOWELL (*pro hac vice*)
MICHAEL P. CANTY (*pro hac vice*)
CHRISTINE M. FOX (*pro hac vice*)
THEODORE J. HAWKINS (*pro hac vice*)
ALEC T. COQUIN (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
shallowell@labaton.com
mcanty@labaton.com
cfox@labaton.com
thawkins@labaton.com
acoquin@labaton.com

*Lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUITIVE SURGICAL SECURITIES LITIGATION | Case No. 5:13-cv-01920 EJD (HRL) |
| | CLASS ACTION |
| | **[PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF EXPENSES, AND PAYMENT OF CLASS REPRESENTATIVES' EXPENSES** |

On December 20, 2018, a hearing having been held before this Court to determine, among other things, whether and in what amount to award (1) Class Counsel in the above-captioned consolidated securities class action (the "Action") fees and litigation expenses directly

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND PAYMENT OF EXPENSES
CASE NO. 5:13-CV-01920 EJD (HRL)

relating to their representation of the Class; and (2) Class Representatives their costs and expenses (including lost wages), pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing substantially in the form approved by the Court (the "Settlement Notice") was mailed to all reasonably identified Class Members; and that a summary notice of the hearing (the "Summary Notice"), substantially in the form approved by the Court, was published in *Investor's Business Daily* and transmitted over *PR Newswire*; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. The Court has jurisdiction over the subject matter of this Action and over all parties to the Action, including all Class Members who have not timely and validly requested exclusion, Plaintiffs' counsel, and the Claims Administrator.

2. All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated as of September 11, 2018 (the "Stipulation").

3. Notice of Class Counsel's application for attorneys' fees and payment of litigation expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the application for attorneys' fees and expenses met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, due process, and other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Class Counsel are hereby awarded, on behalf of all Plaintiffs' counsel, attorneys' fees in the amount of $8,075,000 plus interest at the same rate earned by the Settlement Fund (which is 19% of the Settlement Fund), and payment of litigation expenses in the amount of $1,988,789.66, which sums the Court finds to be fair and reasonable.

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES
CASE NO. 5:13-CV-01920 EJD (HRL)

5.      The award of attorneys' fees and litigation expenses may be paid to Class Counsel from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

6.      In making this award of attorneys' fees and payment of litigation expenses to be paid from the Settlement Fund, the Court has analyzed the factors considered within the Ninth Circuit and found that:

(a)      The Settlement has created a common fund of $42.5 million in cash and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement created by the efforts of counsel;

(b)      The requested attorneys' fees and payment of litigation expenses have been reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors that were directly involved in the prosecution and resolution of the Action and who have a substantial interest in ensuring that any fees paid to counsel are duly earned and not excessive;

(c)      Class Counsel undertook the Action on a contingent basis, and have received no compensation during the Action, and any fee and expense award has been contingent on the result achieved;

(d)      The Action involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(e)      Class Counsel conducted the Action and achieved the Settlement with skillful and diligent advocacy;

(f)      Plaintiffs' counsel have devoted approximately 41,813.90 hours, with a lodestar value of $21,548,609.00 to achieve the Settlement;

(g)      The amount of attorneys' fees awarded are fair and reasonable and are less than fee awards approved in cases within the Ninth Circuit with similar recoveries;

(h)     Notice was disseminated to putative Class Members stating that Class Counsel would be submitting an application for attorneys' fees in an amount not to exceed 19% of the Settlement Fund, which includes interest, and payment of litigation expenses incurred in connection with the prosecution of this Action up to $2,500,000 plus interest, and that such application also might include a request that Class Representatives be reimbursed their reasonable costs and expenses (including lost wages) directly related to their representation of the Class; and

(i)     There were no objections to the application for attorneys' fees or expenses.

7.     In accordance with the PSLRA, the Court hereby awards Class Representative Employees' Retirement System of the State of Hawaii $49,754.18 for its costs and expenses directly related to its representation of the Class, and Class Representative Greater Pennsylvania Carpenters' Pension Fund $9,100.00 for its costs and expenses directly related to its representation of the Class.

8.     Any appeal or challenge affecting this Court's approval of any attorneys' fee, expense application, or award of costs and expenses to Class Representatives in the Action, shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9.     Exclusive jurisdiction is retained over the subject matter of this Action and over all parties to the Action, including the administration of the Settlement.

10.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

Dated: ___December 20___, 2018     _____
                                    HONORABLE EDWARD J. DAVILA
                                    UNITED STATES DISTRICT JUDGE

4

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES
CASE NO. 5:13-CV-01920 EJD (HRL)

# Exhibit 10C

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE SNAP INC. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions. | Case No. 2:17-cv-03679-SVW-AGR<br><br>**CLASS ACTION**<br><br>**ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES**<br><br><br>Courtroom: 10A, 10th Floor<br>Judge: Hon. Stephen V. Wilson |

This matter is before the Court on Class Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it; and it appearing that notice substantially in the form approved by the Court, which advised of Class Counsel's request for an award of attorneys' fees and Litigation Expenses, was mailed to all Class Members who or which could be identified with reasonable effort, and that a summary notice substantially in the form approved by the Court was published in *The Wall Street Journal* and *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated March 20, 2020 (ECF No. 368-3) ("Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Class Members.

3. Notice of Class Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Class Members who or which could be identified with reasonable effort. The form and method of notifying the Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 77z-1, 78u-4), as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Class Counsel is hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund and $2,290,350.53 in reimbursement of Plaintiffs' Counsel's Litigation

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES

Expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Class Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and Litigation Expenses from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund of $154,687,500 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claims will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

(b) The fee sought is based on retainer agreements entered into between Class Representatives and Class Counsel at the outset of Class Representatives' involvement in the Action; and the requested fee has been reviewed and approved as reasonable by Class Representatives, who actively supervised the prosecution and resolution of the Action;

(c) More than 824,000 copies of the Postcard Notice and more than 4,600 copies of the Notice were mailed to potential Class Members and nominees stating that Class Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and reimbursement of Litigation Expenses in an amount not to exceed $3.25 million, plus interest, which amount may include a request for reimbursement to Class Representatives in an aggregate amount not to exceed $275,000;

(d) Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e) The Action raised a number of complex issues;

(f) Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Class Representatives and the other members of the Class may have recovered less or nothing from the SAC Defendants after trial;

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES

(g)   Plaintiffs' Counsel devoted over 50,000 hours, with a collective lodestar value of $22,438,458.15, to achieve the Settlement;

(h)   The amount of attorneys' fees awarded and Litigation Expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases; and

(i)   Not a single Class Member has objected to the requested award of attorneys' fees or Litigation Expenses.

6.   Court-appointed Class Representatives are hereby awarded the following amounts from the Settlement Fund as reimbursement for their reasonable costs and expenses directly related to their representation of the Class: (i) $36,750.00 to Smilka Melgoza, on behalf of the Smilka Melgoza Trust U/A DTD 04/08/2014; (ii) $22,800.00 to Rediet Tilahun; (iii) $5,000.00 to Tony Ray Nelson; $22,765.00 to Rickey E. Butler; $7,500.00 to Alan L. Dukes; $2,500.00 to Donald R. Allen; and $2,500.00 to Shawn B. Dandridge.

7.   Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and Litigation Expenses application shall in no way disturb or affect the finality of the Judgment.

8.   In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9.   There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this ___9th___ day of _____March_____, 2021.

_____
The Honorable Stephen V. Wilson
United States District Judge

3                    Case No. 2:17-cv-03679-SVW-AGR
[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES

# Exhibit 10D

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION

**Case No. 8:14-cv-02004-DOC-KESx**

CLASS ACTION

**ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

This matter came on for hearing on June 12, 2018 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Class Members who or which could be identified with reasonable efforts, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal, The New York Times,* and *The Financial Times* and released via *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and reimbursement of Litigation Expenses,

Order Awarding Attorneys' Fees and
Reimbursement of Expenses
Case No. 8:14-CV-02004-DOC-KESx

1

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated January 26, 2018 (ECF No. 606) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for an award of attorneys' fees and reimbursement of Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Lead Counsel are hereby awarded attorneys' fees in the amount of 21% of the Settlement Fund, which is equivalent to $52,500,000 (before interest), and $6,205,108.12 in reimbursement of Plaintiffs' Counsel's litigation expenses (which

fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.

5. In addition, the law firm of Cotchett, Pitre & McCarthy, LLP is hereby awarded attorneys' fees in the amount of $84,500 and $3,357.66 in reimbursement of litigation expenses (which fees and expenses shall be paid from the Settlement Fund) and the law firm of Bottini & Bottini, Inc. is hereby awarded attorneys' fees in the amount of $161,800 and $6,306.90 in reimbursement of litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable.

6. In making this award of attorneys' fees and reimbursement of Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund of $250,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

Order Awarding Attorneys'
Fee and Reimbursement of Expenses
Case No. 8:14-CV-02004-DOC-KESx

3

(b)    The fee sought by Lead Counsel has been reviewed and approved as reasonable by Class Representatives, including the two institutional investor Lead Plaintiffs, that oversaw the prosecution and resolution of the Action;

(c)    Copies of the Settlement Notice were mailed to over 61,700 potential Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $8.5 million;

(d)    There were no objections to the requested attorneys' fees and expenses;

(e)    Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(f)    The Action raised a number of complex and novel issues;

(g)    Had Lead Counsel not achieved the Settlement there would remain a significant risk that Class Representatives and the other members of the Class may have recovered less or nothing from Defendants;

(h)    Plaintiffs' Counsel devoted over 136,000 hours, with a lodestar value of over $65.2 million, to achieve the Settlement; and

Order Awarding Attorneys'                     4
Fee and Reimbursement of Expenses
Case No. 8:14-CV-02004-DOC-KESx

(i) The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

7. The Court-approved Administrator, Garden City Group, LLC, shall not be reimbursed for total fees and expenses in excess of $580,000.00 in connection with this Action without further order of the Court.

8. Class Representative State Teachers Retirement System of Ohio is hereby awarded $74,839.78 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

9. Class Representative Iowa Public Employees Retirement System is hereby awarded $17,887.20 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

10. Class Representative Patrick T. Johnson is hereby awarded $35,400 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Class.

11. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

Order Awarding Attorneys'                    5
Fee and Reimbursement of Expenses
Case No. 8:14-CV-02004-DOC-KESx

12. Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

13. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

14. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 14th day of August, 2018.

_David O. Carter_

_____

The Honorable David O. Carter
United States District Judge

# Exhibit 10E

Jeffrey J. Angelovich (admitted *Pro Hac Vice*)
Bradley E. Beckworth (admitted *Pro Hac Vice*)
Susan Whatley (admitted *Pro Hac Vice*)
NIX, PATTERSON & ROACH, L.L.P.
205 Linda Drive
Daingerfield, Texas 75638
Telephone:  903-645-7333
Facsimile:  903-645-4415
JAngelovich@nixlawfirm.com
BBeckworth@nixlawfirm.com
SusanWhatley@nixlawfirm.com

Laurence D. King (State Bar No. 206423)
Linda M. Fong (State Bar No. 124232)
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
Telephone:  415-772-4700
Facsimile:   415-772-4707
LKing@KaplanFox.com
LFong@KaplanFox.com

Liaison Counsel

Sean Rommel (admitted *Pro Hac Vice*)
PATTON ROBERTS, PLLC
Century Bank Plaza
2900 St. Michael Drive, Suite 400
Texarkana, TX 75505-6128
Telephone:  903-334-7000
Facsimile:  903-330-7007
srommel@pattonroberts.com

Sean M. Handler (admitted *Pro Hac Vice*)
John A. Kehoe
SCHIFFRIN BARROWAY TOPAZ &
KESSLER LLP
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 620-677-7056
shandler@sbtklaw.com
jkehoe@sbtklaw.com

Co-Lead Counsel

Additional Counsel for Erie

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **In re: BROCADE SECURITIES LITIGATION** | Consolidated Case No.:  3:05-CV-02042-CRB<br><br>**FINAL ORDER AND JUDGMENT** |

No. 3:05-CV-02042-CRB

WHEREAS, a consolidated class action is pending in this Court captioned: *In re: Brocade Securities Litigation*, Consolidated Case No. 3:05-CV-02042-CRB (the "Action");

WHEREAS, the Court previously certified the Class (as defined herein) in this Action by Order dated October 12, 2007, over the opposition of defendants Brocade Communications Systems, Inc. ("Brocade" or the "Company") and Gregory Reyes, Antonio Canova, Larry Sonsini, Seth Neiman, and Neal Dempsey (collectively, "Individual Defendants");

WHEREAS, on November 18, 2008, the Court preliminarily certified the same Class for purposes of effectuating the settlement among Lead Plaintiff and Class Representative, Arkansas Public Employees Retirement System ("APERS"), and Class Representative, Erie County Public Employees Retirement System ("ERIE") (together, "Class Representatives"), and KPMG LLP ("KPMG" and, collectively with Brocade and the Individual Defendants, "Defendants");

WHEREAS, pursuant to Federal Rule of Civil Procedure 23(e), this matter came before the Court for hearing pursuant to the Preliminary Approval of Settlement Agreement Order dated November 18, 2008 (the "Notice Order"), on the application of the parties for approval of a proposed settlement of the Action (the "Settlement") set forth in the following stipulations: (i) a Modified Stipulation and Agreement of Settlement dated January 14, 2009 entered into among Class Representatives, on behalf of themselves and the Class, Brocade and the Individual Defendants (the "Brocade Stipulation"), and (ii) a Stipulation and Agreement of Settlement dated October 23, 2008 entered into among Class Representatives, on behalf of themselves and the Class, and KPMG (the "KPMG Stipulation," and together with the Brocade Stipulation, the "Stipulations");

WHEREAS, due and adequate notice has been given to the Class as required in the Notice Order; and

WHEREAS, the Court has considered all papers filed and proceedings had herein and otherwise is fully informed in the premises and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

2

No. 3:05-CV-02042-CRB

1. This Order and Final Judgment (the "Judgment") incorporates by reference the definitions in the Stipulations and all terms used herein shall have the same meanings as set forth in the Stipulations unless otherwise defined herein.

2. This Court has jurisdiction over the subject matter of the Action, and over all parties to the Action (the "Parties"), including all members of the Class.

3. The Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Fairness Hearing (the "Notice") has been given to the Class, pursuant to and in the manner directed by the Notice Order, proof of the mailing of the Notice and publication of the Publication Notice was filed with the Court by Plaintiffs' Counsel, and full opportunity to be heard has been offered to all Parties, the Class, and persons and entities in interest. The form and manner of Notice and Publication Notice are hereby determined to have: (a) constituted the best practicable notice, (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, of the effect of the Stipulations, including the effect of the releases provided for therein, of their right to object to the proposed Settlement, of their right to exclude themselves from the Class, and of their right to appear at the Fairness Hearing, (c) constituted reasonable, due, adequate and sufficient notice to all persons or entities entitled to receive notice, and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), 15 U.S.C. § 78u-4(a)(7), the Rules of the Court and all other applicable laws. It is further determined that all members of the Class are bound by the Judgment herein.

4. In connection with the certification of the Class, the Court has already determined that each element Federal Rule of Civil Procedure 23(a) and 23(b)(3) was satisfied as to Class Representatives' claims against Brocade and the Individual Defendants and incorporates that prior order as if set forth fully herein. Additionally, for purposes of effectuating the Settlement, each of the provisions of Fed. R. Civ. P. 23 has been satisfied and the Action has been properly maintained according to the provisions of Rules 23(a) and 23(b)(3) as to Class Representatives' claims against

3

No. 3:05-CV-02042-CRB

KPMG. Specifically, this Court finds that: (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representatives are typical of the claims of the Class; (d) Class Representatives and their counsel have fairly and adequately protected the interests of the Class; (e) the questions of law and fact common to members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy considering: (i) the interests of the Class Members in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class, (iii) the desirability or undesirability of continuing the litigation of the claims asserted in this Action, and (iv) the difficulties likely to be encountered in the management of this Action as a class action.

5. Accordingly, the Action is hereby certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for purposes of effectuating the Settlement with KPMG on behalf of the same Class previously certified in this Action, which consists of: all persons and entities who purchased or otherwise acquired Brocade common stock between May 18, 2000 and May 15, 2005, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are: (a) Defendants; (b) all officers, directors, and partners of any Defendant and of any Defendant's partnerships, subsidiaries, or affiliates at all relevant times; (c) members of the immediate family of any of the foregoing excluded parties; (d) the legal representatives, heirs, successors, and assigns of any of the foregoing excluded parties; and (e) any entity in which any of the foregoing excluded parties has or had a controlling interest at all relevant times. Also excluded from the Class are any putative members of the Class who excluded themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice, as listed on Exhibit 1 annexed hereto.

6. The Settlement, and all transactions preparatory or incident thereto, is found to be fair, reasonable, adequate, and in the best interests of the Class, and is hereby approved. The Parties are hereby authorized and directed to comply with and to consummate the Settlement in

No. 3:05-CV-02042-CRB

accordance with the Stipulations, and the Clerk of this Court is directed to enter and docket this Judgment in the Action.

7. The Action and all claims included therein, as well as all of the Settled Claims (defined in the Stipulations and in Paragraph 8(c) below) are dismissed with prejudice as to Class Representatives and all other members of the Class, and as against each and all of the Released Parties (defined in the Stipulations and in Paragraph 8(a) below). The Parties are to bear their own costs, except as otherwise provided in the Stipulations.

8. As used in this Judgment, the terms "Released Parties," "Related Parties," "Settled Claims," "Settled Defendants' Claims," and "Unknown Claims" shall have the meanings set forth below:

(a) "Released Parties" means Defendants and, as applicable, each of their Related Parties as defined below.

(b) "Related Parties" means each of Defendants' past or present directors, officers, employees, partners, principals, members, insurers, co-insurers, re-insurers, controlling shareholders, attorneys, advisors, accountants, auditors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of any Individual Defendant's immediate family, or any trust of which any Individual Defendant is the settlor or which is for the benefit of any member of an Individual Defendant's immediate family.

(c) "Settled Claims" means and includes any and all claims, debts, demands, controversies, obligations, losses, rights or causes of action or liabilities of any kind or nature whatsoever (including, but not limited to, any claims for damages (whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief, rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs, expenses, or any other form of legal or equitable relief whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent,

5

No. 3:05-CV-02042-CRB

accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (defined herein) that: (i) have been asserted in this Action by Class Representatives on behalf of the Class and its Class Members against any of the Released Parties, or (ii) have been or could have been asserted in any forum by Class Representatives, Class Members or any of them against any of the Released Parties, which arise out of, relate to or are based upon the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, or referred to in the Complaint and/or the Amended Complaint. Settled Claims shall also include any claims, debts, demands, controversies, obligations, losses, rights or causes of action that Class Representatives, Class Members or any of them may have against the Released Parties or any of them which involve or relate in any way to the defense of the Action or the Settlement of the Action. Notwithstanding the foregoing, Settled Claims shall not include: (i) any claims to enforce the Settlement, including, without limitation, any of the terms of the Stipulations, the Notice Order, this Judgment or any other orders issued by the Court in connection with the Settlement; (ii) any claims asserted by Persons who exclude themselves from the Class by timely requesting exclusion in accordance with the requirements set forth in the Notice; (iii) any claims, rights or causes of action that have been or could have been asserted in the Derivative Actions and/or the Company Action (as defined in the Brocade Stipulation); or (iv) any and all claims that have been asserted under the Securities Act of 1933 and the Securities Exchange Act of 1934, or any other laws, for the allegedly wrongful conduct complained of in *In re Brocade Communications Systems, Inc. Initial Public Offering Securities Litigation,* 01 CV 6613 (SAS)(BSJ), as coordinated for pretrial purposes in *In re Initial Public Offering Securities Litigation,* Master File No. 21 MC 92 (SAS), pending in the United States District Court for the Southern District of New York.

(d)     "Settled Defendants' Claims" means and includes any and all claims, debts, demands, controversies, obligations, losses, costs, rights or causes of action or liabilities of any kind or nature whatsoever (including, but not limited to, any claims for damages (whether compensatory, special,

6

No. 3:05-CV-02042-CRB

incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief, rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs, expenses, or any other form of legal or equitable relief whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Released Parties against any of the Class Representatives, Plaintiffs' Counsel, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action. Notwithstanding the foregoing, Settled Defendants' Claims shall not include any claims to enforce the Settlement, including, without limitation, any of the terms of the Stipulations, the Notice Order, this Judgment or any other orders issued by the Court in connection with the Settlement .

(e)     "Unknown Claims" means any and all claims that any Class Representative or Class Member does not know or suspect to exist and any and all claims that any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of, as applicable, the Released Parties, Class Representatives, and Class Members, or might have affected his, her or its decision to object or not to object to this Settlement. The Class Representatives, Class Members, Defendants and each of them have acknowledged and agreed that he, she or it may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims and/or the Settled Defendants' Claims. Nevertheless, with respect to any and all Settled Claims and Settled Defendants' Claims, the Parties to the Stipulations have stipulated and agreed that, upon the Effective Date, they shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, waived all provisions, rights and benefits of California Civil Code § 1542 and all provisions rights and benefits conferred by any law of any state or

7

territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. California Civil Code § 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties to the Stipulations have expressly acknowledged and agreed, and the Class Members shall be deemed to have, and by operation of the Judgment shall have acknowledged and agreed, that the waiver and release of Unknown Claims constituting Settled Claims and/or Settled Defendants' Claims was separately bargained for and a material element of the Settlement.

9.      (a)      In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of any Settled Claim (i) by any person against Brocade or the Individual Defendants, and (ii) by Brocade or the Individual Defendants against any person, other than claims for contribution that Brocade and/or the Special Litigation Committee (as defined in the Brocade Stipulation) have asserted or may assert against the Individual Defendants, the Related Parties or any of them, are hereby permanently barred and discharged. In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of any Settled Claim (i) by any person against KPMG, and (ii) by KPMG against any person, other than a person whose liability has been extinguished by the KPMG Settlement, are hereby permanently barred and discharged. This paragraph 9(a) shall be referred to herein as the "Bar Order."

(b)      Notwithstanding the Bar Order or any other provision or paragraph in this Judgment or 15 U.S.C. § 78u-4(f)(7)(A) to the contrary, the Individual Defendants have acknowledged and agreed, and the Court finds, that the Individual Defendants are "person[s] whose liability has been extinguished" by the Brocade Stipulation within the meaning of 15 U.S.C. § 78u-4(f)(7)(A)(ii). Further, the Court finds that the Individual Defendants have knowingly and expressly waived the right to assert the Bar Order or 15 U.S.C. § 78u-4(f)(7)(A) as a defense to any claims for contribution that Brocade and/or the Special Litigation Committee have asserted

8

No. 3:05-CV-02042-CRB

or may assert against them in connection with the defense and Settlement of the Action or any related litigation arising from the transactions and occurrences that form the basis of the Action; provided, however, that the Individual Defendants and their Related Parties, and each of them, shall retain the right to defend against any such claims for contribution on other grounds, including, without limitation: (i) that he or she is not at fault for the conduct giving rise to the Settlement; (ii) that his or her proportional fault is less than asserted by Brocade and/or the Special Litigation Committee; (iii) that Brocade is legally and/or contractually obligated to indemnify him or her for some or all of the Settlement Amount and/or that he or she is not required to reimburse or repay Brocade for that indemnified amount; and (iv) that the Settlement Amount is greater than warranted under all of the circumstances. Further, Brocade and the Special Litigation Committee have agreed that they will not argue or otherwise assert in any forum or proceeding that (i) by entering into the Brocade Stipulation the Individual Defendants acquiesced in the Settlement Amount or waived in any way their arguments challenging the Settlement Amount as excessive, and (ii) the Bar Order in any way affects or impairs the existing rights of the Individual Defendants to obtain indemnification and advancement of fees incurred in connection with Settled Claims or any other claim asserted against them. The Individual Defendants have agreed that they will not argue or otherwise assert in any forum or proceeding that, by entering into the Brocade Stipulation, Brocade or the Special Litigation Committee in any way compromised or otherwise affected its/their right to seek to limit or extinguish any purported obligation to indemnify or advance fees to the Individual Defendants and their Related Parties or to seek to recover any of the fees or expenses that Brocade has advanced or may advance on behalf of or for the benefit of the Individual Defendants and/or their Related Parties.

10.    Upon the Effective Date, Class Representatives and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns: (a) shall have fully, finally and forever released, relinquished and discharged each and every one of the Settled Claims against the Released Parties, whether or not any such Class Member

9

or Class Representative executes or delivers a Proof of Claim and Release form ("Proof of Claim"); and (b) shall be deemed to have covenanted not to sue on, and shall forever be barred from suing on, instituting, prosecuting, continuing, maintaining or asserting in any forum, either directly or indirectly, on their own behalf or on behalf of any class or other person, any Settled Claim against any of the Released Parties.

11.     Upon the Effective Date, each of the Defendants, on behalf of themselves and their Related Parties: (a) shall have fully, finally and forever released, relinquished and discharged each and every one of the Settled Defendants' Claims; and (b) shall be deemed to have covenanted not to sue on, and shall forever be barred from suing on, instituting, prosecuting, continuing, maintaining or asserting in any forum, either directly or indirectly, on their own behalf or on behalf of any class or other person, any Settled Defendants' Claim against Class Representatives, Class Members and their respective counsel, or any of them.

12.     Notwithstanding ¶¶ 9-11 herein, nothing in this Judgment shall bar any action or claim by any of the Parties or the Released Parties to enforce or effectuate the terms of the Stipulations or this Judgment.

13.     This Judgment and the Stipulations, including any provisions contained in the Stipulations, any negotiations, statements, or proceedings in connection therewith, or any action undertaken pursuant thereto:

(a)     shall not be offered or received against any Released Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by the Released Parties with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of any Released Party;

(b)     shall not be offered or received against any Released Party as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to

10

No. 3:05-CV-02042-CRB

any statement or written document approved or made by any Released Party;

(c) shall not be offered or received against any Released Party as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulations; provided, however, that the Released Parties may offer or refer to the Stipulations to effectuate the terms of the Stipulations, including the releases and other liability protection granted them hereunder, and may file the Stipulations and/or this Judgment in any action that may be brought against them (other than one that has been or may be brought by Brocade and/or the Special Litigation Committee) in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

(d) shall not be construed against any Released Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e) shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any of the Class Members that any of their claims are without merit, or that any defenses asserted by Defendants have any merit, or that damages recoverable under the Action would not have exceeded the Settlement Amount.

14. The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel and the Claims Administrator are directed to administer the Settlement in accordance with the terms and provisions of the Stipulations.

15. The Court finds that all Parties and their counsel have complied with each requirement of the PSLRA and Rules 11 and 37 of the Federal Rules of Civil Procedure as to all proceedings herein and that Class Representatives and Plaintiffs' Counsel at all times acted in the best interests of the Class and had a good faith basis to bring, maintain and prosecute this Action as

11

No. 3:05-CV-02042-CRB

to each Defendant in accordance with the PSLRA and Federal Rule of Civil Procedure 11.

16.     Only those Class Members who submit valid and timely Proofs of Claim shall be entitled to receive a distribution from the Net Settlement Fund. The Proof of Claim to be executed by the Class Members shall further release all Settled Claims against the Released Parties. All Class Members shall be bound by all of the terms of the Stipulations and this Judgment, including the releases set forth herein, whether or not they submit a valid and timely Proof of Claim, and shall be barred from bringing any action against any of the Released Parties concerning the Settled Claims.

17.     No Class Member shall have any claim against Plaintiffs' Counsel, the Claims Administrator, or other agent designated by Plaintiffs' Counsel based on the distributions made substantially in accordance with the Settlement and Plan of Allocation as approved by the Court and further orders of the Court.

18.     No Class Member shall have any claim against the Defendants, Defendants' counsel, or any of the Released Parties with respect to: (a) any act, omission or determination of Plaintiffs' Counsel, the Escrow Agent or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (b) the management, investment or distribution of the Gross Settlement Fund and/or the Net Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation or payment of claims asserted against the Gross Settlement Fund and/or the Net Settlement Fund; (e) the administration of the Escrow Account; (f) any losses suffered by, or fluctuations in the value of, the Gross Settlement Fund and/or the Net Settlement Fund; or (g) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund and/or the Net Settlement Fund or the filing of any tax returns.

19.     Any order approving or modifying the Plan of Allocation set forth in the Notice, or the application by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses or any request of Class Representatives for reimbursement of reasonable costs and expenses shall not disturb or affect the Finality of this Judgment, the Stipulations or the Settlement contained

12

No. 3:05-CV-02042-CRB

therein.

20. Plaintiffs' Counsel are hereby awarded a total of $986,039 in reimbursement of expenses, plus accrued interest. After deducting such expenses from the Gross Settlement Fund, Plaintiffs' Counsel also are hereby awarded attorneys' fees in the amount of 25% of the Gross Settlement Fund (net of any reimbursed expenses), plus accrued interest, which sum the Court finds to be fair and reasonable. The foregoing awards of fees and expenses shall be paid to Plaintiffs' Counsel from the Gross Settlement Fund, and such payment shall be made at the time and in the manner provided in the Stipulations, with interest from the date the Gross Settlement Fund was funded to the date of payment at the same net rate that interest is earned by the Gross Settlement Fund. The appointment and distribution among Plaintiffs' Counsel of any award of attorneys' fees shall be within Plaintiffs' Counsel's sole discretion.

21. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Gross Settlement Fund, the Court has considered and found that:

(a) the Settlement has created a fund of $160,098,500 million in cash that is already on deposit, plus interest thereon, and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the Settlement;

(b) Over 500,000 copies of the Notice were disseminated to putative Class Members stating that Plaintiffs' Counsel were moving for attorneys' fees not to exceed 25% of the Gross Settlement Fund and reimbursement of expenses from the Gross Settlement Fund in a total amount not to exceed $1.2 million, and no objections were filed by any Class Member against the terms of the proposed Settlement or the ceiling on the fees and expenses contained in the Notice;

(c) Plaintiffs' Counsel have conducted the litigation and achieved the Settlement in good faith and with skill, perseverance and diligent advocacy;

(d) The Action involves complex factual and legal issues and was actively prosecuted for over three years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

13

No. 3:05-CV-02042-CRB

(e)  Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that the Class Representatives and the Class may have recovered less or nothing from the Defendants;

(f)  Plaintiffs' Counsel have advanced in excess of the requested $986,039 in costs and expenses to fund the litigation of this Action; and

(g)  The amount of attorneys' fees awarded and expenses reimbursed from the Gross Settlement Fund are fair and reasonable under all of the circumstances and consistent with awards in similar cases.

22.  No Class Member filed an objection to the terms of the settlement or the fee application. Two objections were filed by former defendants who are not Class Members. Those objections have been withdrawn and are no longer before the Court. All other objections, if any, are hereby denied.

23.  Without affecting the Finality of this Judgment in any way, the Court reserves exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class, and the Released Parties for purposes of: (a) supervising the implementation, enforcement, construction, and interpretation of the Stipulations, the Plan of Allocation, and this Judgment; (b) hearing and determining any application by Plaintiffs' Counsel for an award of attorneys' fees, costs, and expenses and/or reimbursement to the Class Representatives, if such determinations were not made at the Fairness Hearing; and (c) supervising the distribution of the Gross Settlement Fund and/or the Net Settlement Fund.

24.  In the event that the Settlement is terminated or does not become Final in accordance with the terms of the Stipulations for any reason whatsoever, or in the event that the Gross Settlement Fund, or any portion thereof, is returned to Brocade or KPMG, then this Judgment shall be rendered null and void and shall be vacated to the extent provided by and in accordance with the Stipulations and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulations.

14

No. 3:05-CV-02042-CRB

25. In the event that, prior to the Effective Date, Class Representatives or Brocade institutes any legal action against the other to enforce any provision of the Brocade Stipulation or this Judgment or to declare rights or obligations thereunder, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs incurred in connection with any such action. Neither KPMG nor the Individual Defendants shall have any obligation under this paragraph.

26. There is no reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

SIGNED January 26, 2009.

_____
**THE HONORABLE CHARLES R. BREYER**
**UNITED STATES DISTRICT JUDGE**

15

No. 3:05-CV-02042-CRB

# Exhibit 10F



24 January 2023



# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

Federal Filings Declined for the Fourth Consecutive Year

Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores

Insight in Economics™

# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

## Federal Filings Declined for the Fourth Consecutive Year

## Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores[1]

24 January 2023

### Foreword

I am excited to share NERA's Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review with you. This year's edition builds on work carried out over more than three decades by many members of NERA's Securities and Finance Practice. This year's report continues our analyses of trends in filings and settlements and presents new analyses related to current topics such as event-driven litigation. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work related to securities litigations. On behalf of NERA's Securities and Finance Practice, I thank you for taking the time to review our work and hope you find it informative.

**Dr. David Tabak**, Managing Director

### Introduction

Filings of new securities class actions declined each year from 2019 through 2022. In 2022, there were 205 new federal securities class action suits filed. This significant decline from the 431 cases filed in 2018 was largely due to the lower number of merger-objection and Rule 10b-5 cases filed in 2022. Similarly, there were fewer cases resolved in 2022 than in 2021. The decline in resolutions, since 2021, was driven by the decrease in dismissed non-merger-objection and non–crypto unregistered securities cases, a category that declined by more than 30%.[2] The aggregate settlement amount for cases settled in 2022 was $4 billion, which is approximately $2 billion higher than the inflation-adjusted amount for 2021. With more cases settling for higher values in 2022 compared to 2021, the average settlement value increased by over 70% to $38 million and the median settlement value increased by over 50% to $13 million.

## Trends in Filings

For the fourth consecutive year, there was a decline in the number of new federal securities class action suits filed (see Figure 1).[3] In 2022, there were 205 new cases filed, a decline from the 210 new cases filed in 2021. This decline is a continuation of the downward trend observed since 2018, when more than 400 cases were recorded. This decline has been driven by the lower levels of merger-objection cases and cases with only Rule 10b-5 claims filed in each year (see Figure 2). Of the cases filed in 2022, suits against defendants in the health technology and services sector and the electronic technology and services sector were the most common, each accounting for 27% of total cases (see Figure 3). Although there was a decline in the aggregate number of cases filed in the Second, Third, and Ninth Circuits to the lowest level within the 2018–2022 period, the majority of new filings continue to be concentrated in these jurisdictions (see Figure 4). Of the cases filed in 2022, 33% included an allegation related to misled future performance, the most common allegation for the year. The proportion of cases with an allegation related to a regulatory issue increased from 19% in 2021 to 26% in 2022 (see Figure 5).[4]

Figure 1. **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2022



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2022 listings data is as of November 2022.

Figure 2. **Federal Filings by Type**
January 2013–December 2022



For the fourth consecutive year, there was a decline in the number of new federal securities class action suits filed.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2018–December 2022



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

*Filings against defendants in the health technology and services sector and the electronic technology and services sector were the most common in 2022, each accounting for 27% of total cases.*

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2018–December 2022



*Although there was a decline in the aggregate number of cases filed in the Second, Third, and Ninth Circuits to the lowest level within the 2018–2022 period, the majority of new filings continue to be concentrated in these jurisdictions.*

Figure 5. **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2018–December 2022



## Event-Driven and Special Cases

Here we summarize activity and trends in filings over the 2019–2022 period in potential development areas we have identified for securities class actions (see Figures 6 and 7).[5]

### ESG Cases

Environmental, social, and governance (ESG) disclosures and companies' commitments to meet disclosure guidelines have been a developing area of interest to investors and government agencies such as the Securities and Exchange Commission over the recent decade.[6] Along with that interest have come waves of lawsuits filed by plaintiffs alleging fraud related to ESG disclosures. For example, in a securities class action suit filed against CBS Corporation in 2018, plaintiffs alleged the defendant made false and misleading statements and/or failed to disclose that CBS executives engaged in widespread workplace sexual harassment and that the defendant's purported policies were inadequate to prevent the conduct. This suit was settled in 2022 for $14,750,000. Similarly, in the ongoing securities suit filed against Activision Blizzard, Inc., in 2021, plaintiffs allege the defendant made false and misleading statements and/or failed to disclose that there was discrimination against women and minority employees and the existence of numerous complaints about unlawful harassment, discrimination, and retaliation made to human resources that were not addressed. As focus and interest in this area continues, this may lead to a higher number of ESG-related cases being filed.

### Crypto Cases

The first securities class action related to cryptocurrency was filed against GAW Miners, LLC, in June 2016. Since 2017, there have been year-to-year fluctuations in the number of new crypto federal filings each year. In 2022, there were 25 crypto federal class actions suits filed. This is more than double the number of similar suits filed in 2021. This uptick was driven by the increase in the number of crypto unregistered securities cases.

Figure 6. **Number of Crypto Federal Filings**
January 2016–December 2022



### Bribery/Kickbacks

Over the 2019–2020 period, there were 14 cases filed related to allegations of bribery or kickbacks. In 2021, there was a reduction in the number of these cases filed, with only one bribery/kickback-related case filed in that year. In 2022, four such cases were filed.

### Cannabis

In 2019 and 2020, there were seven and six securities class action cases filed against defendants in the cannabis industry, respectively. Since then, there has only been one suit filed against these defendants each year.

### Cybersecurity Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity breach. More specifically, between 2019 and 2020, there were a total of six such cases filed, and an additional five suits brought in 2021. In 2022, the number of new federal suits declined slightly to three filings.

### COVID-19

Since the emergence of the COVID-19 pandemic in March 2020, 77 securities class action suits have been filed with claims related to the pandemic. Between March 2020 and December 2020, 33 cases were filed with COVID-19-related claims. In 2021, the number of suits filed declined to 20, but then increased slightly to 24 in 2022.

### Environment

Over the 2019–2022 period, 12 environment-related securities class action suits have been filed. Of these, only three were filed in 2021–2022.

### Money Laundering

In 2019 and 2020, there were three cases filed each year with claims related to money laundering. Between 2021 and 2022, only one such suit has been filed.

### SPAC

In 2019, only one case related to special purpose acquisition companies (SPACs) was filed. Since then, new federal cases related to these claims have increased substantially, with six filings in 2020 and 33 cases filed in 2021. During 2022, there were 24 securities class action suits filed related to SPACs, a 27% decline from 2021.[7]

Figure 7. **Event-Driven and Other Special Cases by Filing Year**
January 2019–December 2022



## Trends in Resolutions

The number of resolved cases—dismissed and settled cases—declined in 2022 to 214 from 248 in 2021 (see Figure 8).[8] Although 2022 was a record-setting year for the number of settled non-merger-objection, non–crypto unregistered securities cases during the 2013–2022 period, there was a larger decrease in the number of dismissed non-merger-objection, non–crypto unregistered securities cases, which led to a decline in overall resolutions. In addition, in 2022, the number of merger-objection cases resolved declined to 14, a substantial decrease from the 2017–2020 period, when more than 130 such cases were resolved each year. Of the cases filed since 2015, as of 31 December 2022, a larger portion has been dismissed than have settled (see Figure 9). This is consistent with historical trends, which indicate that settlements occur later in the litigation cycle and dismissals tend to occur in the earlier stages. Taking the time between first complaint and resolution to represent the length of time taken to resolve a suit, more than half the cases resolve between one and three years, and 17% of cases resolve more than four years after the first complaint was filed (see Figure 10).

Figure 8. **Number of Resolved Cases: Dismissed or Settled**
January 2013–December 2022



Figure 9. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2013–December 2022



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Figure 10. **Time from First Complaint Filing to Resolution**
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2003–December 2018 and Resolved January 2003–December 2022



## Analysis of Motions

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2013–2022 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

### Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 73% of these cases, while 18% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of the motions were withdrawn by defendants. Among the cases where a decision was reached, 61% were granted (with or without prejudice) and only 20% were denied (see Figure 11).

Figure 11. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2013–December 2022



### Motion for Class Certification

A motion for class certification was filed in only 17% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases where a motion for class certification was filed. Almost all of the other 40% of cases were resolved with a settlement. Among the cases where a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases (see Figure 12). Approximately 65% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 13). The median time was about 2.7 years.

Figure 12. **Filing and Resolutions of Motions for Class Certification**
Cases Filed and Resolved January 2013–December 2022



Figure 13. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2013–December 2022



## Trends in Settlement Values

Aggregate settlements for 2022 totaled $4 billion, which is more than double the inflation-adjusted total for 2021 of $1.9 billion.[9] In 2022, the average settlement value was $38 million, an increase of more than 70% compared to the 2021 inflation-adjusted average settlement value (see Figures 14 and 15). The distribution of 2022 settlement values differed from the settlements in 2021, with more cases settling for higher values, and more consistent with the distribution of settlement values observed in 2020 (see Figure 16). This shift is also evident in the median settlement values. The median settlement value for 2022 is $13 million, which is approximately $5 million higher than the 2021 inflation-adjusted median value of $8 million (see Figure 17).[10]

Figure 14. **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2013–December 2022



Figure 15. **Average Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2013–December 2022



Figure 16. **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2018–December 2022



Figure 17. **Median Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2013–December 2022



## Top Settlements

The top 10 settlements in 2022 ranged from $98 million to $809.5 million and totaled $2.2 billion. The highest settlement reached was against Twitter, Inc., for a case filed in California in 2016 (see Table 1).

Table 1. **Top 10 2022 Securities Class Action Settlements**

| Ranking | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Twitter, Inc. | 16 Sept 16 | 11 Nov 22 | $809.5 | $185.7 | 9th | Technology Services |
| 2 | Teva Pharmaceutical Industries Ltd. | 6 Nov 16 | 2 Jun 22 | $420.0 | $109.3 | 2nd | Health Technology |
| 3 | Luckin Coffee Inc. | 13 Feb 20 | 22 Jul 22 | $175.0 | $31.3 | 2nd | Consumer Non-Durables |
| 4 | BlackBerry Ltd. | 4 Oct 13 | 29 Sept 22 | $165.0 | $59.5 | 2nd | Technology Services |
| 5 | Granite Construction Inc. | 13 Aug 19 | 24 Feb 22 | $129.0 | $21.7 | 9th | Industrial Services |
| 6 | Endo International plc. | 14 Nov 17 | 23 Feb 22 | $113.4 | $20.9 | 3rd | Health Technology |
| 7 | Walgreen Co. | 10 April 15 | 7 Oct 22 | $105.0 | $31.1 | 7th | Retail Trade |
| 8 | Novo Nordisk A/S | 11 Jan 17 | 27 Jun 22 | $100.0 | $31.7 | 3rd | Health Technology |
| 9 | Stamps.com, Inc. | 13 Mar 19 | 24 Jan 22 | $100.0 | $17.3 | 9th | Commercial Services |
| 10 | Mattel, Inc. | 24 Dec 19 | 2 May 22 | $98.0 | $14.8 | 9th | Consumer Durables |
| | **Total** | | | **$2,214.9** | **$523.4** | | |

The top 10 federal securities class action settlements, as of 31 December 2022, consists of settlements ranging from $1.14 billion to $7.24 billion. From 2018 to 2021, this list remained unchanged because there were no settlements reached in excess of $1.1 billion during this time. In 2022, this list was updated to incorporate the $1.21 billion partial settlement in the ongoing suit against Valeant Pharmaceuticals International, Inc. (see Table 2).

Table 2. **Top 10 Federal Securities Class Action Settlements** (As of 31 December 2022)

| | | | | Total Settlement Value ($Million) | Codefendent Settlements | | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | | |
| | | | | | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | | | |
| Ranking | Defendant | Filing Date | Settlement Year(s) | | | | | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 01 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 02 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 98 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 02 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.- Petrobras | 8 Dec 14 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 Jul 02 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 09 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 02 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 15 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 01 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | **Total** | | | **$32,334** | **$13,249** | **$1,017** | **$3,358** | | |

*Denotes a partial settlement, which is included here due to its sizable amount. Note that this case is not included in any of our resolution or settlement statistics.

## NERA-Defined Investor Losses

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[11]

A statistical review reveals that settlement values and NERA-Defined Investor Losses are highly correlated, although the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses (see Figure 18). Since 2013, annual median Investor Losses have ranged from a high of $972 million to a low of $358 million. For cases settled in 2022, the median Investor Losses were $972 million, which is 33% higher than the 2021 value and the highest recorded value during the 2013–2022 period. Between 2020 and 2022, the median ratio of settlement amount to Investor Losses has been stable at 1.8% (see Figure 19).

Figure 18. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Investor Losses
Cases Filed and Settled December 2011–December 2022



Figure 19. **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2013–December 2022



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities (in addition to common stock) alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);
- The stage of litigation at the time of settlement; and
- Whether an institution or public pension fund is named lead plaintiff (see Figure 20).

Figure 20. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled December 2011–December 2022



*Among cases settled between December 2011 and December 2022, factors in NERA's statistical model account for a substantial fraction of the variation observed in actual settlements.*

## Trends in Plaintiffs' Attorneys' Fees and Expenses

In 2022, aggregate plaintiffs' attorneys' fees and expenses amounted to $1 billion (see Figure 21). This marks the first year since 2018 that aggregate plaintiffs' attorneys' fees and expenses exceeded $1 billion. The 2022 aggregate fees and expenses is double the amount observed in 2021, driven by an increase in the aggregate fees and expenses associated with settlements between $10 million and $499.9 million and by the $186 million in fees and expenses associated with settlements between $500 million and $999.9 million. Although there are year-to-year fluctuations in the aggregate fees and expenses, the trend in the median of plaintiffs' attorneys' fees and expenses as a percentage of settlement amount has remained stable (see Figure 22). The data reveal that fees and expenses represent an increasing percentage of settlement value as settlement value decreases—a pattern that is consistent in cases settled since 2013 as well as in cases settled between 1996 and 2012. For cases settled in the recent period with a settlement value of $1 billion or higher, fees and expenses accounted for 8.8% of the settlement value. This percentage increases to more than 30% for cases with a settlement value under $10 million.

Figure 21. **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2013–December 2022



Figure 22. **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

## Conclusion

In 2022, new filings of federal securities class actions declined for the fourth consecutive year as a result of fewer merger-objection and Rule 10b-5 cases filed. Of the 205 cases filed in 2022, more than 20% were SPAC or crypto-related filings. Total resolutions declined by 14% from 248 in 2021 to 214 in 2022 due to the continued reduction in non-merger-objection and non-crypto unregistered cases. The average settlement value and median settlement value for cases settled in 2022 were $38 million and $13 million, respectively, an increase over the 2021 values.

## Notes

1 This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee and other researchers in NERA's Securities and Finance Practice for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2 In this study we introduced a new category of "special" cases, crypto cases, which consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

3 NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports.

4 Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

5 It is important to note that due to the small number of cases in some of these categories, the findings summarized here may be driven by one or two cases.

6 ESG securities class action cases filed in federal courts are included in NERA's database and the analyses in this report. For this update, no analyses have been prepared on this development area specifically.

7 Report updated on 7 February 2023. Analyses for the "SPACs" group were updated to incorporate "blank check" company-related cases and cases that were not originally classified as SPACs prior to publishing.

8 Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

9 While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

10 For our analysis, NERA includes settlements that have had the first settlement-approval hearing. This means we do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the Valeant partial settlement in Table 2 due to its sizable amount, this case is not included in any of our resolution or settlement statistics.

11 NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*

 To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.

# NERA
## ECONOMIC CONSULTING

Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2023
National Economic Research Associates, Inc.

All rights reserved.
Printed in the USA.

# Exhibit 10G

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MALLINCKRODT PLC, *et al.*,[1] | Case No. 20-12522 (JTD) |
| Debtors. | Jointly Administered |
| | **Obj. Deadline: June 7, 2022 at 4:00 p.m. (ET)**<br>**Hearing Date: TBD** |

**COVER SHEET TO THE SIXTH INTERIM APPLICATION OF COOLEY LLP,**
**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF**
**MALLINCKRODT PLC, *ET AL*., FOR COMPENSATION AND REIMBURSEMENT OF**
**EXPENSES FOR THE PERIOD OF JANUARY 1, 2022 THROUGH**
**MARCH 31, 2022**

| Basic Information | |
|---|---|
| Name of Applicant | Cooley LLP |
| Name of Client | Official Committee of Unsecured Creditors of Mallinckrodt plc, *et al*. |
| Petition Date | October 12, 2020 |
| Retention Date | Effective as of October 30, 2020 |
| Date of Order Approving Employment | December 21, 2020 |
| | |
| **Sixth Interim Period** | |
| Time Period Covered | January 1, 2022 through March 31, 2022 |
| Total Hours Billed | 1,449.4 |
| Total Fees Requested | $1,612,165.00 |
| Total Expenses Requested | $136,663.87 |
| Blended Rate (All Timekeepers) | $1,112.30 |
| Blended Rate (All Attorneys)[2] | $1,166.81 |
| Fees Requested over Budgeted Amount (if any) | $0.00 |
| Total Attorneys[3] | 27 |
| Total Attorneys not in Staffing Plan (if any) | 6 |
| Total Attorneys Billing <15 hours (if any) | 10 |
| Rate Increases Not Previously Approved/Disclosed? | No |

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] The blended hourly rate for attorneys does not include law clerks.

[3] Does not include law clerks.

1

| Historical Information | |
| --- | --- |
| Fees Approved to Date by Interim Order[4] | $33,272,010.45 |
| Expenses Approved to Date by Interim Order[5] | $855,353.24 |
| Allowed Fees Paid to Date | $33,700,281.65 |
| Allowed Expenses Paid to Date | $793,345.24 |

This is Cooley LLP's sixth interim fee application in these chapter 11 cases.

The total time expended in connection with the preparation of this fee application is not included herein as such time was expended after the Interim Period.

---

[4] Applicant originally requested (i) $1,986,494.00 in fees in its First Interim Fee Application, (ii) $5,593,877.50 in fees in its Second Interim Fee Application, (iii) $7,814,215.70 in fees in its Third Interim Fee Application, (iv) $8,359,049.40 in fees in its Fourth Interim Fee Application, and (v) $10,240,496.50 in fees in its Fifth Interim Fee Application. The above amount reflects an aggregate fee reduction of $722,122.65 per the U.S. Trustee's and Fee Examiner's responses.

[5] Applicant originally requested (i) $378,490.71 in expenses in its Fourth Interim Fee Application and (ii) $333,559.82 in expenses in its Fifth Interim Fee Application. The above amount reflects an expense reduction of $2,463.84 per the U.S. Trustee and Fee Examiner's responses.

## MONTHLY FEE APPLICATIONS SUBJECT TO THE INTERIM PERIOD

| Date Filed | Period Covered | Requested | | Approved | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Fees | Expenses | Fees [80%] | Expenses [100%] | Fee Holdback |
| Fifteenth Monthly 3/17/2022 [D.I. 6801] | 1/1/2022-1/31/2022 | $535,339.00 | $87,117.07 | $428,271.20[6] | $87,117.07 | $107,067.80 |
| Sixteenth Monthly 4/1/2022 [D.I. 7015] | 2/1/2022-2/28/2022 | $270,159.00 | $31,771.79 | $216,127.20[7] | $31,771.79 | $54,031.80 |
| Seventeenth Monthly 5/3/2022 [D.I. 7291] | 3/1/2022-3/31/2022 | $806,667.00 | $17,775.01 | $645,333.60[8] | $17,775.01 | $161,333.40 |
| **TOTAL** | | $1,612,165.00 | $136,663.87 | $1,289,732.00 | $136,663.87 | $322,433.00 |

---

[6] A Certificate of No Objection was filed on April 7, 2022 [D.I. 7052].

[7] A Certificate of No Objection was filed on April 22, 2022 [D.I. 7221].

[8] This application pending before the Court. The objection deadline is May 23, 2022.

## COMPENSATION BY TIMEKEEPER DURING THE INTERIM PERIOD

| Name of Professional Person | Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate[9] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Jay Indyke | Partner; Member of New York Bar since 1982; Area of Expertise: Bankruptcy | $1,590 | 9.4 | $14,946.00 |
| Cathy Hershcopf | Partner; Member of New York Bar since 1989; Area of Expertise: Bankruptcy | $1,420 | 106.8 | $151,656.00 |
| Philip Bowman | Partner; Member of New York Bar since 2002; Area of Expertise: Business Litigation | $1,360 | 9.0 | $12,240.00 |
| Kathleen Hartnett | Partner; Member of New York Bar since 2003, DC Bar since 2003, and California Bar since 2017; Area of Expertise: Business Litigation | $1,340 | 4.8 | $6,432.00 |
| Ian Shapiro | Partner; Member of New York Bar since 2001; Area of Expertise: Business Litigation | $1,305 | 66.9 | $87,304.50 |
| Jonathan Kim | Partner; Member of New York Bar since 1997 and Nevada Bar since 1997; Area of Expertise: Business Litigation | $1,265 | 14.2 | $17,963.00 |
| Cullen D. Speckhart | Partner; Member of Virginia Bar since 2009, New York Bar since 2010, Missouri Bar since 2016, and DC Bar since 2020; Area of Expertise: Bankruptcy | $1,225 | 45.4 | $55,615.00 |
| Robert Earles | Partner; Member of Illinois Bar since 2012; Area of Expertise: Business Litigation | $1,215 | 4.5 | $5,467.50 |
| Michael Klein | Partner; Member of New York Bar since 2005; Area of Expertise: Bankruptcy | $1,180 | 88.5 | $104,430.00 |
| David Vogel | Special Counsel; Member of DC Bar since 1994 and Virginia Bar since 2002; Area of Expertise: Business Litigation | $1,175 | 2.2 | $2,585.00 |
| Nicholas Flath | Special Counsel; Member of New Bar since 2012; Area of Expertise: Business Litigation | $1,170 | 0.7 | $819.00 |
| Reed Smith | Special Counsel; Member of New York Bar since 1999; Area of Expertise: Business Litigation | $1,165 | 133.3 | $155,294.50 |

---

[9] Applicant's rates are subject to a customary, firm-wide "step-up" on January 1, 2022.

4

Case 20-12522-JTD   Doc 769   Filed 11/04/20   Page 71 of 102

| Name of Professional Person | Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate[9] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Erica Richards | Special Counsel; Member of New York Bar since 2007; Area of Expertise: Bankruptcy | $1,165 | 56.8 | $66,172.00 |
| David Kupfer | Associate; Member of New Jersey Bar since 2011 and New York Bar since 2012; Area of Expertise: Business Litigation | $1,155 | 48.8 | $56,364.00 |
| Robert Jacques | Associate; Member of Georgia Bar since 2013 and DC since 2016; Area of Expertise: Insurance | $1,155 | 0.9 | $1,039.50 |
| Summer McKee | Associate; Member of New York Bar since 2015; Area of Expertise: Bankruptcy | $1,155 | 298.4 | $344,652.00 |
| Lauren Reichardt | Associate; Member of New York Bar since 2015; Area of Expertise: Bankruptcy | $1,155 | 78.4 | $90,552.00 |
| Evan Lazerowitz | Associate; Member of New Jersey Bar since 2013 and New York Bar since 2014; Area of Expertise: Bankruptcy | $1,140 | 53.3 | $60,762.00 |
| Olya Antle | Associate; Member of Virginia Bar since 2012 and DC Bar since 2020; Area of Expertise: Bankruptcy | $1,115 | 25.6 | $28,544.00 |
| Paul Springer | Associate; Member of New York Bar since 2016; Area of Expertise: Bankruptcy | $1,115 | 124.4 | $138,706.00 |
| Joseph Brown | Associate; Member of New York Bar since 2017 and DC Bar since 2020; Area of Expertise: Bankruptcy | $1,115 | 15.8 | $17,617.00 |
| Charlie Low | Associate; Member of New York Bar since 2017; Area of Expertise: Business Litigation | $1,115 | 30.0 | $33,450.00 |
| Georgina Inglis | Associate; Member of New York Bar since 2018 and DC Bar since 2019; Area of Expertise: Business Litigation | $1,000 | 14.3 | $14,300.00 |
| Courtney Gladstone | Associate; Member of DC Bar since 2017 and Massachusetts Bar since 2020; Area of Expertise: Business Litigation | $1,000 | 5.0 | $5,000.00 |
| Jeremiah Ledwidge | Associate; Member of New York Bar since 2018; Area of Expertise: Bankruptcy | $920 | 32.6 | $29,992.00 |
| Weiru Fang | Associate; Member of New York Bar since 2019; Area of Expertise: Bankruptcy | $920 | 47.6 | $43,792.00 |

| Name of Professional Person | Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate[9] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Lauren Fowler | Associate; Member of New York Bar since 2021; Area of Expertise: Business Litigation | $720 | 18.6 | $13,392.00 |
| Anne Bigler | Law Clerk | $610 | 19.0 | $11,590.00 |
| Lillian Boodaghians | Law Clerk | $610 | 13.7 | $15,487.00 |
| | | $620 | 11.5 | |
| Mollie Canby | Paralegal | $380 | 63.7 | $24,206.00 |
| Denis Cahir | Paralegal | $350 | 4.1 | $1,435.00 |
| Courtney Fisher | Paralegal | $300 | 1.2 | $360.00 |
| **TOTAL** | | | **1,449.4** | **$1,612,165.00** |
| **Blended Hourly Rate for All Timekeepers** | | | | **$1,112.30** |
| **Blended Rate for Attorneys[10]** | | | | **$1,166.81** |

---

[10] The blended hourly rate for attorneys does not include law clerks.

6

**TIME BILLED BY PROJECT CATEGORY DURING THE INTERIM PERIOD**

| | Subject Matter Categories | Hours Spent | Fees |
|---|---|---|---|
| B01 | Asset Analysis and Recovery | 11.3 | $13,627.50 |
| B02 | Asset Disposition | 1.8 | $2,124.00 |
| B03 | Business Operations | 4.4 | $5,045.00 |
| B04 | Case Administration | 57.6 | $41,396.50 |
| B05 | Claims | 145.8 | $169,831.50 |
| B06 | Employee Benefits and Pensions | 0.8 | $924.00 |
| B07 | Fee/Employment Applications | 4.7 | $4,660.50 |
| B07A | Cooley Fee Applications | 61.1 | $43,360.00 |
| B07B | Cooley Employment Application | 3.0 | $1,410.00 |
| B07D | Other Fee Applications | 0.4 | $438.50 |
| B08 | Fee/Employment Objections | 3.2 | $1,216.00 |
| B10 | Litigation | 301.4 | $324,491.50 |
| B11 | Meetings | 84.3 | $98,603.00 |
| B12 | Plan and Disclosure Statement | 639.6 | $742,190.00 |
| B16 | Business Analysis | 0.8 | $924.00 |
| B18 | Leases and Executory Contracts | 4.7 | $5,491.50 |
| B19 | Preparation For and Attendance at Court Hearings | 76.8 | $91,256.00 |
| B25 | Foreign Proceedings | 1.5 | $2,130.00 |
| B26 | Trust | 46.2 | $63,045.50 |
| | **TOTAL** | **1,449.4** | **$1,612,165.00** |

7

**COMPARISON OF TIME BUDGETED TO ACTUAL TIME BILLED BY PROJECT
CATEGORY DURING THE INTERIM PERIOD**

| Subject Matter Categories | | Budgeted Hours | Actual Hours | Variance (Hours) | Budgeted Fees | Actual Fees | Variance (Fees) |
|---|---|---|---|---|---|---|---|
| B01 | Asset Analysis and Recovery | 250 | 11.3 | (238.7) | $500,000.00 | $13,627.50 | ($486,372.50) |
| B02 | Asset Disposition | 100 | 1.8 | (98.2) | $100,000.00 | $2,124.00 | ($97,876.00) |
| B03 | Business Operations | 400 | 4.4 | (395.6) | $500,000.00 | $5,045.00 | ($494,955.00) |
| B04 | Case Administration | 150 | 57.6 | (92.4) | $250,000.00 | $41,396.50 | ($208,603.50) |
| B05 | Claims | 1,300 | 145.8 | (1,154.2) | $1,400,000.00 | $169,831.50 | ($1,230,168.50) |
| B06 | Employee Benefits/Pensions | 75 | 0.8 | (74.2) | $75,000.00 | $924.00 | ($74,076.00) |
| B07[11] | Fee/Employment Applications | 250 | 69.2 | (180.8) | $500,000.00 | $49,869.00 | ($450,131.00) |
| B08 | Fee/Employment Objections | 75 | 3.2 | (71.8) | $75,000.00 | $1,216.00 | ($73,784.00) |
| B09 | Financing and Cash Collateral | 100 | 0.0 | (100.0) | $100,000.00 | $0.00 | ($100,000.00) |
| B10 | Litigation | 850 | 301.4 | (548.6) | $900,000.00 | $324,491.50 | ($575,508.50) |
| B11 | Meetings | 100 | 84.3 | (15.7) | $100,000.00 | $98,603.00 | ($1,397.00) |
| B12 | Plan and Disclosure Statement | 350 | 639.6 | 289.6 | $500,000.00 | $742,190.00 | $242,190.00 |
| B13 | Relief from Stay Proceedings | 10 | 0.0 | (10.0) | $20,000.00 | $0.00 | ($20,000.00) |
| B14 | Travel | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B15 | Accounting/Auditing | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B16 | Business Analysis | 15 | 0.8 | (14.2) | $25,000.00 | $924.00 | ($24,076.00) |
| B17 | Corporate Finance | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B18 | Leases and Executory Contracts | 25 | 4.7 | (20.3) | $30,000.00 | $5,491.50 | ($24,508.50) |

---

[11] Category total includes the following sub-categories:
(i) B07 – Fee/Employment Applications, with the aggregate fees billed for the Interim Period in the amount of $4,660.50;
(ii) B07A – Cooley Fee Applications, with the aggregate fees billed for the Interim Period in the amount of $43,360.00;
(iii) B07B – Cooley Employment Application with the aggregate fees billed for the Interim Period in the amount of $1,410.00; and
(iii) B07D – Other Fee Applications, with the aggregate fees billed for the Interim Period in the amount of $438.50.

8

| Subject Matter Categories | | Budgeted Hours | Actual Hours | Variance (Hours) | Budgeted Fees | Actual Fees | Variance (Fees) |
|---|---|---|---|---|---|---|---|
| B19 | Preparation For and Attendance at Court Hearings | 75 | 76.8 | 1.8 | $75,000.00 | $91,256.00 | $16,256.00 |
| B20 | Reconstruction Accounting | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B21 | Tax Issues | 75 | 0.0 | (75.0) | $75,000.00 | $0.00 | ($75,000.00) |
| B22 | Valuation | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B23 | Avoidance Actions | 10 | 0.0 | (10.0) | $10,000.00 | $0.00 | ($10,000.00) |
| B24 | Regulatory Compliance | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B25 | Foreign Proceedings | 0 | 1.5 | 1.5 | $0.00 | $2,130.00 | $2,130.00 |
| B26 | Trust | 0 | 46.2 | 46.2 | $0.00 | $63,045.50 | $63,045.50 |
| B27 | Retail | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B28 | Real Estate | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B29 | Intellectual Property | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| B30 | RSA/DIP Milestones | 0 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 |
| | **TOTAL** | **4,210.0** | **1,449.4** | **(2,760.6)** | **$5,235,000.00** | **$1,612,165.00** | **($3,622,835.00)** |

**EXPENSE SUMMARY DURING THE INTERIM PERIOD**

| Expense Category | Amount |
|---|---:|
| Air Fare | $1,001.22 |
| Deposition Fees | $1,897.26 |
| E-Discovery Technology Services / RelOne Database (Relativity) | $11.40 |
| E-Discovery Monthly Services / Storage / Access Fees (TransPerfect Document Management, Inc.) | $67,519.92 |
| FedEx | $24.37 |
| Hotel | $8,646.81 |
| Meals | $21,178.62 |
| Messenger Fees | $309.79 |
| Relativity User Access Fee | $2,925.00 |
| RelOne Data Hosting Fee | $6,485.04 |
| Reproduction of Documents/Binders – Outside Services (Vector Litigation Support, Inc.) | $7,885.93 |
| Research Database / Document Retrieval | $9,167.26 |
| Supplies | $312.32 |
| Train Fare | $313.00 |
| Transportation | $8,985.93 |
| **TOTAL** | **$136,663.87** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

MALLINCKRODT PLC, *et al.*,[12]

                Debtors.

Chapter 11

Case No. 20-12522 (JTD)

Jointly Administered

**Obj. Deadline: June 7, 2022 at 4:00 p.m. (ET)**
**Hearing Date: TBD**

## SIXTH INTERIM APPLICATION OF COOLEY LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MALLINCKRODT PLC, *ET AL.*, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JANUARY 1, 2022 THROUGH MARCH 31, 2022

TO THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE:

Cooley LLP ("Cooley" or "Applicant"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors (the "Debtors"), respectfully represents:

## INTRODUCTION

1. This is Applicant's sixth interim application (the "Application") for allowance of compensation and reimbursement of expenses pursuant to § 331 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (the "U.S. Trustee Guidelines"), the Order Establishing

---

[12] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

Procedures for Interim Compensation and Reimbursement of Professionals (the "Interim Compensation Order") [D.I. 770], and the Order Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses (the "Fee Examiner Procedures Order") [D.I. 1324].

2.    Pursuant to the Interim Compensation Order, Applicant may file monthly fee applications with this Court.  As described in the summary sheets to this Application, Applicant has previously filed monthly fee applications (collectively, the "Monthly Applications") requesting allowance of fees and expenses for the period of (i) January 1, 2022 through January 31, 2022, (ii) February 1, 2022 through February 28, 2022, and (iii) March 1, 2022 through March 31, 2022.  These applications include, among other things, contemporaneously maintained time entries for each professional who provided services during the application period, maintained in increments of tenths (1/10) of an hour, and an itemization and description of the costs and expenses incurred by Applicant.  The Monthly Applications are hereby incorporated by reference.

3.    This Application seeks interim approval of compensation for legal services rendered by Applicant in the amount of $1,612,165.00, and reimbursement of certain expenses incurred by (or first billed by outside vendors to) Applicant in the amount of $136,663.87 for the period of January 1, 2022 through March 31, 2022 (the "Interim Period").  This Application complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Interim Compensation Order.

**GENERAL CASE BACKGROUND**

4.    On October 12, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and

managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these chapter 11 cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

5. On October 27, 2020, the U.S. Trustee appointed the Committee, consisting of the following five members: (i) New PharmaTop LP; (ii) Acument Global Technologies, Inc.; (iii) Commodore Bowens, Jr., as Administrator for Estate of Commodore Bowens; (iv) U.S. Bank Trust National Association; and (v) AFSCME District Council 47 Health and Welfare Fund.[13]

6. On October 29, 2020, the Committee selected Robinson & Cole LLP ("Robinson Cole") as its general counsel and Delaware counsel, and on October 30, 2020, the Committee selected Cooley as its counsel. On October 31, 2020, the Committee selected Dundon Advisers, LLC ("Dundon") and Alvarez & Marsal Holdings, LLC ("A&M") as its financial advisors, and on November 2, 2020, the Committee selected Moelis & Company ("Moelis") as its investment banker.

7. On December 21, 2020, the Court entered an order authorizing the Committee to retain Cooley as its counsel effective as of October 30, 2020 [D.I. 892].

8. On December 22, 2020, the Court appointed Don F. Oliver of Direct Fee Review, LLC as the fee examiner in these chapter 11 cases (the "Fee Examiner Order") [D.I. 916].

9. On March 2, 2022, the Court entered an order confirming the *Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt Plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "Plan") [D.I. 6660].

---

[13] On December 29, 2020, the U.S. Trustee filed an amended notice of appointment, removing NewPharmaTop LP from the Committee. See [D.I. 1082]. Upon entry of this Court's *Order Regarding Withdrawal of Claims* [D.I. No. 6980] entered on March 30, 2022, Acument Global Technologies, Inc. resigned from the Committee.

## JURISDICTION AND STATUTORY PREDICATES

10.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Local Rule 9013-1(f), Applicant consents to the entry of a final judgment or order with respect to this Application if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties. The statutory predicates for the relief requested herein are §§ 105(a), 330 and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## MATTERS PERTAINING TO APPLICANT DURING THE INTERIM PERIOD

11.    Applicant has maintained contemporaneous time records which indicate the time that each attorney has spent working on a particular matter and the nature of the work performed. Copies of these time records are annexed to this Application as **Exhibit C**. The total number of hours expended by Applicant's attorneys and para-professionals during the Interim Period in conjunction with these chapter 11 cases is 1,449.4. All of the services have been rendered by those individuals at Applicant's firm.

12.    The personnel who have expended extensive time on this matter during the Interim Period are as follows: (a) Cathy Rae Hershcopf, Cullen D. Speckhart, Michael Klein, Erica Richards, Summer McKee, Lauren Reichardt, Evan Lazerowitz, Olya Antle, Paul Springer, Joseph Brown, Jeremiah Ledwidge and Weiru Fang have been actively involved in all aspects of these chapter 11 cases during the Interim Period and were responsible for the various day-to-day issues that arose during the Interim Period; (b) Robert Jacques was responsible for insurance matters during the Interim Period; and (c) Philip Bowman, Kathleen Hartnett, Ian Shapiro, Robert Earles, Jonathan Kim, Reed Smith, David Vogel, David Kupfer, Nicholas Flath, Charlie Low, Courtney

4

Gladstone, Georgina Inglis, and Lauren Fowler were responsible for litigation, appeals, and claims issues during the Interim Period.

13. Applicant rendered all the professional services for which compensation is requested herein in connection with the Debtors' chapter 11 cases in furtherance of Applicant's professional responsibilities as attorneys for the Committee.

14. During the Interim Period, the partners, associates and para-professionals of Applicant devoted substantial time, 1,449.4 hours, in rendering professional services to the Committee, all of which time was reasonable and necessary.

15. Applicant, by experience, training and ability, is fully qualified to perform the services for which compensation is sought here. Applicant represents or holds no interest adverse to the Committee with respect to the matters upon which it is engaged.

16. No agreement or understanding exists between Applicant and any other entity for the sharing of compensation to be received for services rendered in or in connection with these chapter 11 cases.

### EXPENSES[14] INCURRED DURING THE INTERIM PERIOD

17. Annexed as part of the cover sheet is a list of the necessary and actual disbursements incurred during the Interim Period in connection with the above-described work. The list is derived from the information found in **Exhibit C**. These records indicate that Applicant has advanced during the Interim Period the sum of $136,663.87 in necessary and actual out-of-pocket expenses.

---

[14] In connection with said expenses, it should be noted that Applicant charges 25¢ per page for outgoing facsimiles with no charge for incoming facsimiles, 10¢ per page for photocopying, 80¢ per page for color photocopying, and charges for meals only necessitated by meetings with the Debtors, the Committee, or when Applicant's personnel would work on these chapter 11 cases through a normal meal period.

## <u>DISCLOSURES PURSUANT TO THE REVISED U.S. TRUSTEE GUIDELINES</u>

18.     At the onset of these chapter 11 cases, Applicant discussed its budget and staffing plan with the co-chairpersons of the Committee.  The budget is attached hereto as **<u>Exhibit B</u>**.  For the Interim Period, the compensation sought by Applicant did not exceed the fees projected in the budget.

19.     Twenty-seven attorneys, two law clerks, and three paralegals are included in this Application.  The staffing plan approved by the client provided for twenty-one attorneys and two paralegals; however, the additional professionals performed services on discrete, ancillary tasks that required their special expertise.

20.     The following is provided in response to the request for additional information set forth in Paragraph C.5 of the Revised UST Guidelines:

| | |
|---|---|
| **Question:** | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
| Response: | No. |
| **Question:** | If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? |
| Response: | No. |
| **Question:** | Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? |
| Response: | No. |
| **Question:** | Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? |
| Response: | No. |

6

**Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?

Response: No.

**Question:** If the fee application includes any rate increases since retention, did the client (i) review and approve those rate increases in advance, and (ii) agree when retaining the law firm to accept all future rate increases?

Response: This Application includes a rate increase since Applicant's retention. Applicant's rates are subject to a customary, firm-wide "step-up" on January 1, 2022. The Committee has reviewed, approved and agreed to the rate increase.

21. Applicant's fees have increased during the Interim Period. Disclosures of the blended rate of Applicant's timekeepers are attached hereto as **Exhibit A**.

## ALLOWANCE OF INTERIM COMPENSATION

22. With respect to the level of compensation, section 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

7

(E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

23.   The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. *See In Re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.").

24.   Applicant asserts that in accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested is fair and reasonable given (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title. It is respectfully submitted that, had counsel with less experience in these types of matters been retained, the cost to the estate would have been much greater.

25.   The fees charged by Applicant in these chapter 11 cases are billed in accordance with the existing billing rates and procedures in effect during the Interim Period. The services rendered by Applicant were necessary and beneficial to the Committee, consistently performed in a timely manner, and reasonable in light of the value of such services to the Committee,

Applicant's demonstrated skill and expertise in the bankruptcy field, and the customary compensation charged by comparably skilled practitioners. Accordingly, Applicant submits that approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## NOTICE, PRIOR APPLICATION AND CERTIFICATION

26. Notice of this Application has been provided in accordance with the Interim Compensation Order. Applicant submits that the foregoing constitutes good and sufficient notice and that no other or further notice need be provided.

27. No previous application for the relief sought herein has been made to this or any other court.

28. Applicant has reviewed the requirements of the Local Rules, including Local Rule 2016-1, and this Application complies with those rules.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, Applicant hereby respectfully requests (i) interim allowance of compensation for Applicant's duly authorized, necessary and valuable service to the Committee during the Interim Period in the aggregate amount of $1,612,165.00, reimbursement to Applicant for actual and necessary expenses incurred during the Interim Period in the aggregate amount of $136,663.87, and (iii) awarding Applicant such other and further relief that this Court deems just and proper.

Dated:  May 17, 2022

**COOLEY LLP**

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart
1299 Pennsylvania Ave., NW, Suite 700
Washington DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: cspeckhart@cooley.com

-and-

Cathy Hershcopf
Michael Klein
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: chershcopf@cooley.com
mklein@cooley.com

*Co-Counsel for the Official Committee of Unsecured Creditors*

# Exhibit 10H

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE HP SECURITIES LITIGATION,

This Document Relates To: All Actions

MASTER FILE NO. 3:12-CV-05980-CRB

**<u>CLASS ACTION</u>**

[~~PROPOSED~~] ORDER AWARDING ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came for hearing on November 13, 2015 (the "Settlement Hearing"), on Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fee and Expense Application"). The Court having considered Lead Counsel's Fee and Expense Application and all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that due and adequate notice of the Settlement, the Settlement Hearing and related matters, including Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses, was given to the Settlement Class as required by the Court's July 17, 2015 Order (the "Preliminary Approval Order").

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. This Order hereby incorporates by reference the definitions in the Stipulation of Settlement and Release dated as of June 8, 2015 (the "Stipulation"), and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2. This Court has jurisdiction to enter this Order. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's Fee and Expense Application was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of Lead Counsel's Fee and Expense Application met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, the Constitution of the United States, and any other applicable law, and constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled thereto.

4. Settlement Class Members have been given the opportunity to object to Lead Counsel's Fee and Expense Application in compliance with Rule 23(h)(2) of the Federal Rules of Civil Procedure.

5. Lead Counsel is hereby awarded attorneys' fees in the amount of 11% of the Settlement Amount, net of Court-approved Litigation Expenses, which sum the Court finds to be fair and reasonable, and $1,023,971.29 in reimbursement of Litigation Expenses, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. The foregoing attorneys' fees and Litigation Expenses shall be paid from the Settlement Fund in accordance with the terms of the Stipulation.

6. Lead Plaintiff PGGM Vermogensbeheer B.V. is hereby awarded $162,900 from the Settlement Fund as reimbursement for its costs and expenses directly related to its representation of the Settlement Class.

7. In making the foregoing awards of attorneys' fees and Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

    a. The Settlement has created a fund of $100 million in cash that has been deposited into an escrow account for the benefit of the Settlement Class pursuant to the terms of the Stipulation, and eligible members of the Settlement Class who submit acceptable Claim Forms will benefit from the Settlement that occurred because of Lead Counsel's efforts;

    b. Lead Counsel's Fee and Expense Application has been reviewed and approved as fair and reasonable by the Court-appointed Lead Plaintiff, a large, sophisticated institutional investor that was actively involved in the prosecution and resolution of the Action;

    c. Copies of the Notice which stated that Lead Counsel would apply to the Court for attorneys' fees in an amount not to exceed eleven percent (11%) of the Settlement Amount, net of Litigation Expenses, and reimbursement of Litigation Expenses in an amount not to exceed $1.25 million, were mailed to over 809,000 potential Settlement Class Members or their nominees. In addition, the Notice stated that the maximum amount of Litigation Expenses included reimbursement of costs

[PROPOSED] ORDER AWARDING ATTORNEYS'     2      MASTER FILE NO. 3:12-CV-05980-CRB
FEES AND LITIGATION EXPENSES

and expenses (including lost wages) incurred by Lead Plaintiff in connection with its representation of the Settlement Class, in an amount not to exceed $175,000;

d. There were no objections to Lead Counsel's Fee and Expense Application;

e. Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

f. The Action involves complex factual and legal issues and was actively prosecuted for nearly three years;

g. Had Lead Counsel not achieved the Settlement, there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from the Defendants;

h. Lead Counsel devoted over 17,723 hours, with a lodestar value of approximately $9.4 million, to achieve the Settlement; and

i. The amount of attorneys' fees and Litigation Expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

8. Any appeal or any challenge affecting this Court's award of attorneys' fees and Litigation Expenses shall in no way disturb or affect the finality of the Judgment.

9. Jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

10. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with terms of the Stipulation.

11. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

Dated: 11/13/2015

_____
The Honorable Charles R. Breyer
United States District Judge

[PROPOSED] ORDER AWARDING ATTORNEYS'      3      MASTER FILE NO. 3:12-CV-05980-CRB
FEES AND LITIGATION EXPENSES

# Exhibit 10I

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | Case No. 1:19-cv-01339 |
| | Honorable Jorge L. Alonso |

## ORDER AWARDING ATTORNEYS' FEES
## AND LITIGATION EXPENSES

This matter is before the Court on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it; and it appearing that notice substantially in the form approved by the Court, which advised of Lead Counsel's request for an award of attorneys' fees and Litigation Expenses, was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice substantially in the form approved by the Court was published in *The Wall Street Journal* and transmitted over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated as of May 2, 2023 (ECF No. 475-3) ("Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 20% of the Settlement Fund and $2,656,091.93 in payment of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

A.      The Settlement has created a fund of $450,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

B.      The fee sought has been reviewed and approved as reasonable by Plaintiffs, sophisticated investors that actively supervised the Action;

2

C. Over 1.6 million Postcard Notices and 5,600 Notice Packets (i.e., the Notice and Claim Form) were mailed to potential Settlement Class Members and Nominees stating that Lead Counsel would apply for an award of attorneys' fees in the amount of 20% of the Settlement Fund and for payment of Litigation Expenses in an amount not to exceed $3,200,000, and only two objections to the requested attorneys' fees have been received, which the Court has consider and rejected;

D. Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

E. The Action raised a number of complex issues;

F. Had Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

G. Plaintiffs' Counsel devoted over 112,000 hours, with a lodestar value of $52,985,816.50, to achieve the Settlement; and

H. The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. Plaintiffs are hereby awarded reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class in the following amounts: (i) $12,780.00 to Sjunde AP-Fonden; (ii) $73,950.00 to Union Asset Management Holding AG; and (iii) $27,610.00 to Booker Enterprises Pty Ltd.

7. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

3

8.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.


SO ORDERED this 19th day of September, 2023.


_____
The Honorable Jorge L. Alonso
United States District Judge

# Exhibit 10J

**FILED IN CHAMBERS**
**THOMAS W. THRASH JR.**
**U.S.D.C. Atlanta**

**JUN 2 6 2020**

JAMES N. HATTEN, Clerk

By: _____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE EQUIFAX INC. SECURITIES LITIGATION** | Consolidated Case No. 1:17-cv-03463-TWT |

## ORDER AWARDING
## ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came on for hearing on June 26, 2020 (the "Settlement Fairness Hearing") on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Fairness Hearing and otherwise; and it appearing that notice of the Settlement Fairness Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in the *Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated February 12, 2020 (ECF No. 159-2) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of _20__ % of the Settlement Fund, net of total Court-awarded Litigation Expenses, which sum the Court finds to be fair and reasonable. Plaintiff's Counsel are also

2

hereby awarded $*659,925.13*_____ in payment of litigation expenses to be paid from the Settlement Fund, which sum the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      The Settlement has created a fund of $149,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiff's Counsel;

(b)      The fee sought is based on a retainer agreement entered into between Lead Plaintiff, a sophisticated institutional investor that actively supervised the Action, and Lead Counsel at the outset of the Action; and the requested fee has been reviewed and approved as reasonable by Lead Plaintiff;

(c)      Over 185,000 copies of the Notice were mailed to potential Settlement Class Members and nominees stating that Lead Counsel would apply for an award of attorneys' fees in an amount not exceed 20% of the

3

Case 1:17-cv-03463-TWT Document 177-3 Filed 06/19/20 Page 5 of 6

Settlement Fund and for payment of Litigation Expenses in an amount not to exceed $1,000,000, and no objections to the requested attorneys' fees and expenses were received;

(d) Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e) The Action raised a number of complex issues;

(f) Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g) Plaintiff's Counsel devoted over 42,200 hours, with a lodestar value of over $18.6 million, to achieve the Settlement; and

(h) The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. Lead Plaintiff Union Asset Management Holding AG is hereby awarded $ _121, 375.00_ from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.     Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.    There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this __26__ day of __June__, 2020.

_____
The Honorable Thomas W. Thrash, Jr.
United States District Judge